**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

ALL FUNDS HELD BY OR FOR THE BENEFIT OF AFGHANISTAN INTERNATIONAL BANK AT STANDARD CHARTERED BANK, NEW YORK, OF AN AMOUNT UP TO, BUT NOT TO EXCEED, $10,100,000 OF THE TOTAL SUM OF ANY FUNDS HELD IN ANY ACCOUNT AT AFGHANISTAN INTERNATIONAL BANK CONTROLLED BY OR FOR THE BENEFIT OF HIKMATULLAH SHADMAN INCLUDING, BUT NOT LIMITED TO, ACCOUNT NUMBER 050210000527810, IN THE NAME OF HIKMAT SHADMAN LOGISTICS SERVICES COMPANY, ACCOUNT NUMBER 050210001288613, IN THE NAME OF FAIZY ELHAM BROTHERS, LTD., AND ACCOUNT NUMBER 05021020014251115 IN THE NAME OF EVEREST FAIZY LOGISTICS SERVICES, *ET AL*.,

**Defendants *in rem*.**

Case No. 12-cv-01905 (RWR)

**UNITED STATES' OPPOSITION TO CLAIMANTS' MOTION FOR IMMEDIATE RELEASE OF SEIZED PROPERTY PURSUANT TO 18 U.S.C. § 983(f)**

Plaintiff, United States of America, by and through its undersigned counsel, respectfully urges this Court to deny Claimants' Motion for Immediate Release of Seized Property Pursuant to 18 U.S.C. § 983(f) (ECF No. 27). Claimants seek release of property pursuant to Section 983(f). *Id.* at 25. However, because the United States has seized currency in this action, and the currency does not constitute the assets of a seized business, no such release of property is authorized under Section 983(f). Moreover, Claimants, have actively thwarted attempts to

restrain the Defendant Assets, and have failed to establish sufficient contacts with the community to ensure that the property will be available at trial as required for release of seized assets. 18 U.S.C. § 983(f)(1)(B). In addition, Claimants have failed to establish either hardship by the continued restraint of funds, much of which were designated for the purchase of real estate in Dubai, or that such purported hardship outweighs the risk to the United States during the pendency of forfeiture proceedings. 18 U.S.C. §§ 983(f)(1)(C),(D). Accordingly, and for the reasons set forth below, because Claimants have failed to meet their burden to establish each of the requirements for release of property, Claimants' motion should be denied.

## I. BACKGROUND

This is a civil action *in rem* for the forfeiture of the following defendant assets pursuant to 18 U.S.C. §§ 981(a)(1)(C), 981(k) and 984:

a. $4,330,287.03 of the funds controlled by or for the benefit of Hikmatullah Shadman including, but not limited to account number 050210000527810, in the name of Hikmat Shadman Logistics Services Company, account number 050210001288613, in the name of Faizy Elham Brothers, Ltd., and account number 0502102001425115 in the name of Everest Faizy Logistics Services ("Seized Asset A")[1];

b. $4 million of the funds transferred on or after November 20, 2012, from Afghanistan International Bank Account Number 050210000527810, in the name of Hikmat Shadman Logistics Services to any account at Emirates NBD Bank in the name of Yaser Elham ("Seized Asset B");

c. $49 million of the funds transferred on or after November 20, 2012, from Afghanistan International Bank Account Number 050210000527810, in the name of Hikmat Shadman Logistics Services Company to any account at Emirates NBD Bank controlled by or for the benefit of Hikmatullah Shadman General Trading LLC, including but not limited to account number AE210260000514678072002 in the name of Hekmat Shadman General Trading LLC. ("Seized Asset C");

d. $2,999,977 of the funds transferred on or after November 20, 2012, to Bank Alfalah account number 01810241 in the name of Everest Faizy Logistics

[1] This asset was originally identified as having a value of $10,100,00. Prior to the filing of any claims in this action, the United States voluntarily dismissed its action against approximately $5.7 million of the funds. (ECF No. 26).

Services from Afghanistan International Bank account number 0502102001425115 in the name of Everest Faizy Logistics Services ("Seized Asset D"); and

e. $949,164 of the funds transferred on or after November 20, 2012, from Afghanistan International Bank account number 050210000527810, in the name of Hikmat Shadman Logistics Services Company to any account at Bank Alfalah controlled by or for the benefit of Hikmatullah Shadman, including but not limited to Bank Alfalah account number 01810238 in the name of Hikmat Shadman Logistics Services ("Seized Asset E").

