IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| United States Department of Justice | § | |
| Criminal Division | § | |
| Asset Forfeiture and Money | § | |
|     Laundering Section | § | |
| 1400 New York Avenue, NW., 10th Floor | § | |
| Washington, DC 20005, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No.:    1:12-cv-1905 (RWR) |
| | § | Judge:      Richard W. Roberts |
| THE SUM OF $70,990,605 HELD IN | § | Date Filed:  October 3, 2013 |
| ACCOUNT NUMBER 050210000527810, IN | § | |
| THE NAME OF HIKMAT SHADMAN | § | |
| LOGISTICS SERVICES COMPANY, | § | |
| LOCATED AT AFGHANISTAN INTER- | § | |
| NATIONAL BANK, AND ALL INTEREST, | § | |
| BENEFITS OR ASSETS TRACEABLE | § | |
| THERETO; | § | |
| | § | |
| THE SUM OF $6,930,000, HELD IN | § | |
| ACCOUNT NUMBER 050210001288613, IN | § | |
| THE NAME OF FAIZY ELHAM BROTHERS, | § | |
| LTD., LOCATED AT AFGHANISTAN INTER- | § | |
| NATIONAL BANK, AND ALL INTEREST, | § | |
| BENEFITS OR ASSETS TRACEABLE | § | |
| THERETO. | § | |
| | § | |
| ALL FUNDS HELD FOR OR BY THE BENEFIT | § | |
| OF AFGHANISTAN INTERNATIONAL BANK | § | |
| AT STANDARD CHARTERED BANK, NEW | § | |
| YORK, OF AN AMOUNT UP TO BUT NOT TO | § | |
| EXCEED $1.5 MILLION OR THE SUM HELD | § | |
| AT AFGHANISTAN INTERNATIONAL BANK | § | |
| ACCOUNT NUMBER 050210000527810, IN | § | |
| THE NAME OF HIKMAT SHADMAN | § | |
| LOGISTICS SERVICES COMPANY, OR | § | |
| AFGHANISTAN INTERNATIONAL BANK | § | |
| ACCOUNT NUMBER 050210001288613, IN | § | |
| THE NAME OF FAIZY ELHAM BROTHERS, | § | |
| LTD.; | § | |
| | § | |

ALL FUNDS HELD FOR OR BY THE BENEFIT     §
OF BANK ALFALAH AT CITIBANK, N.A.     §
NEW YORK, NOT TO EXCEED $55,569,790 OF     §
THE TOTAL SUM OF ANY FUNDS     §
TRANSFERRED ON OR AFTER     §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT     §
BANK ALFALAH FROM AFGHANISTAN     §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT     §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER  050210001288613, IN     §
THE NAME OF FAIZY ELHAM BROTHERS;     §
     §
ALL FUNDS HELD FOR OR BY THE BENEFIT     §
OF BANK ALFALAH AT DEUTSCHE BANK     §
TRUST COMPANY AMERICSAS, NOT TO     §
EXCEED $55,569,790 OFTHE TOTAL SUM OF     §
ANY FUNDS TRANSFERRED ON OR AFTER     §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT     §
BANK ALFALAH FROM AFGHANISTAN     §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT     §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN     §
THE NAME OF FAIZY ELHAM BROTHERS;     §
     §
ALL FUNDS HELD FOR OR BY THE BENEFIT     §
OF BANK ALFALAH AT HABIB AMERICAN     §
BANK, NOT TO EXCEED $55,569,790 OF     §
THE TOTAL SUM OF ANY FUNDS     §
TRANSFERRED ON OR AFTER     §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT     §
BANK ALFALAH FROM AFGHANISTAN     §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT     §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN     §
THE NAME OF FAIZY ELHAM BROTHERS;     §

ALL FUNDS HELD FOR OR BY THE BENEFIT §
OF BANK ALFALAH AT HABIB BANK §
LIMITED, NOT TO EXCEED $55,569,790 OF §
THE TOTAL SUM OF ANY FUNDS §
TRANSFERRED ON OR AFTER §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT §
BANK ALFALAH FROM AFGHANISTAN §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN §
THE NAME OF FAIZY ELHAM BROTHERS; §
§
ALL FUNDS HELD FOR OR BY THE BENEFIT §
OF BANK ALFALAH AT HSBC BANK USA §
N.A., NOT TO EXCEED $55,569,790 OF §
THE TOTAL SUM OF ANY FUNDS §
TRANSFERRED ON OR AFTER §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT §
BANK ALFALAH FROM AFGHANISTAN §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN §
THE NAME OF FAIZY ELHAM BROTHERS; §
§
ALL FUNDS HELD FOR OR BY THE BENEFIT §
OF BANK ALFALAH AT JP MORGAN CHASE §
BANK NATIONAL ASSOCIATION, NOT TO §
EXCEED $55,569,790 OF THE TOTAL SUM OF §
ANY FUNDS TRANSFERRED ON OR AFTER §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT §
BANK ALFALAH FROM AFGHANISTAN §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN §
THE NAME OF FAIZY ELHAM BROTHERS; §

