## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| United States Department of Justice | § | |
| Criminal Division | § | |
| Asset Forfeiture and Money | § | |
|      Laundering Section | § | |
| 1400 New York Avenue, NW., 10th Floor | § | |
| Washington, DC 20005, | § | |
| | § | |
|      Plaintiff, | § | |
| | § | |
| v. | § | Case No.:    1:12-cv-1905 (RWR) |
| | § | Judge:      Richard W. Roberts |
| THE SUM OF $70,990,605 HELD IN | § | Date Filed:   October 4, 2013 |
| ACCOUNT NUMBER 050210000527810, IN | § | |
| THE NAME OF HIKMAT SHADMAN | § | |
| LOGISTICS SERVICES COMPANY, | § | |
| LOCATED AT AFGHANISTAN INTER- | § | |
| NATIONAL BANK, AND ALL INTEREST, | § | |
| BENEFITS OR ASSETS TRACEABLE | § | |
| THERETO; | § | |
| | § | |
| THE SUM OF $6,930,000, HELD IN | § | |
| ACCOUNT NUMBER 050210001288613, IN | § | |
| THE NAME OF FAIZY ELHAM BROTHERS, | § | |
| LTD., LOCATED AT AFGHANISTAN INTER- | § | |
| NATIONAL BANK, AND ALL INTEREST, | § | |
| BENEFITS OR ASSETS TRACEABLE | § | |
| THERETO. | § | |
| | § | |
| ALL FUNDS HELD FOR OR BY THE BENEFIT | § | |
| OF AFGHANISTAN INTERNATIONAL BANK | § | |
| AT STANDARD CHARTERED BANK, NEW | § | |
| YORK, OF AN AMOUNT UP TO BUT NOT TO | § | |
| EXCEED $1.5 MILLION OR THE SUM HELD | § | |
| AT AFGHANISTAN INTERNATIONAL BANK | § | |
| ACCOUNT NUMBER 050210000527810, IN | § | |
| THE NAME OF HIKMAT SHADMAN | § | |
| LOGISTICS SERVICES COMPANY, OR | § | |
| AFGHANISTAN INTERNATIONAL BANK | § | |
| ACCOUNT NUMBER 050210001288613, IN | § | |
| THE NAME OF FAIZY ELHAM BROTHERS, | § | |
| LTD.; | § | |
| | § | |

ALL FUNDS HELD FOR OR BY THE BENEFIT   §
OF BANK ALFALAH AT CITIBANK, N.A.   §
NEW YORK, NOT TO EXCEED $55,569,790 OF   §
THE TOTAL SUM OF ANY FUNDS   §
TRANSFERRED ON OR AFTER   §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT   §
BANK ALFALAH FROM AFGHANISTAN   §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT   §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK§
ACCOUNT NUMBER  050210001288613, IN   §
THE NAME OF FAIZY ELHAM BROTHERS;   §
§
ALL FUNDS HELD FOR OR BY THE BENEFIT   §
OF BANK ALFALAH AT DEUTSCHE BANK   §
TRUST COMPANY AMERICSAS, NOT TO   §
EXCEED $55,569,790 OFTHE TOTAL SUM OF   §
ANY FUNDS TRANSFERRED ON OR AFTER   §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT   §
BANK ALFALAH FROM AFGHANISTAN   §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT   §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK§
ACCOUNT NUMBER 050210001288613, IN   §
THE NAME OF FAIZY ELHAM BROTHERS;   §
§
ALL FUNDS HELD FOR OR BY THE BENEFIT   §
OF BANK ALFALAH AT HABIB AMERICAN   §
BANK, NOT TO EXCEED $55,569,790 OF   §
THE TOTAL SUM OF ANY FUNDS   §
TRANSFERRED ON OR AFTER   §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT   §
BANK ALFALAH FROM AFGHANISTAN   §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT   §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK§
ACCOUNT NUMBER 050210001288613, IN   §
THE NAME OF FAIZY ELHAM BROTHERS;   §

