IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>United States Department of Justice<br>Criminal Division<br>Asset Forfeiture and Money<br>     Laundering Section<br>1400 New York Avenue, NW., 10th Floor<br>Washington, DC 20005, | § § § § § § § § | |
|     Plaintiff, | § § | |
| v. | § § § | Case No.:    1:12-cv-1905 (RWR)<br>Judge:     Richard W. Roberts<br>Date Filed:  October 17, 2013 |
| THE SUM OF $70,990,605 HELD IN<br>ACCOUNT NUMBER 050210000527810, IN<br>THE NAME OF HIKMAT SHADMAN<br>LOGISTICS SERVICES COMPANY,<br>LOCATED AT AFGHANISTAN INTER-<br>NATIONAL BANK, AND ALL INTEREST,<br>BENEFITS OR ASSETS TRACEABLE<br>THERETO; | § § § § § § § § § | |
| THE SUM OF $6,930,000, HELD IN<br>ACCOUNT NUMBER 050210001288613, IN<br>THE NAME OF FAIZY ELHAM BROTHERS,<br>LTD., LOCATED AT AFGHANISTAN INTER-<br>NATIONAL BANK, AND ALL INTEREST,<br>BENEFITS OR ASSETS TRACEABLE<br>THERETO. | § § § § § § § § | |
| ALL FUNDS HELD FOR OR BY THE BENEFIT<br>OF AFGHANISTAN INTERNATIONAL BANK<br>AT STANDARD CHARTERED BANK, NEW<br>YORK, OF AN AMOUNT UP TO BUT NOT TO<br>EXCEED $1.5 MILLION OR THE SUM HELD<br>AT AFGHANISTAN INTERNATIONAL BANK<br>ACCOUNT NUMBER 050210000527810, IN<br>THE NAME OF HIKMAT SHADMAN<br>LOGISTICS SERVICES COMPANY, OR<br>AFGHANISTAN INTERNATIONAL BANK<br>ACCOUNT NUMBER 050210001288613, IN<br>THE NAME OF FAIZY ELHAM BROTHERS,<br>LTD.; | § § § § § § § § § § § § § | |

ALL FUNDS HELD FOR OR BY THE BENEFIT §
OF BANK ALFALAH AT CITIBANK, N.A. §
NEW YORK, NOT TO EXCEED $55,569,790 OF §
THE TOTAL SUM OF ANY FUNDS §
TRANSFERRED ON OR AFTER §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT §
BANK ALFALAH FROM AFGHANISTAN §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER  050210001288613, IN §
THE NAME OF FAIZY ELHAM BROTHERS; §
§
ALL FUNDS HELD FOR OR BY THE BENEFIT §
OF BANK ALFALAH AT DEUTSCHE BANK §
TRUST COMPANY AMERICSAS, NOT TO §
EXCEED $55,569,790 OFTHE TOTAL SUM OF §
ANY FUNDS TRANSFERRED ON OR AFTER §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT §
BANK ALFALAH FROM AFGHANISTAN §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN §
THE NAME OF FAIZY ELHAM BROTHERS; §
§
ALL FUNDS HELD FOR OR BY THE BENEFIT §
OF BANK ALFALAH AT HABIB AMERICAN §
BANK, NOT TO EXCEED $55,569,790 OF §
THE TOTAL SUM OF ANY FUNDS §
TRANSFERRED ON OR AFTER §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT §
BANK ALFALAH FROM AFGHANISTAN §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK §
ACCOUNT NUMBER 050210001288613, IN §
THE NAME OF FAIZY ELHAM BROTHERS; §

