**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 12-cv-01905 (RWR) |
| ) | |
| ALL FUNDS HELD BY OR FOR THE BENEFIT ) | |
| OF AFGHANISTAN INTERNATIONAL BANK ) | |
| AT STANDARD CHARTERED BANK, NEW ) | |
| YORK, OF AN AMOUNT UP TO, BUT NOT TO ) | |
| EXCEED, $10,100,000 OF THE TOTAL SUM ) | |
| OF ANY FUNDS HELD IN ANY ACCOUNT ) | |
| AT AFGHANISTAN INTERNATIONAL BANK ) | |
| CONTROLLED BY OR FOR THE BENEFIT OF ) | |
| HIKMATULLAH SHADMAN INCLUDING, ) | |
| BUT NOT LIMITED TO, ACCOUNT NUMBER ) | |
| 050210000527810, IN THE NAME OF HIKMAT ) | |
| SHADMAN LOGISTICS SERVICES COMPANY, ) | |
| ACCOUNT NUMBER 050210001288613, IN ) | |
| THE NAME OF FAIZY ELHAM ) | |
| BROTHERS, LTD., AND ACCOUNT NUMBER ) | |
| 05021020014251115 IN THE NAME OF ) | |
| EVEREST FAIZY LOGISTICS SERVICES, ) | |
| *ET AL.*, ) | |
| ) | |
| **Defendants** *in rem*. ) | |
| _____ ) | |

**UNITED STATES' OPPOSITION TO THE CLAIMANTS'
MOTION FOR EXPEDITED REVIEW AND MOTION TO DISMISS COMPLAINT**

Comes now the Plaintiff, United States of America, by and through its undersigned counsel, and respectfully urges this Court to deny the Claimants' Motion for Expedited Review and Motion to Dismiss Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (EFC No. 28). As set forth below, the United States' Second Verified Complaint for Forfeiture *In Rem* ("Complaint") (ECF No. 15) alleges facts that, if accepted as true, "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet

its burden of proof at trial." Rule G(2), Supp. Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Contrary to the Claimants' assertions, the Complaint also alleges each element of the wire fraud conspiracy, including the specific wire transactions used to commit the offense. As set forth below, neither international comity nor the act of state doctrine bar this U.S. Court from considering this action brought by the Government of the United States, under U.S. law, to forfeit property fraudulently taken from the United States. Finally, the Claimants' proportionality argument is without merit as 18 U.S.C. § 981 authorizes the forfeiture of the gross, not net, proceeds of fraud. In any case, the Claimants' proportionality argument seeks premature adjudication of an issue pursuant to Supp. R. G(8)(e), which mandates that such arguments be made by motion after forfeiture is entered.

Unable effectively to challenge the "four corners" of the Complaint, as required in a facial challenge under Federal Rule of Civil Procedure 12(b)(6), Claimants improperly seek to distract the Court and United States with spurious factual allegations. Such filings are irrelevant and immaterial to the Court's consideration of a motion to dismiss. In addition, the Claimants have not stated any grounds for expedited review or the particular relief sought, as required by Rule 7(b) of the Federal Rules of Civil Procedure. Accordingly, the Court should deny the Claimants' Motion for Expedited Review and Motion to Dismiss Complaint.

**I.      BACKGROUND**

This is a civil action *in rem* for the forfeiture of following defendant assets pursuant to 18 U.S.C. §§ 981(a)(1)(C), 981(k) and 984:

   a.   $4,330,287.03 of the funds controlled by or for the benefit of Hikmatullah Shadman including, but not limited to account number 050210000527810, in the name of Hikmat Shadman Logistics Services Company, account number 050210001288613, in the name of Faizy Elham Brothers, Ltd., and account

        number 0502102001425115 in the name of Everest Faizy Logistics Services ("Seized Asset A")[1];

b.     $4 million of the funds transferred on or after November 20, 2012, from Afghanistan International Bank Account Number 050210000527810, in the name of Hikmat Shadman Logistics Services to any account at Emirates NBD Bank in the name of Yaser Elham ("Seized Asset B");

c.     $49 million of the funds transferred on or after November 20, 2012, from Afghanistan International Bank Account Number 050210000527810, in the name of Hikmat Shadman Logistics Services Company to any account at Emirates NBD Bank controlled by or for the benefit of Hikmatullah Shadman General Trading LLC, including but not limited to account number AE210260000514678072002 in the name of Hekmat Shadman General Trading LLC. ("Seized Asset C");

