**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
**UNITED STATES OF AMERICA,**    )
                                )
      **Plaintiff,**       )
                                )
      **v.**               )     **Civil Action No. 12-1905 (RWR)**
                                )
**SUM OF $70,990,605, et al.,**  )
                                )
      **Defendants.**      )
_____)

**MEMORANDUM OPINION AND ORDER**

Plaintiff United States brings this civil forfeiture *in rem* action alleging that the defendant funds -- approximately $61.3 million in three different banks -- are the proceeds of a wire fraud and subject to seizure under 18 U.S.C. §§ 983 and 984. Claimants Hikmat Shadman Logistics Services Co., Hikmat Shadman General Trading, LLC, Faizy Elham Brothers, Ltd., Everest Faizy Logistics Services, Hikmatullah Shadman, Najibullah, and Rohullah move under § 983(f) for immediate release of the seized funds and additional properties. The United States also moves for leave to file a surreply. Because the claimants have failed to demonstrate that they are entitled in this action to release of their seized funds or additional properties, their motion will be denied. Because a surreply is unjustified, the United States' motion also will be denied.

- 2 -

BACKGROUND

The following facts are alleged by the government in its Second Amended Verified Complaint ("Second Amended Complaint"), unless otherwise noted.

The United States filed this civil forfeiture action and secured seizure warrants upon a finding of probable cause that the defendant funds were the proceeds of a fraud.  The United States alleges that Hikmatullah Shadman, as a subcontractor and owner of Hikmat Shadman Logistics Services Company, "conspired to obtain payments from the United States for the transportation of military supplies in Afghanistan through the illegal and fraudulent use of the wires . . . [by making] bribe payments, fraudulently inflat[ing] prices, and caus[ing] the United States to be invoiced for and to make payments of $77,920,605 to two bank accounts in Afghanistan."  2d Am. Compl. at 6.  After the proceeds of the contracts were deposited into an account at Afghanistan International Bank held by Hikmat Shadman Logistics Services Company, the funds were transferred in and out of various accounts in the names of Shadman's brothers -- Najibullah (also known as Yaser Elham) and Rohullah, see Claimants' Mem. for Immediate Release of Seized Property Pursuant to 18 U.S.C. § 983(f) ("Claimants' Mem.") at 5 -- as well as accounts in the name of their companies, Hikmat Shadman Logistics Services, Hekmat Shadman General Trading LLC, Faizy Elham Brothers, Ltd.,

- 3 -

Everest Faizy Logistics Services, and Yaser Elham at Afghanistan
International Bank, Bank Alfalah, and Emirates NBD Bank.  In
total, the United States has restrained $63,049,141, with
$52,949,141 coming from accounts in Bank Alfalah and Emirates NBD
Bank, and $10.1 million coming from Afghanistan International
Bank under the seizure warrants.

On August 27, 2013, Shadman, Najibullah, and Rohullah filed
a verified claim and statement of interest in the seized
property, asserting that they are the owners of the seized funds.
Verified Claim and Statement of Interest or Right in Property
Subject to Forfeiture In Rem ("Verified Claim") at 8.  They made
these claims both individually and on behalf of their companies.
Id. at 14-16.  It appears that all the accounts are held in the
name of the companies, rather than the individuals, except for
one of the Emirates NBD Bank accounts.  Id. at 8-12.

The claimants now move under 18 U.S.C. § 983(f) to have the
funds released.  They argue that the funds should be released
because the "improper seizure" has caused "extreme and
substantial hardships" which "outweigh any risk to the Government
of the dissipation of the seized property."[1]  Claimants' Mem. at

---

[1]  The claimants make a number of other arguments extraneous
to the disposition of the petition for release.  For example,
they argue

the seizure is overly broad, is disproportional to the
claimed offenses, and is based on the Government's
factual misrepresentations, conscious indifference to

- 4 -

24.  The United States argues that the claimants are not entitled

have the seized currency released under § 983(f)(1)(E) and

§ 983(f)(8), provisions governing assets of a business which has

been seized, since this action did not seize a business.  United

States' Opp'n to Claimants' Mot. for Immediate Release of Seized

Property Pursuant to 18 U.S.C. § 983(f) ("Opp'n") at 1.

