UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
          v.                    )     Civil Action No. 12-1905 (RWR)
                                )
SUM OF $70,990,605, et al.,     )
                                )
          Defendants.           )
_____)
```

MEMORANDUM OPINION AND ORDER

Plaintiff United States filed this civil *in rem* forfeiture action, alleging that the defendant funds -- approximately $61.3 million in three different banks -- are the proceeds of a wire fraud and subject to seizure under 18 U.S.C. §§ 981, 983 and 984. Claimants Hikmat Shadman Logistics Services Co., Hikmat Shadman General Trading, LLC, Faizy Elham Brothers, Ltd., Everest Faizy Logistics Services, Hikmatullah Shadman, Najibullah, and Rohullah move under Federal Rule of Civil Procedure 65 for a preliminary injunction to release the funds held by the United States, to enjoin the government from harassing or threatening their witnesses and from transferring any assets of the claimants beyond the court's jurisdiction, to direct the United States to "gather, segregate, and preserve" evidence, and to direct the United States to identify any of the claimants' assets and any evidence about the claimants that have been transferred outside

of the United States' control.  Because the claimants' request to release the funds is moot, and because they have failed to show that they will suffer an irreparable injury or that other relevant factors favor relief, their motion for a preliminary injunction will be denied.

## BACKGROUND

The United States filed this civil forfeiture action and seized the defendant funds as the proceeds of a fraud.  The United States alleges that Hikmatullah Shadman, as a subcontractor and owner of Hikmat Shadman Logistics Services Company, "conspired to obtain payments from the United States for the transportation of military supplies in Afghanistan through the illegal and fraudulent use of the wires . . . [by making] bribe payments, fraudulently inflat[ing] prices, and caus[ing] the United States to be invoiced for and to make payments of $77,920,605 to two bank accounts in Afghanistan."  2d Am. Compl. at 6.

On August 27, 2013, Shadman, Najibullah, and Rohullah filed a verified claim and statement of interest in the seized property, asserting that they are the owners of the seized funds. Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture In Rem at 8.  They made these claims both individually, and on behalf of their companies.  Id. at 14-16. It appears that all the accounts are held in the name of the

companies, rather than the individuals, except for one account at Emirate National Bank.  Id. at 8-12.  The claimants then filed under 18 U.S.C. § 983(f) a motion for immediate release of funds, which has been denied.

The claimants now move under Federal Rule of Civil Procedure 65 for a preliminary injunction to suppress the warrants *in rem* and to release the claimants' property; to enjoin the government from "threatening or harassing" witnesses and transferring assets "beyond the jurisdiction of this Court;" and to direct the government to "gather, segregate, and preserve any and all evidence in any form in the possession of the United States or its agents" and "to identify any assets of Claimants or evidence related to Claimants that has been transferred outside United States control since the filing of Claimants' notice of appearance in this action."  Claimants' Mot. for Preliminary Injunctive Relief ("Claimants' Mot. for P.I.") at 5.  The United States opposes.  U.S.'s Opp'n to the Claimants' Mot. for Preliminary Injunctive Relief ("U.S. Opp'n").[1]  A hearing on the

---

[1]  In a reply brief, the claimants raise for the first time that "a claimant may request the pretrial suppression of these warrants for a lack of probable cause."  Claimants' Reply at 6. The claimants' entitlement to a probable cause hearing is unclear in the context of a civil forfeiture action of fungible property. Compare 18 U.S.C. § 985(e) (requiring a court to hold a "prompt post-seizure hearing" when real property is seized to allow a property owner to contest the basis of the seizure) with 18 U.S.C. § 984 (omitting the provision requiring a post-seizure pretrial hearing when fungible property is seized) and 18 U.S.C. § 983 (omitting a requirement for a post-seizure, pretrial

- 4 -

motion for a preliminary injunction was held on November 14, 2013.[2]

## DISCUSSION

"[I]njunctive relief is an 'extraordinary and drastic remedy,' and it is the movant's obligation to justify, '*by a clear showing,*' the court's use of such a measure." Citizens United v. FEC, 530 F. Supp. 2d 274, 278 (D.D.C. 2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)); see also Dorfmann v. Boozer, 414 F.2d 1168, 1174 (D.C. Cir. 1969) (holding that a preliminary injunction is available only when "normal legal avenues are inadequate"). The movant "carries the burden

---

hearing in the general rules for civil forfeiture actions and making no mention of such a hearing when a claimant petitions for an immediate release of the seized property under § 983(f)); see also United States v. Edwards, 856 F. Supp. 2d 42, 44-45 (D.D.C. 2012) (explaining that, under United States v. E-Gold, Ltd., 521 F.3d 411 (D.C. Cir. 2008), due process requires a post-deprivation, pretrial hearing on probable cause for *criminal defendants* only when the defendant has "'demonstrated the inability to retain counsel of [his] choice without access to the seized assets'" (quoting E-Gold, 521 F.3d at 415)).  In any event, this argument is first raised in the reply brief and accordingly will not be considered, Taitz v. Obama, 754 F. Supp. 2d 57, 61-62 (D.D.C. 2010) ("Courts ordinarily decline to consider arguments that are raised for the first time in a reply to an opposition.").  Furthermore, the claimants have not requested a probable cause hearing, nor have they shown that they are entitled to one.

