IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No.:      1:12-cv-1905 (RWR) |
| | § | Judge:         Richard W. Roberts |
| THE SUM OF $70,990,605, *et al*., | § | Date Filed:    March 18, 2014 |
| | § | |
| Defendants *in rem*. | § | |
| _____ | § | |

## CLAIMANTS' ANSWER TO SECOND AMENDED VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COME NOW, Claimants, Hikmat Shadman Logistics Services, Hekmat Shadman General Trading, LLC, Faizy Elham Brothers, Ltd., Everest Faizy Logistics Services, Hikmatullah Shadman, Najibullah, and Rohullah (the "Shadman Claimants"), each of whom, through their undersigned counsel, hereby respectfully submits their Answer to the United States' Second Amended Verified Complaint For Forfeiture *In Rem* ("the Complaint") as follows.

All paragraph references herein are to the Complaint.  By use of the Complaint headings and/or sub-headings in this Answer, the Shadman Claimants do not admit to the characterizations contained in the United States' (the "Government") headings and/or sub-headings.

## I.      NATURE OF ACTION

1.      The Shadman Claimants admit that the Government purports to proceed as set forth in Paragraph 1 of the Complaint, but deny the application and sufficiency of the legal citations contained therein.

2.      Paragraph 2 of the Complaint calls for legal conclusions, to which no response is required.  To the extent a response is deemed required, the allegations are denied.

3.       Paragraph 3 of the Complaint calls for legal conclusions, to which no response is required.  To the extent a response is deemed required, the allegations are denied.  The Shadman Claimants assert that the Government has not properly and timely commenced this civil forfeiture action under Section 984 because it was not commenced within one year of any alleged offense.

4.      Paragraph 4 of the Complaint calls for legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

5.      Paragraph 5 of the Complaint, first sentence calls for legal conclusions, to which no response is required; however, to the extent a response is required, the Shadman Claimants deny that any amounts of funds allegedly deposited into accounts at Afghanistan International Bank are the proceeds of any wire fraud or wire fraud conspiracy and assert that the relevant bank statements are the best evidence of their contents.  Regarding the second sentence of Paragraph 5, the Shadman Claimants deny that they were served or received notice of the original complaint dated November 20, 2012, and further deny that any criminal proceeds were transferred to accounts at Bank Alfalah and Emirates NBD Bank.  Furthermore, the Government's characterization of proceeds in the identified bank accounts as "criminal proceeds" calls for a legal conclusion and is denied, and further assert that the relevant bank statements are the best evidence of their contents.  In regards to the first part of the third sentence of Paragraph 5, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; however, the second part of the third sentence of Paragraph 5 calls for a legal conclusion to which no response is required. To the

extent a response is required, the Shadman Claimants deny that "defendant properties are subject to forfeiture pursuant to 18 U.S.C. § 981(k)."

## II.    DEFENDANTS

6(a) – (e).  The Shadman Claimants admit that the Government purports to proceed against the defendants *in rem* identified in Paragraphs 6(a)–6(e) of the Complaint, but lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them.  The Shadman Claimants further assert that the relevant bank statements for the named accounts are the best evidence of their contents.

## III.    JURISDICTION AND VENUE

7.    Paragraph 7 of the Complaint calls for legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied (Doc 84).

8.    Paragraph 8 of the Complaint calls for legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied (Doc 84).

9.    Paragraph 9 of the Complaint calls for legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied (Doc 84).

## IV.    OVERVIEW

10.    Paragraph 10 of the Complaint calls for legal conclusions to which no response is required.  To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny the allegations contained therein, with the exception that the Shadman Claimants admit that Hikmatullah Shadman has also been known or referred to as "Hikmatullah Sadullah" because of his father's name.

11(a) – (b).   The Shadman Claimants admit that the Government purports to have proceeded against the defendants *in rem* identified in Paragraphs 11(a)–(b) of the Complaint, but lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them.   The Shadman Claimants specifically deny that any probable cause finding was proper, and assert that the affidavits supporting the warrants were either untrue or omitted material information which undermined the efficacy of the warrants.

12.   The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; assert that the best evidence of what occurred is contained in the inter-country correspondence, including a detailed letter from the Afghan Attorney General to the U.S. Attorney General, delivered on February 18, 2014 (Doc 84); and otherwise deny.

13.   The Shadman Claimants admit that the Government purports to have proceeded against the defendants *in rem* identified in Paragraph 13 of the Complaint, but lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them.   With respect to any transmission of correspondence, the Shadman Claimants assert that the best evidence of what occurred is contained in the inter-country correspondence, including a detailed letter from the Afghan Attorney General to the U.S. Attorney General, delivered on February 18, 2014 (Doc 84); and otherwise deny.

14.   The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; assert that the best evidence of what occurred is contained in the inter-country correspondence, including a detailed letter from the Afghan Attorney General to the U.S. Attorney General, delivered on February 18, 2014 (Doc 84); and otherwise deny.

15.     The Shadman Claimants admit that the AIB bank account identified in Paragraph 15 of the Complaint has been used in the regular course of business, but deny all other allegations or inferences of allegations contained therein; and assert that the relevant bank statements and documents for the named accounts are the best evidence of their contents.

16.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; assert that the best evidence of what occurred is contained in both the Afghan Attorney General's correspondence with Afghanistan International Bank, as well as the inter-country correspondence, including a detailed letter from the Afghan Attorney General to the U.S. Attorney General, delivered on February 18, 2014 (Doc 84); and otherwise deny.

17.     The Shadman Claimants deny the allegations contained in Paragraph 17 of the Complaint.

18.     The Shadman Claimants admit that the Government purports to have proceeded against the defendants *in rem* identified in Paragraph 18 of the Complaint and that on May 8, 2013, the District Court issued arrest warrants *in rem*, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and on that basis deny them.  Furthermore, the Government's characterization of "funds held in the interbank accounts of the foreign banks" as "criminal proceeds" calls for a legal conclusion and is further denied.

19.     The Shadman Claimants admit that the Government purports to have proceeded against the defendants *in rem* identified in Paragraph 19 of the Complaint and that on May 10, 2013, May 17, 2013, and May 24, 2013, the United States Magistrate Judge Alan Kay issued seizure warrants, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and on that basis deny them.   Furthermore, the Government's

characterization of "funds held in the interbank accounts of the foreign banks" as "criminal proceeds" calls for a legal conclusion and is further denied. The Shadman Claimants assert that the relevant bank statements and documents for the named accounts are the best evidence of their contents.

20.     The Shadman Claimants admit that the Complaint "seeks the forfeiture of the defendant properties," but deny the remaining allegations contained in Paragraph 20 of the Complaint, particularly that "defendant properties contain Hikmatullah's criminal proceeds."

21.     The Government's characterization of funds as "criminal proceeds" calls for a legal conclusion and is denied. As for the remaining allegations contained in Paragraph 21 of the Complaint, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them.

## V.     STATEMENT OF FACTS

### Background on NATO Contracting Process in Afghanistan

22.     In regards to the first and second sentences of Paragraph 22 of the Complaint, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; and specifically deny any allegations or inferences of wrongdoing contained therein.

23.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; assert that Hikmat Shadman Logistics and Supply Company was awarded and performed numerous Transportation Movement Requests, and that the contractual and approval documentation for each request, award and payment are the best evidence of those transactions; and otherwise deny.

24.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations (including information contained in footnote 1) and on that basis deny them; assert that the best evidence of TOIFOR's status as a contractor with NAMSA is the contractual documentation supporting it; and otherwise deny.

25.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; assert that the contractual and approval documentation for each Transportation Movement Request is the best evidence of those transactions; and otherwise deny.  The Shadman Claimants also assert that TOIFOR could neither award nor pay Transportation Movement Requests contrary to the wishes—and without the direct approval—of the U.S. Special Forces, NAMSA, and the Expeditionary Support Command.

26.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; assert that the contractual and approval documentation for each applicable price list are the best evidence of those transactions; and otherwise deny.

27.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; assert that the contractual and approval documentation for each Transportation Movement Request is the best evidence of those transactions; and otherwise deny.  The Shadman Claimants also assert that TOIFOR could neither award nor pay Transportation Movement Requests contrary to the wishes—and without the direct approval—of the U.S. Special Forces, NAMSA, and the Expeditionary Support Command.

28.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; assert that the contractual and approval documentation for each Transportation Movement Request is the best evidence of those transactions; and otherwise deny.  Also assert that TOIFOR could neither award nor pay Transportation Movement Requests contrary to the wishes—and without the direct approval—of the U.S. Special Forces, NAMSA, and the Expeditionary Support Command.

29.     The Shadman Claimants admit only that the documentation hand-delivered to TOIFOR in support of its Transportation Movement Requests is the best evidence of their contents; and otherwise deny.  With respect to the second sentence, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; assert that the TOIFOR invoices are the best evidence of their contents; and otherwise deny.

30.     The Shadman Claimants assert that the NAMSA invoices and correspondence with U.S. Forces-Afghanistan are the best evidence of their contents; otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them.

31.     The Shadman Claimants assert that the DFAS review and disbursement documentation are the best evidence of their contents; and otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them.

32.     The Shadman Claimants assert that the NAMSA review and disbursement documentation are the best evidence of their contents; and otherwise the Shadman Claimants

lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them.

33.    The Shadman Claimants assert that the TOIFOR review and disbursement documentation are the best evidence of their contents; and otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them.

**Alleged Scheme to Defraud the United States**

34.    To the extent that Hikmatullah is one of the owners of the identified entities in Paragraph 34 of the Complaint to which the corresponding public business records and contractual documentation represent the best evidence, the Shadman Claimants admit to the allegations contained therein, but specifically deny any allegations or inferences of wrongdoing contained therein.

35.    Paragraph 35 of the Complaint calls for legal conclusions regarding "fraud" and "conspiracy" to which no response is required.  To the extent a response is required, the Shadman Claimants deny all allegations contained therein, with the exception that the Shadman Claimants admit that HSLSC was legitimately awarded, properly performed, and was paid for several thousand TMRs, of which the exact number and corresponding value has not yet been confirmed.

36.    The Shadman Claimants assert that the DFAS, NAMSA and TOIFOR review and disbursement documentation are the best evidence of their contents; otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them; and specifically deny any allegations or inferences of wrongdoing contained therein.

37.    The Shadman Claimants admit only that the relevant bank statements and documents for the named accounts are the best evidence of their contents; and otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and on that basis deny them.

**Alleged Bribery and Kickbacks**

38.    Paragraph 38 of the Complaint calls for legal conclusions regarding bribes, "kickbacks," and fraud to which no response is required.  To the extent a response is required, the Shadman Claimants deny all allegations or inferences of wrongdoing contained therein.

38a.    The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

38b.    The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

38c.    The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

38d.    The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

38e.    The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; specifically deny that HSLSC ever paid

Newton (or anyone else) bribes or kickbacks for the award of TMRs; and specifically deny all allegations or inferences of wrongdoing contained therein.

38f.    The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

38g.    Paragraph 38g of the Complaint calls for legal conclusions regarding "conspiracy" and "kickbacks" to which no response is required.  To the extent a response is required, the Shadman Claimants deny all allegations contained therein.  As to the remaining allegations contained in Paragraph 38g,   the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

38h.    The Shadman Claimants admit that Neil Patrick James Tendido has been employed by HSLSC and has been involved in processing some of HSLSC's TMR invoices; however, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

38i.    The Shadman Claimants admit only that the relevant HSLSC bank statements and documents for the named accounts are the best evidence of their contents; and otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them.

38j.    The Shadman Claimants admit only that the relevant HSLSC bank statements and documents for the named accounts are the best evidence of their contents; and otherwise the

Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them.

### Alleged Fraudulent Subcontract Awards

39.     Paragraph 39 of the Complaint calls for legal conclusions regarding "conspiracy" and "inflated and manipulated bids" to which no response is required.  To the extent a response is required, the Shadman Claimants deny all allegations contained therein.  As to the remaining allegations contained in Paragraph 39, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; assert that the contractual and approval documentation for each Transportation Movement Request is the best evidence of those transactions; and otherwise deny.  The Shadman Claimants also assert that TOIFOR could not approve price lists, award or pay Transportation Movement Requests contrary to the wishes—and without the direct approval—of the U.S. Special Forces, NAMSA, and the Expeditionary Support Command.  The Shadman Claimants specifically deny all allegations or inferences of wrongdoing contained therein.

39a.    The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

39b.    The Shadman Claimants admit only that authenticated correspondence is the best evidence of its contents; otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

39c.    The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

39d.    The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; assert that special price agreements for high risk areas were common, provided for in paragraph 12 of HSLSC contract with TOIFOR, and reviewed and accepted by the NAMSA and military chain of command; and specifically deny all allegations or inferences of wrongdoing contained therein.

39e.    Paragraph 39e of the Complaint calls for legal conclusions regarding "fraud scheme" to which no response is required. To the extent a response is required, the Shadman Claimants deny all allegations contained therein.  As to the remaining allegations contained in Paragraph 39e, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

39f.    The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

39g.    Paragraph 39g of the Complaint calls for legal conclusions regarding "price-fixing scheme" to which no response is required. To the extent a response is required, the Shadman Claimants deny all allegations contained therein.  As to the remaining allegations contained in Paragraph 39g, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

39h.     Paragraph 39h of the Complaint calls for legal conclusions regarding "price-fixing scheme" to which no response is required.  To the extent a response is required, the Shadman Claimants deny all allegations contained therein.  As to the remaining allegations contained in Paragraph 39h, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.  The Shadman Claimants assert, on information and belief, that Newton made no such accusations against Hele.

39i.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

40.     The Shadman Claimants admit only that the relevant bank records to Hele for the named accounts, as well as TOIFOR documentation concerning payments to Hele, are the best evidence of their contents.   This paragraph calls for legal conclusions regarding "bribe payments" to which no response is required.  To the extent a response is required, the Shadman Claimants deny all allegations contained therein.  As to the remaining allegations contained in Paragraph 40, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

**TMRs Awarded to HSLSC**

41.     Paragraph 41 of the Complaint calls for legal conclusions regarding "indicia of fraud" and "fraud" to which no response is required; and specifically deny that the examiner is an expert in Special Operations Forces TMR procurement or that all pertinent contractual or approval documentation was reviewed to make the stated findings.  To the extent a response is

required, the Shadman Claimants admit only that the TMR contractual and approval documentation at all levels is the best evidence of its contents; and otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them.  The Shadman Claimants specifically deny that either a higher price or documentation evidencing a sole source, at the request of and with the approval of the entire NAMSA and military chain of command, is "indicia of fraud."

41a – d.  The Shadman Claimants admit only that the TMR contractual and approval documentation at all levels is the best evidence of its contents; otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny all allegations or inferences of wrongdoing contained therein.

42.    Paragraph 42 of the Complaint calls for legal conclusions regarding "illegally overcharged" to which no response is required.  The Shadman Claimants specifically deny that the "experts" are experts in Special Operations Forces TMR procurement, that all pertinent contractual or approval documentation was reviewed to make the stated findings, or that "average pricing" of no name unverified subcontractors is an appropriate measure for high risk NATO Special Operations Forces TMRs in war torn Afghanistan.  To the extent a response is required, the Shadman Claimants admit only that the TMR contractual and approval documentation at all levels is the best evidence of its contents; and otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them.  The Shadman Claimants specifically deny that either a higher price or documentation evidencing a sole source, at the request of and with the approval of the entire NAMSA and military chain of command, is "indicia of fraud."

43. The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, with the exception that HSLSC was legitimately awarded several thousand TMRs, of which the exact number and corresponding value has not yet been confirmed. The Shadman Claimants assert that the TMR contractual and approval documentation at all levels is the best evidence of its contents.

## Tracing Proceeds to Accounts to be Seized

### A.    The Defendant AIB Accounts

44. The Shadman Claimants have not yet confirmed the exact amounts paid to HSLSC by TOIFOR for performed TMRs under the Jungle Truck Contract; however, the bank and payment records would be the best evidence of such allegation. Otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 and thus deny any allegations or inferences of wrongdoing contained therein.

45. The Shadman Claimants admit only that the DFAS, NAMSA, ISAF and TOIFOR invoice, review and disbursement documentation are the best evidence of their contents; and otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them.

46. The Shadman Claimants admit only that the DFAS, NAMSA, ISAF and TOIFOR invoice, review and disbursement documentation are the best evidence of their contents; and otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them.

47. The Shadman Claimants admit only that the actual bank account and payment records would represent the best evidence of such allegations; and otherwise the Shadman

Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny any allegations or inferences of wrongdoing contained therein.

48.     The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly the allegations involving the actions of Tendido and any allegations or inferences of wrongdoing contained therein.

49.     The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly the allegations involving the actions of Tendido and any allegations or inferences of wrongdoing contained therein.

50.     Paragraph 50 of the Complaint calls for legal conclusions as to the phrase "original $77,920,605 criminal proceeds" to which no response is required. To the extent a response is deemed required, the Shadman Claimants admit that the Government has improperly restrained a significant, specifically undetermined amount of its funds at Bank Alfalah, Emirates NBD Bank, and AIB; however, the actual bank records would be the best evidence of such, otherwise the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny any allegations or inferences of wrongdoing contained therein.

**B.      Account xxxx0238 held in the name of Hikmat Shadman Logistics Services at Bank Alfalah**

51.     The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman

Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

52.    The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

53.    The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

54.    Paragraph 54 of the Complaint calls for legal conclusions as to "probable cause" and "corruption proceeds" to which no response is required.  To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny any allegations or inferences of wrongdoing contained therein.

55.    Admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein, with an exception that the Shadman Claimants do admit that a substantial and undetermined amount of its funds has been improperly restrained by the Government.

**C.      Defendant AIB account xxxxxxxxxxxx7810 held in the name of Hikmat Shadman Logistics Services at Afghanistan International Bank**

56.      Admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

57.      Admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

58.      Admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

59.      Paragraph 59 of the Complaint calls for legal conclusions as to "probable cause" and "corruption proceeds" to which no response is required.  To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny any allegations or inferences of wrongdoing contained therein.

60.      The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.  Further, the Shadman Claimants deny ever receiving notice of the Government's filing of first amended forfeiture complaint.  The Shadman Claimants do admit that a substantial and undetermined amount of its funds has been improperly restrained

19

and/or seized by the Government.  The Shadman Claimants specifically deny any allegations or inferences of wrongdoing contained therein.

61.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein. The Shadman Claimants do admit that a substantial and undetermined amount of its funds has been improperly restrained and/or seized by the Government.   The Shadman Claimants specifically deny any allegations or inferences of wrongdoing contained therein.

**D.     Account Number xxxxxxxxxxxxxxxxxx72002 held in the name of Hekmat Shadman General Trading LLC at Emirates NBD Bank**

62.     The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

63.     The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

64.     The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

65.     Paragraph 65 of the Complaint calls for legal conclusions as to "probable cause" and "corruption proceeds" to which no response is required.  To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny any allegations or inferences of wrongdoing contained therein.

66.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, with the exception that the Shadman Claimants do admit that a substantial and undetermined amount of its funds has been improperly restrained by the Government; and specifically deny any allegations or inferences of wrongdoing contained therein.

**E.      Any account held in the name of Yaser Elham at Emirates NBD Bank**

67.     The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

68.     Paragraph 68 of the Complaint calls for legal conclusions as to "probable cause" and "corruption proceeds" to which no response is required. To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them; and specifically deny any allegations or inferences of wrongdoing contained therein.

69.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations and inferences

of wrongdoing.  Further, the Shadman Claimants deny ever receiving notice of the Government's filing of first amended forfeiture complaint.  The Shadman Claimants do admit that a substantial and undetermined amount of its funds has been improperly restrained by the Government.  The Shadman Claimants specifically deny any allegations or inferences of wrongdoing contained therein.

**F.    Account  Number  xxxx0241  at  Bank  Alfalah  and  Account  Number xxxxxxxxxxx25115, at Afghanistan International Bank, both held in the name of Everest Faizy Logistics Services**

70.    The Shadman Claimants admit only to the extent that the allegations contained in Paragraph 70 are supported by the actual, corresponding bank account records which would represent the best evidence of such allegations. The Shadman Claimants deny any allegations or inferences of wrongdoing contained in Paragraph 70.

71.    The Shadman Claimants admit to the allegations contained in Paragraph 71 only to the extent they are supported by the actual, corresponding business records of Everest Faizy Logistics Services and Hikmat Shadman Logistics Services which would represent the best evidence of such allegations; and otherwise deny.  The Shadman Claimants deny any allegations or inferences of wrongdoing contained in Paragraph 71.

72.    The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants deny such allegations contained in Paragraph 72, particularly those supposing when Hikmatullah may have learned of the referenced bank restraint and any allegations or inferences of wrongdoing contained therein.

73.    The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman

Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

74.     The Shadman Claimants admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

75(a) – (b).  Paragraph 75 of the Complaint calls for legal conclusions as to "probable cause" and "corruption proceeds" to which no response is required.  To the extent a response is deemed required, the Shadman Claimants deny all allegations contained therein.  Specifically deny any allegations or inferences of wrongdoing contained therein.

76.     The Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein. The Shadman Claimants do admit that a substantial and undetermined amount of its funds has been improperly restrained and/or seized by the Government.  The Shadman Claimants specifically deny any allegations or inferences of wrongdoing contained therein.

## VI.    BASIS FOR FORFEITURE

77.     Paragraph 77 of the Complaint contains no new allegations to which a response is required; however, to the extent a response is deemed required, the allegations are denied.

78.     Paragraph 78 of the Complaint calls for legal conclusions, to which no response is required.  To the extent a response is deemed required, the allegations are denied.

79.     Paragraph 79 of the Complaint calls for legal conclusions, to which no response is required. To the extent a response is deemed required, the allegations are denied.

80.     Paragraph 80 of the Complaint calls for legal conclusions, to which no response is required. To the extent a response is deemed required, the allegations are denied.

81.     Paragraph 81 of the Complaint calls for legal conclusions, to which no response is required. To the extent a response is deemed required, the allegations are denied.

82.     Paragraph 82 of the Complaint calls for legal conclusions as to the terms "co-conspirators" and "fraudulently" to which no response is required.  To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and thus deny them, particularly any allegations or inferences of wrongdoing are denied.

83.     Paragraph 83 of the Complaint calls for legal conclusions as to the term "co-conspirators" to which no response is required. To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and thus deny them, particularly any allegations or inferences of wrongdoing are denied.

84.     Admit only that the actual, corresponding bank account records would represent the best evidence of such allegations; and otherwise, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them, particularly any allegations or inferences of wrongdoing contained therein.

85.     Paragraph 85 of the Complaint calls for legal conclusions, to which no response is required.  To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them.

86.     Paragraph 86 of the Complaint calls for legal conclusions, to which no response is required.  To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them.

87.     Paragraph 87 of the Complaint calls for legal conclusions, to which no response is required.  To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them.

88.     Paragraph 88 of the Complaint calls for legal conclusions, to which no response is required.  To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them.

89.     Paragraph 89 of the Complaint calls for legal conclusions, to which no response is required.  To the extent a response is deemed required, the Shadman Claimants lack knowledge or information sufficient to form a belief as to the truth of the allegations and thus deny them.

90.     Paragraph 90 of the Complaint calls for legal conclusions, to which no response is required.   To the extent a response is deemed required, all such allegations are denied. Specifically, the Shadman Claimants deny any allegations or inferences of wrongdoing contained therein.

## VII.   PRAYER FOR RELIEF

91.     This unnumbered paragraph in the Complaint sets forth the Government's prayer for relief to which no response is required.  To the extent this paragraph is deemed to contain allegations of material fact, they are all denied.

92.     All allegations in the Complaint not specifically responded to or addressed herein are denied.

## VIII.   AFFIRMATIVE DEFENSES

93.    Each asserted affirmative defense below is alleged as a bar to the Government's allegations, in whole or in part, by each individual Claimant of the Shadman Claimants, and are alleged against the entirety of the Complaint and for each and every allegation contained therein.

## FIRST DEFENSE

94.    The Complaint, forfeiture, and arrest *in rem* are barred because subject matter and *in rem* jurisdiction are lacking.

## SECOND DEFENSE

95.    The Complaint, forfeiture, and arrest *in rem* are barred by the doctrine of *res judicata*.

## THIRD DEFENSE

96.    The Complaint, forfeiture, and arrest *in rem* are barred as untimely under the statute of limitations, including 18 U.S.C. §§ 981, 983, and 984(b), and/or the doctrine of laches.

## FOURTH DEFENSE

97.    The Complaint, forfeiture, and arrest *in rem* are barred by the doctrines of equitable estoppel, collateral estoppel, and issue preclusion.

## FIFTH DEFENSE

98.    The Complaint, forfeiture, and arrest *in rem* are barred by doctrine of comity.

## SIXTH DEFENSE

99.    The Complaint, forfeiture, and arrest *in rem* are barred by the act of state doctrine.

## SEVENTH DEFENSE

100.    The Complaint, forfeiture, and arrest *in rem* are barred due to lack of probable cause to seize the property, including deprivation of Claimants' rights to challenge the sufficiency of probable cause evidence and a hearing.

**EIGHTH DEFENSE**

101.    The Complaint, forfeiture, and arrest *in rem* are barred due to failure to state a claim upon which relief can be granted.

**NINETH DEFENSE**

102.     The Complaint, forfeiture, and arrest *in rem* are barred by the innocent owner defense.

**TENTH DEFENSE**

103.    The Complaint, forfeiture, and arrest *in rem* are barred by the doctrine of proportionality under 18 U.S.C. § 983(g), under the excessive fines clause of the Eighth Amendment of the United States Constitution, and due to the improper application of the definition of "proceeds" under  18 U.S.C. § 981(a).

**ELEVENTH DEFENSE**

104.    The Complaint, forfeiture, and arrest *in rem* are barred by the doctrine of requested performance and acceptance, and entitlement to payment, of which neither is defeated, even if a sole source justification is found not to exist for each TMR.  *Accord Kollsman v. United States*, 25 Cl.Ct. 500 (1992).

**TWELFTH DEFENSE**

105.    The Complaint, forfeiture, and arrest *in rem* are barred by an authorized NATO or U.S. Government contract or subcontract, actual or implied in fact, including a sole source for Claimants and pricing approved by the U.S. Special Forces, NAMSA, and the Expeditionary Sustainment Command for national security and other reasons.  *Accord* 10 U.S.C. § 2304(c).

**THIRTEENTH DEFENSE**

106.    The Complaint, forfeiture, and arrest *in rem* are barred because the sole source TMR awards and pricing charged by HSLSC under the TOIFOR blanket contract to HSLSC were authorized by 10 U.S.C. § 2304c(b), if applicable, as well as NATO procurement procedures, the NATO/ISAF/U.S. Government Afghan First and Counterinsurgency Policies.

**FOURTEENTH DEFENSE**

107.    The Complaint, forfeiture, and arrest *in rem* are barred because U.S. competition rules do not apply to NATO and NAMSA contracts or subcontracts, and the NATO/ISAF/U.S. Government Afghan First Policies are an exception to such rules. *Accord L-3 Communications Corp. v. U.S.*, 99 Fed.Cl. 283 (2011); and 62 Comp.Gen 100 (1983).

**FIFTEENTH DEFENSE**

108.    The Complaint, forfeiture, and arrest *in rem* are barred because any disputes relating to NATO's contract with TOIFOR or any subcontract thereunder is subject to arbitration.

**SIXTEENTH DEFENSE**

109.    The Complaint, forfeiture, and arrest *in rem* challenging the efficacy of any TMRs awarded and paid for are barred by the statute of frauds.

**SEVENTEENTH DEFENSE**

110.    The Complaint, forfeiture, and arrest *in rem* are barred by accord and satisfaction.

**EIGHTEENTH DEFENSE**

111.    The Complaint, forfeiture, and arrest *in rem* are barred by waiver and release.

**NINETEENTH DEFENSE**

112.    The Complaint, forfeiture, and arrest *in rem* are barred by government knowledge and the doctrine of unclean hands.

**TWENTIETH DEFENSE**

113.    The Complaint, forfeiture, and arrest *in rem* are barred due to failure of proof of illegal conduct.

**TWENTY-FIRST DEFENSE**

114.    The Complaint, forfeiture, and arrest *in rem* are barred due to Government's failure of proof of the elements of wire fraud.

**TWENTY-SECOND DEFENSE**

115.    The Complaint, forfeiture, and arrest *in rem* are barred with respect to value received by the Government for services and products rendered and accepted.

**TWENTY-THIRD DEFENSE**

116.    The Complaint, forfeiture, and arrest *in rem* are barred by the doctrine of setoff for property unlawfully withheld or destroyed and not paid for.

**TWENTY-FOURTH DEFENSE**

117.    The Complaint, forfeiture, and arrest *in rem* are barred by the Government's failure to trace seized funds under 18 U.S.C. § 981.

**TWENTY-FIFTH DEFENSE**

118.    The Complaint, forfeiture, and arrest *in rem* are barred as violations of Claimants' due process rights and deprivation of Claimants' fair use of its property without due process under the Due Process Clause of the Fifth Amendment to the United States Constitution,

Claimants' rights against unreasonable seizures under the Fourth Amendment of the United States Constitution, as well as under the laws of Afghanistan and the Afghanistan Constitution.

**TWENTY-SIXTH DEFENSE**

119. The Complaint, forfeiture, and arrest *in rem* are barred as unenforceable and excessive penalties.

**TWENTY-SEVENTH DEFENSE**

120. The Complaint, forfeiture, and arrest *in rem* are barred due to the Government's failure to mitigate.

**TWENTY-EIGHTH DEFENSE**

121. The Complaint, forfeiture, and arrest *in rem* are barred because the Shadman Claimants were not timely served with the Complaint.

**TWENTY-NINTH DEFENSE**

122. The Complaint, forfeiture, and arrest *in rem* are barred as property not subject to forfeiture under 18 U.S.C. §§ 984, 981, including § 981(k), and because the seizure / arrest warrants failed to comply with the requirements of 18 U.S.C. § 983.

**THIRTIETH DEFENSE**

123. The Complaint, forfeiture, and arrest *in rem* are barred because the property *in rem* is not property that constitutes or is derived from proceeds traceable to a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343.

**THIRTY-FIRST DEFENSE**

124. The Complaint, forfeiture, and arrest *in rem* are barred because the application of 18 U.S.C. § 981(k) to the property *in rem* and seized funds violates the U.S. Constitution, including the Fourth, Fifth, and Eighth Amendments.

**THIRTY-SECOND DEFENSE**

125.    The Complaint, forfeiture, and arrest *in rem* are barred due to Government's failure of its burden of proof, including under § 983(c).

**THIRTY-THIRD DEFENSE**

126.    The Complaint, forfeiture, and arrest *in rem* are barred by any other avoidance or affirmative defense allowed by law which the evidence adduced would support.

## VIII.   SHADMAN CLAIMANTS' PRAYER FOR RELIEF

WHEREFORE, the Shadman Claimants request that this civil forfeiture action against the property *in rem* as alleged in the Complaint be dismissed; that the seized / restrained property *in rem* be returned to the Shadman Claimants; that Shadman Claimants be awarded its costs and attorneys' fees in this action; that the Court hold a jury trial on all issues so triable; and for such other and further relief, general and special, legal and equitable, as this Court may deem just and proper.

Respectfully submitted,

NEEL, HOOPER & BANES, P.C.

Bryant S. Banes
D.C. Bar ID No. TX0109
Texas Bar No. 24035950
Federal ID No. 31149
Kelline R. Linton
Texas Bar No. 24085436
Federal ID No. 2127346
1800 West Loop South, Suite 1750
Houston, Texas  77027-3008
Tel: (713) 629-1800
Fax: (713) 629-1812
E-mail: bbanes@nhblaw.com

Of Counsel:

James Wallace Porter, III
D.C. Bar No. 999070
Bradley Arant Boult Cummings LLP
1615 L Street, NW
Washington, D.C. 20036
(202) 719-8232
(202) 719-8332 (Fax)
E-mail: jporter@babc.com

*Counsel for Claimants*
*Hikmat Shadman Logistics Services,*
*Hekmat Shadman General Trading, LLC,*
*Faizy Elham Brothers, Ltd., Everest Faizy*
*Logistics Services, Hikmatullah Shadman,*
*Najibullah, and Rohulla*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2014, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Jaikumar Ramaswamy, Chief
Asset Forfeiture and Money
    Laundering Section
Daniel H. Claman, Assistant Deputy Chief
Elizabeth A. Aloi, Trial Attorney
U.S. Department of Justice
Criminal Division
1400 New York Avenue, NW, 9th Floor
Washington, DC 20530

Andrew C. Bernasconi
Pablo Quinones
Reed Smith LLP
1301 K Street, N.W.,
Suite 1100 – East Tower
Washington, D.C. 20005

_____
Bryant S. Banes