UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
          v.                    )    Civil Action No. 12-1905 (RWR)
                                )
SUM OF $70,990,605, et al.,     )
                                )
          Defendants.           )
_____)
```

**MEMORANDUM OPINION AND ORDER**

Plaintiff United States filed this civil *in rem* forfeiture action, alleging that the defendant funds -- approximately $63 million in three different banks -- are the proceeds of a wire fraud conspiracy and subject to seizure under 18 U.S.C. §§ 981, 983 and 984.  The United States moves under 18 U.S.C. § 981(g)(1) to stay the civil forfeiture proceeding, except for any forthcoming government motions to strike under Supplemental Rule G(8)(c), until the conclusion of the related criminal proceedings.  Claimants Hikmatullah Shadman, Najibullah, and Rohullah ("Shadman claimants") and Afghanistan International Bank ("AIB") also move for leave to file surreplies.  Because a protective order can protect the interests of the parties, a complete stay is unjustified and the government's motion to stay will be denied.  Because the proposed surreplies are

- 2 -

unnecessary, the claimants' motions for leave to file surreplies
will also be denied.

BACKGROUND

In short, the United States has alleged that the defendant
property is subject to forfeiture as the proceeds of a wire
fraud conspiracy and that Shadman, as a subcontractor and owner
of Hikmat Shadman Logistics Services Company ("HSLSC"),
"conspired to obtain payments from the United States for the
transportation of military supplies in Afghanistan through the
illegal and fraudulent use of the wires . . . [by making] bribe
payments, fraudulently inflat[ing] prices, and caus[ing] the
United States to be invoiced for and to make payments of
$77,920,605 to two bank accounts in Afghanistan[.]"  2d Am.
Compl. ¶¶ 10, 34.  The United States alleges that Shadman paid
bribes to TOIFOR Global Life Support Services operations
managers Henry Omonobi-Newton and Paul Hele, id. ¶¶ 24, 38, and
that Shadman conspired with Hele to "inflate[] and manipulate[]"
subcontractors' bids, id. ¶ 39, to allow Hele "to award TMRs
[Transportation Movement Requests] to [HSLSC] at an inflated
rate," id. ¶¶ 23, 39g.  Allegedly because of the bribery and
fraud, HSLSC was awarded 5,421 TMRs, which cost the United
States $77,920,605.  See id. ¶¶ 35, 43.

On August 27, 2013, Shadman, Najibullah, and Rohullah filed a verified claim and statement of interest in the seized property, asserting that they are the owners of the seized funds. Verified Claim and Statement of Interest or Right in Property Subject to Forfeiture In Rem at 8. They made these claims both individually, and on behalf of their companies. Id. at 14-16. It appears that all the accounts are held in the name of the companies, rather than the individuals, except for one account at Emirate National Bank. Id. at 8-12. The Shadman claimants then filed a motion under 18 U.S.C. § 983(f) for immediate release of funds and a motion for preliminary injunctive relief, both of which have been denied. The Shadman claimants also filed a motion to dismiss for failure to state a claim and based on the affirmative defenses of international comity and the act of state doctrine, which was also denied.

On October 16, 2013, AIB filed a verified claim, asserting that it has legal title, ownership, and possessory interest to $4,330,287.03 of the defendant funds. AIB's Verified Claim of Interest in Defendant Property at 2, 4.

The United States now moves under 18 U.S.C. § 981(g)(1) to stay the civil forfeiture proceedings because "the United States has a related criminal investigation and allowing discovery now may jeopardize that investigation." United States' Mot. for a

- 4 -

Stay Pursuant to 18 U.S.C. § 981(g) ("U.S. Mot.") at 1.  The
government requests that the proceeding be stayed until the
conclusion of the criminal case, with the exception of any
forthcoming government motions to strike a claim or answer under
Rule G(8)(c).  Id.  The government proposes a status report in
180 days to allow assessment of the continuing need for a stay.
Id. attach. 1 at 2.  Claimants oppose.  See Claimants' Opp'n to
United States' Mot. for a Stay ("Shadman Claimants' Opp'n");
Claimant AIB's Opp'n to the United States' Mot. for a Stay
Pursuant to 18 U.S.C. § 981(g) ("AIB's Opp'n").  Both the
Shadman claimants and AIB also filed opposed motions for leave
to file a surreply.

<u>DISCUSSION</u>

I.   MOTION TO STAY

     When the United States moves for a stay, "the court shall
stay the civil forfeiture proceeding if the court determines
that civil discovery will adversely affect the ability of the
Government to conduct a related criminal investigation or the
prosecution of a related criminal case."  18 U.S.C. § 981(g)(1).

     To determine if the criminal case is related, "the court
shall consider the degree of similarity between the parties,
witnesses, facts, and circumstances involved in the two
proceedings, without requiring an identity with respect to any

- 5 -

one or more factors." 18 U.S.C. § 981(g)(4).  The United States

"may, in appropriate cases, submit evidence ex parte in order to

avoid disclosing any matter that may adversely affect an ongoing

criminal investigation or pending criminal trial."  18 U.S.C.

§ 981(g)(5).[1]

Here, the government states that a United States Attorney's

Office, the Fraud Section of the United States Department of

Justice, and the Office of the Special Inspector General for

Afghanistan Reconstruction are all "investigating whether Mr.

Shadman and others violated U.S. criminal laws in connection

with the award and receipt of lucrative contracts and payments

for the transportation of U.S. military supplies in Afghanistan

. . . ." U.S. Mot. at 5.  Because the United States' criminal

investigation stems, at least in part, from the same conduct

that gives rise to this forfeiture action, the facts and

circumstances involved in both the criminal and civil

proceedings are similar.  Id. at 5-6.  The identity of facts and

circumstances also means that the witnesses -- such as the

---

[1] The United States here chose not to submit any matters ex
parte, though it did request leave to do so "[i]f this Court
finds that the record set forth herein is insufficient to
establish that civil discovery will adversely affect the ability
of the Government to conduct the related criminal
investigation." U.S. Mot. at 2, 8.  However, because, as is
explained below, the United States has shown that some specific
civil discovery may adversely affect the criminal investigation,
such ex parte evidence may not be necessary.

confidential informants and others that either witnessed or were involved in the alleged fraud and bribery -- will be similar since the operative events in both cases are the same.  Id. at 5-7.  Finally, while the parties are not identical, the parties are similar as Shadman is one of the claimants in the civil proceeding and Shadman is being investigated criminally.  Id. at 5.  Thus, where, as here, "a criminal investigation and a civil forfeiture action have common facts, similar alleged violations and some common parties, the actions are clearly related."  United States v. All Funds on Deposit in Suntrust Account No. XXXXXXXXX8359 in the Name of Gold and Silver Reserve, Inc., 456 F. Supp. 2d 64, 65 (D.D.C. 2006).

In addition to being related, civil discovery must adversely affect the related criminal investigation to merit a stay.  For example, civil discovery will adversely affect the related criminal investigation when "civil discovery would subject the Government's criminal investigation to 'early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding.'"  Suntrust, 456 F. Supp. 2d at 65 (quoting United States v. One Assortment of Seventy-Three Firearms, 352 F. Supp. 2d 2, 4 (D. Me. 2005)).  This is because "civil discovery may not be used to subvert limitations on discovery in criminal cases, by either the government or by

- 7 -

private parties." <u>McSurely v. McClellan</u>, 426 F.2d 664, 671-72 (D.C. Cir. 1970) (footnotes omitted).  However, if the government fails to show that civil discovery will in fact adversely affect its criminal investigation, a stay should be denied.  <u>See</u> <u>Suntrust</u>, 456 F. Supp. 2d at 65; <u>United States v. All Funds ($357,311.68) Contained in Northern Trust Bank of Fla. Account No. 7240001868</u>, No. Civ.A.3:04-CV-1476-G, 2004 WL 1834589, at *2 (N.D. Tex. 2004) ("There is no presumption that civil discovery, in itself, automatically creates an adverse affect on the government's related criminal proceeding.").

The government asserts that civil discovery "will subject the United States to broader and earlier discovery than would occur in the criminal proceeding[,]" U.S. Mot. at 6, because the claimants have requested access to "any evidence in [the government's] possession relating to the facts alleged in this case[,]" <u>id.</u> (quoting Shadman Claimants' Request for Status Conference and Motion for Protective and Preservation Orders at 9), which may "require the United States prematurely to disclose to the Claimants the identities of confidential informants," <u>id.</u> at 7.  The United States contends that, if it were to disclose the identities of the confidential informants, then witnesses may be put "at risk and [the disclosure could] interfere with the Government's ability to obtain confidential information from

others in the criminal investigation." Id.  Exposing

confidential informants can justify a stay.  See, e.g.,

Suntrust, 456 F. Supp. 2d at 66 ("Such discovery could

compromise any existing confidential informants and/or interfere

with the Government's ability to obtain confidential information

from others."); United States v. Funds Held in Names or for Ben.

of Wetterer, 138 F.R.D. 356, 360 (E.D.N.Y. 1991) (finding, under

the good cause standard that predated the Civil Asset Forfeiture

Reform Act, that a stay was justified because the

interrogatories would reveal "cooperating witnesses and identity

of informants").

Here, the Shadman claimants have not only tried to identify

the confidential informants, e.g., Claimants' Mot. for Expedited

Review and Mot. to Dismiss Complaint at 11, 13 (asserting that

"we believe we know the identity of these confidential sources"

and identifying people the Shadman claimants suspect are the

confidential informants), but the Shadman claimants have also

requested statements of the confidential informants via

interrogatories, Claimants' Notice of Supplemental Authority in

Support of Mot. to Dismiss ("Supp. Authority"), Ex. 1 (Request

21) (requesting "[a]ny and all written statements of all

confidential sources"), as well as statements from other

witnesses, id. (requesting "all statements of witnesses who are

- 9 -

specifically referenced by name"), which it would not

necessarily be entitled to in criminal discovery.  Compare

Federal Rule of Criminal Procedure 16 ("[T]his rule does not

authorize the discovery . . . of statements made by prospective

government witnesses except as provided in 18 U.S.C. § 3500.")

with Federal Rule of Civil Procedure 26 (allowing discovery of

"any nonprivileged matter that is relevant to any party's claim

or defense"); see also United States v. Morrow, Criminal No. 04-

355 (CKK), 2005 WL 3163806, at *4 (D.D.C. April 13, 2005)

("[T]he Government enjoys a qualified although time-honored

privilege to withhold the identity of its informants from

criminal defendants." (internal quotation marks omitted));

United States v. Edelin, 128 F. Supp. 2d 23, 33 (D.D.C. 2001)

("Criminal defendants are only entitled to statements of non-

testifying witnesses or co-conspirators if those statements

qualify as Brady material.").  The breadth of these discovery

requests from the claimants could certainly adversely affect the

United States by allowing the claimants access to discovery that

they ordinarily would not have access to in a criminal case.

See Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962) ("In

handling motions for a stay of a civil suit until the

disposition of a criminal prosecution on related matters and in

ruling on motions under the civil discovery procedures, a judge

should be sensitive to the difference in the rules of discovery in civil and criminal cases.  While the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive.").[2]

The government also states that civil discovery for individuals currently under investigation would impair the criminal investigation because "it may prematurely expose facts and testimony of witnesses to potential subjects of the investigation[,]" U.S. Mot. at 7, and the requested discovery with respect to law enforcement officers would require discovery from those still actively involved in the investigation, id. at 8.  Discovery of officers actively involved in a criminal investigation could adversely affect the investigation.  E.g., United States v. All Funds Deposited in Account No. 20008524845,

---

[2] AIB argues that only the Shadman claimants "have sought discovery that would adversely affect [the government's] ongoing investigations."  AIB's Opp'n at 5.  While that may be true, AIB provides no legal authority supporting its implicit argument that individual claims should be parsed out and evaluated on a case by case basis.  The provision permitting a stay is unequivocal: "the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation[.]"  18 U.S.C. § 981(g)(1).  While, as is discussed below, Section 981(g)(3) permits a court to institute a protective order instead of a stay in certain situations, the provision does not appear to contemplate assessing who causes the adverse impact in determining if a stay is appropriate.

First Union Nat'l Bank, 162 F. Supp. 2d 1325, 1332 (D. Wyo.
2001).  However, the United States does not point to any
requests to depose law enforcement officials, or how particular
requested discovery would adversely affect the investigation.

Additionally, the United States claims that civil discovery
"would also expose prematurely the identities of those
individuals presently under investigation, which could result in
the destruction of evidence."  U.S. Mot. at 7.  The United
States offers no evidence, however, that destruction of evidence
is likely.  While destruction of evidence would adversely affect
a criminal investigation, the United States cannot rest on
speculation about what may happen.

Ultimately, a stay may be "unnecessary if a protective
order limiting discovery would protect the interest of one party
without unfairly limiting the ability of the opposing party to
pursue the civil case."  18 U.S.C. § 981(g)(3).  "In no case,
however, shall the court impose a protective order as an
alternative to a stay if the effect of such protective order
would be to allow one party to pursue discovery while the other
party is substantially unable to do so."  18 U.S.C. § 981(g)(3).
Here, a well-crafted protective order limiting discovery could
"protect the interest" of the government while preserving the
ability of the claimants to pursue the civil case.  See id.

- 12 -

There are several areas in which the claimants can seek
discovery that would not implicate the sensitive information
that the government seeks to protect, such as additional
information about the applicability of international comity, the
act of state doctrine, or the innocent owner defense.

The government, however, argues that civil discovery "may
have the effect of inappropriately allowing one party to conduct
discovery while the other party -- the United States -- would be
unable to take discovery from the persons with pertinent
knowledge of the facts" because the witnesses may claim the
Fifth Amendment privilege against self-incrimination.  U.S. Mot.
at 7.  Yet, the government offers no evidence that any witness
has claimed the Fifth Amendment, and no indictment has yet been
returned.  Cf. SEC v. Dresser Indus., 628 F.2d 1368, 1376 (D.C.
Cir. 1980) (affirming the district court's refusal to stay a
proceeding at the request of a person under investigation
because there had been no indictment or threat to the person's
Fifth Amendment privilege, and because Federal Rule of Criminal
Procedure 16(b) "ha[d] not come into effect" nor had the
subpoena required the person to reveal the basis of his
defense).  The United States offers no evidence that it cannot

- 13 -

take discovery because of the pending criminal investigation.[3]

E.g., Northern Trust Bank, 2004 WL 1834589, at *2 ("[T]he
Government's arguments do nothing more than speculate about how
civil discovery will adversely affect its criminal
investigation. . . .  Such speculative and conclusory theories
undercut the requirement of section 981(g) that the Government
actually show that civil discovery will adversely affect its
ability to conduct the criminal investigation." (emphasis
omitted)).  Accordingly, because there is no evidence that only
one side will be able to take discovery with a properly crafted
protective order in place, a protective order is permissible.

II.  MOTIONS FOR LEAVE TO FILE SURREPLY

        "The standard for granting . . . leave to file a surreply
is whether the party making the motion would be unable to
contest matters presented to the court for the first time in the
opposing party's reply."  Lewis v. Rumsfeld, 154 F. Supp. 2d 56,
61 (D.D.C. 2001).  A surreply is not justified to correct "an
alleged mischaracterization."  Id.

        The Shadman claimants and AIB request leave to file a
surreply.  AIB contends that the government "improperly raised
[a standing argument] for the first time in its reply."

_____

        [3] There is, of course, nothing that prevents the government
from renewing its motion for a stay if its ability to conduct
discovery is impaired by parties and witnesses who do, in fact,
assert their Fifth Amendment privilege.

Claimant AIB's Mot. for Leave to File a Surreply in Further Opp'n to the U.S.'s Mot. for a Stay Pursuant to 18 U.S.C. § 981(g) at 2.  Because the government's standing argument was not considered, AIB is not "unable to contest" the matter, and thus a surreply is unnecessary.

The Shadman claimants argue that the government made "new assertions and material misrepresentations" in its reply. Claimants' Mot. for Leave to File Surreply in Opp'n to the U.S.'s Mot. for a Stay Pursuant to 18 U.S.C. § 981(g) at 1.  A surreply, however, is not justified to correct alleged mischaracterizations.  <u>Lewis</u>, 154 F. Supp. 2d at 61. Additionally, the Shadman claimants did not identify any arguments that the government raised for the first time in its reply.  While the Shadman claimants point to the government's argument that a protective order is inappropriate, the United States brought up this argument in its original motion for a stay.  Accordingly, a surreply is unjustified and will be denied.  <u>See</u> <u>id.</u>

CONCLUSION

The government has failed to demonstrate that a stay is necessary because a well-crafted protective order limiting discovery will suffice to protect the United States' asserted interest and the protective order will not allow only one side

- 15 -

to pursue discovery.  Additionally, the claimants do not prove

that a surreply is necessary.  Accordingly, it is hereby

ORDERED that the government's motion to stay [56] be, and

hereby is, DENIED without prejudice.  It is further

ORDERED that the United States consult the claimants and

submit within 30 days a proposed protective order suggesting

limitations to discovery that will protect its interests while

also allowing claimants to move forward with the case.  It is

further

ORDERED that AIB's motion for leave to file a surreply [64]

be, and hereby is, DENIED.  It is further

ORDERED that the Shadman claimants' motion for leave to

file a surreply [65] be, and hereby is, DENIED.

SIGNED this 17th day of April, 2014.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge