## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-01905 (RWR) |
| | ) | |
| SUM OF $70,990,605, *ET AL.*, | ) | |
| | ) | |
| **Defendants *in rem*.** | ) | |
| _____ | ) | |

## UNITED STATES' MOTION TO STRIKE CLAIM OF
## AFGHANISTAN INTERNATIONAL BANK

Comes now the Plaintiff, United States of America, by and through its undersigned

counsel, and hereby moves this Court to strike the claim of Afghanistan International Bank from

this forfeiture action pursuant to Rule G(8)(c) of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions because, as described herein, Afghanistan

International Bank (AIB) does not have standing to contest the forfeiture of the defendant assets.

AIB, a foreign financial institution, does not meet the specific statutory standing requirements set

forth in 18 U.S.C. § 981(k) because it is not an owner of the defendant funds.

## I.      FACTUAL BACKGROUND

On November, 20, 2012, the United States commenced this civil forfeiture action by

filing a verified complaint for forfeiture against $77 million in defendant assets located in two

bank accounts at AIB pursuant to 18 U.S.C. § 981 (AIB)(ECF No. 3).  The original complaint

alleged that the defendant assets are the proceeds of a conspiracy to commit wire fraud in

violation of 18 U.S.C. § 1343, through which Hikmatullah Shadman and his associates obtained

more than $77 million in payments from the United States government for contracts and services

that were awarded through fraud and corruption.  The payments were deposited at AIB between

November 2010 and March 2012.   On or about March 28, 2012, AIB opened an interbank

account at Standard Chartered Bank in New York (ECF No. 41, ¶ 7).

On December 10, 2012, predicated on a showing of probable cause, this Court issued

arrest warrants *in rem* for the defendant assets.   The arrest warrants *in rem* were transmitted to

Afghanistan pursuant to the United Nations Convention Against Corruption with a request for

restraint of the bank accounts.   On or about January 28, 2013, the Afghan Attorney General's

Office, in response to the U.S. request, directed AIB to restrain the defendant accounts, and AIB

was informed of the U.S. forfeiture action.   Subsequently, the Afghan Attorney General's Office

decided not to enforce the mutual legal assistance request, and AIB lifted the restraint.   The civil

forfeiture action, however, remained pending in the United States District Court for the District

of Columbia.

Starting on or about March 25, 2013, Mr. Shadman transferred money out of the

defendant AIB bank accounts, including to accounts at foreign banks.   A portion of the monies

transferred out of AIB was later deposited back into accounts at AIB over two months after AIB

was made aware of this forfeiture action. (ECF No. 51, ¶ 58)("Based on the account statements

for the 7819 Account, AIB admits that, on or about April 29, 2013, $4 million was transferred

from an account ending in 0238 at Bank Alfalah held in the name of Hikmat Shadman Logistics

Services company to the 7810 Account.")

Thus, on May 3, 2013, the United States filed, under seal, an amended verified complaint

for forfeiture *in rem* pursuant to 18 U.S.C. § 981(k) against the defendant assets remaining at

AIB and the defendant assets which were transferred out of the original AIB bank accounts (ECF

No. 9).   On May 8, 2013, predicated on a showing of probable cause, this Court issued arrest

warrants *in rem* against funds held in the interbank accounts of AIB and the foreign banks to which Mr. Shadman transferred the criminal proceeds.

Under 18 U.S.C. § 981(k), when funds are deposited into an account at a foreign bank by a foreign bank's client and that foreign bank has an interbank account at a bank in the United States, the funds are deemed to have been deposited into the interbank account in the United States for the purposes of forfeiture, and any restraining order, seizure warrant, or arrest warrant *in rem* regarding the funds may be served on the U.S. bank.  As explained herein, any restraining order, seizure warrant or arrest warrant *in rem* served on the U.S. bank is enforced only up to the amount of the funds controlled by the foreign client remaining at the foreign bank on the date the restraining order, seizure warrant, or arrest warrant *in rem* is served.

On May 9, 2013, and May 10, 2013, the United States executed this Court's May 8, 2013, arrest warrants *in rem* against the funds in interbank account of AIB and other foreign banks to which Mr. Shadman transferred the criminal proceeds. Contemporaneous with the execution of the arrest warrants *in rem*, the United States learned of additional funds that Mr. Shadman transferred to and from the original defendant AIB accounts.  As a result, on May 10, 2013, May 17, 2013, and May 24, 2013, United States Magistrate Judge Alan Kay of the United States District Court for the District of Columbia issued seizure warrants pursuant to 18 U.S.C. § 981(k) against funds held in the interbank accounts of the foreign banks believed to be holding the criminal proceeds.  The assets were restrained and/or seized, including a total of $10.1 million from AIB's interbank account at Standard Chartered Bank.   On July 26, 2013, this Court granted the United States' request to amend the complaint a second time to incorporate all of the restrained assets into this civil forfeiture action.

The Second Amended Verified Complaint for Forfeiture (the "Complaint")(ECF No. 15) seeks the forfeiture of the following defendant assets pursuant to 18 U.S.C. §§ 981(a)(1)(C), 981(k) and 984:

> "All funds held by or for the benefit of Afghanistan International Bank at Standard Chartered Bank, New York, of an amount up to but not to exceed $10,100,000 of the total sum of any funds held in any account at Afghanistan International Bank controlled by or for the benefit of Hikmatullah Shadman, including, but not limited to, account number 050210000527810, in the name of Hikmat Shadman Logistics Services Company, account number 050210001288613, in the name of Faizy Elham Brothers, Ltd., and account number 05021020014251115 in the name of Everest Faizy Logistics Services."

As set forth in the Stipulation for the Return of Seized Funds (ECF No. 25) and discussed herein, AIB acknowledges it had $4,330,287.03, on deposit in accounts controlled by or for the benefit of Mr. Shadman as of May 24, 2013, the date of the most recent seizures (ECF No. 25, page 9). Thus, the United States agreed to release $5,769,712.97 of the seized funds to AIB, reflecting the difference between the $10,100,000 that was seized from Standard Chartered Bank and the $4,330,287.03 on deposit in accounts controlled by or for the benefit of Mr. Shadman (ECF No. 26). As a result, the seized defendant assets have a combined value of approximately $57.3 million.

On October 16, 2013, AIB filed a claim in this forfeiture action asserting an interest in the remaining $4,330,287.03 of the defendant assets seized from Standard Chartered Bank.

## II.     LEGAL STANDARDS

### a.     Supplemental Rules G(6), G(8) and G(5)

Rule G(8) of the Supplemental Rules for Maritime or Admiralty Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure states that in a civil forfeiture action, at any time before trial, the United States "may move to strike a claim for failing to comply with Rule G(5) or because the claimant lacks standing." Supp. Rule G(8)(c)(i).

Supplemental Rule G(6) permits the United States to issue special interrogatories to claimants early in a forfeiture proceeding.  The purpose of such special interrogatories is to allow the government to gather information that bears on a claimant's standing to challenge the forfeiture action.  *See United States v. All Assets Held at Bank Julius Baer & Co., Ltd*., 2013 U.S. Dist. LEXIS 112988 (D.D.C. Aug. 12, 2013)(citing John K. Rabiej, *Supplemental Rule G Governing Pretrial Procedures in Forfeiture in Rem Actions*, Prac. Litig., May 2008, at 51 for the proposition that the government has an early right to scrutinize and challenge the claimant's asserted property interest before the Court considers the claimant's motion to dismiss the government's complaint.).  AIB responded to Supplemental Rule G(6) special interrogatories issued by the United States on March 18, 2014.

     b.        **Standing**

          i.        **Burden of Proof**

A putative claimant bears the burden of establishing that he or she has both "statutory standing" and "constitutional standing" to intervene in a civil forfeiture action.  *United States v. 8 Gilcrease Lane,* 641 F. Supp. 2d at 5 (D.D.C. 2009).  "Congress has required a would-be intervener to establish…that the claimant has an interest in some portion of, or all of, the particular defendant property…Compliance with these requirements gives rise to statutory standing…The proposed interveners also need constitutional standing to proceed; that is, there must be a live case or controversy between the parties."  *Id*. (internal citations omitted); *see also United States v. $487,825.00*, 484 F.3d 662, 664 (3d Cir. 2007)("In order to stand before a court and contest a forfeiture, a claimant must meet both Article III and statutory standing requirements."); *United States v. $5,730.00 in U.S. Currency*, 109 Fed. Appx. 712, 713 (6th Cir. 2004)(claimant must establish that he has both statutory standing and Article III standing); and

*United States v. One Cadillac Seville*, 866 F.2d 1142, 1148 (9th Cir. 1989)(finding that proper standing to contest a forfeiture is both a statutory matter and an Article III requirement).

If a claimant fails to establish both statutory and constitutional standing, a court lacks jurisdiction to consider any challenge the putative claimant may bring to a forfeiture action. *United States v. All Assets Held at Bank Julius Baer & Co.*, 664 F. Supp. 2d 97 (D.D.C. 2009); *George v. Napolitano,* 693 F.Supp.2d 125, 128-29 (D.D.C. 2010)(citing *Haase v. Sessions,* 835 F.2d 902, 906 (D.C. Cir. 1987)).

### ii.   Statutory Standing and 18 U.S.C. § 981(k)

To establish statutory standing, the claimant must demonstrate that he or she has complied with the statutory requirements designated by Congress for contesting a civil forfeiture action.  In civil forfeiture actions brought under 18 U.S.C. § 981(k), "the owner of the funds deposited into the account at the foreign financial institution may contest the forfeiture by filing a claim." 18 U.S.C. § 981(k)(3)(internal citations omitted).  "Owner" in the context of § 981(k) is a defined term, and the statute excludes from that definition the foreign financial institution at which the funds were deposited.  Specifically:

> (B) Owner.—
>> (i) In general.— Except as provided in clause (ii), the term "owner"—
>>> (I) means the person who was the owner, as that term is defined in section 983(d)(6), of the funds that were deposited into the foreign financial institution (as defined in section 984(c)(2)(A) of this title) at the time such funds were deposited; and
>>> (II) does not include either the foreign financial institution (as defined in 984(c)(2)(A) of this title) or any financial institution acting as an intermediary in the transfer of the funds into the interbank account.

18 U.S.C. § 981(k)(4)(B).  Thus, standing to challenge a 18 U.S.C. § 981(k) forfeiture action is specifically limited to a particular statutory definition of "owner" applicable only to 18 U.S.C. § 981(k) seizures. 147 *Cong. Rec.* S8944 (Daily ed., Aug. 3, 2001); *see also* 18 U.S.C. § 981(k)(3).

Accordingly, in 18 U.S.C. § 981(k) civil forfeiture cases it is the foreign depositor, as the person who "was the owner….of the funds that were deposited into the foreign financial institution" and not the foreign financial institution, who has standing to challenge the forfeiture action by filing a claim.  18 U.S.C. § 981(k)(4)(B).[1]

The United States Court of Appeals for the First Circuit has explained that this rule is necessary to avoid foreign financial institutions automatically prevailing as a claimant under ordinary forfeiture rules.  Specifically:

> "Section 981(k) provides for the forfeiture of amounts in interbank accounts held by a foreign bank at banks in the United States when forfeitable funds are deposited into an account at the foreign bank. Frequently, however, foreign banks are innocent of the underlying wrongdoing that forms the basis for the forfeiture. As a result, if a foreign bank were allowed to file a claim for amounts seized from its interbank account, as was the case before enactment of section 981(k), it would often succeed in recovering the seized amounts as an "innocent owner" of the funds, even when the foreign depositor might not qualify as an innocent owner. To avoid this result, Congress in enacting section 981(k) also provided that generally the foreign depositor, and not the foreign bank, is considered an "owner" of the seized funds, eligible to challenge the forfeiture on innocent owner or other grounds."

*United States v. Union Bank for Savings & Investment (Jordan)*, 487 F. 3d 8, 10 (1st Cir. 2007) (internal citations omitted).  This rule was designed to make "a depositor's funds in a foreign bank's U.S. correspondent account subject to the same civil forfeiture rules that apply to a depositor's funds in other U.S. bank accounts."  147 *Cong. Rec.* S8944 (Daily ed., Aug. 3, 2001).

This statutory standing rule has two exceptions, both of which are codified. First, under 18 U.S.C. § 981(k)(4)(B)(ii)(II), if the foreign bank establishes, by a preponderance of the evidence, that prior to the seizure, it had discharged all or part of its obligation to the prior owner of the funds, the foreign bank is  deemed the owner of the funds to the extent of such discharged

---

[1] In contrast, in forfeiture cases without Section 981(k) seizures, the statutory standing requirements are set forth in 18 U.S.C. § 983(a)(4)(A), and Supplemental Rule G(5).  A would-be claimant in such matters must file with the court a claim that identifies the property being claimed, and the claimants' interest in the property.  Supp. R. G(5)(a)(i)(A)(C).

obligation.   The term "obligation" is not defined in the statute, but is commonly understood in the context of bank deposits.   "A deposit of a certain amount into a bank account creates a corresponding obligation on the part of the bank to repay that amount on demand. Such an obligation is discharged by repaying the appropriate amount. Thus, a bank's obligation to a depositor is measured by that depositor's account balances."  *Union Bank*, 487 F. 3d at 18. Second, a foreign financial institution may have standing to challenge a forfeiture action if the basis for the forfeiture action is wrongdoing committed by the foreign financial institution. 18 U.S.C. § 981(k)(4)(b)(ii)(I).

Courts have required "strict compliance" with statutory standing requirements in civil forfeiture actions. *See, e.g., United States v. $12,126.00 in U.S. Currency,* 337 Fed. Appx. 818, 820 (11th Cir. 2009)(affirming order striking claim for lack of statutory standing because "the district court was entitled to insist upon strict compliance with the procedural requirements set forth in Rule G(5)"); *United States v. $14,132.00 in U.S. Currency,* 2011 WL 3235720, *1(D.Col. 2011)(granting Rule G(8)(c) motion to dismiss for lack of statutory standing where claimant filed claim but no answer); *United States v. $27,601.00 in U.S. Currency,* 800 F. Supp.2d 465, 467 (W.D.N.Y. 2011)(requiring strict compliance with Rule G(5)).

### III.    ARGUMENT

#### a.    AIB Lacks Statutory Standing to Challenge This Forfeiture Action Because It Is Not the Owner of the Defendant Funds

The specialized standing rule established by Congress for civil forfeiture actions brought pursuant to 18 U.S.C. § 981(k) states that "the owner of the funds deposited into the account at the foreign financial institution may contest the forfeiture by filing a claim," and explicitly carves out from the definition of owner the foreign financial institution into which the funds were deposited. 18 U.S.C. §§ 981(k)(3) and (4).  Because AIB is a foreign financial institution,

as set forth in 18 U.S.C. § 984(c)(2)(A), into which Mr. Shadman deposited the criminal

proceeds, AIB is statutorily precluded from being an owner of the defendant assets.  Thus, AIB

may not "contest the forfeiture by filing a claim," and its claim should be dismissed.  18 U.S.C. §

981(k)(3).

 Neither of the two exceptions that would allow AIB to claim standing apply here.  First,

as discussed in the Stipulation for Return of Seized Funds, AIB admits that it had $4,330,287.03

on deposit on the date of the seizures in accounts controlled by or for the benefit of Mr.

Shadman, and that these funds were deposited at AIB after AIB learned of the U.S. restraint.

(ECF Nos. 25, and 51, ¶ 58)("Based on the account statements for the 7819 Account, AIB admits

that, on or about April 29, 2013, $4 million was transferred from an account ending in 0238 at

Bank Alfalah held in the name of Hikmat Shadman Logistics Services company to the 7810

Account.").  Thus, AIB has not established that prior to the seizure of the defendant funds from

the interbank account, it had discharged its obligation to the depositor, in connection with these

funds, and the exception set forth in 18 U.S.C. § 981(k)(4)(B)(ii)(II) does not apply.

 Importantly, when AIB released the restraint on Mr. Shadman's funds prior to being

served with the 18 U.S.C. § 981(k) arrest and seizure warrants, it also had the opportunity to

terminate its relationship with Mr. Shadman and his companies.  If it had done so, AIB would

have "discharged its obligation to the previous owner of the funds" and the funds would not have

been available for seizure. 18 U.S.C. § 981(k)(4)(B).  Instead, when AIB chose to continue its

relationship with both Standard Chartered Bank and Mr. Shadman, and even received deposits of

funds transferred back from Bank Alfalah, AIB assumed the risk that the funds would be deemed

to be in their interbank account under 18 U.S.C. § 981(k).  AIB was on notice that it assumed

this risk, as the agreement between AIB and Standard Chartered Bank makes clear that AIB is

bound by "all applicable [U.S.] Federal and State Laws and Regulations." *See* Attachment A, Account Opening and Account Related Services Documents, page 4.

In its claim, AIB argues that it has suffered an injury because Afghan law did not permit it to "set off or debit" the interbank seizure against Mr. Shadman's accounts (ECF No. 41, ¶ 13). However, a bank's right of set off is immaterial as to whether it has established statutory standing.  "[A] foreign bank's ability to obtain recourse for the seized funds neither means that they are the owner of the seized funds, nor that they have discharged their obligation in accordance with 18 U.S.C 981(k)(4)(B)(ii)(II)." *Union Bank*, 487 F. 3d at 18.  In fact, nothing in the statutory language of 18 U.S.C. § 981(k) ties the bank's relationship with its client to the ability to seize the funds. *See Union Bank*, 487 F. 3d at 18 ("Nothing in the language of the statute ties the definition of 'obligation' to the foreign bank's rights of recourse or setoff…If, as Union Bank (Jordan) asserts, the foreign bank were always able to assert ownership over any funds it could not recover from its depositors, section 981(k)(1)(B) would not have been necessary.").  AIB and the funds in its interbank account became subject to U.S. banking law and 18 U.S.C. § 981(k) as soon as AIB opened an interbank account in the United States.  It is the bank's responsibility to take such measures as it considers appropriate to protect itself from potential loss as a result of its decision to engage in a banking relationship with a particular client or to seek compensation from any such client whose actions may have caused such a loss.

The second exception to the statutory standing rule only applies when a complaint alleges wrongdoing by the foreign financial institution.  There are no such allegations in this case. Therefore, the exception set forth in 18 U.S.C. § 981(k)(4)(B)(ii)(I) does not make AIB the statutory owner of the defendant funds.

In fact, Congress passed 18 U.S.C. § 981(k) specifically to ensure that foreign financial

institutions such as AIB could not challenge the forfeiture of a depositor's funds held in their

interbank accounts.  The statutory language of 18 U.S.C. § 981(k) was "designed to make a

depositor's funds in a foreign bank's U.S. correspondent account subject to the same civil

forfeiture rules that apply to a depositor's funds in other U.S. bank accounts."  147 *Cong. Rec.*

S8944 (Daily ed., Aug. 3, 2001).  When a depositor's funds in a U.S. bank account are subject to

forfeiture, the U.S. bank does not have standing to challenge the forfeiture because it does not

have a sufficient interest in the depositor's funds. *See* Cassella, Stefan D., *Asset Forfeiture Law*

*in the United States: A Treatise on Forfeiture Law*, § 10–5 at 30 (2d Ed.).   Thus, in order to

make Mr. Shadman's funds at AIB subject to the same forfeiture rules that would apply to Mr.

Shadman's funds in other U.S. bank accounts, AIB's claim must be dismissed.

**IV.     CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court strike the

Claim of Afghanistan International Bank for lack of standing pursuant to Supplemental Rule

G(8)(c).

Respectfully submitted,

JAIKUMAR RAMASWAMY, CHIEF
ASSET FORFEITURE AND
   MONEY LAUNDERING SECTION


/s/ Elizabeth A. Aloi_____
DANIEL H. CLAMAN
Assistant Deputy Chief
ELIZABETH A. ALOI
Trial Attorney
Asset Forfeiture and Money
   Laundering Section
Criminal Division
United States Department of Justice

1400 New York Avenue, N.W., Suite 10100
Washington, D.C. 20530
Telephone:  (202) 514-1263

Attorneys for Plaintiff
UNITED STATES OF AMERICA