As set forth in the Second Amended Verified Complaint for Forfeiture *In Rem* (No.15), the defendant assets, which have a combined value of approximately $61.3 million, are proceeds of a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343, through which Hikmatullah Shadman and his associates defrauded the United States of more than $77 million.[2] These approximately $61.3 million in defendant assets have been seized or restrained and are the only assets subject to forfeiture in this action.[3]

## II. STATEMENT OF POINTS AND AUTHORITIES

Title 18, United States Code, Section 983(f) sets forth the exclusive means by which seized property may be released during the pendency of a civil forfeiture action. *See United States v. 8 Gilcrease Lane*, 587 F. Supp. 2d. 133, 140 (D. D. C. 2008) ("The Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983, governs all requests for the pretrial release of property that has been seized for civil forfeiture."); *see also United States v. Contents of Accounts (Chavez)*, 629 F.3d 601 (6th Cir. 2011) (CAFRA "only allowed hardship to be considered under

---

[2] Should the additional $15.7 million be located, the United States reserves the right to seek leave from the Court to further amend its complaint or file a separate forfeiture action to recover these still-missing funds.

[3] In their motion, Claimants repeatedly request the release of items seized by the U.S. Counterinsurgency Task Force in Afghanistan. These assets are not sought for forfeiture and are not before this Court. Counsel for the United States has advised Claimants that inquiries regarding these additional assets should be directed to the U.S. Counterinsurgency Task Force. The Special Inspector General for Afghanistan Reconstruction (SIGAR) did take possession of some of the items from the Counterinsurgency Task Force through a search warrant issued by a military magistrate of the Office of the Command Judge Advocate, however, the current disposition of the items is within the authority of the Task Force and not SIGAR.

in very narrow circumstances… it seems unlikely that Congress, in writing the statute [18 U.S.C. § 983(f)], intended to open the door to other, broader claims of hardship.”).

As codified in 18 U.S.C. § 983(f)(6)(B), the burden is on the Claimants to prove that they have satisfied all the requirements of 18 U.S.C. § 983(f) prior to the property's release. *See 8 Gilcrease Lane*, 587 F. Supp. 2d at 140 (“In order to obtain the release of seized assets prior to the final adjudication…a claimant must file a petition with the court in which the claimant demonstrates the basis on which the requirements of [Section 983(f)(1)] are met.”) Accordingly, the only issue before the Court with regard to the release of the seized funds is whether the Claimants have met their burden under 18 U.S.C. § 983(f).

Pursuant to 18 U.S.C. § 983(f), a Claimant is entitled to the release of seized assets only if five specific criteria are satisfied. Section 983 states:

> 983 (f) Release Of Seized Property.—
>
> (1) A claimant … is entitled to immediate release of seized property if—
>
> (A) the claimant has a possessory interest in the property;
>
> (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;
>
> (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;
>
> (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and
>
> (E) none of the conditions set forth in paragraph (8) applies.

In addition, paragraph (8) of § 983(f) precludes release of assets where the property “is... currency, or other monetary instrument or electronic funds....unless such currency...constitutes the assets of a legitimate business which has been seized...” 18 U.S.C. § 983(f)(8)(A), incorporated by 18 U.S.C. § 983(f)(1)(E). In other words, § 983(f)(1) authorizes a court to order the pretrial release of seized property subject to civil forfeiture only when the claimant seeking

release establishes the criteria listed above, and in doing so demonstrates that substantial hardship to the claimant outweighs the risk that the property will not be available should the government prevail at trial or summary judgment. This balancing test, however, does not apply where a claimant seeks pretrial release of currency, other monetary instruments or electronic funds unless such currency, or other monetary instrument, or electronic funds constitutes the assets of a legitimate business which has been seized. *See 8 Gilcrease Lane*, 587 F. Supp. 2d at 140 (test contained in 18 U.S.C. § 983(f)(1)(D) does not apply where a party seeks pretrial release of currency…unless such properties constitute the assets of a legitimate business that has been seized).

## III. ARGUMENT

### A. Because the United States Has Not Seized a Business in this Action, Release of Currency is Not Authorized.

The seized assets in this matter are currency located in or seized from bank accounts held in the name of several different individuals and corporations. Section § 983(f)(8) expressly prohibits the release of currency, including electronic funds, unless such property "constitutes the assets of a legitimate business which has been seized." 18 U.S.C. §§ 983(f)(1)(E) and (f)(8)(A). Here, because no business has been seized, the limitations on release set forth in § 983(f)(8) apply, and the release of the funds is not authorized.

As this Court has previously found, the seizure of an ongoing business is a prerequisite for the release of currency or electronic funds. In *8 Gilcrease Lane,* this Court found that because the Government did not seize a business, "under the express terms of the statute, the Court has no authority to order the immediate release of the funds." *See 8 Gilcrease Lane,* 587 F. Supp. 2d at 140 (finding that the under the statutory text, "which has been seized" modifies "business" not "assets."). *See also,United States v. All Funds Seized from Or on Deposit in*

*Suntrust Account No. Xxxxxxxxx8359*, 2006 U.S. Dist. LEXIS 98041 (D. D. C. 2006) ("The Court reads the phrase "which has been seized" to modify the immediate preceding noun "business"); *In re Seizure Warrants Issued March 27, 2008, & April 23, 2008*, 593 F. Supp. 2d 892, 893-94 (N.D. W. Va. 2008) (currency may not be released pending trial under "hardship" provision unless the legitimate business itself has been seized).

Nevertheless, Claimants erroneously contend that the United States has seized the entire business operation of Hikmat Shadman Logistics Services Company, and that, therefore, this Court should consider the additional requirements set forth in 18 U.S.C. § 983(f)(1) in evaluating whether the release of the seized assets is appropriate. (DN 27-1, ¶ 57). This argument too must fail. First, the seized assets held in the name of Hikmat Shadman Logistics Services Company include only a small percentage of the funds in Seized Assets A and E, and none of the other property, such as trucks or fuel, that would be necessary for the operation of a trucking and logistics business.

Second, the seizure of a business's assets does not constitute the seizure of the business itself. *See, e.g.*, *8 Gilcrease Lane*, 587 F. Supp. 2d at 140 (denying hardship petition based upon seizure of 100% of business' funds and finding such a seizure is not "equivalent to seizure of the business itself"); *United States v. Various Gold, Silver and Coins*, 916 F. Supp. 2d 1182 (D. Or. 2013) (seizure of most but not all of a business's assets does not constitute the "constructive seizure" of the business); *United States v. Contents of Account No. 4000393243*, 2010 U.S. Dist. LEXIS 104969 (S.D. Ohio Jan. 2, 2010) (claimants failed to demonstrate that a business was seized under § 983(f)(8) after submitting evidence that government seized "a very significant portion of what [claimant's] normally use[] as working capital, and that such seizure works a very substantial hardship on [claimant's] business operations"); *In re Seizure Warrants Issued*

*March 27, 2008, & April 23, 2008*, 593 F. Supp. 2d 892 (N.D. W. Va. 2008) (rejecting argument of "constructive seizure," where petitioners asked the Court to find that seizure of a business' currency was tantamount to seizure of the business). Accordingly, even if Claimants could establish that a significant portion of Hikmat Shadman Logistic Services Company's funds had been restrained, such a showing would be insufficient to meet the requirements of Section 983(f)(8).

Because the seized funds do not constitute funds of a seized business, pursuant to 18 U.S.C. §§ 983(f)(1)(E) and f(8) Claimants' Motion should be denied.[4]

**B. The Claimants Have Failed to Meet Their Burden To Establish the Other Requirements Set Forth in 18 U.S.C. § 983(f)**

Even if the test set forth in 18 U.S.C. § 983(f)(1) were to apply, the Claimants have not made the showing necessary for the Court to order the seized assets' release.

**1. The Claimants Have Insufficient Ties to the Community to Provide Assurance that the Property will be Available at Trial**

Section 983(f)(1)(B) requires the Court, before ordering the release of seized assets, to consider whether a claimant has "sufficient ties to the community to provide assurance that the property will be available at the time of the trial." In their Motion, the Claimants identify ties to Kabul, Afghanistan, and assert that this is sufficient to meet this criterion (ECF No. 27, ¶¶ 50-55). However, the defendant assets are alleged to be proceeds of a crime committed against the United States of America, specifically, wire fraud in violation of 18 U.S.C. § 1343. The ties of

[4] The Claimants also challenge the proportionality of the seizure, citing to *United States v. Contents of Account No. 4000393243*, 2010 U.S. Dist. LEXIS 104969 (S.D. Ohio Jan. 2, 2010), for the proposition that the Court should consider proportionality under 18 U.S.C. § 983(g) at this stage in the forfeiture proceeding. However, in *Contents of Account No. 400039324*, the Court actually declined to discuss proportionality, because, as here, the seizure was of currency and no business had been seized. 2010 U.S. Dist. LEXIS 104969, 5-6 (S.D. Ohio Jan. 2, 2010) ("Claimants argue that what has been seized is disproportionate to the illegal conduct…§ 983(g)(1) refers to the proportionality of a forfeiture. No forfeiture has occurred yet in this case…Proportionality may well be a relevant consideration under § 983(f), perhaps as part of the balancing test of § 983(f)(1)(D), but the Court need not decide the question because Claimants cannot satisfy § 983(f)(1)(E)").

the Claimants to Kabul, Afghanistan do not provide any assurance that the property will be available at trial *in the United States*.[5]

In fact, the Claimants suggest that if the assets are released, they will be dissipated. The Claimants indicate a desire to spend the funds on "work, charitable aid, or safe housing" if the funds were released. (ECF No. 27, ¶ 57).[6] This is insufficient to satisfy the requirements of § 983(f)(1)(B). *See United States v. Various Gold, Silver and Coins*, 916 F. Supp. 2d 1182, 1186 (D. Or. 2013) (finding that a Claimants' intention to spend any funds returned to them does not satisfy § 983(f)(1)(B)). Because the Claimants have not put forward any evidence of ties to the United States sufficient to provide the assurance that the funds will be available at trial, they have not met their burden under 18 U.S.C. § 983(f)(1)(B).

Further, even if the Claimants' ties to Afghanistan were relevant, the past conduct of Mr. Shadman, as described in the Second Amended Verified Complaint for Forfeiture (ECF No. 15, ¶¶ 13-19), demonstrates that despite such community ties, he cannot be relied on to ensure the availability of the funds at trial. The United States initially sought the restraint of over $77 million in proceeds traceable to the wire fraud conspiracy perpetuated by Mr. Shadman. Seizure and arrest warrants for the $77 million were initially transmitted to Afghanistan for execution, as authorized by U.S. law.[7] When Mr. Shadman learned that the United States had obtained the warrants against his criminal proceeds (which were predicated upon a judicial finding of

[5] The Claimants contend that Afghan authorities may have considered some of the allegations in the Complaint (No. 27, ¶¶ 38-43). However, the Afghan authorities do not have the authority to declare "exclusive jurisdiction" over a U.S. civil forfeiture action (No. 27, ¶ 40). This is an action filed in U.S. Court based on a violation of U.S. law.

[6] Moreover, as discussed below, a majority of the seized funds had been earmarked for the purchase of real estate in Dubai before being restrained.

[7] Whenever property subject to forfeiture under the laws of the United States is located in a foreign country, an action for forfeiture may be brought in the United States District Court for the District of Columbia, and seizure warrants may be transmitted to the foreign country for execution. *See* 18 U.S.C. § 981(b)(3) and 28 U.S.C.S. § 1355(b). Section 981(k) was only invoked to arrest and seize the defendant assets from an interbank account after the Afghan government failed to enforce the U.S. restraint as required by the United Nations Convention Against Corruption, which Afghanistan signed on February 20, 2004, and ratified on August 25, 2008.

probable cause), in lieu of contesting the seizure in the United States, he transferred a majority of the funds from Afghanistan International Bank to Bank Alfalah and Emirates NBD Bank specifically to avoid, albeit unsuccessfully, U.S. jurisdiction.[8] Over $15.7 million of the original $77 million remains missing.

**2. The Claimants Have Failed to Show Substantial Hardship From Continued Possession of the Funds by the United States, or that Such Hardship Outweighs the Risk the Property will be Concealed or Transferred**

The Claimants have failed to show, as required by §§ 983(f)(C) and (D) that continued possession of the seized assets by the United States pending the final disposition of this forfeiture proceeding will cause substantial hardship that outweighs the risk that the property will be lost, concealed, or transferred if returned to the Claimants. First, the Claimants allegations of hardship are predicated on their erroneous assertion that the United States seized the entire business operation of Hikmat Shadman Logistics Services Company. (ECF No. 27-1, ¶¶ 56-57). As discussed above and detailed in the Stipulation for the Return of Seized Funds (ECF No. 25), of the amount seized, only a small percentage was held in the name of Hikmat Shadman Logistics Services Company at the time of the seizure.

Contrary to the Clamants' assertions, the available evidence suggest that the funds were not going to be used to support his trucking business or the welfare of his Filipino workers as stated in the Claimants' Motion; the majority of the seized funds had been earmarked by Mr. Shadman for the purchase of real estate in Dubai and not for the business operations or support of Hikmat Shadman Logistics Services Company. Specifically, the wire transfer instructions and bank records identified in Attachment A show that Mr. Shadman designated at least $30 million of the criminal proceeds "for investment in property…purchase of Ahli Tower [in Dubai]."

---

[8] In fact, several of these transactions were conducted through U.S. financial institutions, likely in violation of 18 U.S.C. § 1957.

These monies were transferred from Afghanistan International Bank, through an account held in the name of Hikmat Shadman Logistic Services Company at Bank Alfalah to an account held in the name of Hekmat Shadman General Trading at Emirates NBD Bank, where they were restrained in Emirates NBD Bank's interbank account in the United States.

The Claimants also assert that release of the funds is necessary to support their families. (ECF No. 27, ¶ 58). This too, is not enough to establish hardship, as the Claimants have not demonstrated that they are precluded from securing other employment, or additional contracts for their trucking companies. *See, e.g. United States v. $1,231,349.68 in Funds*, 227 F. Supp. 2d 125, 128 (D.D.C. 2002) (finding no hardship when the Claimant could secure employment elsewhere to meet financial obligations). Accordingly Claimants have failed to show that they would suffer undue hardship by the continued restraint on the defendant assets.

In contrast, the release of the defendant assets will cause substantial risk that the defendant assets will be dissipated and placed beyond the reach of the Court. As explained above, Claimants have already established an intention to spend the funds, which are themselves highly moveable in nature. Thus, the Claimants have failed to satisfy the criteria set forth in 18 U.S.C. §§ 983(f)(C) and (D) for the release of funds.[9]

**3. The Claimants have Failed to Assert a Possessory Interest in Seized Asset B**

Section 983(f)(1)(A) requires the Claimants to have a possessory interest in the seized property as a condition of release. The Claimants' Motion identifies Hikmatullah Shadman, Rohullah, and Najibullah (also known as Yaser Elham), as having a possessory interest in the

[9] The Claimants also argue that the breadth of the seizure warrants the funds' release (ECF No. 27 ¶ 60). This argument falls short as they have failed to establish *any* hardship caused by the seizure, irrespective of the amount currently under restraint.

defendant assets, and cross references the Claim (ECF No. 24) that was filed with this Court to support this assertion. (ECF No. 27, ¶ 48).[10]

In the Claim filed by Hikmatullah Shadman, Rohullah, and Najibullah (also known as Yaser Elham) (ECF No.24), Hikmatullah Shadman asserted an interest in Seized Assets A, C, and E, Rohullah asserted an interest in Seized Asset D, and a portion of Seized Asset A, and Najibullah asserted an interest in a portion of Seized Asset A (ECF No. 24, ¶ 24-26 and Exhibit H). Accordingly, because none of the Claimants have asserted an interest in Seized Asset B, the release of Seized Asset B to the Claimants is not appropriate.[11]

## III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court enter the attached order denying the Claimants' Motion for Immediate Release of Seized Property Pursuant to 18 U.S.C. § 983(f).

[10] Rule G(5)(a)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which govern forfeiture actions *in rem*, explicitly requires that a person a filing a claim in a civil forfeiture action *in rem* "assert[] an interest in the defendant property" Without such an interest, the claimant lacks standing under the Supplemental Rules to challenge the forfeiture. In the *Claimants Motion* (ECF No. 27), Hikmat Shadman Logistics Services Company, Hikmat Shadman General Trading, LLC, Faizy Elham Brothers, Ltd., and Everest Faizy Logistics Services are erroneously identified as claimants. These corporate entities have not filed a claim in this forfeiture action.

[11] The Claimants may also lack standing to contest the forfeiture of the other defendant assets, but it is not necessary for the Court to address this issue in connection with this 18 U.S.C. § 983(f) petition.

Respectfully submitted,

JAIKUMAR RAMASWAMY, CHIEF
ASSET FORFEITURE AND
MONEY LAUNDERING SECTION

/s/_Elizabeth Aloi_______________
DANIEL H. CLAMAN
Assistant Deputy Chief
ELIZABETH A. ALOI
Trial Attorney
Asset Forfeiture and Money
Laundering Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W., Suite 10100
Washington, D.C. 20530
Telephone: (202) 514-1263

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 30, 2013, I caused a copy of the foregoing United States' Opposition to Claimants' Motion for Immediate Release Pursuant to 18 U.S.C. § 983(f) to be served via the Court's CM/ECF system.

*/s/ Elizabeth Aloi*
Elizabeth A. Aloi
Trial Attorney
U.S. Department of Justice
Criminal Division
1400 New York Ave., NW,
Ste. 10100
Washington, DC 20005
(202) 598-2525