ALL FUNDS HELD FOR OR BY THE BENEFIT   §
OF BANK ALFALAH AT MASHREQ BANK   §
PSC, NOT TO EXCEED $55,569,790 OF   §
THE TOTAL SUM OF ANY FUNDS   §
TRANSFERRED ON OR AFTER   §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT   §
BANK ALFALAH FROM AFGHANISTAN   §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT   §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK§
ACCOUNT NUMBER 050210001288613, IN   §
THE NAME OF FAIZY ELHAM BROTHERS;   §
  §
ALL FUNDS HELD FOR OR BY THE BENEFIT   §
OF BANK ALFALAH AT STANDARD   §
CHARTERED BANK, NEW YORK, NOT TO   §
EXCEED $55,569,790 OF THE TOTAL SUM OF   §
ANY FUNDS TRANSFERRED ON OR AFTER   §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT   §
BANK ALFALAH FROM AFGHANISTAN   §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT   §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK§
ACCOUNT NUMBER 050210001288613, IN   §
THE NAME OF FAIZY ELHAM BROTHERS;   §
  §
ALL FUNDS HELD BY OR FOR THE BENEFIT   §
OF EMIRATES NATIONAL BANK AT JP   §
MORGAN CHASE BANK NATIONAL   §
ASSOCIATION NOT TO EXCEED $4 MILLION   §
OF THE TOTAL SUM OF ANY FUNDS HELD   §
IN ANY ACCOUNT AT EMIRATES NATIONAL §
BANK IN THE NAME OF YASER ELHAM,   §
  §
               Defendants *in rem*.   §
_____   §

## REPLY TO THE UNITED STATES' OPPOSITION TO CLAIMANTS' MOTION FOR IMMEDIATE RELEASE OF SEIZED PROPERTY PURSUANT TO 18 U.S.C. § 983(f)

Claimants, through their undersigned counsel, respectfully file this Reply To The United

States' Opposition to Claimants' Motion For Immediate Release of Seized Property, urging this

Court to grant an order requiring Government to immediately release Claimants' wrongfully seized property pursuant to 18 U.S.C. § 983(f).

## I.    REPLY INTRODUCTION

1.    To be clear, the United States Government ("Government"), regardless of which agency within the Government, has seized the entire business assets and records (not just funds) of Claimant Hikmat Shadman Logistics Services Company ("HSLSC") (Doc 27-1, Exs. 11, 56), and has seized over $61 Million of Claimants' monetary funds (Doc 31, p3, 1st full ¶).  It is the aggregate of these seizures that has caused substantial hardship to Claimants.  This is true despite the Government's shell game played against Claimants and this Court.  It is imperative that the Court understand what the Government has done and is doing here.  The Government has used at least two separate U.S. Government agencies and multiple legal procedures to seize and take the entire business of an innocent Afghanistan company and its principals and related companies, with no factual evidence of wrongdoing other than mischaracterized facts elicited from biased "confidential informants."   This is despite the dedicated, loyal, and trustworthy services of Claimant HSLSC, where such services have been accepted and highly acclaimed by the actual users – the U.S. Special Operations Forces in Afghanistan (Doc 27-1, Exs. 2-3, 6-8, 59).  This forfeiture *in rem* action has been taken despite, two separate tribunals (one Afghan, one U.S. military) completely exonerating Claimants of any wrongdoing whatsoever (Doc 27-1, Exs. 21-32).

2.    Now, in this proceeding, the Government is attempting to artfully plead as to say that DOJ only represents SIGAR in these proceedings (*see* Doc 31, fn 3) and not any other government agency who has seized Claimant HSLSC's business, and as to say that Claimant cannot prove to be a legitimate business as required in this pending motion because "we the Government" through another Government agency with whom "we" have no authority has taken

all the business property, records, and, documents which definitively proves Claimant to be a legitimate business (*see* Doc 31; Doc 27-1, Exs. 11, 56).   The Government's emails from SIGAR special agent Doherty admits that the Government has possession and access to Claimant's business property, as Mr. Doherty has been coordinating possible efforts to at least access some of this business property (Doc 27-1, Ex 57).   Counsel for the United States has never advised Claimants that another agency, U.S. Counterinsurgency Task Force, has possession of Claimants' business property as the Government alleges in its Opposition, footnote 3.   The Court must understand the direct connection between the Government's seizure of HSLSC's entire business and the seizure of $61M of alleged criminal proceeds and the aggregate detrimental and prejudicial impact directly caused to Claimants, as Claimants' cannot justly and properly defend this action without its business records or documents which remain in the Government's possession.   Yet, the Government desires to keep this Court and any tribunal from whom it seeks warrants *in rem* or seizure in the dark by intentionally withholding known facts and manipulating the system to get what it wants. This is an absolute abuse of authority that must be stopped.

## II.    REPLY ARGUMENT TO GOVERNMENT'S OPPOSITION

### A.    Government Erroneously Argues That Release of Currency Is Not Authorized Here Because Government Has Not Seized A Business

3.    The Government argues that Section 983(f) does not apply here and precludes release of Claimants' assets because the seized assets are monetary in nature and do not constitute the assets of a legitimate business (Doc 31, p. 4, last ¶).   However, in an attempt to support this argument, the Government plays a shell game with the facts, with evidence, and with governmental agencies, and makes completely false assertions relating to communications with and actions by Claimants.

4.      First, the Government asserts that Claimants have "actively thwarted attempts to restrain the Defendant assets" (Doc 31, pp 1-2). This is a factual mischaracterization.  After the U.S. Government's original seizure of the alleged criminal proceeds from Mr. Shadman and HSLSC in late 2012 and after a full investigation was conducted, the Afghanistan government and a U.S. military tribunal in Afghanistan both found no criminal wrongdoing and completely released the seized monetary funds.  Reasonably relying on this legal exoneration and complete release of funds, Mr. Shadman sought to continue his legitimate business operation; however, because the U.S. Government still possessed the entirety of his business property and refused to return it, Mr. Shadman transferred the previously seized monetary funds to his brothers' business entities in order to continue business operations and attempt to provide for his family (Doc 27-1, ¶ 54).  It is these transfers of the previously seized, but freely released monetary funds, that the Government now mischaracterizes as actively thwarting the Government restraints.  But for the Government's wrongful seizure of HSLSC's entire business, such transfers would not have been necessary and would not have occurred.

5.      Regarding the Government's seizure of HSLSC's entire business property, funds, and records, the Government asserts that "no business has been seized" (*see* Doc 31, p. 5, 1st full ¶), even though the law considers the seizure of the entire business property, records, assets, and monetary funds to be a constructive seizure of the entire business in the context of Section 983(f). *United States v. Various Gold, Silver & Coins,* 916 F. Supp. 2d 1182, 1187 (D. Or. 2013); *In Kaloti Wholesale, Inc. v. United States,* 525 F.Supp.2d 1067, 1070, fn. 2 (E.D.Wis.2007); *In re Seizure Warrants Issued March 27, 2008, & April 23, 2008*, 593 F. Supp. 2d 892, 893 (N.D.W. Va. 2008); *United States v. 8 Gilcrease Lane, Quincy Fla. 32351,* 587 F. Supp. 2d 133 (D.D.C. 2008).  Then the Government admits that HSLSC's business has been seized, but that it was seized by another U.S. Government agency, not SIGAR, so those business assets are not before

this Court (Doc 31, fn 3). Of course the Government fails to cite any legal authority to support this position. The Government's Opposition further states that the Counsel for the United States has advised Claimants to seek release of these business assets from the U.S. Counterinsurgency Task Force (Doc 31, fn 3). Counsel for the United States has never advised Claimants of such, as this Opposition is the first time that Claimants have heard that its entire business property is in the possession of the U.S. Counterinsurgency Task Force. This statement by the Government is even more interesting considering that SIGAR Special Agent Doherty has been communicating and coordinating with Claimants' legal counsel regarding possible access, but not release, to this seized business property (*see* Doc 27-1, Ex. 57). Moreover, the U.S. Counsel represents not just SIGAR, but the "United States of America," per the caption to this matter, counsel's signature block, and 28 U.S.C. §516.

6.      The Government's games continue, as its entire argument in Section A of its Opposition is based on the presumption that the seized business assets, property, and records of Claimant HSLSC are not part of these proceedings, and thus Claimant cannot show that it is a legitimate business under Section 983(f)(8)(A). So, the Government seizes HSLSC's entire business assets, property, records, documents, and monetary funds. Then it says, Claimant you cannot request return of that business property because it is not part of these proceedings. Then it says, now Claimant you cannot prove that you are a legitimate business. The Government cannot simply hide behind its argument that some other agency possesses or has seized HSLSC's entire business property. The federal government has tried this tactic before in the discovery context, saying that another federal agency was responsible and possessed relevant documents but the federal agency before the court claimed that they had no control over that other agency to obtain the relevant documents. *Tri-Star Hospital Supply Corp. v. United States*, 226 F.R.D. 118, 127 (D.D.C. 2005). In *Tri-Star,* this Court held that "it does not follow that plaintiff is precluded

from seeking discovery about actions taken by other federal agencies that were not named in the administrative claim if that information is relevant to the intent and actions of the government employees and agencies that were named in the administrative claim.  It does not matter whether the 'other' agencies' actions can form the basis for relief as long as their actions or situations helped motivate employees whose actions *can* be the basis of relief. Discovery of this information will therefore be allowed." *Id*. at 127.

7.    This ruling applies with equal force here, where the Government presents that it represents SIGAR in these proceedings, and not the U.S. Counterinsurgency Task Force, but both agencies have been directly involved in the multiple seizures of Claimants' business assets, property, records, and monetary funds from the very beginning in 2012.  The seizures of Claimants entire business and the seizure of their monetary funds are closely connected which have aggregately caused Claimants' detailed substantial hardships.  The Government cannot separate these acts and hide behind another agency that is part of the "United States," merely to say that the Government has no control or authority over the seizure of Claimant's business property so that act is irrelevant to this proceeding.  To the contrary, as in the *Tri-State* case, the factual circumstances and motives of the multiple seizures by the various federal agencies are so closely connected that they are relevant to the intent of the actions and resulting consequences of those actions on Claimants.  Thus, this Court must consider the acts and motives of all federal agencies involved in the seizure of Claimants' entire business, business property, business records, and monetary funds, and not just the seizure of the monetary funds as the Government would have this Court believe. When the Court does take the entire circumstances of the federal government's seizure actions (regardless of which agency or agencies were involved) against Claimants, then there is absolutely no question that the Government has seized the entire business of Claimant HSLSC, fulfilling the requirement of Section 983(f)(8) and making the balancing test

of Section 983(f)(1)(A) – (D) applicable and satisfied here.  This is especially true in light of the intent of Section 983(f) which is to "make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property to make themselves whole after wrongful government seizures." P.L. 106–185, Civil Asset Forfeiture Reform Act, H.R.Rep. No. 106–192, at 11 (1999); *See United States v. Contents of Accounts*, 2010 WL 2556849 *8 (W.D. Ky. 2010) *aff'd in part, appeal dismissed in part*, 629 F.3d 601 (6th Cir. 2011).

8.      Furthermore, Section A of the Government's Opposition intentionally confuses the interest of the parties in the alleged criminal proceeds that are the subject of the seizure in order to suit the Government's argument (Doc 31, pp. 6-7).  As the Government's Complaint admits, the sole basis of this forfeiture *in rem* action and the entirety of the alleged criminal proceeds were derived from Claimant HSLCS's earnings under the Jingle Truck Contract (Doc 15, ¶¶ 34-37, 41, 47).  Thus, HSLSC and its President Mr. Shadman are the primary Claimants in this action.  The only reason that there are other Claimants at all in the action is because the Government seized the entire business of HSLSC.  Subsequently, when the previously seized monetary funds of HSLSC were fully released upon being completely exonerated by the Afghanistan government and a U.S. military tribunal, HSLSC through its President, Mr. Shadman, transferred the released funds to Mr. Shadman's brothers and their businesses in order that Mr. Shadman could continue his legitimate business operations and support his family and all his employees and contractors.  But for the Government's wrongful seizure of HSLSC's entire business, these transfers would not have occurred and the only Claimants would have been HSLSC and its President, Mr. Shadman.  Thus, all the Government's arguments lack merit which allege that somehow HSLSC is not a relevant Claimant and any hardships caused to HSLSC are not relevant just because the alleged criminal proceeds were in other entities and persons bank

accounts at the time the Government moved to seize such funds the second time.  In fact, the Government's Complaint proves just the opposite to be true, as HSLSC is pled to be the primary beneficiary of the alleged criminal proceeds from the Jingle Contract that the Government is trying to seize (See Doc 15, ¶¶ 34-37, 41, 47).

9.      Accordingly, it is imperative that the Court understand that the Government's seizure of HSLSC's entire business property and records is so closely connected and intertwined with the seizure of the alleged criminal proceeds that the resulting hardships from this entire seizure process must be considered and has directly caused Claimants' substantial hardships for purposes of the balancing test under Section 983(f). *See Tri-Star Hospital Supply Corp.*, 226 F.R.D. 118, 127 (D.D.C. 2005).

10.     It is further imperative for the Court to understand that Claimants are severely prejudiced in this proceeding to fully prove the legitimate business requirement when its entire business records and documents that contain the definitive proof remains in the Government's possession.

11.     With respect to the Government's Opposition FN4, Claimant's motion clearly states at paragraph 70 that the proportionality argument is to be considered at this stage of the proceedings as an extremely relevant factor as part of the Section 983(f) balancing test of weighing Claimants' substantial harm against the risks of the availability of the property in the unlikely event that the Government prevails at trial on the merits, not as an independent petition under Section 983(g) (see Doc 27-1, ¶ 70, 2nd sent.).

12.     When the Court considers the entire factual circumstances hereunder and not just the Government's mischaracterized facts, because the entirety of a legitimate business has indeed been seized in the Government's attempt to seize the alleged criminal proceeds derived from the Jingle Contract, the balancing test of Section 983(f) applies hereto and weighs in Claimants'

favor. *See United States v. 8 Gilcrease Lane, Quincy Fla. 32351*, 587 F. Supp. 2d 133, 140 (D.D.C. 2008); *United States v. Undetermined Amount of U.S. Currency,* 376 F.3d 260, 265 (4th Cir. 2004).

> **B.** **Despite Government's Games and Factual and Legal Mischaracterizations, Claimants Have Met Their Burden To Satisfy Each Requirement Under 18 U.S.C. § 983(f) For Immediate Release of Its Seized Property**

13.     Next, the Government argues that Claimants have not satisfied the elements of Section 983(f) in regards to: (1) sufficient ties to the community to ensure availability of the seized property; (2) substantial hardship that outweighs the risk to the property; and (3) possessory interest in some of the seized property.

> **1.** **Claimants Have Sufficient Ties To The Community**

14.     The Government alleges that to satisfy the sufficient ties to the community requirement to assure availability of the property under Section 983(f)(1)(B), Claimants must possess sufficient ties to the United States; however, the Government cites absolutely no legal authority to support its wishful presumption.  Section 983(f)(1)(B) does not say, nor has it been interpreted to say, that the "sufficient ties to the community" must be ties to the United States. Such an interpretation of Section 983(f)(1)(B) would mean that the Government would have unbridled seizure reign over any potential defendant *in rem* that has no ties to the United States. That is simply not the law or the intent of Section 983(f)(1)(B), which is the preservation of the seized property *United States v. Undetermined Amount of U.S. Currency*, 376 F.3d 260, 265 (4th Cir. 2004).  As this case makes clear, the goal of the statute is not to destroy legitimate businesses; its goal is rather preservation, and Claimants have demonstrated through at least two investigations and tribunals that they follow lawful procedures, even those findings from other parts of the Government and Afghanistan that SIGAR ignores.

15.     Mr. Shadman's case is supported by both President Karzai and the Afghan Attorney General (Doc 27-1, Exs. 25-32); it would be hard to imagine stronger "community ties." Yet, the Government asserts that they are irrelevant because they are foreigners.  Such national origin discrimination should have no place in this esteemed Court.  Frankly, "sufficient ties" to one's local community means only that one is not transient; in that context, there is a higher probability that the seized property will be available if the property is released during the pendency of the proceedings in the event that the Government is successful on the merits.  Thus, instead of improperly focusing on where the ties to the community are located, the court should focus on whether Claimants' ties to its local community show Claimants to be stable, non-transient, and not prone to commit criminal acts.  By providing ample verified evidence in its motion of extensive, historical personal and business ties to Claimants' home community of Kabul, Afghanistan, Claimants have proven that they are highly respectable, productive, well-established citizens and businesses of that community and not transient persons or entities who have historically engaged in criminal activities.  This is a fact accepted by two tribunals: one a U.S Government tribunal and the other an Afghan Special Court.  This fact combined with the fact that Claimants have offered to provide a sufficient bond in this matter convincingly assures the availability of the seized property in the unlikely event that the government is successful on the merits.

16.     Additionally, until SIGAR and the U.S. Government began bullying, harassing, and threatening Claimants without any good cause in October 2012, Claimants had well-established personal and business connections with the U.S. Special Ops Forces and even with these allegations Claimants are currently held in very high regard by the U.S. Special Ops Forces with whom Claimants have served (*see* Doc 27-1, Exs 2-3, 6-8, 59).  Thus, sufficient personal and business ties were established with the Unites States Special Operations Forces, but those

business ties have been intentionally and maliciously severed by the over-zealous SIGAR who has unjustly ensured that Claimants are effectively and constructive debarred from receiving any work through any U.S. Government contracts in Afghanistan.

17.     As part of its sufficient ties argument, the Government also asserts that if the seized property is released, then the Claimants admit that such property will be dissipated through expenses for "work, charitable aid, or safe housing" (Doc 31, p. 8, ¶ 1).  However, in manufacturing this argument, the Government takes facts presented by Claimant to support its actual experienced substantial hardships out of context and uses such to presume that if the property is released then it will be necessarily dissipated to address Claimants' substantial hardships.  Frankly, as a threshold matter, there is nothing that to support that "work, charitable aid, or safe housing" are illegitimate activities, and of course, the Government cites to nothing.  If the Government had actual proof, which it does not, that Claimants were running illegitimate businesses that might be matter for discussion; but, such is not the case.  If the Government is allowed to engage in such factual manipulation, then in the context of a Section 983(f) motion where substantial hardship is a proof requirement, the Government could always use any stated substantial hardship to defeat the motion on basis that if released the seized property would be dissipated completely, when that is not the truth nor the intended use of this statutory provision.

18.     Also as part of its sufficient ties argument, the Government again falsely and wrongly asserts that Claimants have attempted to intentionally transfer and hide funds in order to avoid seizure and U.S. jurisdiction, when in fact Claimants were fully and legally cleared by Afghanistan authorities and a U.S. military tribunal of any wrongdoing, and subsequently, Claimants monetary funds were fully released to be used however they wanted for their legitimate business operations and opportunities, including for business investment purposes in Dubai if Claimants so chose.  There is nothing sinister about a legitimate business using its

legitimate monetary funds for legitimate business operations.  This issue was explained at length in its motion, but the Government continues to infer sinister, criminal acts from these innocent, legitimate activities, and such has become the Government's *modus operandi* in this matter.

19.     Furthermore, none of the allegations, acts, actors, or even much of the funded "proceeds" of alleged criminal acts are from the United States.   Thus, it remains highly questionable and is one of the basis of Claimants' motion to dismiss as to whether the U.S. Government even has jurisdiction over this matter at all, especially in light that the U.S. is supposed to give deference to Afghan law in Afghanistan involving Afghan citizens, especially when Afghanistan authorities have already completely exonerated Claimants of any wrongdoing under Afghan law (*see* Doc 27-1, Exs. 25-32).

20.     Accordingly, Claimants have sufficiently satisfied its burden regarding sufficient ties in order to ensure the availability of the seized property under Section 983(f)(1)(B).

    **2.     Claimants Have Established Severe, Substantial Hardship That Outweighs Any Risks To the Seized Property**

21.     The Government makes several conclusary, unsupported assertions in an attempt to argue that Claimants have not sustained substantial hardships as a result of the Government's seizure of Claimants' property, or if Claimants have, then any such hardships do not outweigh the risks to the seized property during these proceedings.  First, the Government wrongly asserts that all of Claimants' referenced substantial hardship is predicated on the "erroneous assertion" that the Government seized the entire business operations of Claimant HSLSC. Claimants' substantial hardships are detailed in its motion (Doc 27-1, ¶¶ 33, 57-59, 76), and directly result from the aggregate of the Government's seizure of its entire business, the seizure of over $61million in monetary funds, and the seizure of all its business records and documents that prejudice and prevent Claimants from properly defending this action and proving to be legitimate business.

The Government wants this Court to ignore the entire business seizure and argue that some other U.S. Government agency seized that business, not SIGAR. (Doc 31, fn 3).   But as illustrated hereinabove, such argument is factually and legally flawed.

22.     SIGAR is not an island in the Federal Government.   The Justice Department represents the entire U.S. Government (*see* 28 U.S.C. § 516), not just SIGAR.   Until the Government's opposition (contrary to the assertions therein), Claimants did not know that any other agency was holding their property.   Frankly, it is known that other agencies, such as the U.S. Military, are opposing SIGAR internally, and have absolved Mr. Shadman.   But, the Justice Department is not at liberty to disavow the findings of another agency when the "United States" is the plaintiff and the actions, evidence and findings of these other agencies relate to the same conduct alleged here.   (*See* 28 U.S.C. § 516; *Tri-Star Hospital Supply Corp.*, 226 F.R.D. 118, 127 (D.D.C. 2005)).   This is the extent of the Government's argument here, and as of now, even though the Government apparently does not dispute its return, they have not yet returned any of the other seized property that makes up the Claimants' business.   Because the Government does not dispute return of property other than the cash identified in this lawsuit, Claimants request immediate release.

23.     Second, even though the Government has pled that all or most all of the alleged criminal proceeds were from revenues generated by HSLSC (Doc 15, ¶¶ 34-37, 41, 47), it wants to assert now that somehow HSLSC is not a proper Claimant or that HSLSC's substantial hardships should not be considered in the balancing test of Section 983(f) because, as the Government argues, at the time of seizure a large majority of the alleged criminal proceeds were not possessed in the exact name of HSLSC. (Doc 31, p. 9, 1st full ¶).   The Government knows and has pled that all or substantially all of the alleged criminal proceeds originally belonged to HSLSC (Doc 15, ¶¶ 34-37, 41, 47). Claimants have explained in detail exactly why these alleged

criminal proceeds were possessed by multiple persons and entities, in addition to HSLSC, at the time of seizure (Doc 27-1, ¶ 54). Again, this is because the Government seized the entire business of HSLSC and when the Afghanistan government completely exonerated Claimants HSLSC and Mr. Shadman of any wrongdoing and released all of the previously seized monetary funds, the only means by which Claimant HSLSC could continue its business operations was through Mr. Shadman's brothers' businesses.  Reasonably relying on the Afghanistan Attorney General and the U.S. military tribunal decisions and fully believing that these false criminal accusations were resolved and that he was free to use his business funds as he so chose to conduct business, Mr. Shadman transferred these funds to his brothers and their businesses for purposes of conducting legitimate logistics business operations.   This would not have been necessary had the Government not wrongfully seized and refused to return all of HSLSC's business property and records. Then, even though Mr. Shadman and HSLSC had been fully exonerated, the Government again wrongfully initiated seizure of these funds, which at the time of this subsequent seizure were possessed by the multiple entities and persons. This is why we now have multiple Claimants in this matter, even though all the criminal allegations are against HSLSC and Mr. Shadman and all the alleged criminal proceeds that the Government is attempting to seize were earned by HSLSC.  Now, in its Opposition, the Government wants to argue that any substantial hardships experienced by HSLSC are irrelevant.  Such assertion is unsupportable by the verified facts and the Government's own pleading, as the Government simply wants to create red herrings and blur material factual distinctions. Claimants' hardships are real, substantial, and are thoroughly detailed and verified in its motion (*see* Doc 27-1, ¶¶ 33, 57-59, 76).

24.     Next, the Government presents two conflicting arguments.  First, it argues that when Claimants did have access to their monetary funds that instead of addressing their stated hardships (of which, by the way, did not exist to the extent that such hardships currently do with

$61 million seized since that time), they were investing in real estate in Dubai (Doc 31, pp. 9-10). Then, the Government argues that Claimants' cannot show that they are precluded from other employment and securing other business contracts. (Doc 31, pp. 9-10).  Does the Government not realize that by making business investments and expanding their business opportunities globally that Claimants were attempting to provide for their families and to secure other business ventures, and that Claimants had every right to use its legitimate funds that had been legally cleared and released for such business investment purposes? That is until the Government swooped in and stopped the business investment transaction and seized $61 million. This monetary seizure of $61 million directly caused (along with the Government's seizure of its business and business property) the litany of substantial hardships to Claimants of the type and nature specifically envisioned under Section 983(f).

25.    Accordingly, Claimants substantial hardships greatly outweigh any risk to the seized property, especially in light of Claimants' established, close ties to its community (as opposed to be being transient), the fact that Claimants have offered significant bond, and the fact that the Government has currently seized substantially more funds and property than it could even possibly win at trial.

### 3.    Claimants Have Possessary Interest In All Seized Property

26.    The Government is completely wrong to argue that Claimants have failed to assert a possessory interest in what the Government's Opposition has defined as "Seized Asset B." (Doc 31, pp 2, 10-11).  In Claimants' Verified Claim, paragraph 18 specifically includes "Seized Asset B," which is verified through executed Verification of Najibullah (aka Yaser Elham) individually and as President of Faizy Elham Brothers, Ltd., and as referenced in paragraph 25. Although Claimants' Verified Claim, paragraph 25 could have been worded better, it is obvious and clear by reading paragraph 18, paragraph 25, and the Verification of Najibullah (aka Yaser

18

Ellam) together that "Seized Asset B" is claimed by Najibullah (aka Yaser Elham).  If necessary, simply to clarify to the Government that "Seized Asset B" is claimed by Najibullah (aka Yaser Elham) in its Verified Claim, Claimants request leave to amend its Verified Claim to simply clarify this fact (or any other factual clarifications of who the Claimants are) to the Government, even though the Government has already admitted in its Complaint that Yaser Elham is the beneficial owner of "Seized Asset B." (Doc 15, ¶ 68).  If an amended Verified Claim is necessary such should be allowed in the interest of justice, accuracy, and in light that the Government has amended its Complaint multiple times without even providing notice to Claimants until after the last amended Complaint, and because such amendment will not prejudice the Government in any way.

27.     Regarding the Government's conclusory and false statement contained in its Opposition FN 10, the Claim verifications and even the Court's Docket Entry for the Verified Claim clearly demonstrate that the Claimants are Everest Faizy Logistics Services, Faizy Elham Brothers, Ltd., Hekmat Shadman General Trading, LLC., Hikmat Shadman Logistics Services Company, Najibullah, Rohullah, and Hikmatullah Shadman (Doc 24; Doc Entry for Doc 24).

### C.     Government Concedes Claimants' "Proceeds" Argument

28.     In its Opposition, the Government does not contest the Claimants' argument that the Government has seized gross proceeds when it should have only seized net proceeds in accordance with 18 U.S.C. § 981(a)(2)(B) (see Doc 27-1, ¶¶ 60-69), other than to mention in a footnote that such argument summarily fails because no substantial hardships (Doc 31, fn 9).  Thus, at minimum, this Court should release all seized proceeds that are determined to be beyond net proceeds, consistent with the definition of "proceeds" in Section 981(a)(2)(B) (see Doc 27-1, ¶¶), since the substantial hardships to Claimants is well-defined and greatly outweigh any risk to

the seized property that should not have even been seized initially and to which the Government does not have any remote possibility of successfully obtaining at trial.

29.     Further, the Government wants this Court to completely ignore the fact that the Government actually received and greatly benefitted from the essential logistics and transportation support services provided by Claimant HSLSC to the U.S. Special Operations Forces in Afghanistan for which the actual users of these services are greatly appreciative. (Doc 27-1, Exs. 2-3, 6-8, 59). Yet the Government through the over-zealous SIGAR and this proceeding wants to seize the entirety of the proceeds from all the services performed by HSLSC to the Government under the Jingle Contract, and despite the fact that much of the funding for the Jingle Contract did not even originate from the U.S. Government, but from other foreign governments.

## V.     CONCLUSION

30.     Pursuant to 18 U.S.C. § 983(f), Claimants respectfully request the Court to order the U.S. Government to immediately release all restraints and seizures of the Claimants' property referenced in Second Amended Verified Complaint For Forfeiture *In Rem*, and further release all seized business property, assets, materials, documents / records, equipment, vehicles, and cash of HSLSC that has been seized by the U.S. Government (regardless of which U.S. agency has current possession) from HSLSC's business premises in Afghanistan.

31.     Alternatively, Claimants request the Court to release at least the portion of the seized monetary funds that are determined to be in excess of net proceeds of the alleged criminal offenses, and/or the portion of the seized funds that is found to be grossly disproportionate to the offenses pled, which have caused additional and unnecessary substantial harm to Claimants.

Respectfully submitted,

NEEL, HOOPER & BANES, P.C.

_____
Bryant S. Banes
DC Bar No. TX0109
Texas Bar No. 24035950
Federal ID No. 31149
Kelline R. Linton
Texas Bar No. 2408536
1800 West Loop South, Suite 1750
Houston, Texas 77027-3008
(713) 629-1800
(713) 629-1812 (Fax)
E-mail: bbanes@nhblaw.com

Of Counsel:

James Wallace Porter, III
DC Bar No. 999070
Bradley Arant Boult Cummings LLP
1615 L Street, NW
Washington, DC 20036
(202) 719-8232
(202) 719-8332 (Fax)
E-mail: jporter@babc.com

*Counsel for Claimants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October, 2013, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Jaikumar Ramaswamy, Chief
Asset Forfeiture and Money
   Laundering Section
Daniel H. Claman, Assistant Deputy Chief
Elizabeth A. Aloi, Trial Attorney
U.S. Department of Justice
Criminal Division
1400 New York Avenue, NW, 9th Floor
Washington, DC 20530

_____
     Bryant S. Banes