ALL FUNDS HELD FOR OR BY THE BENEFIT   §
OF BANK ALFALAH AT HABIB BANK   §
LIMITED, NOT TO EXCEED $55,569,790 OF   §
THE TOTAL SUM OF ANY FUNDS   §
TRANSFERRED ON OR AFTER   §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT   §
BANK ALFALAH FROM AFGHANISTAN   §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT   §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN   §
THE NAME OF FAIZY ELHAM BROTHERS;   §
                                         §
ALL FUNDS HELD FOR OR BY THE BENEFIT   §
OF BANK ALFALAH AT HSBC BANK USA   §
N.A., NOT TO EXCEED $55,569,790 OF   §
THE TOTAL SUM OF ANY FUNDS   §
TRANSFERRED ON OR AFTER   §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT   §
BANK ALFALAH FROM AFGHANISTAN   §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT   §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN   §
THE NAME OF FAIZY ELHAM BROTHERS;   §
                                         §
ALL FUNDS HELD FOR OR BY THE BENEFIT   §
OF BANK ALFALAH AT JP MORGAN CHASE   §
BANK NATIONAL ASSOCIATION, NOT TO   §
EXCEED $55,569,790 OF THE TOTAL SUM OF   §
ANY FUNDS TRANSFERRED ON OR AFTER   §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT   §
BANK ALFALAH FROM AFGHANISTAN   §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT   §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN   §
THE NAME OF FAIZY ELHAM BROTHERS;   §

ALL FUNDS HELD FOR OR BY THE BENEFIT §
OF BANK ALFALAH AT MASHREQ BANK §
PSC, NOT TO EXCEED $55,569,790 OF §
THE TOTAL SUM OF ANY FUNDS §
TRANSFERRED ON OR AFTER §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT §
BANK ALFALAH FROM AFGHANISTAN §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN §
THE NAME OF FAIZY ELHAM BROTHERS; §
§
ALL FUNDS HELD FOR OR BY THE BENEFIT §
OF BANK ALFALAH AT STANDARD §
CHARTERED BANK, NEW YORK, NOT TO §
EXCEED $55,569,790 OF THE TOTAL SUM OF §
ANY FUNDS TRANSFERRED ON OR AFTER §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT §
BANK ALFALAH FROM AFGHANISTAN §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN §
THE NAME OF FAIZY ELHAM BROTHERS; §
§
ALL FUNDS HELD BY OR FOR THE BENEFIT §
OF EMIRATES NATIONAL BANK AT JP §
MORGAN CHASE BANK NATIONAL §
ASSOCIATION NOT TO EXCEED $4 MILLION §
OF THE TOTAL SUM OF ANY FUNDS HELD §
IN ANY ACCOUNT AT EMIRATES NATIONAL §
BANK IN THE NAME OF YASER ELHAM, §
§
            Defendants *in rem*. §
_____ §

**CLAIMANTS' REPLY TO UNITED STATES' OPPOSITION
TO CLAIMANTS' REQUEST FOR STATUS CONFERENCE,
AND MOTION FOR PROTECTIVE AND PRESERVATION ORDERS**

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW, Claimants (Hikmat Shadman Logistics Services, Hekmat Shadman General Trading, LLC, Faizy Elham Brothers, Ltd., Everest Faizy Logistics Services, Hikmatullah Shadman, Najibullah, and Rohullah), and respectfully file this Reply to United States' Opposition to Claimants' Request for Status Conference, and Motion for Protective and Preservation Orders, and in support thereof, represents as follows:

## I.  Overview

On November 20, 2012, the government filed a verified complaint for forfeiture *in rem* against two Afghan bank accounts (Doc. 3, p. 2).   After the government transmitted its complaint, corresponding arrest warrants, and a request for assistance to the Republic of Afghanistan, the Afghan Attorney General honored the Government's request, restrained the identified bank accounts, and held a judicial proceeding to determine whether Mr. Shadman was guilty of the Government's allegations (Doc. 28, pp. 31–33).   Three senior Afghan prosecutor generals found Mr. Shadman not guilty in a special trial, and the Afghan Attorney General issued an Executive Order that retained exclusive jurisdiction of this case under Afghan laws and in accordance with Afghanistan's sovereign interests (Doc. 28, p. 33).   Upon receiving notification of the judicial findings and the Executive Order, the U.S. Department of Justice filed an amended complaint for forfeiture *in rem* for the same alleged claims and obtained new arrest and seizure warrants (Doc. 15, ¶ 18).   When Afghanistan received the new warrants, the Afghan Attorney General sent this case to the Appeal Court of Kabul Province for review under Afghan law (Doc. 28, p. 34).

On August 27, 2013, Claimants filed a verified Claim for the identified property subject to forfeiture *in rem* in this proceeding (Doc. 24).   Throughout the Claim and in the Claim's

verifications, Claimants were identified as Hikmat Shadman Logistics Services, Hekmat Shadman General Trading, LLC, Faizy Elham Brothers, Ltd., Everest Faizy Logistics Services, Hikmatullah Shadman, Najibullah, and Rohullah (Doc. 24).  Furthermore, Claimants attached the foreign banks' certifications of Claimants' ownership interest in the identified bank accounts (Doc. 24, Ex. H; Doc. 28, Ex. 12).

On August 16, 2013, Claimants filed a Motion to Dismiss that contested this Court's jurisdiction under the doctrines of international comity and act of state, as the Republic of Afghanistan had retained exclusive jurisdiction over this case and already issued a foreign judgment after a full and fair trial (Doc. 28, p. 10).  Claimants also contemporaneously filed a petition to release property, pursuant to 18 U.S.C. § 983(f), to protect their statutory rights in this Court (Doc. 27).  As part of these motions, it was made clear that there existed an internal government dispute relating to SIGAR's approach to this matter.  This was highlighted by the fact that a U.S. Military Tribunal had exonerated Mr. Shadman in December 2012 (Doc 28, ¶¶ 38-41).  SIGAR has not denied this.

This is where the problem began and where Court intervention became necessary.  Last month, undersigned counsel spoke to several U.S Special Forces Officers who had provided testimony and evidence to SIGAR and other government agents that was favorable to Claimants. These witnesses expressed remorse for what has been perpetrated upon Claimants, strong fear of SIGAR, and the need to convey certain undisclosed national security concerns relevant to this case.  Major Bradley (who, as the Special Forces commander, spoke for the others) specifically asked undersigned counsel to "seek protection from the Court so that I can tell the truth and a wrong can be righted" (Doc 28, Ex. 59, ¶ 9).

Based upon the foregoing, Claimants requested a status conference with this Court and moved for an order of protection for designated U.S. witnesses (Doc. 29, pp. 5, 8). In this Request for a Status Conference, Claimants also asked that this Court consider and discuss with the parties the possible need for other protective and preservation orders, as SIGAR had taken possession of almost all evidence in this case and had already hidden vital evidence from this Court (Doc. 29, pp. 8–9). In the government's Opposition, the government makes clear that it has every intention of ignoring and hiding pertinent evidence and "embarrassing" or threatening witnesses unfavorable to SIGAR's crusade against Claimants. The government has not disputed that it is threatening these witnesses, and has made no promises that it will not do so in the future. Rather, the government argues that it has no intention of using (or apparently even reviewing) the evidence that Claimants have submitted and that U.S. Special Forces Officers wish to present to the Court, and that this Court should not grant a protective motion until the government has the opportunity to confer without Court supervision. Blind indifference, coupled with abuse of power, is outright dangerous.

## II. Statement of Points & Authorities

In the government's Opposition to Claimants' Request for Status Conference, and Motion for Protective and Preservation Orders, the government bases its opposition on form over substance by arguing that this Court should deny Plaintiffs' request because: (1) Claimants have not established standing; (2) Claimants have requested a premature discovery motion; and (3) Claimants did not confer with the government before seeking the protection of witnesses. The government's Opposition is incorrect both legally and factually.

**A. Claimants have standing to challenge this forfeiture action because Claimants have established both statutory and constitutional standing.**

In the government's Opposition, the government contends that this Court should deny Claimants request for a status conference and motion for protective order because Claimants have not established standing (Doc. 32, p. 4). This assertion is incorrect. Claimants have established both statutory and constitutional standing to challenge this forfeiture action.[1]

First, Claimants have established statutory standing to challenge this forfeiture proceeding because their Claim shows facts that demonstrate their colorable interest in the seized property.

Statutory standing relates "to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court." *Disner v. United States*, 888 F.Supp.2d 83, 86 (D.D.C. 2012) (quoting Cassella, Stefan D., *Asset Forfeiture Law in the United States: A Treatise on Forfeiture Law*, § 9–4 at 326 (2007)). In order to challenge a forfeiture *in rem* action, Congress has required a would-be claimant to assert an interest in the specific property that is named as a defendant by filing a timely verified claim. Supp. R. G(5)(a)(i)(A); *see* 18 U.S.C. § 983(a)(4). Compliance with this requirement gives rise to "statutory standing." *Disner*, 888 F.Supp.2d at 86 (citing *United States v. Property Identified as $88,260.00 in United States Currency*, 925 F.Supp. 838, 841 (D.D.C. 1996)). The extent of the interest in the defendant property sufficient to meet the statutory standing requirement is left to case law. *United States v. All Assets Held at Bank Julius Baer &*

---

[1] In the government's Opposition, the government challenges Claimants' standing in this forfeiture proceeding (Doc. 32, pp. 4–5). Supplemental Rule G does not limit how the government may contest a claimant's standing, so Claimants have addressed the government's allegation of Claimants' lack of standing. *See* Supp. R. G(c)(ii). This issue is now ripe for review.

*Co.*, – F.Supp.2d –, 2013 WL 4046558, at *11 (D.D.C. Aug. 12, 2013) (citing *United States v. Funds from Prudential Securities*, 300 F.Supp.2d 99, 103 (D.D.C. 2004)).

Establishing statutory standing in a claim requires only that the claimant demonstrate "a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake." *United States v. All Assets Held at Bank Julius Baer & Co.*, 2013 WL 4046558, at *11 (citing *United States v. Real Property Located at 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008)). The demonstration of a "colorable interest" merely requires an "initial evidentiary showing of such an interest," meaning "a claimant need not definitively prove the existence of that interest." *Id.* (citing *United States v. $148,840 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008); *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002)). As such, claimant's burden "is not a heavy one," *United States v. Real Property Located at 475 Martin Lane*, 545 F.3d at 1140, and "courts must not conflate the standing inquiry 'with the merits determination that comes later.'" *United States v. All Assets Held at Bank Julius Baer & Co.*, 2013 WL 4046558, at *12 (quoting *United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003)); *see also United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 57 (1st Cir. 2013) ("At the initial stages of intervention, the requirements are not arduous and typically any colorable claim on the defendant property suffices.")).

Since the government, rather than the claimant, is the plaintiff and bears the burden of proving the property's forfeitability, "[t]he function of standing in a forfeiture action is therefore truly threshold only." *United States v. All Assets Held at Bank Julius Baer & Co.*, 2013 WL 4046558, at *12 (quoting *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d at 79). Furthermore, the nature of a claimant's asserted property interest is defined by the law of

the nation in which the interest arose.  *Id.* (citing *United States v. One Lincoln Navigator*, 328 F.3d 1011, 1013 (8th Cir. 2003); *United States v. $100,348 in U.S. Currency*, 354 F.3d 1110, 1119 (9th Cir. 2004)).

Here, after the government filed its initial complaint for the forfeiture of Mr. Shadman's two Afghan bank accounts, the Republic of Afghanistan determined that Mr. Shadman was the owner of those defendant assets under Afghan law (Doc. 28, pp. 31–33, Exs. 21 & 22, 25 & 26, 29 & 30).  When the Afghanistan Government judicially released Mr. Shadman and his bank accounts, Mr. Shadman then lawfully transferred some of the released funds to his brothers and their companies (Doc. 24), so that they could continue to carry on lawful business ventures and support the family (Doc. 28, p. 33).  *See* Ex. 1.  The government's latest amended complaint now seeks forfeiture of the original defendant accounts, as well as the funds that were transferred from those accounts (*see* Doc. 11, pp. 5–6).

Claimants (Hikmat Shadman Logistics Services, Hekmat Shadman General Trading, LLC, Faizy Elham Brothers, Ltd., Everest Faizy Logistics Services, Hikmatullah Shadman, Najibullah, and Rohullah) have demonstrated a colorable interest in all of the defendant assets. In their Claim, Claimants laid out facts that would support their statutory standing, pursuant to 18 U.S.C. §§ 981(k)(3), 983(a)(4).  Specifically, they demonstrated that they were the respective "owners" of the defendant funds at the time those funds were deposited into the foreign financial institutions, as required by 18 U.S.C. § 981(k) (Doc. 24, pp. 6–7).  This ownership interest was established through (1) the Claim's Statement of Interest, (2) the Claimants' verifications for the Claim, and (3) the foreign banks' certifications of Claimants' ownership interest in the defendant assets (Doc. 24, Ex. H; Doc. 28, Ex. 12).  *See* Ex. 1.

Therefore, Claimants have demonstrated a colorable interest in the defendant assets.  *See United States v. All Assets Held at Bank Julius Baer & Co.*, 2013 WL 4046558, at *11. Furthermore, under Afghan law, which is the law that defines the nature of Claimants' asserted property interests, the Republic of Afghanistan already determined that Mr. Shadman had an ownership interest in the defendant assets.  *See id.* at * 12.  Thus, Claimants have established statutory standing to challenge this forfeiture proceeding.

Second, Claimants have established constitutional standing to challenge this forfeiture proceeding because their Claim shows facts that demonstrate their ownership interest in the defendant assets.

Constitutional standing, or "Article III standing," relates to a claimant's "ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution."  *Disner*, 888 F.Supp.2d at 86 (quoting Cassella, Stefan D., *Asset Forfeiture Law in the United States: A Treatise on Forfeiture Law*, § 9–4 at 326 (2007)).  In a civil forfeiture proceeding, constitutional standing "turns upon whether the claimant has a sufficient interest in the property to create a case or controversy."  *Id.* (quoting *United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004)).  A claimant must demonstrate an "injury" by establishing either an ownership interest or a lesser possessory interest in the property.  *Id.* (citing *United States v. $114,031.00 in U.S. Currency*, 284 Fed. Appx. 754, 756 (11th Cir. 2008) (unpublished)).  Thus, constitutional standing requires even less of a showing than statutory standing.  *See United States v. Union Bank for Savings & Investment*, 487 F.3d 8, 22 (1st Cir. 2007) (holding that regardless of whether claimant has statutory standing under Section 981(k), claimant met "very forgiving" Article III standing as owner of bank account).  When the government seeks forfeiture of money seized from a

claimant's bank account, his constitutional standing is "undisputed" because he "exercised full dominion and control" over that account. *Id.*; *see also United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 58 n.12 (1st Cir. 2013); Ex. 1 (with bank account attachments).

Here, Claimants (Hikmat Shadman Logistics Services, Hekmat Shadman General Trading, LLC, Faizy Elham Brothers, Ltd., Everest Faizy Logistics Services, Hikmatullah Shadman, Najibullah, and Rohullah) have demonstrated an "injury" in this proceeding by establishing an ownership interest in all of the defendant assets the government attempts to forfeit.  In their Claim, Claimants laid out facts that would support their constitutional standing. Specifically, they demonstrated that they were the respective owners of the bank accounts that contained the defendant funds—as such, they exercised full dominion and control over the property (Doc. 24, pp. 6–7).  *See, e.g.*, Ex. 1 (with bank account attachments).  This ownership interest was established through (1) the Claim's Statement of Interest, (2) the Claimants' verifications for the Claim, and (3) the foreign banks' certifications of Claimants' ownership interest in the defendant assets (Doc. 24, Ex. H; Doc. 28, Ex. 12).

Therefore, Claimants have constitutional standing because they demonstrated a sufficient interest in the defendant assets to create a case or controversy.  *Disner*, 888 F.Supp.2d at 86. Thus, Claimants have established both statutory and constitutional standing to challenge this forfeiture action.

**B. Claimants request for status conference and motions for protection were timely because special interrogatories do not delay consideration of nondispositive motions or discovery.**

In the government's Opposition, the government contends that this Court should deny Claimants request for a status conference and motion for protective order because Claimants'

motion was a discovery motion that could not be commenced until Claimants responded to the government's special interrogatories (Doc. 32, p. 4).  This assertion is incorrect.

First, Claimants' most important and primary motion—request for protection of witnesses—was not a "discovery" motion.  It was an urgent request for this Court's protection of several members of U.S. Special Forces that SIGAR had threatened and already harmed because of their testimony during the investigations (Doc. 29, p. 5).[2]  Undersigned counsel brought the motion at the witnesses' request (Doc. 29, p. 5; Doc. 28, Ex. 59).  Undersigned counsel also asked for a status conference with this Court to discuss both the immediate need to prevent further witness harassment and the consideration of certain national security issues that likely would warrant special procedures in the future if this case survived dismissal and proceeded to the merits (Doc. 29, pp. 8–9).[3]

Second, the government's special interrogatories do not preclude this Court from granting Claimants' request for status conference and protective motions.  Supplemental Rule G(6) permits the government to "serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and **before discovery is closed**."  Supp. R. G(6)(a) (emphasis added).  Notably, these special interrogatories simply delay the government's need to respond to Claimants' motion to dismiss only until an answer is provided, which Claimants have done (Ex. 1); they do not delay the

---

[2] Government Counsel's acknowledgement that SIGAR is the primary governmental authority in this case makes the motion for protection even more urgent (see Doc. 31, p. 3 n.3).  The fact that the Government is trying to exclude other agencies from this proceeding that also have an interest make their motives more suspect.

[3] While the government has indicated that it "does not intend to utilize testimony or evidence that may impact National Security or contain classified information to prove its case" (Doc. 32, p. 8 n.4), this is an unbelievable assertion, since almost all the contested TMRs were performed at the request of U.S. Special Forces for classified missions (Doc. 28, pp. 26–27).  The government has not denied this (see Doc. 32, p. 3).  Moreover, while SIGAR may not intend to use such testimony, that does not erase the fact that these government witnesses believe both that their testimony is relevant and that SIGAR has threatened them and ignored their testimony at the peril of the United States and Claimants.

consideration of nondispositive motions or even the discovery process.  Supp. R. G(6)(c); *see United States v. All Assets Held at Bank Julius Baer & Co.*, 2013 WL 4046558, at *8–9.  This is because the sole purpose of the special interrogatories is to allow the government to gather information that bears on the claimant's standing.  Supp. R. G(6)(a), Advisory Committee Notes, 2006 Adoption.   The government may then move to strike a claim or answer because of a claimant's lack of standing at any time **before trial**, including at the summary judgment stage.  Supp. R. G(8)(c) (emphasis added).  As such, special interrogatories and questions on standing do not halt a forfeiture proceeding.  *See* Supp. R. G(6)(c), G(8)(c).

Here, Claimants already have responded to the government's special interrogatories and demonstrated that any attack on standing is without merit (Ex. 1).  They have established standing to contest this forfeiture proceeding (Doc. 24), and their request for status conference and protective motions were both timely and necessary.  Therefore, this Court should grant Claimants' request for status conference and protective motions.  Furthermore, given the government's challenge to Claimants' standing, a favorable decision for Claimants on this issue is also ripe for ruling.

## C. Claimants did not have to confer with the Justice Department before requesting a status conference and seeking court protection for threatened witnesses.

In the government's Opposition, the government asks this Court to deny Claimants' protective motions because Claimants did not confer with the Justice Department, pursuant to Local Rules 7(m) and 16.3, and Federal Rule 26(c).

First, Local Rule 16.3 does not apply to Claimants' motions because they are not standard discovery motions that attempt to define a discovery plan.  As the government is aware (and as was discussed in counsels' face-to-face meeting on August 5, 2013), Claimants have not sought

formal discovery in this case because they have filed a motion to dismiss challenging the propriety of moving forward in this Court.

Local Rule 16.3 requires counsel to confer in accordance with this Local Rule and Federal Rule 26(f), "within 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b), F.R.Civ.P."  The conference is to: (1) discuss the matters set forth in Local Rule 16.3(c); (2) make or arrange for disclosures required by Federal Rule 26(a)(1); and (3) develop a discovery plan.  L.R. 16.3(a).  Federal Rule 26(f) requires a conference to discuss similar matters: the possibilities for promptly settling or resolving a case, making or arranging for the initial disclosures, discussing issues for preserving discovery information, and developing a proposed discovery plan.  Fed. R. Civ. P. 26(f)(2).  Both Local Rule 16.3 and Federal Rule 26(f) conferences are meant for standard scheduling issues, as indicated by their link to the scheduling conference and scheduling order of Federal Rule 16.  *See* L.R. 16.3(a); Fed. R. Civ. P. 26(f)(1).  Neither Local Rule 16.3 nor Federal Rule 26(f) conferences address the urgent matters in Claimants' motions—the protection of witnesses from further government harassment, and the protection of copious amounts of evidence confiscated by the government and hidden from this Court.  Furthermore, courts have recognized this distinction: that protective motions, which may touch on a discovery aspect, do not necessarily fall into the standard discovery issues of Local Rule 16.3 and Federal Rule 26(f) conferences.  *See, e.g.*, *Faith Satellite Radio, LLC v. Lutheran Church Missouri Synod*, 2010 WL 3909467, at *1 (D.D.C. Oct. 4, 2010) (granting protective motion to stay discovery without counsel conferring and without the court holding an initial scheduling conference).

Second, Federal Rule 26(c) does not apply to Claimants' motions because they are not protective motions seeking to limit the government's discovery requests. The focus of Claimants' motions is protection and preservation, not discovery.

Federal Rule 26(c) permits a party "from whom discovery is sought" to move for a protective order that will either limit or forbid the discovery or disclosure that the opposing party sought. Fed. R. Civ. P. 26(c)(1). The Rule also requires counsel to confer or attempt to confer with the other party before moving for such a protective order. *Id.* Notably, this Rule comes into play only after a party has sought discovery, as the Rule's protective order pertains to those discovery requests. *See, e.g.*, Paleteria *La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, – F.R.D. –, 2013 WL 1831296, at *2 (D.D.C. May 1, 2013) (considering protective order for depositions). For this reason, courts consider the scheduling order and discovery deadlines when determining whether to issue such protective orders. *See United States v. Kellog Brown & Root Servs.*, 285 F.R.D. 133, 134–35 (D.D.C. 2012) (noting that courts are more welcoming of Rule 26(c) protective orders against untimely discovery notices).

Here, the government has not issued any discovery requests, except for Supplemental Rule G special interrogatories (see Doc. 32, p. 5). Furthermore, Claimants are not seeking a protective order against those interrogatories. Claimants' motions for protective orders do not pertain to the government's discovery requests. Instead, they pertain to matters that counsel believed needed urgent consideration—namely, the protection of witnesses from further government harassment.

Lastly, counsel acknowledges that the government is correct that Local Rule 7(m) requires counsel to confer before filing any nondispositive motion in a civil action. L.R. 7(m). Undersigned counsel, along with D.C. counsel, did confer in person with trial attorney Elizabeth

16

Aloi and Agent Richard Doherty about gaining access to inspect and copy the evidence in the government's possession and seeking early release of the evidence.  Government counsel indicated the government would oppose everything.  Undersigned counsel also asked about the evidence in the government's possession that they had failed to mention in their Complaint, and that directly refuted several of the Complaint's allegations.  Government counsel did not address any of these concerns.  Undersigned counsel then followed-up through electronic correspondence with Agent Edmiston, the SIGAR contact in Afghanistan, about gaining access to the confiscated evidence, which is comprised of all of Claimants' business records and property relevant to this matter (Ex. 2).

For Claimants' most important and primary motion—request for protection of witnesses, undersigned counsel filed this motion with the Court without conferring with the government for several reasons.  First, the designated witnesses had asked undersigned counsel to seek court protection at the same time that he filed their declarations with the Court, without first notifying the government about their testimony.  They are afraid of further SIGAR action against them, and have more testimony that they will not disclose until they are under a protective order.[4] Second, while *ex parte* submissions are permissible to resolve fears of witness intimidation, *Clifford v. United States*, 136 F.3d 144, 149 (D.C. Cir. 1998), undersigned counsel filed the motion publicly in an attempt to immediately prevent further harassment, and obtain court supervision.  Third, the government still has not given undersigned counsel any assurances that it will not harm the U.S. Special Forces witnesses.  Lastly, undersigned counsel sought to prevent the ongoing violation of Rule 4.4 of the D.C. Rules of Professional Conduct by requesting court protection.

---

[4] Counsel hoped to discuss this further with the Court in the requested status conference.

Therefore, undersigned counsel respectfully prays that this Court not deny Claimants' motion for Court protection of witnesses over a technical requirement, but instead resolve the motion on the merits, as this motion is for the benefit of third parties, and the requested order is urgently needed. *See Niedermeier v. Office of Max S. Baucus*, 153 F.Supp.2d 23, 27 (D.D.C. 2001). Further, if this Court finds that Claimants did not meet the Rule 7(m) requirement for their other protective and preservation motions, Claimants respectfully ask that this Court also consider those motions on their merits. In the alternative, Claimants request that this Court deny those motions without prejudice, so that Claimants may renew them if necessary after conferring with opposing counsel in good faith and certifying such compliance. *See Caudle v. District of Columbia*, 263 F.R.D. 29, 32 (D.D.C. 2009).

### D. Claimants' motions were supported with evidence and declarations.

Most telling is that the government's Opposition does not deny Claimants' allegations or even address them substantively. Instead, it calls them "a laundry list of completely unsupported accusations" (Doc. 32, p. 3). This ignores the voluminous evidence and sworn declarations from internal government witnesses and others cited as support for each allegation (Doc. 29, pp. 5–8). The government's Complaint is certainly not supported by anything approaching what Claimants have submitted to this Court. Major Bradley advised undersigned counsel that he has seen SIGAR's evidence, and that it is all of questionable validity; he calls it "level one intelligence," which he categorizes as inherently unreliable and untrustworthy. The government does not deny that SIGAR hid evidence from this Court (Doc. 29, pp. 5–8). The government does not deny that both the U.S. Military and the Afghan Government investigated Mr. Shadman and exonerated him of the conduct alleged here (Doc. 29, pp. 5–6). The government does not deny that it interrogated and then threatened at least five U.S. Special Forces Officers who provided

testimony and evidence in support of Mr. Shadman, and then hid that evidence from this Court (Doc. 29, pp. 6–7). And, the government does not deny that these same U.S. Special Forces Officers completely undermined the credibility of all of the "confidential sources" relied upon in the government's Complaint (Doc. 29, pp. 6–7).

### III. Conclusion

Therefore, Claimants pray this Court grant their Request for Status Conference, and Motion for Protective and Preservation Orders.

Respectfully submitted,

**NEEL, HOOPER & BANES, P.C.**

_/s/ Bryant S. Banes_
Bryant S. Banes
Texas Bar No. 24035950
Federal ID No. 31149
Kelline R. Linton
Texas Bar No. 24085436
1800 West Loop South, Suite 1750
Houston, Texas 77027-3008
Tel: (713) 629-1800
Fax: (713) 629-1812
E-mail: bbanes@nhblaw.com

Of Counsel:

James Wallace Porter, III
Bar No. XXXXXXX
Haskell Slaughter Young & Rediker, LLC
1100 New York Avenue, NW, Suite 750 W
Washington, D.C. 20005
(202) 412-2015
(202) 289-4002

ATTORNEY FOR DEFENDANTS

_Counsel for Defendants, Claimants_

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October, 2013, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Jaikumar Ramaswamy, Chief
Asset Forfeiture and Money
    Laundering Section
Daniel H. Claman, Assistant Deputy Chief
Elizabeth A. Aloi, Trial Attorney
U.S. Department of Justice
Criminal Division
1400 New York Avenue, NW, 9th Floor
Washington, DC 20530


   _/s/ Bryant S. Banes_____
       Bryant S. Banes