ALL FUNDS HELD FOR OR BY THE BENEFIT   §
OF BANK ALFALAH AT HABIB BANK   §
LIMITED, NOT TO EXCEED $55,569,790 OF   §
THE TOTAL SUM OF ANY FUNDS   §
TRANSFERRED ON OR AFTER   §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT   §
BANK ALFALAH FROM AFGHANISTAN   §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT   §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK§
ACCOUNT NUMBER 050210001288613, IN   §
THE NAME OF FAIZY ELHAM BROTHERS;   §
§
ALL FUNDS HELD FOR OR BY THE BENEFIT   §
OF BANK ALFALAH AT HSBC BANK USA   §
N.A., NOT TO EXCEED $55,569,790 OF   §
THE TOTAL SUM OF ANY FUNDS   §
TRANSFERRED ON OR AFTER   §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT   §
BANK ALFALAH FROM AFGHANISTAN   §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT   §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK§
ACCOUNT NUMBER 050210001288613, IN   §
THE NAME OF FAIZY ELHAM BROTHERS;   §
§
ALL FUNDS HELD FOR OR BY THE BENEFIT   §
OF BANK ALFALAH AT JP MORGAN CHASE   §
BANK NATIONAL ASSOCIATION, NOT TO   §
EXCEED $55,569,790 OF THE TOTAL SUM OF   §
ANY FUNDS TRANSFERRED ON OR AFTER   §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT   §
BANK ALFALAH FROM AFGHANISTAN   §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT   §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK§
ACCOUNT NUMBER 050210001288613, IN   §
THE NAME OF FAIZY ELHAM BROTHERS;   §

ALL FUNDS HELD FOR OR BY THE BENEFIT        §
OF BANK ALFALAH AT MASHREQ BANK             §
PSC, NOT TO EXCEED $55,569,790 OF           §
THE TOTAL SUM OF ANY FUNDS                  §
TRANSFERRED ON OR AFTER                     §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT        §
BANK ALFALAH FROM AFGHANISTAN               §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT      §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK§
ACCOUNT NUMBER 050210001288613, IN          §
THE NAME OF FAIZY ELHAM BROTHERS;           §
                                            §
ALL FUNDS HELD FOR OR BY THE BENEFIT        §
OF BANK ALFALAH AT STANDARD                 §
CHARTERED BANK, NEW YORK, NOT TO            §
EXCEED $55,569,790 OF THE TOTAL SUM OF      §
ANY FUNDS TRANSFERRED ON OR AFTER           §
NOVEMBER 20, 2012, TO ANY ACCOUNT AT        §
BANK ALFALAH FROM AFGHANISTAN               §
INTERNATIONAL BANK ACCOUNT NUMBER §
050210000527810, IN THE NAME OF HIKMAT      §
SHADMAN LOGISTICS SERVICES COMPANY, §
AND AFGHANISTAN INTERNATIONAL BANK§
ACCOUNT NUMBER 050210001288613, IN          §
THE NAME OF FAIZY ELHAM BROTHERS;           §
                                            §
ALL FUNDS HELD BY OR FOR THE BENEFIT        §
OF EMIRATES NATIONAL BANK AT JP             §
MORGAN CHASE BANK NATIONAL                  §
ASSOCIATION NOT TO EXCEED $4 MILLION        §
OF THE TOTAL SUM OF ANY FUNDS HELD          §
IN ANY ACCOUNT AT EMIRATES NATIONAL §
BANK IN THE NAME OF YASER ELHAM,            §
                                            §
                   Defendants *in rem*.     §
_____

## CLAIMANTS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

COME NOW, Claimants (Hikmat Shadman Logistics Services, Hikmat Shadman

General Trading, LLC, Faizy Elham Brothers, Ltd., Everest Faizy Logistics Services,

Hikmatullah Shadman, Najibullah, and Rohullah), who, pursuant to Rule 65 of the Federal Rules of Civil Procedure ("FRAP") and Local Civil Rule 65.1(c), through its undersigned counsel, hereby file this request for preliminary injunctive relief.  The basis for this motion is that the time for the Court's decision on Claimants' Motion for Early Release passed the mandatory 30-day limitation after filing on October 16, 2013, without decision (*Accord* 18 U.S.C. § 983(f)(5)); that Claimants' have been severely prejudiced thereby and request immediate release of all property and other relief as outlined below; that there is no other adequate remedy at law for Claimants to cure the government's improper actions that have all combined to chill witnesses on their behalf, place evidence and property beyond the jurisdiction of this Court, and destroy their legitimate business without due process of law; and that Claimants are likely to succeed on the merits.

To prevent further injury to Claimants from the government's improper, arbitrary, unreasonable, and unlawful actions, Claimants request that this Court issue an immediate, preliminary injunction during the pendency of this action:  (i) suppressing the warrants *in rem* and directing the government to release any and all assets of Claimants; (ii) enjoining the government from threatening or harassing U.S. Special Forces witnesses and others who have offered testimony or statements favorable to Claimants in any investigation, tribunal, or other matter related in any way to Claimants; (iii) enjoining the government or its agents from transferring any assets of Claimants beyond the jurisdiction of this Court; (iv) directing the government and its agents to gather, segregate, and preserve any and all evidence in any form in the possession of the United States or its agents; and (v) directing the government to identify any assets of Claimants or evidence related to Claimants that has been transferred outside United States control since the filing of Claimants' notice of appearance in this action.

The bases for these requests have all been filed with the Court and supported by

substantial evidence and verified declarations, all of which is incorporated here by reference (Docs. 24, 27, 28, 29, 33, 34 & 37).   In short, these pleadings have established that Claimants possess standing to claim their frozen and withheld assets of their legitimate business; refute that the government has either stated a proper claim or that its allegations rest upon probable cause or competent evidence; and request intervention from this Court to preclude the government from threatening witnesses, hiding or destroying evidence, and transferring Claimants' assets beyond the jurisdiction of this Court.   All of these improper government actions, coupled with the passage of the mandatory statutory deadline for deciding the motion for early release, combine to leave Claimants and their supportive witnesses with no adequate remedy at law.

The government labels the factual issues in support of Claimants' motion as "a laundry list of completely unsupported accusations" (Doc. 32, p. 3).   The government has not yet attempted to address any of Claimants' motions substantively, preferring to rest upon procedural nonsense.   But to reiterate, to say they are unsupported is to ignore the evidence and declarations cited as support.   The government does not deny that SIGAR hid evidence from this Court (Doc. 29, pp. 5–8).   The government does not deny that both the U.S. Military and the Afghan Government investigated Mr. Shadman and exonerated him of the conduct alleged here (Doc. 29, pp. 5–6).   The government does not deny that SIGAR interrogated and then threatened at least five U.S. Special Forces Officers who provided testimony and evidence in support of Mr. Shadman, and then hid that evidence from this Court (Doc. 29, pp. 6–7).   The government also does not deny that these same U.S. Special Forces Officers completely undermined the credibility of all of the "confidential sources" relied upon in this action (*id.*).

Of utmost concern is that several current members of U.S Special Forces have come forward as witnesses on Mr. Shadman's behalf, and what they have told undersigned

counsel about SIGAR's investigatory tactics leading to this case are troubling.  These officers explained that SIGAR interviewed them during the investigation, and when their testimony did not corroborate SIGAR's allegations, SIGAR told them to keep quiet and threatened adverse actions against them if they did not (see Doc. 28, ¶ 13 & n.5).  SIGAR then advised their commanders that they were under investigation, thereby damaging their military careers.  For this reason, Major Jerry "Rusty" Bradley has offered a statement of support for Mr. Shaman in this case where he also states**: "I seek protection from the Court so that I can tell the truth and a wrong can be righted"** (Doc. 28, Ex. 59, ¶ 9).  With respect to the precise basis for the injunctive relief, Claimants reiterate the following established facts:

1.      SIGAR hid from the Court the fact that, in response to a mutual assistance request, Afghanistan fully cooperated with SIGAR, convened a Special Court consisting of three senior Afghan prosecutor generals, and then investigated Mr. Shadman from January to April 2013, before ultimately exonerating him of all the criminal conduct alleged before this Court (*Compare* Doc. 11, ¶¶ 12–16 *with* Doc. 28, ¶¶ 42–43).

2.      SIGAR hid from this Court that this same Afghan Special Court not only exonerated Mr. Shadman and released his funds, but also apologized to him and retained jurisdiction to investigate SIGAR's improper conduct in this matter (*Compare* Doc. 11, ¶¶ 12–14 *with* Doc. 28, ¶¶ 43–44).

3.      SIGAR hid from this Court that after the issuance of the latest warrants *in rem*, the Afghan Attorney General retained jurisdiction over this case and sent this case to the Appeal Court of Kabul Province to be further reviewed under Afghan law (*Compare* Doc. 11, ¶¶ 12–14 *with* Doc. 28, ¶ 45–46).

4.      SIGAR interrogated and then ignored the testimony and evidence offered by at least five U.S. Special Forces officers or soldiers that directly contradicted SIGAR's allegations, and is persecuting them for their continued efforts to tell the truth (*Compare* Doc. 11, ¶¶ 22–33 *with* Doc 28, ¶¶ 8–10, 14–16 & 30–36).

5.      Despite warnings by U.S. Special Forces, SIGAR has ignored the U.S. National Security implications of the action it has taken against Mr. Shadman, thereby impairing the U.S. mission in Afghanistan and putting American and Afghan lives in serious danger (*Compare* Doc. 11, ¶ 10 *with* Doc. 28, ¶¶ 3–16 & 47).

6.      SIGAR ignored the many contributions Mr. Shadman made to U.S. Special Forces and the war effort in Afghanistan, as well as the immediate danger this action poses for him (*Compare* Doc. 11, ¶ 10 *with* Doc. 28, ¶¶ 3–16 & 47).

7.      SIGAR used oral statements of two questionable witnesses to support alleged wire "kickback" transfers from Mr. Shadman to TOIFOR, even though SIGAR possesses all of Mr. Shadman's bank statements, which directly refute that any such wire transfers occurred (*Compare* Doc. 11, ¶ 38 *with* Doc. 28, ¶¶ 17–23).

8.      SIGAR relied upon Mr. Shadman's discredited competitor as the sole basis to question why his company was frequently used, when it knew that Mr. Shadman had "sole source" approval from the U.S. Special Forces in Afghanistan for the entire time period at issue (*Compare* Doc. 11, ¶ 39 *with* Doc. 28, ¶¶ 9 & 24–36).

9.      SIGAR hid this "sole source" approval from the Court which, as anyone familiar with government procurement understands, would necessarily have to determine that Mr. Shadman's company was in a unique position to meet the Government's

needs and that his pricing was recognized as fair and reasonable (*Compare* Doc. 11, ¶ 41 *with* Doc. 28, ¶¶ 9 & 17-23).

10. SIGAR's Mr. John Sopko told the press that Mr. Shadman was at the center of a so-called "criminal ring," when he knew that Mr. Shadman was incarcerated in isolation and investigated without counsel or assistance for months, with the involvement of SIGAR, and was then exonerated and freed by a U.S Military Tribunal in December 2012 for these same criminal allegations (*Compare* Doc. 11, ¶ 10 *with* Doc. 28, ¶¶ 38-41; *see also* Doc. 37).

11. More importantly, SIGAR hid from this Court the fact that Mr. Shadman was exonerated of this alleged criminal conduct by a U.S. Military Tribunal in December 2012 (*Compare* Doc. 11, ¶ 10 *with* Doc. 28, ¶¶ 38–41; *see also* Doc. 37).

12. SIGAR has seized and retained all of Mr. Shadman's business and personal assets (including nearly $70 million), completely shutting down his company, despite the foregoing issues that SIGAR has hid from this Court and the fact that Mr. Shadman's company successfully completed the 5,421 transportation movement requests ("TMRs") at issue for U.S. Special Operations Forces in a dangerous combat environment (*Compare* Doc. 11, ¶¶ 41–43 *with* Doc. 28, ¶¶ 9, 24–33, 37–41 & 44; *see also* Docs. 27, 33, 34 & 37).  There is also evidence that SIGAR is now seeking to transfer the business assets of Claimants beyond the jurisdiction of this Court (*see* Doc. 37).

The foregoing demonstrates that SIGAR is a government agency that is out of control and apparently unaccountable.  At the same time it is participating in Afghan courts and

supposedly "teaching" Afghans the "rule of law" (Doc. 28, ¶¶ 45 & 47), SIGAR has hid evidence from this Court, ignored due process afforded by both competent military and Afghan authority, and trampled the rights of an Afghan man already twice declared innocent.  Not content to mock the law in this manner, SIGAR then enters the realm of National Security, as if it knows better than military authorities, to silence and threaten the careers and livelihoods of decorated and devoted U.S. combat veterans.  These soldiers, whose only crime is to support their combat ally and tell the truth, seek protection in this Court.  For this reason, undersigned counsel seeks preliminary injunctive relief described above, including the release of all of Claimants' assets.

Given the evidence of what SIGAR has hid from this Court and tried to destroy or transfer, Claimants also respectfully request that any such Preliminary Injunction also include an order to preserve and protect any relevant evidence and property of Claimants in the government's possession.  If this case survives dismissal and proceeds to the merits, Claimants will be seeking substantial discovery that will impact numerous government agencies and cross international boundaries.  Given Mr. Shadman's history, we anticipate special procedures for taking testimony that will protect sensitive and classified information.  It is indeed ironic that some of Mr. Shadman's defense will come in that context, as SIGAR already knows.  It is therefore appropriate at this time to examine how the Court will expect to acquire such evidence, from U.S. Special Operations Forces in particular, without betraying the U.S. secrets that SIGAR has ignored.

To demonstrate entitlement to a preliminary injunction, a litigant must show:

"(1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested

> parties; and (4) that the public interest would be furthered by the injunction."

*Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).  As the facts above demonstrate (including all those in the verified motions incorporated by reference), the failure to grant this motion will result in the destruction of Claimants' legitimate business.  The government will not suffer injury for a multitude of reasons, including the fact that it has failed to state a proper claim, relied upon incompetent evidence, frustrated the ability of favorable witnesses to present evidence, and ignored contrary determinations by a United States Military Tribunal and an Afghanistan Special Court.  The release will not injure any other parties, since all interests are aligned.  Finally, this is not contrary to the public interest because Claimants have properly asserted their standing, their rights to dismissal of this action, and early release of their assets (and due process regarding same).  Nevertheless, the Court has not ruled upon its motion within the statutory timeline, leaving Claimants without an adequate remedy at law.

Consequently, undersigned counsel requests a hearing for this motion within 21 days to decide and enter the following Orders:

1.  An Order requiring the immediate release and delivery to Claimants of all assets claimed by them in this action (Docs. 24, 27, 28, 33, 34 & 37).

2.  An Order granting protection for U.S. Special Forces and other witnesses, and requiring any interrogation relating to the facts alleged in this case by the government be conducted under Court supervision with counsel for both parties present (Docs. 29, 34 & 37).

3.  A government-wide Order requiring the U.S. Government to gather and preserve any evidence and assets of Claimants in its possession, including any evidence in any form referenced in pleadings by Claimants, at a central location in

Washington, D.C., and that it grant undersigned counsel access for inspection and copying of same (Docs. 29, 34 & 37).

4.      A Protective Order regarding the taking and preservation of testimony and evidence that may impact National Security or contain classified information (Docs. 29, 34 & 37).

Respectfully submitted,

NEEL, HOOPER & BANES, P.C.

_____

Bryant S. Banes
D.C. Bar ID No. TX0109
Texas Bar No. 24035950
Federal ID No. 31149
Kelline R. Linton
Texas Bar No. 24085436
1800 West Loop South, Suite 1750
Houston, Texas  77027-3008
Tel: (713) 629-1800
Fax: (713) 629-1812
E-mail: bbanes@nhblaw.com

Of Counsel:

James Wallace Porter, III
D.C. Bar No. 999070
Bradley Arant Boult Cummings LLP
1615 L Street, NW
Washington, D.C. 20036
(202) 719-8232
(202) 719-8332 (Fax)
E-mail: jporter@babc.com

*Counsel for Claimants*
*Hikmat Shadman Logistics Services,*
*Hikmat Shadman General Trading, LLC,*
*Faizy Elham Brothers, Ltd., Everest Faizy*
*Logistics Services, Hikmatullah Shadman,*
*Najibullah, and Rohullah*

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that on this 17th day of October, 2013, pursuant to Local Civil Rule 7(m), I conferred with opposing counsel about this anticipated motion in a good-faith effort to determine whether opposing counsel had any opposition to the relief sought and, if there was any opposition, to determine whether counsel and I could narrow the areas of disagreement. Government counsel opposes this motion and Counsel for Claimant AIB takes no position.

_____
Bryant S. Banes

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of October, 2013, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Jaikumar Ramaswamy, Chief
Asset Forfeiture and Money
   Laundering Section
Daniel H. Claman, Assistant Deputy Chief
Elizabeth A. Aloi, Trial Attorney
U.S. Department of Justice
Criminal Division
1400 New York Avenue, NW, 9th Floor
Washington, DC 20530

Andrew C. Bernasconi
Pablo Quinones
Reed Smith LLP
1301 K Street, N.W., suite 1100 – East Tower
Washington, D.C.  20005

_____
Bryant S. Banes

13