d.     $2,999,977 of the funds transferred on or after November 20, 2012, to Bank Alfalah account number 01810241 in the name of Everest Faizy Logistics Services from Afghanistan International Bank account number 0502102001425115 in the name of Everest Faizy Logistics Services ("Seized Asset D"); and

e.     $949,164 of the funds transferred on or after November 20, 2012, from Afghanistan International Bank account number 050210000527810, in the name of Hikmat Shadman Logistics Services Company to any account at Bank Alfalah controlled by or for the benefit of Hikmatullah Shadman, including but not limited to Bank Alfalah account number 01810238 in the name of Hikmat Shadman Logistics Services ("Seized Asset E").

As set forth in the Complaint, the defendant assets, which have a combined value of approximately $61.3 million, are the proceeds of a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343, through which Hikmatullah Shadman and his associates defrauded the United States of more than $77 million. On August 27, 2013, Hikmatullah Shadman, Najibullah (also known as Yaser Elham) and Rohullah (collectively identified as the "Claimaints") filed a Claim to certain of the defendant assets (ECF No. 24). Specifically, Hikmatullah Shadman asserted an interest in Seized Assets A, C, and E, Rohullah asserted an interest in Seized Asset

---

[1] This asset was originally identified as having a value of $10,100,000. Prior to the filing of any claims in this action, the United States voluntarily dismissed its action against approximately $5.7 million of the funds (ECF No. 26).

D, and a portion of Seized Asset A, and Najibullah asserted an interest in a portion of Seized Asset A (ECF No. 24, ¶ 24-26 and Exhibit H).[2]

## II.   LEGAL STANDARD FOR A MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

In deciding a motion under Fed. R. Civ. P. 12(b)(6), the Court must "take all of the factual allegations in the Complaint as true," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "draw all inferences in favor of the nonmoving party." *City of Harper Woods Emps. Ret. Sys. v. Oliver*, 589 F.3d 1292, 1298 (D.C. Cir. 2009); *United States v. $79,321*, 522 F. Supp. 2d 64, 68 (D.D.C. 2007) ("plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor").  Indeed, Rule 12(b)(6) mandates that the Court accept the Complaint's material factual allegations as true "even if doubtful in fact." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint "may not be dismissed based on [the] court's assessment that the plaintiff will fail to find evidentiary support . . . to the satisfaction of the factfinder." *Id.* at 563, n.8.  The Court must not "evaluate the probability of [plaintiff's] success." *Doe v. Rumsfeld*, 800 F. Supp. 2d 94, 114 (D.D.C. 2011).

The sufficiency of a forfeiture complaint is governed by Rule G(2)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which requires the Government to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. Rule G(2)(f). The United States' burden at trial is to establish forfeitability by a preponderance of the evidence; the Civil Asset Forfeiture Reform Act makes clear that "[n]o complaint may be dismissed on the ground

---

[2] As discussed in the United States' opposition to the release of the seized funds (ECF No. 31), and consistent with the Claim filed in this matter (ECF No. 24), none of the Claimants have asserted an interest in Seized Asset B. Further, contrary to the repeated assertions of counsel for the Claimants, Hikmat Shadman Logistics Services Company, Faizy Elham Brothers Ltd., Hikmat Shadman General Tracing, LLC, and Everest Faizy Logistics Services Company have not filed claims in this forfeiture action.

that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D). Thus, as set forth in *United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008) — a case upon which the Claimants rely (ECF No. 28, ¶ 60), — "[t]he complaint must contain more than conclusory allegations; although it need not plead evidence, it must plead facts to support its allegations." In pragmatic terms, as explained in *United States v. Mondragon*, 313 F.3d 862, 864 (4th Cir. 2002) — another case on which the Claimants rely (ECF No. 28, ¶ 61), — the Complaint need only plead sufficient facts that "the claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *Id.* at 864; see also Advisory Comm. Note Supp. Rule G (Rule G(2)(f) should be read consistent with *Mondragon*).

## III.  ARGUMENT

This Court should deny the Claimants' Motion to Dismiss because the Complaint states a valid claim upon which relief can be granted, pleads sufficient facts to enable the claimants to commence an investigation and frame a responsive pleading, and identifies specific property involved in the alleged offense. Moreover, the act of state doctrine and principles of international comity do not apply to this action, which is brought by the United States and predicated on a violation of U.S. law. The Claimants' Eighth Amendment and proportionality arguments are premature and irrelevant to the sufficiency of the Complaint.

### a. The Complaint States a Valid Claim Upon Which Relief Can be Granted

#### 1. The Complaint Sufficiently Pleads the Elements of the Alleged Offense

Contrary to the Claimants' assertions, (ECF No. 28, ¶¶ 63-73), the Complaint's allegations, which must be accepted as true, establish a reasonable belief that the Government

will be able to demonstrate forfeitability at trial because the Complaint alleges facts sufficient to establish that the defendant assets are traceable to a wire fraud conspiracy.

The wire fraud statute criminalizes the use of wires in furtherance of any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises. 18 U.S.C. § 1343.  A conspiracy is established when two or more persons knowingly participated in the scheme to defraud.  *See Smith v. United States*, 133 S. Ct. 714 (U.S. 2013).  Wire transfers out of the United States are sufficient to satisfy the "use of the wires" element of the statute.  *See Julius Baer & Co.*, 571 F. Supp. 2d at 10; *see also Pasquantino v. United States*, 544 U.S. 349 (2005).

As set forth in the Complaint, Mr. Shadman or his associates bribed TOIFOR Global Life Support Services employees, delivering cash in exchange for the award of subcontracts to Hikmat Shadman Logistics Services Company.  (ECF No. 15, ¶ 38).  Mr. Shadman used at least one employee to deliver the bribes (ECF No. 15, ¶ 38(a)), and conspired with another to transfer the money he received from the fraudulently obtained subcontracts to accounts under his control (ECF No. 15, ¶¶ 48-49).  In this way, Mr. Shadman defrauded the United States by obtaining money – payment for the subcontracts – by false or fraudulent pretenses. The defendant assets, as alleged, are traceable to the proceeds of this criminal conduct (ECF No. 15, ¶¶ 34-40 and 44-76).

The Complaint also alleges a scheme to inflate the prices of the subcontracts awarded to Mr. Shadman's company (ECF No. 15, ¶ 39).  As part of this scheme, Mr. Shadman and his co-conspirator, Paul Hele, are alleged to have caused the submission of fraudulent pricelists and Transportation Movement Requests ("TMRs") to U.S. personnel (ECF No. 15, ¶¶ 28, 39(e)-(g)). An exhaustive review of the TMRs awarded to Mr. Shadman's company corroborates this fraud

(ECF No. 15, ¶ 41). Through this scheme, Mr. Shadman further defrauded the United States by causing the United States to overpay for the subcontracts he illegally obtained. Such bribery and price fixing are the types of schemes criminalized by the fraud statute. *See Skilling v. United States*, 130 S. Ct. 2896, 2926 (U.S. 2010) (discussing the applicability of 18 U.S.C. § 1343 to bribery before and after Congress passed 18 U.S.C. § 1346, the "honest services" fraud statute).

As specifically alleged in the complaint, the requisite wire transfers occurred each time the United States Defense Finance and Account Services, located in Rome, New York, through the North Atlantic Treaty Organization's Maintenance and Supply Agency, processed and disbursed payments by electronic funds transfer to TOIFOR Global Life Support Services, which in-turn made payments (totaling $77 million) to Hikmat Shadman Logistics Services Company (ECF No. 28, ¶¶ 31-33 and 46).[3]

To support their flawed argument that the Complaint is insufficient, the Claimants cite to *United States v. Funds From Prudential Sec.*, 362 F. Supp. 2d 75, 80-81 (D.D.C. 2005) for the proposition that there must be a substantial connection between the defendant property and the alleged offense (EFC No. 28, ¶ 62). That case, however, actually cuts against Claimants' position. In *Prudential Sec.*, the Court held that the United States had established forfeitablity and granted the United States' motion for summary judgment where the defendant assets were drug proceeds found in accounts opened by the Claimants. Specifically, the Court reasoned that, "in order to succeed in its forfeiture claim…the plaintiff must demonstrate that the defendant property is traceable to the illicit drug offenses." *Id*. Here, not only are the defendant assets held in accounts under the control of Claimant Shadman, they are directly traced to funds deposited

---

[3] At trial, it will not be necessary to show that Mr. Shadman or any of his conspirators directly participated in the wire transmission, so long as the use of wires was a foreseeable result. *United States v. Gill*, 909 F.2d 274, 277-78 (7th Cir. 1990); *United States v. Jones*, 554 F.2d 251, 253 (5th Cir. 1977), *cert. denied*, 434 U.S. 866 (1977); *United States v. Wise*, 553 F.2d 1173 (8th Cir. 1977).

into Hikmat Shadman Logistics Services Company's bank account as a result of the fraudulent subcontracts (ECF No. 15, ¶¶ 44-76). Thus, the Court's decision in *Prudential Sec.* supports the sufficiency of the allegations in the Complaint.[4]

### 2. The Complaint Pleads Sufficient Facts to Enable Claimants to Commence an Investigation and to Frame a Responsive Pleading, and, Therefore, Meets the Requirements of Supplemental Rule G(2)(f)

Not only are the allegations sufficiently specific as set forth above, but the Complaint meets the requirements of Supplemental Rule G(2)(f) because the Claimants, based on the allegations in the Complaint, have unequivocally been able to "commence an investigation of the facts and to frame a responsive pleading." *Mondragon* at 313 F. 3d at 864. The Claimants have already submitted to this Court several hundred pages of pleadings and exhibits purporting to refute the allegations in the Complaint. In fact, even the Claimants' Motion to Dismiss contains 27 pages of factual assertions in response to the Complaint's allegations before addressing the sufficiency of the Complaint itself (ECF No. 28, ¶¶ 1-48).

Having effectively conceded the sufficiency of the Complaint, the Claimants embark on a cascade of false accusations and government conspiracy theories in support of their Motion to Dismiss, attaching 68 exhibits and hundreds of pages of records and statements to their motion. However, a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) is a facial challenge to the four corners of the Complaint, rendering the Claimant's submissions superfluous and an inappropriate distraction.

In further support of their argument that the Complaint fails to meet the Supplemental Rule G(2)(f) pleading standard, the Claimants devote several paragraphs (EFC No. 28, ¶¶ 64-67) to this Court's decision to grant a motion to dismiss and leave to amend in *United States v. One*

---

[4] Moreover, in granting summary judgment, the court in *Prudential Sec*. had to adjudicated the United States' claims at a preponderance standard. Here, on a motion to dismiss, the threshold is reasonable basis.

*Gulfstream G-V Jet Aircfraft,* 2013 U.S. Dist. LEXIS 56354 (D.D.C. Apr. 19, 2013).  In *One Gulfstream*, the United States sought the forfeiture of a $38.5 million dollar jet purchased by Teodoro Nguema Obiang Mangue, Equatorial Guinea's Minister of Forestry and Agriculture and the son of Equatorial Guinea's president. The United States alleged that Nguema purchased the jet with funds derived from extortion, misappropriation, theft, and embezzlement.  The Court granted the *One Gulfstream* Claimants' Motion to Dismiss because the Court found that the complaint did not sufficiently trace the purchase of the defendant airplane to specific illegal activity and, therefore, "the claimants would find it difficult to know where to begin their investigation, what individuals to interview, or what documents to review." *Id.* at 38.  On the other hand, in the present case, the defendant assets are directly traced to the alleged wire fraud because the defendant assets are the proceeds Hikmat Shadman Logistics Services Company received for the alleged fraudulent subcontracts (ECF No. 15, ¶¶ 44-76).  Not only does the instant Complaint sufficiently apprise Claimants of the alleged nature of the defendant funds, but the Claimants' own pleadings demonstrate that they have commenced their investigation.  The rationale behind the Court's decision in *One Gulfstream* is simply inapplicable.[5]

### 3. The Complaint Identifies Specific Property Involved in the Alleged Offense.

The Claimants concede that the Complaint specifically identifies the property subject to forfeiture (ECF No. 28, ¶ 74), but nevertheless argue that the Complaint must be dismissed because it "fails to sufficiently identify specific property" involved in the alleged offenses (ECF No. 28, ¶¶ 74-76).[6]  Although not a model of clarity, the Claimants appear to contend that the United States has not alleged that the conduct was done "knowingly" as purportedly required by

---

[5] Moreover, in *One Gulfstream*, this Court considered and rejected the very same act of state doctrine and international comity arguments raised by the Claimants, discussed herein.

[6] Supplemental Rule G(2)(c) only requires the Complaint to describe the property to be forfeited with "reasonable particularity." Supp. R. G(2)(c).

18 U.S.C. § 984(c).  Indeed, even if the Claimants' argument was premised on a correct understanding of the law, the Complaint alleges specific acts of bribery to perpetrate a fraud against the United States and specific acts of deliberate price fixing (ECF No. 15, ¶¶ 38-39). Both bribery and fraud are crimes requiring mens rea.  *See e.g*, *United States v. Andrade*, 788 F.2d 521, 527 (8th Cir. 1986) (finding that an essential element of fraud is a showing that an individual acted with intent to defraud), and *United States v. Sun-Diamond Growers*, 526 U.S. 398 (U.S. 1999) ("The crime of bribery requires intent to influence an official act").  Here, the Complaint specifically identifies actions Mr. Shadman, Hele and others knowingly took to commit the bribery, inflate the prices, and obtain the fraudulent subcontracts for Hikmat Shadman Logistics Services Company.  In evaluating the sufficiency of this Complaint, this court must draw all inferences in favor of the United States. *City of Harper Woods Emps.* 589 F.3d at 1298.  Accordingly, Mr. Shadman and others are alleged to have knowingly engaged in the offense, and the allegations in the Complaint are sufficient to meet the intent requirements of 18 U.S.C. 984(c) as interpreted by the Claimants.

       The Claimants misunderstand 18 U.S.C. § 984(c), which states that the provisions governing fungibility of currency do "not apply to an action against funds held by a financial institution in an interbank account unless the account holder knowingly engaged in the offense that is the basis for the forfeiture."  18 U.S.C. § 984(c).  First, the "account holder" referred to in 18 U.S.C. § 984(c) is the financial institution holding the interbank account, not the depositor of funds.  Second, 18 U.S.C. § 984(c) does not apply to forfeiture actions brought pursuant to 18 U.S.C. § 981(k). 18 U.S.C. § 981(k)(2) ("If a forfeiture action is brought against funds that are restrained, seized, or arrested under [18 U.S.C. § 981(k)], it shall not be necessary for the Government to establish that the funds are directly traceable to the funds that were deposited into

the foreign financial institution, nor shall it be necessary for the Government to rely on the application of section 984") (internal citations omitted).

### b. Principles of International Comity Do Not Apply

The Claimants argue that this forfeiture action should be dismissed consistent with principles of international comity because Afghanistan has "three judicially recognized comity interests in (1) the recognition of its asserted jurisdiction; (2) the honoring of its Afghan laws; and (3) the enforcement of its foreign judgment and Executive Order" (ECF No. 28, ¶ 51).  To support this argument, the Claimants assert that Afghanistan has "exclusive" jurisdiction over this case because it involves an Afghan citizen, and an Afghan tribunal has already exonerated Mr. Shadman of the alleged conduct (ECF No. 28, ¶ 52-53). This argument must fail for two reasons.  First, as set forth below, there is no foreign judgment rendered with impartiality and due process for this Court to recognize.  Second, even if this Court were to recognize Afghanistan's unilateral decision to claim "exclusive jurisdiction over this case … and declare[d] Mr. Shadman not guilty of the alleged wire fraud and bribery under Afghan law" (ECF No. 28, ¶ 53), the Afghan authorities' purported exoneration of Mr. Shadman is not dispositive in this civil forfeiture action.

International comity provides that a U.S. court should give full effect to a foreign judgment that has been rendered with impartiality and due process. *See Hilton v. Guyot,* 159 U.S. 113, 163, 202-03 (1895) and *Doe v. Exxon Mobil Corp.,* 654 F.3d 11, 64 (D.C. Cir. 2011). It is a "doctrine of deference based on respect for the decisions of foreign sovereigns." *L.G. Display Co. Ltd. v. Obayashi Seikou Co., Ltd.,* 919 F.Supp.2d 17, 28 (D.D.C. 2013) and *One Gulfstream, 2013 U.S. Dist. LEXIS 56354* at *13 (both quoting *U.S. v. Kashamu,* 656 F.3d 679, 683 (7th Cir. 2011)). International comity is not a doctrine of preemption that requires courts to

decline jurisdiction merely because foreign laws might also apply. *One Gulfstream,* 2013 U.S. Dist. LEXIS 56354 at *19. Rather, U.S. courts should only recognize a foreign judgment if:

> there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment.

*Hilton,* 159 U.S. at 202. The application of comity is inappropriate when doing so "would be contrary to the policies or prejudicial to the interests of the United States." *One Gulfstream,* 2013 U.S. Dist. LEXIS 56354 at *20 (quoting *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru,* 109 F.3d 850, 854 (2d Cir.1997)); *see* also *Laker Airways Ltd. v. Sabena Belgian World Airlines,* 731 F.2d at 937 ("No nation is under unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum."). Restatement § 482(1) (a judgment may be denied comity if "…the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States").

Comity is rarely, if ever, applied, as is the case here, when the United States is a party to a lawsuit. The Executive Branch's decision to bring a case is viewed as evidence of its judgment that the delicate balance of foreign affairs would not be disturbed by the lawsuit. *See, e.g., One Gulfstream,* 2013 U.S. Dist. LEXIS 56354 at *21 (declining to apply the doctrine of comity in Government's forfeiture action against jet plane owned by son of the president of Equatorial Guinea because the executive "has already done the balancing in deciding to bring the case in the first place"); *see also U.S. v. Baker Hughes Inc.,* 731 F.Supp. 3, 6 n.5 (D.D.C. 1990) (noting that it is "not the Court's role to second-guess the executive branch's judgment as to the proper role of comity concerns" when "the United States has decided to go ahead with the case").

12

The defendant assets are subject to forfeiture to the United States as proceeds of a wire fraud conspiracy in violation of U.S. law. The Claimants ask this Court dismiss this action in recognition of a "judgment' (ECF No. 28, ¶¶ 52 and 53, Exs. 25 & 26) that is not a judgment at all. Rather, it is a determination by the Afghan authorities that they would not enforce the United States' mutual legal assistance request to restrain the original defendant accounts (ECF No. 28, Ex. 25) ("Therefore.... the orders issued by [this Court] in regards to repay of movable and immovable assets of Hikmatullah Shadman the head of Logistics Services Inc., legally cannot be implemented."). This determination was made by a delegation of three Afghan officials who reasoned that the arrest warrants *in rem* previously issued by this Court "contradicted" the Afghan Constitution. *Id*. There is no foreign judgment regarding whether the defendant assets are the proceeds of fraud committed against the United States, nor is there any basis for this Court to believe the Afghan authorities could render such a decision. Afghanistan's unilateral assertion of jurisdiction does not give it the right to be the exclusive arbiter of violations of U.S. civil and criminal law.

Not only is the judgment deficient, but the Afghan authorities' determination was not rendered consistent with due process. When determining whether "there has been opportunity for a full and fair trial" as required by *Hilton*, courts may consider whether the foreign jurisdiction provides impartial tribunals or procedures compatible with due process of law. *See* Restatement (Third) of Foreign Relations Law § 482(1)) (U.S may not recognize a foreign judgment if the foreign jurisdiction "does not provide impartial tribunals or procedures compatible with due process of law"). The Claimants assert that the Afghan prosecutor "conducted an extensive, full and fair trial that included the review of the U.S. Government's evidence." (EFC No. 28, ¶ 52). This is simply untrue. The U.S. Government was not asked to

provide its evidence, either documentary or testimonial, to the Afghan authorities, nor were the Afghan authorities in the position independently to acquire all of the evidence the United States has gathered in this case.[7]  The Complaint alleges facts to support a violation of U.S. law; any Afghan judgment could not be issued consistent with due process without U.S. participation.

The Claimants assert that U.S. recognition of the Afghan authorities' purported determination of Mr. Shadman's innocence requires that the United States forgo this forfeiture action (ECF No. 28, ¶¶ 52-54).  This is simply not true.  Mr. Shadman's guilt – in either Afghanistan or the United States – is not dispositive of whether the defendant assets are traceable to a wire fraud conspiracy in violation of U.S. civil forfeiture law.  *See One Lot Emerald Cut Stones & One Ring v. United States,* 409 U.S. 232 (U.S. 1972) (1984) (holding that civil forfeiture following an acquittal is not barred "because it involves neither two criminal trials nor two criminal punishments"); *see also United States v. Real Property…Parcel 03179-005R*, 287 F. Supp. 2d 45, 62 (D.D.C. 2003) (because "a criminal conviction is not a prerequisite for civil forfeiture," it did not matter that the defendant's conviction for money laundering had been vacated).  Further, international comity should not be applied because doing so would directly contradict U.S public policy interests.  In this forfeiture action, the United States seeks to forfeit the proceeds of a crime committed against the United States, which were transferred to Hikmat Shadman Logistics Services through the alleged wire fraud scheme.  Applying principles of comity would allow an Afghan authority, in lieu of this U.S. Court, to determine whether the United States can recover $77 million taken from the United States by fraudulent means. Ceding such sovereignty is clearly contrary to the policy and self interest of the United States.

---

[7] In fact, the United States has not yet had the opportunity to gather additional evidence through civil discovery in this action.

In fact, the underlying purpose of the comity doctrine is to foster international cooperation and encourage reciprocal recognition of U.S. judgments in foreign courts. *See Oetjeg v. Central Leather Co.,* 246 U.S. 297, 304 (1918) ("To permit the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations.")  Here, it is the Afghan authorities who violated comity principles by failing to enforce this Court's arrest warrants *in rem* finding probable cause that the original defendant assets were the proceeds of a wire fraud conspiracy and subject to forfeiture to the United States, as discussed in the Complaint (EFC No. 15, ¶¶ 13-14).

### c. The Act of State Doctrine Does Not Apply to this Civil Forfeiture Action

The Claimants' argument that this case should be dismissed under the act of state doctrine (ECF No. 28, ¶¶ 57-58) must fail because this Court does not need to invalidate an official act of a foreign sovereign to adjudicate this action.  The act of state doctrine precludes domestic courts from inquiring into the validity of the public acts that a recognized foreign sovereign power committed within its own territory. *One Gulfstream,* 2013 U.S. Dist. LEXIS 56354 at *22 (citing *McKesson Corp. v. Islamic Republic of Iran,* 539 F.3d 485, 491 (D.C. Cir. 2008)).  The doctrine applies when the relief sought would require a court in the United States to declare invalid the official act of a foreign sovereign performed within its boundaries. *Id.* (citing *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.,* 493 U.S. 400, 405 (1990)).  Much like international comity, the act of state doctrine is not a principle of abstention, that is, a claimant may not raise the act of state doctrine as a bar to suit whenever the case touches upon the realm of foreign affairs. *See W.S. Kirkpatrick,* 493 U.S. at 409 ("The act of state doctrine is not some vague doctrine of abstention …[it] only arise[s]… when the outcome of the case turns upon the

effect of official action by a foreign sovereign"). It serves as "a rule of decision for the courts of this country," which requires that "the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." *Id.* at 409 (internal quotations and citations omitted).

To support their argument for dismissal under the act of state doctrine, the Claimants state that they have put forth evidence that Afghan authorities have declared Mr. Shadman not guilty of crimes under *Afghan law* (ECF No. 28, ¶ 58). In the present case, the defendant assets are traceable to a violation of *U.S. law*. The validity of the Afghan authorities' decision is not implicated, nor would it be declared invalid, were this case to proceed. Rather, this action may require this Court to examine, for violations of U.S. law, some of the same evidence that was purportedly reviewed by the Afghan authorities. Moreover, as discussed above, whether an Afghan court exonerated Mr. Shadman on Afghan criminal charges is not dispositive when evaluating whether a U.S. civil forfeiture action should proceed.

Further, much like international comity, this Court has found the doctrine weakened when the Executive Branch of the United States brings a lawsuit, including a civil forfeiture action brought by the Justice Department. *One Gulfstream,* 2013 U.S. Dist. LEXIS 56354 at *24. "One of the major concerns underlying the act of state doctrine is 'the strong sense of the judicial branch that its engagement in the task of passing on the validity of foreign acts of a state may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere." *Id. (*citing *Banco Nacional De Cuba v. Sabbatino,* 376 U.S. 398, 423 (U.S. 1964) (superseded by statute) ("When the Executive Branch brings suit, therefore, the doctrine's rationale no longer applies")).

d.  **The Claimants' Proportionality and Eighth Arguments are Premature**

Finally, the Claimants' erroneously assert that this forfeiture action must be dismissed because it violates civil forfeiture's proportionality requirements (ECF No. 28, ¶ 43-47). Although this Court may consider whether "the forfeiture was constitutionally excessive compared to the gravity of the offense giving rise to the forfeiture," *Malladi Drugs & Pharms., Ltd. v. Tandy*, 538 F. Supp. 2d 162, 169 (D.D.C. 2008), such a determination is authorized only once there is, in fact, a "forfeiture." 18 U.S.C. §§ 983(g)(1) & (2).  Here, the defendant assets have been seized or restrained during the pendency of this forfeiture proceeding, but no actual forfeiture has taken place.

Similarly, pursuant to Supplemental Rule G(8)(e), a claimant may seek to mitigate a forfeiture under the excessive fines clause of the Eighth Amendment "by motion for summary judgment or by motion made after entry of a forfeiture judgment if: (i) the claimant has pleaded the defense under Rule 8; and (ii) the parties have had the opportunity to conduct civil discovery on the defense."  Supp. R. G(8)(e).  In the present case, there has been no motion for summary judgment, nor has there been the entry of a forfeiture judgment. Accordingly, like their proportionality argument, the Claimants' Eighth Amendment argument is premature.

Title 18, United States Code, Section 981 subjects to forfeiture assets that constitute or are derived from "proceeds" of crime (ECF No. 28, ¶¶ 77-79).  In arguing that the United States adopted an overly broad definition of proceeds, however, the Claimants completely disregard relevant law.  Most Courts that have addressed the definition of "proceeds" in fraud cases involving the procurement of goods and services permit the recovery of gross proceeds.  *See United States v. Schlesinger*, 396 F. Supp. 2d 267, 273 (E.D.N.Y. 2005) (holding that a defendant who submits inflated insurance claims must forfeit gross amount received from insurance company, not just the increment corresponding to the inflated portion of the claim),

*aff'd on other grounds,* 261 Fed. Appx. 355 (2d Cir. 2008) (forfeiture in a mail fraud case based on sections 981(a)(1)(C) is not limited to the net gain or profit) ; *United States v. Nicolo*, 597 F. Supp.2d 342, 350 (W.D.N.Y. 2009) (defendant must forfeit all money he received as a consequence of his fraud scheme without any reduction for the value of the services actually provided to his victims); *United States v. Maricle*, 2010 WL 1253077, *2-3 (E.D. Ky. Mar. 25, 2010) (defendant convicted under RICO of obtaining Government contracts through fraud and extortion must forfeit the gross revenues received under the contract without deduction for any costs incurred); *United States v. Peters,* 257 F.R.D. 377, 384 (W.D.N.Y. 2009) (defendant who fraudulently obtains a line of credit is liable to forfeit the gross value of the assets he thereby acquired without credit for the amounts repaid to the lender); *United States v. Boesen*, 473 F. Supp. 2d 932, 953 (S.D. Iowa 2007) (declining to allow as a set off against the gross proceeds of fraud the amount that defendant would have been entitled to receive for his services services actually performed); *United States v. Palazzo*, 2008 WL 5381581, *10 (E.D. La. Dec. 18, 2008) (following *Boesen*; doctor who billed Medicaid at the physicians' rate instead of at the rate applicable to services provided by a physician's assistant must forfeit the gross amount received from Medicaid without credit for the amount she could have received legitimately). *Cf. United States v. Whatley*, 133 F.3d 601, 606 (8th Cir. 1998) (for sentencing purposes, court should use gross receipts, not net profits; "we are not inclined to allow the defendants a profit for defrauding people or a credit for money spent perpetuating a fraud").

## III.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court enter the attached order denying the Claimants' Motion for Expedited Review and Motion to Dismiss.

Respectfully submitted,

JAIKUMAR RAMASWAMY, CHIEF
ASSET FORFEITURE AND
   MONEY LAUNDERING SECTION


/s/ Elizabeth A. Aloi
DANIEL H. CLAMAN
Assistant Deputy Chief
ELIZABETH A. ALOI
Trial Attorney
Asset Forfeiture and Money
   Laundering Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W., Suite 10100
Washington, D.C. 20530
Telephone:  (202) 514-1263

Attorneys for Plaintiff
UNITED STATES OF AMERICA