Additionally, the United States argues that the claimants have

not established the conditions outlined in § 983(f)(1)(A)-(E)

entitling claimants to release, such as "sufficient contacts with

the community to ensure that the property will be available at

trial as required for release of seized assets," and "hardship by

the continued restraint of the funds."  Id. at 2.  Finally, the

United States argues that the claimants failed to show "that such

purported hardship outweighs the risk to the United States during

the pendency of the forfeiture proceedings."  Id.  Claimants

filed a reply, Reply to the U.S.'s Opp'n to Claimants' Mot. for

Immediate Release of Seized Property Pursuant to 18 U.S.C.

---

            exculpatory facts, and intentional disregard for the
            rights of Afghan citizens located in Afghanistan who
            has [sic] been completely exonerated of any wrongdoing
            by the sovereign Afghanistan government under
            Afghanistan law.

Claimants' Mem. at 24.  While the claimants assert in their reply
that the proportionality argument "is to be considered at this
stage of the proceedings as an extremely relevant factor as part
of the Section 983(f) balancing test," Claimants' Reply at 11,
they provide no support for this proposition.  Because none of
these claims is relevant to the analysis under § 983(f), they are
not addressed in this opinion.

- 5 -

§ 983(f) ("Claimants' Reply") to which the United States seeks
leave to file a surreply to "respond[] to two of the material
omissions and misstatements" made by the claimants.  United
States' Motion for Leave to File Surreply ("United States' Mot.")
at 1.  The claimants contend that leave should not be granted
because they raised the issues to which the United States wants
to reply in their original petition.  Claimants Opposition to
United States' Motion for Leave to File Surreply ("Claimants'
Opp'n") at 7.

                          DISCUSSION

      Under § 983(f), a claimant may request release of the seized
property by filing a petition that sets forth "the basis on which
the requirements" for release are met.  18 U.S.C.
§ 983(f)(3)(B)(i).  "[I]f a claimant fails to establish any one
of the five criteria, its motion for the release of property must
be denied."  United States v. Value of Certain E-Metal Accounts
at E-Gold Ltd., No. ELH-11-01530, 2013 WL 5664678, at *2 (D. Md.
Oct. 17, 2013) (citing United States v. Undetermined Amount of
U.S. Currency, 376 F.3d 260, 264 (4th Cir. 2004)).  A court is
authorized to release the property only if the claimant proves
that

      (A)  the claimant has a possessory interest in the
           property;
      (B)  the claimant has sufficient ties to the community
           to provide assurance that the property will be
           available at the time of the trial;
      (C)  the continued possession by the Government pending

- 6 -

the final disposition of forfeiture proceedings
will cause substantial hardship to the claimant,
such as preventing the functioning of a business,
preventing an individual from working, or leaving
an individual homeless;

(D)   the claimant's likely hardship from the continued
possession by the Government of the seized property
outweighs the risk that the property will be
destroyed, damaged, lost, concealed, or transferred
if it is returned to the claimant during the
pendency of the proceeding; and

(E)   none of the conditions set forth in paragraph (8)
applies.

18 U.S.C. § 983(f)(1)(A)-(E).  In turn, paragraph (8) prohibits

release of the seized property if it "is contraband, currency, or

other monetary instrument, or electronic funds unless such

currency or other monetary instrument or electronic funds

constitutes the assets of a legitimate business which has been

seized."  18 U.S.C. § 983(f)(8).

I.   PARAGRAPH (8) CONDITIONS

     Under § 983(f)(8), the court cannot release electronic funds

unless they are "the assets of a legitimate business which has

been seized."  Id.  Seizure of electronic fund assets of a

business that has not itself been seized in a forfeiture action

does not trigger the provision permitting a court to release the

electronic funds; rather, the prerequisite under paragraph (8) is

the seizure of the business itself in the forfeiture action and

not seizure of the assets of the business.  See United States v.

$159,040.00 in U.S. Currency, Civil Action No. 05-2404 (RBW),

slip op. at 5 (D.D.C. Aug. 1, 2006) (unpublished order denying

- 7 -

the motion for the return of seized property) ("The plain
language of the statute would seem to suggest that currency may
only be recovered when a legitimate business has been seized.")[2];
see also United States v. Contents of Account No. 4000393243, No.
C-1-01-729, 2010 WL 3398142, at *1 (S.D. Ohio Jan. 2, 2010) ("In
this exception, *a legitimate business* is singular, *assets* is
plural, and *has been seized* is singular; therefore, *has been
seized* grammatically must refer to *a legitimate business*, not
*assets*.").  Furthermore, courts have rejected the notion that
seizure of the assets of a business is synonymous with the
seizure of the business.  See, e.g., United States v. 8 Gilcrease
Lane, Quincy Fla. 32351, 587 F. Supp. 2d 133, 140-41 (D.D.C.

---

[2] While Judge Walton in $159,040.00 in U.S. Currency
explained that there is an alternative interpretation of the
statute -- that "claimant may recover seized funds if they are
the proceeds of a legitimate business" -- this alternative
interpretation has not been adopted by the courts. Id. at 5-6;
see United States v. Approximately up to $15,034,6633 [sic] in
Funds Contained in Ten Bank Accounts, 844 F. Supp. 2d 1216, 1218
(D. Utah 2011) (surveying cases and finding "[t]he court is not
aware of any case in which this exception was found to apply to
anything other than an actual seized business"). In $159,040.00
in U.S. Currency, Judge Walton found that the claimant in his
case could not satisfy either test. Id. (citing United States v.
$1,231,349.68 In Funds, 227 F. Supp. 2d 125, 129 (D.D.C. 2002)).
Further, in $1,231,349.68 In Funds, Judge Friedman did not
address the argument that the business itself must be seized
because neither side argued that the business itself must be
seized before the funds can be released. 227 F. Supp. 2d at 129.
Rather, Judge Friedman found that, with respect to the funds, the
claimants failed to carry their burden to trace the funds to a
legitimate business. Id. Neither of these cases granted the
petition to release the electronic funds as assets of a
legitimate business.

- 8 -

2008) ("Seizure of currency is not the same as seizure of a business."); In re Seizure Warrants Issued March 27, 2008, and April 23, 2008, 593 F. Supp. 2d 892, 894 (N.D.W.Va. 2008) (finding that, despite petitioner's request that the court decide that "seizure of the currency is tantamount to the seizure of the business," "[t]here appear to be no reported cases in which such a doctrine was applied").

Here, no business has been seized. All the defendant properties are funds within bank accounts. See, e.g., Contents of Account No. 4000393243, 2010 WL 3398142, at *1 ("[T]he government has not sought to seize any business, legitimate or otherwise. The Defendants are all bank accounts. By its plain language, then, § 983(f) is inapplicable.").

In addition to the funds seized under the warrants in rem, the claimants seek release of property "not identified in the Government's Second Amended Verified Complaint," Claimants' Mot. at 8, and argue that "the United States Government . . . , regardless of which agency within the Government, has seized the entire business assets and records (not just funds) of Claimants Hikmat Shadman Logistics Services Company . . . and has seized over $61 Million of Claimants' monetary funds." Claimants' Reply at 5. This request is problematic in two respects.

First, this action is in rem against the named amounts in the bank accounts, not against any of the businesses of Shadman,

Najibullah, or Rohullah.  Here, there is no mention of this other property in the Second Amended Complaint, nor has the government seized in this *in rem* action or under any warrants associated with this *in rem* action that other property.[3]  <u>See</u> Claimants' Mem. at 24; Opp'n at 3 n.3.  The court's jurisdiction in an *in rem* action is over the seized funds themselves.  While exercising that jurisdiction, the court "may adjudicate claims of ownership," but the court's jurisdiction does not extend beyond those seized funds.  <u>See United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 in Banco Espanol de Credito, Spain</u>, 295 F.3d 23, 25 (D.C. Cir. 2002) ("In exercising *in rem* jurisdiction, the court has authority *over the property* (the *res*) and may adjudicate claims of ownership." (emphasis added)); <u>cf.</u> 4A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1070 (3d ed. 1998) ("[W]hen jurisdiction is based on property the resulting judgment can affect only the property that has been brought before the court.").  A court presiding over an *in rem* action is unable to resolve disputes about other property not properly before it.  <u>See Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.  They possess only

---

[3]   The parties suggest that this other property was seized by the U.S. Counterinsurgency Task Force in Afghanistan.  <u>See</u> Opp'n at 3 n.3; <u>see also</u> Claimants' Mot. at 7 (stating that the property was confiscated "under an alleged military warrant"); Claimants' Mem. at 17 (stating that U.S. coalition forces seized Mr. Shadman's property).

that power authorized by Constitution and statute . . . .  It is
to be presumed that a cause lies outside this limited
jurisdiction, and the burden of establishing the contrary rests
upon the party asserting jurisdiction." (internal citations
omitted)).  Thus, the rights and interests in the business
equipment and documents seized outside this *in rem* action cannot
be adjudicated here.  Cf. United States v. BCCI Holdings
(Luxembourg), S.A., 980 F. Supp. 2, 8 (D.D.C. 1997) (dismissing
portion of the claim on forfeited property because the court
lacked jurisdiction over the "assets beyond those funds seized
pursuant to the First Order of Forfeiture"); United States v.
BCCI Holdings (Luxembourg), S.A., 923 F. Supp. 264, 265 (D.D.C.
1996) (finding the court lacked subject matter jurisdiction to
adjudicate the validity of the claimants interest in the property
because the assets were not included in the forfeiture order).

     The text of § 981, which outlines the general civil
forfeiture provisions, supports this conclusion.  The section
specifically refers to "motion[s] for the return of property
*seized under this section.*"  18 U.S.C. § 981(b)(3) (emphasis
added).  The statutory language of § 981 seems to contemplate
jurisdiction solely for property seized under this provision and
therefore only provides a mechanism for release of property
seized in accordance with the forfeiture statutes.

- 11 -

Second, the claimants provide no persuasive legal authority for their proposition that any seizure by any part of the government qualifies them to invoke the exception outlined in § 983(f)(8), or that any seizure by the military establishes jurisdiction to decide whether to release that property. <u>See</u> Claimants' Reply at 9.  However, none of the cases that the claimants cite in their reply brief supports the assertion that an alleged seizure by the military should be imputed to the seizing agency in this forfeiture action for the purposes of § 983(f), nor do the cases permit the court to exercise jurisdiction over property not named in the Second Amended Complaint.

The claimants argue that under <u>Tri-State Hospital Supply Corp v. United States</u>, 226 F.R.D. 118 (D.D.C. 2005), "this Court must consider the acts and motives of all federal agencies involved in the seizure of Claimants' entire business, business property, business records, and monetary funds."  Claimants' Reply at 9.  They further allege that the "seizures of Claimants['] entire business and the seizure of their monetary funds are closely connected which have aggregately caused Claimants' detailed substantial hardship."  <u>Id.</u>

<u>Tri-State</u>, however, is inapposite for two reasons.  First, it does not stand for the proposition that the claimants can bring other agencies or the military into this *in rem* action to

seek relief for seizures uninvolved in this action.  The plaintiff there filed a civil action under the Federal Tort Claims Act "alleg[ing] that the United States engaged in malicious prosecution and abuse of process when it issued penalty notices against Tri-State and sued Tri-State for collection." 226 F.R.D. at 122-23.  The plaintiff sought discovery about "agencies other than the Customs Service and Commercial Litigation Branch of the Justice Department's Civil Division, which were identified in Tri-State's administrative claim, supplement, and amendment," and the defendant refused, arguing that the information was "simply irrelevant."  Id. at 126-27. The court allowed discovery "if that information is relevant to the intent and actions of the government employees and agencies *that were named in the administrative claim*" and the information about intent and motive was potentially relevant because the plaintiff's claim involved malicious prosecution.  Id. at 127 (emphasis added).  The court was specifically interested in whether the desired information was discoverable as relevant to the plaintiff's claim, not whether actions by other agencies should be imputed to the agency being sued in Tri-State.  Id. Thus, the information about other agencies was relevant to the motives of the agencies named in the claim; the plaintiff was nevertheless limited to seeking relief from the agencies that it sued.  Id.  The court did not hold that the plaintiff could seek

relief from those other agencies through the pending action.  <u>See</u>
<u>id.</u>

Second, in <u>Tri-State</u>, the court had independent jurisdiction
over the parties, rather than *in rem* jurisdiction over the
property.  The claimants have offered no proof or even an
allegation that there is jurisdiction over either the property
that the military seized, or over the Counterinsurgency Force in
Afghanistan.  By all accounts, the seizures of these other
business assets and property were done by the military, and there
is no evidence that the seizures were done under any
authorization flowing from this case.  <u>See</u> Opp'n at 3 n.3
(seizure by Counterinsurgency Task Force); Claimants' Mot. at 7
(seizure by military warrant); Claimants' Mem. at 17 (explaining
that the seizure was by U.S. Coalition forces who posed many
questions to Shadman that were unrelated to this action).  Thus,
the seizures that can be considered here are the seizures under
the *in rem* warrants associated with this case.  The United States
has seized in this case $63,049,141 in assets from the named
accounts, but has not seized the claimants' "businesses" for the
purposes of 18 U.S.C. § 983(f)(8).  <u>See</u> <u>8 Gilcrease Lane</u>, 587 F.
Supp. 2d at 140-41 (finding that the seizure of some currency is
not sufficient to establish seizure of a legitimate business).
Therefore, under § 983(f), the petition to release the seized
funds must be denied.

- 14 -

II.  § 983(f)(1)-(4) CONDITIONS

Even if there had been a seizure of the claimants'
businesses, the claimants would still have to prove that they
have "a possessory interest in the property," that they "have
sufficient ties to the community," that they will suffer
"substantial hardship" and that the "likely hardship . . .
outweighs the risk" of loss.  18 U.S.C. § 983(f)(1).  While the
claimants have plausibly shown that they have a possessory
interest in the property and that they will suffer a substantial
hardship, they have failed to demonstrate that they satisfy all
of the remaining four conditions in § 983(f) because they do not
have sufficient ties to the community nor does their likely
hardship outweigh the risk of loss.

An ownership interest is sufficient to show that the
claimant has a "possessory interest" in the property.  Cf. United
States v. All Assets Held at Bank Julius Baer & Co., Ltd., Civil
Action No. 04-0798 (PLF), 2013 WL 4046558, at *16 (D.D.C.
Aug. 12, 2013) ("A claimant who asserts an 'ownership interest'
in the defendant property and who presents 'some evidence of
ownership' supporting that assertion has satisfied its burden of
demonstrating standing at the summary judgment stage.").  The
government argues "because none of the Claimants ha[s] asserted
an interest in Seized Asset B, the release of Seized Asset B
. . . is not appropriate."  Opp'n at 11.  The United States makes

no other claims in its opposition regarding the claimants'
possessory interest.  Because the claimants have a colorable
claim of interest as the owners of the accounts, they have a
sufficient possessory interest to satisfy the first condition.
See Verified Claim at 8.

The claimants also satisfy the third condition, namely, that
they will suffer substantial hardship without release of the
funds.  While the only property at issue is the seized funds, the
claimants state that the continued seizure of the funds is
"interfering with the payments to Claimants' vendors, employees,
and suppliers . . . [and] prohibiting Claimants from paying its
legitimate business expenses as they come due."  Claimants' Mem.
at 30.  This is likely sufficient for establishing a substantial
hardship.  See 8 Gilcrease Lane, 587 F. Supp. 2d at 147 (finding
that the claimant's inability to "fulfill its current
obligations" to pay outstanding bills a substantial hardship).

Despite fulfilling those two conditions, the claimants'
claim must nevertheless fail because they cannot fulfill the
final two conditions.

Claimants are required to have "sufficient ties to the
community to provide assurance that the property will be
available at the time of trial."  18 U.S.C. § 983(f)(1)(B).  The
claimants have not demonstrated that they have sufficient ties to
this community -- at least the United States, if not the District

of Columbia -- "to provide assurance that the property will be available at the time of the trial." See id.  The claimants rely on their ties to Afghanistan to establish this factor. Claimants' Mem. at 27-29 ("Claimants have well-established ties to their respective communities to provide assurance of the availability of the seized property at the time of the trial . . . ."). The claimants argue that "sufficient ties to the community" does not refer in this case to the United States. Claimants' Reply at 12. However, the relevant community in this case is at least the United States, if not the Washington D.C. area. For example, in United States v. $1,231,349.68, the court analyzed whether the claimants, a mother and a daughter, had significant ties to the Washington D.C. area -- because that is where the case was heard -- and determined that because they resided in the area for 22 years and they were U.S. citizens, they had a sufficient tie to the area. 227 F. Supp. 2d 125, 128 (D.D.C. 2002).

In contrast, in United States v. 2005 Mercedes Benz E500, a district court in the Eastern District of California found that the claimant did not have sufficient ties despite owning property in the community because the claimant did not reside in that community. 847 F. Supp. 2d 1211, 1215 (E.D. Cal. 2012) ("For the purposes of this subsection, sufficient ties to the community are generally found when a individual is 'born and raised' or resides

in the community."").  There, despite the claimant's established
ties to a neighboring community, that court stated, "Section
983(f)(1)(B) does not allow for strong ties to a neighboring
community to suffice as sufficient ties to the relevant
community."  Id.  Thus, in this case, the "community" in
§ 983(f)(1)(B) must at least be the United States, if not the
Washington, D.C. area.

     The claimants have no ties to this community or area, nor do
they allege that they have sufficient ties to this community.
Therefore, there is no assurance that the property will be
available should the claim go to trial.  This alone is sufficient
to deny relief since all five conditions under § 983(f)(1)(A)-(E)
must be satisfied to secure release of seized property.

     Additionally, the claimants fail to satisfy the fourth
condition -- that the hardship outweighs the risk of loss if the
property were to be released.  To satisfy this condition,
claimants must prove that "the claimant's likely hardship from
the continued possession by the Government of the seized property
outweighs the risk that the property will be destroyed, damaged,
lost, concealed, or transferred if it is returned to the claimant
during the pendency of the proceeding."  18 U.S.C.
§ 983(f)(1)(D).  The claimants state that the release of the
funds "would allow the legitimate business operations of [Hikmat
Shadman Logistics Services] to continue and make additional

revenue to ensure the availability of sufficient funds."
Claimants' Mem. at 40.  Additionally, in explaining the hardship
that the seizure has caused, the claimants referred to their
inability to pay their bills and expenses without the funds.  Id.
at 30.  This shows that the claimants intend to use the released
funds, making "[t]he likelihood that these funds, if released,
[would] be unavailable for trial in these proceedings . . .
almost assured."  $1,231,349.68 in Funds, 227 F. Supp. 2d at 129.
As in 8 Gilcrease Lane, where the requested funds were going to
be used to pay attorneys and other professionals, this intended
use of the funds means that the funds would not be available at
trial if they were released.  See 8 Gilcrease Lane, 587 F. Supp.
2d at 147 ("[T]he [c]ourt is not authorized to order the release
of funds that are guaranteed to dissipate upon their release with
no guarantee of an equivalent replacement.").  Moreover, "the
ease with which cash can be transferred or otherwise disposed of"
"weighs strongly in the government's favor," $1,231,349.68 in
Funds, 227 F. Supp. 2d at 129, particularly since "Section 983(f)
places great emphasis on ensuring the preservation of any
released property pending the final disposition of forfeiture
proceedings," 8 Gilcrease Lane, 587 F. Supp. 2d at 147 (quoting
Undetermined Amount of U.S. Currency, 376 F.3d at 265).  In the
claimants' reply, they do not retract or address their statements
that they intend to use the seized funds if the funds are

released.  Therefore, the claimants have failed to show that
their hardship outweighs the risk of loss of the funds.

III. UNITED STATES' MOTION FOR LEAVE TO FILE A SURREPLY

"The standard for granting a leave to file a surreply is
whether the party making the motion would be unable to contest
matters presented to the court for the first time in the opposing
party's reply." Lewis v. Rumsfeld, 154 F. Supp. 2d 56, 61
(D.D.C. 2001).  A surreply is not justified to correct "an
alleged mischaracterization." Id.

The United States seeks to file a surreply to address the
military tribunal's proceedings, as well as the current status of
Shadman's other assets.  As the claimants state in their
opposition, they discussed the military tribunal's proceedings in
their original motion for release of funds.  Claimants' Opp'n at
7.  Thus, addressing the military tribunal does not justify
filing a surreply because the issue is not a new matter, nor is a
surreply allowed to correct a "misstatement."  Additionally, a
surreply addressing Shadman's other assets is not warranted since
the claimants did not bring up the current status of Shadman's
other assets in their reply.

## CONCLUSION AND ORDER

The claimants have failed to prove that they are entitled to
immediate release of the property seized under § 983(f) because
there has been no seizure of a business in this case.  Even if

- 20 -

there had been a seizure of a business, they have failed to
satisfy the remaining four conditions for release under § 983(f).
Additionally, a surreply is unjustified because the claimants did
not bring up new matters in their reply.  Accordingly, it is
hereby

ORDERED that the claimants' motion [27] to release funds and
other property, be, and hereby is, DENIED.  It is further

ORDERED that the United States' motion [35] to file a
surreply be, and hereby is, DENIED.

SIGNED this 5th day of November, 2013.[4]


_____/s/_____
RICHARD W. ROBERTS
Chief Judge


_____

    [4]  The forfeiture statute calls for a decision on a petition
for a release of property to be rendered not later than 30 days
after the petition is filed unless the 30-day limitation is
extended by the court for good cause shown.  18 U.S.C.
§ 983(f)(5).  Thus, the deadline for this decision was originally
October 16, 2013.  However, the court found good cause to extend
that deadline.  The petition raised multiple issues, and attached
68 exhibits; the parties submitted six separate filings in this
round of briefing; and the last of the six filings was submitted
on October 11, 2013, just three business days before the decision
deadline.  Careful review and thoughtful consideration of all the
matters presented warranted an extension of the deadline.