   [2]  At the preliminary injunction hearing on November 14, 2013, the claimants submitted a bench brief which contained a summary of the argument and some of the exhibits filed with other motions.  However, the brief was not provided to the court or the opposing party in advance of the hearing and has not been filed with the court.  Accordingly, only the docketed filings and the arguments made at the hearing have been considered.

of persuasion by a clear showing 1) of a substantial likelihood of success on the merits, 2) of irreparable injury if the injunction is not issued, 3) that the injunction would not substantially injure other interested parties, and 4) that the injunction is in the public interest." Spadone v. McHugh, 842 F. Supp. 2d 295, 300 (D.D.C. 2012) (citing Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004)). "The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor." In re Navy Chaplaincy, 516 F. Supp. 2d 119, 122 (D.D.C. 2007) (citing CSX Transp., Inc. v. Williams, 406 F.3d 667 (D.C. Cir. 2005)); see Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291-92 (D.C. Cir. 2009).[3] The claimants here seek more than a prohibitive injunction that would maintain the status

---

[3] Two judges on the Davis panel, see id. at 1295-96 (Kavanaugh, J. and Henderson, J., concurring), though, questioned the continuing vitality of, but did not squarely jettison, this sliding scale approach in light of dictum in Winter v. National Resources Defense Council, Inc., 555 U.S. 7, 20 (2008) (listing the four factors a plaintiff must establish, but neither invoking nor rejecting the sliding scale method). The most that can be said of what Winter decided regarding standards for securing injunctive relief is that a plaintiff must demonstrate that irreparable injury is "likely," not just "possible," 555 U.S. at 22, and that the balance of equities and the public interest were sufficient in that case to weigh against injunctive relief. 555 U.S. at 32; see also Sherley v. Sebelius, 644 F.3d 388, 392-393 (D.C. Cir. 2011) (opinion by Ginsburg, J., joined by Griffith, J.) (stating that "[l]ike our colleagues [in Davis], we read Winter at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction'").

quo; they seek a mandatory injunction that would alter the status quo.  "In this Circuit, 'the power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised.'"  Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d 30, 36 (D.D.C. 2000) (quoting Dorfmann, 414 F.2d at 1173).[4]

---

[4]  The claimants' request to suppress the seizure warrants and release the funds is moot because the claimants' petition for release of funds has already been denied.  Additionally, it is not even clear that the claimants can request return of their property through a motion for a preliminary injunction.  See, e.g., United States v. Contents of Accounts, No. 3:10-CV-228-H, 2010 WL 2556849, at *7-9 (W.D. Ky. June 18, 2010) (finding that a motion for injunctive relief is inconsistent with the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions), aff'd in part, 629 F.3d 601 (6th Cir. 2011).  Insofar as the claimants' request for suppression of the warrants is separate from their request for release of funds, the claimants fail to demonstrate that their request to suppress the seizure warrants is appropriately resolved through a preliminary injunction.  They have cited no case law that supports this proposition, or that the appropriate remedy for a seizure of property pursuant to an allegedly defective seizure warrant is suppression of the warrant and return of the property.  The claimants do not discuss why suppression of the seizure warrant is appropriate, but merely request once at the beginning of their opening brief that the warrants be suppressed.  Claimants' Mot. for P.I. at 5.  They include no request for suppression of the warrants as part of the requested orders.  See id. at 11-12.  The request to suppress the warrants seems to be a part of the request to release the funds.  However, the plain language of § 983 reflects that the only method for returning property before trial is through a § 983(f) petition, which the claimants have filed.  Cf. United States v. Real Prop. Commonly Known as 16899 S.W. Greenbrier, Lake Oswego, Clackamas Cnty., Or., 774 F. Supp. 1267, 1274-75 (D. Or. 1991) (finding that a request for return of property under Federal Rule of Criminal Procedure 41(g), which allows "[a] person aggrieved by an unlawful search and seizure of property or by deprivation of property may move for the property's return," is inapplicable in a civil forfeiture case).

- 7 -

I.  IRREPARABLE INJURY

     A showing of an irreparable injury traditionally "is a
threshold requirement for a preliminary injunction," City of
Moundridge v. Exxon Mobil Corp., 429 F. Supp. 2d 117, 127 (D.D.C.
2006), and parties must meet "a high standard for irreparable
injury," Chaplaincy of Full Gospel Churches v. England, 454 F.3d
290, 297 (D.C. Cir. 2006).  "[T]he injury must be both certain
and great; it must be actual and not theoretical.  The moving
party must show [t]he injury complained of is of such *imminence*
that there is a clear and present need for equitable relief to
prevent irreparable harm."  Id. (citations and internal quotation
marks omitted) (citing Wis. Gas Co. v. FERC, 758 F.2d 669, 674
(D.C. Cir. 1985) (per curiam)).  "The possibility that adequate
compensatory or other corrective relief will be available at a
later date, in the ordinary course of litigation weighs heavily
against a claim of irreparable harm."  Wis. Gas Co., 758 F.2d at
674 (quoting Va. Petroleum Jobbers Ass'n v. Federal Power Comm'n,
259 F.2d 921, 925 (D.C. Cir. 1958)).

     "Implicit in each of these principles is the further
requirement that the movant substantiate the claim that
irreparable injury is 'likely' to occur.  Bare allegations of
what is likely to occur are of no value since the court must
decide whether the harm will *in fact* occur."  Id. at 674
(citations omitted).  Rather,

[t]he movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future.  Further, the movant must show that the alleged harm will directly result from the action which the movant seeks to enjoin.

Id.

The claimants argue that "the failure to grant this motion will result in the destruction of Claimants' legitimate business."  Claimants' Mot. for P.I. at 11.  The destruction of a business can potentially establish an irreparable injury.  See Wis. Gas Co., 758 F.2d at 674 ("Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business.").  However, the claimants have not demonstrated how the requested injunctive relief is necessary to prevent the destruction of their business.  While releasing the defendant funds may affect the functioning of their business, the claimants have already failed to demonstrate that they are entitled to this relief.  Their remaining request for an injunction against the government to protect potential witnesses and evidence is devoid of factual support for how it will prevent the destruction of the claimants' business.  See Wis. Gas Co., 758 F.2d at 674 (requiring that the movant "substantiate" the claim with more than "[b]are allegations").  They request that "any interrogation relating to the facts alleged in this case by the government be conducted under Court supervision with counsel for both parties present," and seek "[a]

government-wide Order requiring the U.S. Government to gather and preserve any evidence and assets of Claimants in its possession." Claimants' Mot. for P.I. at 11.  They also request a "[p]rotective Order regarding the taking and preservation of testimony and evidence that may impact National Security or contain classified information."  Id. at 12.  These measures would relate to taking and preserving evidence while the claimants contest the forfeiture action.  But, the claimants make no showing of how the measures would save or influence the claimants' ability to continue business operations, or how the measures are in any way even related to their business operations.  Accordingly, the claimants have failed to show that their irreparable injury is the destruction of their business.

The claimants argue that "[t]he bases for these requests have all been filed with the Court" and they "incorporate[] by reference" facts in their previous motions.  Claimants' Mot. for P.I. at 5-6, 11.  In a previous motion, the claimants contend that the government "has threatened U.S. Special Forces witnesses who want to testify in this case" and that the government "has hid[den] vital evidence from this Court substantially contradicting the allegations made here, possibly despoiled and not preserved such vital evidence."  Claimants' Request for Status Conference, and Mot. for Protective and Preservation

Orders ("Claimants Mot. for Protective and Preservation Orders")
at 5.

Threatening witnesses may implicate irreparable injury.  See
Arrendondo v. Delano Farms Co., No. CV F 09-1247, 2010 WL
3212000, at *2 (E.D. Cal. Aug. 10, 2010) (finding that documented
retaliatory threats against witnesses and potential class members
is sufficient to show a likelihood of irreparable injury to the
plaintiffs).  "[T]he chilling effect of unrestrained retaliation
can be irreparable injury justifying a preliminary injunction."
Adam-Mellang v. Apartment Search, Inc., 96 F.3d 297, 301 (8th
Cir. 1996) (discussing retaliation in Title VII litigation as
chilling potential witnesses and possibly chilling other
employees from exercising their rights).  However, "a chilling
effect of this nature will not be presumed.  It is an issue of
fact that the [party] seeking a preliminary injunction must
prove."  Id.

The claimants allege that the government has "threatened
these witnesses," Claimants' Mot. to Dismiss at 9 n.5, and that
the government has "told them to keep quiet and threatened
adverse actions against them if they did not," Claimants' Mot.
for P.I. at 7.  However, the claimants have not provided evidence
of such threats.  The claimants supply a declaration from Jerry
Bradley stating that because he has "spoken out about my belief
in Hik's innocence, and spoken to investigators on his behalf,"

- 11 -

he has been "interrogated, accused of being a participant in illegal activities and informed that [he is] under investigation" and his superiors have been notified that he is under investigation.  Claimants' Mot. for Immediate Release of Funds, Ex. 59 ¶ 9.  However, the declaration does not state that the government has done more than question and investigate the witness; the declaration does not allege threats of adverse action such as termination.  Cf. Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 511 (2d Cir. 2005) (affirming a district court's conclusion that a negative performance evaluation "does not itself cause irreparable injury, nor does it threaten termination").  Moreover, the claimants have failed to show that there was retaliation and that the retaliation is having a chilling effect on witnesses coming forward, or that investigating a potential witness is itself sufficient to prove irreparable harm.  E.g., Jones v. Dallas Cnty., No. 3:11-CV-2153-D, 2013 WL 4045291, at *3 n.6 (N.D. Tex. August 9, 2013) (finding that plaintiffs' "vague allegation" about intimidation "is alone insufficient to establish a substantial threat that they will suffer irreparable injury").

Destruction of evidence may also rise to the level of irreparable harm, cf. Am. Friends Serv. Comm. v. Webster, 485 F. Supp. 222, 233 (D.D.C. 1980) (finding that the plaintiff "will suffer significant, irreparable injury if defendants' continuing

- 12 -

destruction of FBI files [in accordance with its record
destruction program] is not enjoined"), but the claimants have
not provided more than bare allegations that the government has
destroyed evidence, see, e.g., Claimants' Mot. for P.I. at 10
(stating that the government has "tried to destroy" evidence);
Claimants' Mot. for Protective and Preservation Orders at 5
(stating that the government "*possibly* despoiled and not
preserved such vital evidence" (emphasis added)).  Even if the
claimants' fears are well-founded, that falls well short of the
imminence required for the court to grant the "extraordinary and
drastic remedy" of a preliminary injunction.  Mazurek, 520 U.S.
at 972; see also Exxon Corp. v. F.T.C., 589 F.2d 582, 594 (D.C.
Cir. 1978) ("Injunctions . . . will not issue to prevent injuries
neither extant nor presently threatened, but only merely feared."
(internal quotation marks omitted)); United Gov't Sec. Officers
of Am. Int'l Union v. Serv. Emps. Int'l Union, 646 F. Supp. 2d
91, 94-95 (D.D.C. 2009); It's a 10, Inc. v. Beauty Elite Grp.,
Inc., 932 F. Supp. 2d 1325, 1335 (S.D. Fla. 2013) (refusing to
enter a preliminary injunction to prevent the defendant from
destroying or tampering with evidence because "the purported harm
is speculative, rather than actual or imminent" since the
plaintiff offered no proof that the defendant was likely to
destroy evidence).

- 13 -

In addition to failing to provide proof that evidence has
been destroyed, the claimants have not identified what evidence
the government has allegedly despoiled, either in their motion
for a preliminary injunction or in their motion for protective
and preservation orders.  Moreover, they have provided no proof
that the government has threatened to destroy any evidence.
Conclusory statements of what has occurred without factual
support is insufficient to justify the extraordinary remedy of a
preliminary injunction.  See Wis. Gas Co., 758 F.2d at 674;
Beattie v. Barnhart, 663 F. Supp. 2d 5, 9-10 (D.D.C. 2009).  This
allegation, without proof of destroyed evidence or a threat of
destroying evidence, does not demonstrate that there is an
*imminent* irreparable injury.  See Spadone, 842 F. Supp. 2d at 300
n.6 (explaining that Winter requires that a movant "demonstrate
that irreparable injury is 'likely,' not just 'possible'").

Similarly, the claimants have not made clear how the United
States has "transferr[ed] Claimants' assets beyond the
jurisdiction of this Court."  Claimants' Mot. for P.I. at 6.  As
is discussed in more detail in the memorandum opinion and order
resolving the claimants' motion for release of funds, the court's
jurisdiction to determine ownership extends solely over the
seized defendant assets.  Insofar as the claimants are asserting
that the government has transferred the claimants' business
property outside of the jurisdiction of this court, business

- 14 -

property which was not seized under any seizure warrant associated with this *in rem* action has never been within the jurisdiction of this court in the first place. See 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1070 (3d ed. 1998) ("[W]hen jurisdiction is based on property the resulting judgment can affect only the property that has been brought before the court."). Insofar as the claimants are claiming that the government has improperly transferred the seized defendant funds outside of the jurisdiction of this court, they have presented no such evidence. Given the claimants' repeated requests for release of those funds, those assets apparently remain within the United States' custody.

At best, the claimants have provided some factual support for their assertion that the government has not disclosed all of the information in its possession in its complaint or motions. See Claimants' Mot. for P.I. at 7-9 (identifying information that the government "hid from this Court"). However, the claimants have not shown either how the non-disclosure is relevant to their request for a preliminary injunction or how it will cause irreparable injury. If anything, this information goes to the merits of the government's forfeiture action. Any injury that the claimants may suffer from the government's non-disclosure can be remedied through the normal course of litigation, if the action proceeds to an adjudication on the merits.

- 15 -

Finally, that the claimants filed the pending motion for protective and preservation orders cuts against their argument that any alleged injury is irreparable and that no other adequate remedy exists.  The claimants have not provided any evidence demonstrating why an order to protect witnesses from government threats and to preserve evidence from government destruction, if ultimately found to be warranted, would not be a sufficient remedy.  Without that, there is simply "no justification for the court's intrusion into the ordinary process of administration and judicial review."  Va. Petroleum Jobbers Ass'n, 259 F.2d at 925.[5]

---

[5]  The claimants belatedly argue that there is no adequate remedy at law because 18 U.S.C. § 983(f), as applied, violates their constitutional rights.  Claimants' Notice of Supplemental Authority in Support of Mot. for Preliminary Injunctive Relief at 2.  However, a remedy is not inadequate merely because the claimants were unsuccessful when pursuing that remedy, and the claimants have provided no case law to support the argument that a remedy is inadequate as applied if, when pursuing that remedy, the claimant is unsuccessful.  Further, the claimants still have an adequate remedy for the ultimate release of their funds via participation in the forfeiture action on the merits: if the claimants succeed in proving that forfeiture is unjustified or that the government has not met its burden of proof, the claimants' funds will be released.  Moreover, the claimants' constitutional claim lacks merit because § 983 does not discriminate on the basis of national origin, nor do the claimants provide persuasive evidence that there was discriminatory intent based on the "disproportionate impact on one national origin over another."  Id. at 3 (citing, in part, Yick Wo v. Hopkins, 118 U.S. 356, 374 (1886)).  In Yick Wo, the disproportionate impact was evidence, along with the disparate application of the regulation at issue, that the regulation was a pretext for discrimination.  118 U.S. at 374.  The claimants present no proof here that § 983 is a pretext for discrimination.  Additionally, § 983 does not discriminate on the basis of national origin because others who do not have ties to the relevant community, regardless of their national origins, would

- 16 -

II.  LIKELIHOOD OF SUCCESS ON THE MERITS

     The inadequacy of the claimants' showing that an irreparable injury is likely to occur significantly heightens the claimants burden to prove likelihood of success on the merits.  See Davis, 571 F.3d at 1292 (explaining that under the sliding scale approach, "if substantial harm to the nonmovant is very high and the showing of irreparable harm to the movant very low, the movant must demonstrate a much greater likelihood of success"); cf. Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1507 (D.C. Cir. 1995) ("Given the inadequacy of [the movant's] prospects for success on the merits, there may be no showing of irreparable injury that would entitle him to injunctive relief.").  The claimants must show "a substantial likelihood of success on the merits."  Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev., 639 F.3d 1078, 1083 (D.C. Cir. 2011).

     The claimants argue that Shadman has been "investigated" and "exonerated" of wrongdoing by both the Afghanistan government and a military tribunal.  Claimants' Mot. for P.I. at 6.  However, it

---

similarly be denied release of their funds.  See, e.g., United States v. 2005 Mercedes Benz E500, 847 F. Supp. 2d 1211, 1215 (E.D. Cal. 2012) (denying release of the claimant's property despite the claimant being an American citizen).  Finally, as is discussed above, it is not clear, and the claimants have provided no persuasive authority to support, that the claimants can request a release of their funds through a motion for a preliminary injunction.  See supra at n.4.

is not clear from the record that the two tribunals considered or ruled upon the allegations at issue here.  The regulations governing military detentions cited by the United States during oral argument provide the military with authority to intern individuals who meet certain criteria -- primarily related to their involvement in terrorism or hostilities against the United States -- and are a threat to the United States.  <u>See</u> U.S.'s Mot. for Leave to File Surreply Mem. in Opp'n to Claimants' Mot. for Immediate Release of Seized Property Pursuant to 18 U.S.C. § 983(f), attach. 3.  If a detained individual does not meet the criteria or is not a threat, then the United States must release that individual.  <u>Id.</u>  Here, the claimants have offered no evidence that the military acted inconsistently with that regulation.  In fact, the evidence that the claimants provided about the military tribunal reflects that the military tribunal was concerned with whether Shadman met the conditions for internment, not whether he committed the acts alleged in the complaint here.  Claimants' Mot. to Dismiss, Ex. 23 ("By a vote of 3 to 0, the board members found that the detainee *did not meet the criteria for internment* and should be released." (emphasis added)); <u>see also</u> Claimants' Mot. to Dismiss at 21-22 ("The primary purpose of such a tribunal is to determine if he was an 'enemy combatant' and had committed terrorist or illegal conduct that would justify continued detention.").  The claimants also

- 18 -

argue that "[t]ellingly, the government has not offered the detention file and report of the military hearing's proceedings." Claimants' Reply at 19; see also id. at 20 ("If the government really wanted this Court to know what transpired leading up to and during the military hearing, it would have produced the entire investigative record or, at the very least, the tribunal proceedings summary."). However, the claimants' argument does not comport with the procedural posture here. It is the claimants' burden to make a clear showing that they are likely to succeed on the merits. Thus, it is their burden to bring evidence that the military tribunal exonerated Shadman of the very allegation at issue here, not the government's burden to provide evidence to rebut that allegation.

Similarly, it appears that the Afghanistan proceeding did not consider the same allegations as are leveled here because it primarily considered whether Shadman engaged in "forgery, deception, and manipulation in the contract documents" between Shadman and TOIFOR, a contractor, in violation of Afghanistan law. See Claimants' Mot. to Dismiss, Ex. 26. ("[P]rovoking a criminal claim is not justifiable in accordance with the provision of article (8) of the detection and investigation law."); id. ("[I]nterference of the Attorney General Office in the issue of signing contracts, which has a legal origin, is explicitly against decree number (45) . . . ."); id. ("[N]ot only

- 19 -

the issued order of the mentioned court . . . are not applicable
lawfully but also the above order is clearly in contradiction
with article (40) of the country's constitution."); id.
("Therefore, *in order to avoid violation of the country's
applicable law*, the papers are not process-able in the current
situation due to a lack of sufficient binding reasons until
article (169) of the penal procedure code relying on article (39)
of the provisional penal procedure code is realized." (emphasis
added)).  Furthermore, the court in Afghanistan seemed primarily
concerned with whether a mutual legal assistance request from the
United States complied with Afghanistan law.  See, e.g, id. ("In
accordance with the clarity of the above articles, the court
order of the USA's Columbia is not applicable in Afghanistan.");
see also U.S. Opp'n to Mot. to Dismiss at 13 (explaining that the
Afghanistan judgment was in response to the "United States'
mutual legal assistance request to restrain the original
defendant accounts").  Thus, it is not clear that the Afghanistan
court even considered whether Shadman violated United States law
by, as alleged by the United States, engaging in a conspiracy to
defraud the United States through bribery and price fixing, or if
the defendant assets are subject to forfeiture under 18 U.S.C.
§§ 981, 983, or 984.

    Even if the Afghanistan court determined that Shadman did
not conspire to violate United States law, the claimants must

- 20 -

still prove that they are likely to succeed on the merits of the
forfeiture action -- that is, they must make a clear showing that
the defendant assets are not subject to forfeiture.  Thus, not
only is it the claimants' burden to produce sufficient evidence
of their factual allegations, but it is also the claimants'
obligation to show how an exoneration affects the claimants'
likelihood of success on the merits.  The claimants have provided
no legal or factual argument that an exoneration in a foreign
action or a military proceeding is determinative of whether a
civil forfeiture of the defendant assets is appropriate.  The
United States, on the other hand, provides legal support for the
argument that "an acquittal on criminal charges is not
dispositive of whether a wire fraud conspiracy occurred for the
purposes of forfeiture under 18 U.S.C. § 981(c)."  U.S. Opp'n at
14 (citing United States v. Real Prop. Identified as: Parcel
03179-005R, 287 F. Supp. 2d 45, 62 (D.D.C. 2003) for the
proposition that "because 'a criminal conviction is not a
prerequisite for civil forfeiture,' it did not matter that the
defendant's conviction for money laundering had been vacated"
(quoting id.)).  Without the claimants providing legal authority
to the contrary, it appears that even if another proceeding
determined that Shadman was innocent of the underlying offense,
that is not dispositive of the civil forfeiture action.
Therefore, the claimants have failed to provide sufficient

evidence that because Shadman was ostensibly exonerated by the military and by an Afghanistan court, the claimants are likely to succeed on the merits of the forfeiture action.

The claimants also asserted at oral argument that the act of state doctrine and international comity demonstrate their likelihood of success on the merits.  First, the claimants argue that the act of state doctrine requires dismissal of the case because "Afghanistan has already issued an Executive Order that declared Mr. Shadman not guilty under Afghan laws."  Claimants' Mot. to Dismiss at 33.  Second, the claimants argue that the requested relief would "directly invalidate[] the Afghan Attorney General's Executive Order that claimed exclusive authority over this civil action."  Claimants' Reply on Claimants' Mot. to Dismiss at 9.

The act of state doctrine "applies when the relief sought or the defense interposed would require a court in the United States to declare invalid the official act of a foreign sovereign performed within its boundaries."  United States v. One Gulfstream G-V Jet Aircraft, Civil Action No. 11-1874 (RC), 2013 WL 1701831, at *6 (D.D.C. April 19, 2013) (citing W.S. Kirkpatrick & Co., Inc. v. Envtl., Tectonics Corp., Int'l, 493 U.S. 400, 409 (1990)).  However, as is explained above, the plaintiff's requested relief would not require that any official Afghan act be declared invalid because a determination of guilt

- 22 -

or innocence is not dispositive of whether the defendant assets should be civilly forfeited under United States' law.  Second, the Afghanistan Executive Order would not need to be declared invalid because it determined that "Mr. Shadman [was] not guilty under Afghan law," Claimants' Mot. to Dismiss at 33, not whether the defendant assets are subject to forfeiture under United States' law.  Finally, the claimants argue that the Afghanistan government asserted exclusive jurisdiction, but the exhibits they cite do not explicitly claim exclusive authority to adjudicate this *in rem* civil forfeiture.  See Claimants' Mot. to Dismiss, Ex. 26 ("[I]t is an authority of the courts of the IRA . . . ."); id. ("[A]ddressing the issue is an authority of the courts of Afghanistan . . . .").  At best, Afghanistan appears to be stating that it has jurisdiction, but the document does not discuss exclusive jurisdiction or rule out concurrent jurisdiction.  "[T]he party raising the [act of state doctrine as a] defense bears the burden to affirmatively show that an act of state has occurred," Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, Civil Action No. 11-1735 (RLW), 2013 WL 5290126, at *8 (D.D.C. Sept. 20, 2013), and the claimants have failed to do so here.

Assuming that the Afghanistan court did make some assertion of exclusive jurisdiction, it is also unclear what the Afghanistan court is asserting exclusive jurisdiction over and

for what duration.  It is not evident from the facts presented
that an act of state would need to be invalidated here because
the contours of that ostensible act of state have not been
defined by the claimants.[6]  Even if this court's factual findings
must necessarily "cast doubt upon the validity of the foreign
sovereign's acts," the act of state doctrine is inapplicable if
the foreign act of state does not need to be invalidated.
Kirkpatrick, 493 U.S. at 406 ("Regardless of what the court's
factual findings may suggest as to the legality of the Nigerian
contract, its legality is simply not a question to be decided in
the present suit, and there is thus no occasion to apply the rule
of decision that the act of state doctrine requires.").

---

   [6]  Moreover, the claimants have provided no legal support
for the argument that a foreign court's assertion of exclusive
jurisdiction is a proper exercise of its sovereign power, and
that it strips a United States district court of jurisdiction to
hear a case that is properly within its jurisdiction, see One
Gulfstream, 2013 WL 1701831, at *8 (stating that "the party
invoking the doctrine must establish that the act was an exercise
of its sovereign power"), particularly when, as here, the action
in the United States began before the foreign court's ostensible
assertion of exclusive jurisdiction.  The claimants argue that
"Afghanistan has properly asserted exclusive jurisdiction in this
case because no agreement between the United States and
Afghanistan prevents such an assertion."  Claimants' Mot. to
Dismiss at 30.  Even assuming that there is no agreement that
prevents such an assertion, the claimants have provided no
factual or legal support for the affirmative proposition that,
absent an agreement to the contrary, Afghanistan can legally
assert *exclusive* jurisdiction over an individual or a set of
facts and subsequently divest another court of jurisdiction over
a case properly before it.

- 24 -

Similarly, the claimants' international comity argument
fails to show that they are likely to succeed on the merits of
the forfeiture action.  International comity "provides that a
U.S. court should give full effect to a foreign judgment that has
been rendered with impartiality and due process."  One
Gulfstream, 2013 WL 1701831, at *4.  Additionally, "a court will
abstain from exercising jurisdiction in the interests of
international comity only where 'there is a true conflict between
domestic and foreign law.'"  United States v. All Assets Held at
Bank Julius Baer & Co., Ltd., 772 F. Supp. 2d 205, 210 (D.C. Cir.
2011) (quoting Sarei v Rio Tinto, PLC, 487 F.3d 1193, 1211 (9th
Cir. 1997)).

The claimants assert that Afghanistan has three comity
interests: "(1) the recognition of its asserted jurisdiction; (2)
the honoring of its Afghan laws; and (3) the enforcement of its
foreign judgment and Executive Order."[7]  Claimants' Mot. to
Dismiss at 29.  With respect to the first interest, as is
discussed above, it is not clear that Afghanistan has in fact

---

[7]  It is also not clear if the Afghanistan court's decision
is final.  See Claimants' Mot. to Dismiss at 10 (explaining that
"this case is now before the Appeal Court of Kabul Province").
See Ricart v. Pan Am. World Airways, Inc., Civil Action No. 89-
0768 (HHG), 1990 WL 236080, at *1 (D.D.C. Dec. 21, 1990) ("A
judgment of a foreign court is not entitled to automatic
recognition by courts in the United States, but may be recognized
by principles of international comity . . . .  [F]or any foreign
judgment to be enforced by this court it must be a final judgment
according to the jurisdiction in which it was rendered.").

claimed exclusive jurisdiction, nor is it clear that
international comity would counsel deference if a foreign country
has claimed exclusive jurisdiction in a case where there is
concurrent jurisdiction.  Cf. Laker Airways Ltd. v. Sabena,
Belgian World Airlines, 731 F.2d 909, 915-16 (D.C. Cir. 1984)
(discussing the issuance of an antisuit injunction and stating
that "[a]ccession to a demand for comity predicated on the
coercive effects of a foreign judgment usurping legitimately
concurrent prescriptive jurisdiction is unlikely to foster the
processes of accommodation and cooperation which form the basis
for a genuine system of international comity.").  The claimants
have offered no case law that supports the argument that
international comity requires a United States district court to
abdicate its jurisdiction in the face of a foreign court's
assertion of exclusive authority.  Without such legal authority
mandating otherwise, "[t]he short of the matter is this: Courts
in the United States have the power, and ordinarily the
obligation, to decide cases and controversies properly presented
to them."  Kirkpatrick, 493 U.S. at 409.

     With respect to the second asserted comity interest,
international comity here does not require that the court impugn
Afghan law.  The claimants here have failed to identify a
conflict between United States law and Afghanistan law with
respect to civil forfeiture or wire fraud.  Rather, the claimants

rest on general assertions that, because the Afghanistan court
has declared Shadman innocent and has ostensibly asserted
exclusive jurisdiction, the court should defer to the Afghanistan
judgment and "respect" Afghanistan's "comity interest in using
its own court system."  See Claimants' Mot. to Dismiss at 29-32.
However, there is no evidence that the present case will harm or
is in conflict with those interests since this case in no way
limits Afghanistan's ability to pursue its own case based on its
own law, as Afghanistan has already done.  The case at bar is
premised solely on a violation of United States law.  Further,
comity is inapplicable when deference "'would be contrary to the
policies or prejudicial to the interests of the United States.'"
One Gulfstream, 2013 WL 1701831, at *6 (quoting Pravin Banker
Assocs., Ltd. v. Banco Popular Del Peru, 109 F.3d 850, 854 (2d
Cir. 1997)).  When the Executive Branch decides to bring a case,
the policies undergirding the principle of international comity
also have less force.  Id. ("Thus, the Executive Branch's
decision to bring this case could be viewed as evidence of its
judgment that the delicate balance of foreign affairs would not
be disturbed by this lawsuit.").

     With respect to the third asserted comity interest, the
claimants have failed to provide evidence that the proceeding was
done in accordance with due process.  The claimants state that,
during the proceeding, the United States government's complaint

and evidence located in Afghanistan were examined and that
Shadman himself was interviewed.  Claimants' Mot. to Dismiss at
29-30.  However, the claimants do not provide evidence that the
United States government -- a party in the instant dispute --
participated in the proceedings, or that the United States
government had the opportunity to produce evidence.  See One
Gulfstream, 2013 WL 1701831, at *4 (explaining that there must be
"due citation or voluntary appearance by the defendant"); Int'l
Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV,
347 F.3d 589, 594 (5th Cir. 2003) (stating a foreign court's
judgment should be conclusive under the principles of
international comity when, among other things, "the relevant
parties had an opportunity to be heard"); Cunard S.S. Co. v.
Salen Reefer Servs. AB, 773 F.2d 452, 457 (2d Cir. 1985) ("The
rationale underlying the granting of comity to a final foreign
judgment is that litigation should end after the parties have had
an opportunity to present their cases fully and fairly to a court
of competent jurisdiction.").

Finally, the claimants' remaining assertions about the
substance of the government's complaint -- such as the argument
that the money was merely a donation, not a bribe -- are
insufficient to tip the scales in their favor because it is
directly contested by the government's allegations in the
complaint.  Here, the "host of contested factual issues"

precludes "a determination at this time as to which party is likely to succeed on the merits." Ideassociates, Inc. v. Ideatech, Inc., 704 F. Supp. 294, 295 (D.D.C. 1989).  And since the claimants fail to demonstrate that an irreparable harm is likely, the claimants' weak showing of likelihood of success on the merits does not rescue them.  See Aviles-Wynkoop v. Neal, Civil Action No. 13-1240 (JDB), 2013 WL 5739214, at *4 (D.D.C. Aug. 27, 2013) (explaining that, under the sliding scale approach, if the movant "'makes a particularly weak showing on one factor . . . the other factors may not be enough to compensate'" (quoting Morgan Stanley DW Inc. v. Rothe, 150 F. Supp. 2d 67, 72 (D.D.C. 2001)).

III. ADDITIONAL FACTORS

Nor do the remaining factors tilt in favor of granting the claimants the relief they seek.  The claimants argue that an injunction would not cause injury to the government "for a multitude of reasons, including the fact that it has failed to state a proper claim, relied upon incompetent evidence, frustrated the ability of favorable witnesses to present evidence, and ignored contrary determinations by a United States Military Tribunal and an Afghanistan Special Court," and that the injunction "is not contrary to the public interest because Claimants have properly asserted their standing, their rights to dismissal of this action, and early release of their assets (and

- 29 -

due process regarding the same)." Claimants' Mot. for P.I. at 11. To the contrary, there may be inherent harm in a broad protective order which could bar the government from questioning individuals subject to a criminal investigation. See U.S. Opp'n at 9. While the claimants contend that the government is "persecuting" the witnesses that the injunction seeks to protect, Claimants' Mot. for P.I. at 8, the claimants do not contest that these individuals are under investigation. Moreover, the claimants have made no showing that there is a strong public interest in favor of issuing a preliminary injunction to preserve evidence that the government has not even threatened to destroy, or to protect witnesses that the government has not prevented from providing evidence. Ultimately, the claimants' requests can be appropriately resolved in the context of civil discovery and their pending motions, and a preliminary injunction is an inappropriate tool for addressing the claimants' concerns about protecting witnesses and preserving evidence.

<u>CONCLUSION AND ORDER</u>

Because the claimants have failed to demonstrate that they will suffer an irreparable harm or that the relief they seek is warranted by other relevant factors, they are not entitled to a preliminary injunction. Accordingly, it is hereby

ORDERED that the claimants' motion for a preliminary injunction [42] be, and hereby is, DENIED.

- 30 -

SIGNED this 25th day of November, 2013.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge