**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>    v.<br><br>SUM of $70,990,605, *et al.*,<br><br>       Defendants *in rem*. | Civil Action No. 12-CV-1905 (RDM-AK) |

**MEMORANDUM OPINION**

Pending before the Court are "Claimant Afghanistan International Bank's Motion for an Order to Compel the Government to Respond to Pending Discovery and For an Enlargement of Time To Respond to The Government's Motion to Strike" ("Motion") [97] and "United States' Motion for a Protective Order Against Discovery Propounded by Afghanistan International Bank ("AIB") Until the Resolution of Dispositive Motions" ("Protective Order") [105]. Chief Judge Roberts, who was the initial trial judge assigned to the case, referred these two motions to the undersigned on July 16, 2014 (Minute Order, July 16, 2014), and the Court held a hearing on both motions on October 28, 2014. For the reasons set forth in this memorandum opinion, the undersigned will grant in part and deny in part the Motion to Compel and deny the Protective Order.

## I. Background

The underlying case stems from a civil action *in rem* for the forfeiture of the defendant assets pursuant to 18 U.S.C. §§ 981(a)(1)(C), 981(k), and 984. The United States filed its Second Amended Verified Complaint for Forfeiture *in rem* ("Complaint") [15] seeking the forfeiture of the defendant assets. The United States alleges that these assets are the proceeds of a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343, through which Mr. Hikmatullah Shadman and his associates allegedly obtained more than $77 million in payments from the United States. (Complaint ¶ 10).

Both AIB and the United States state in their pleadings that a total of $10.1 million were seized from AIB's interbank[1] account at Standard Chartered Bank in New York. (Motion at 2; Complaint at ¶ 6(a)). The initial seizure from the interbank account occurred on May 10, 2013, when the Department of Justice served a Warrant of Arrest *in rem* seizing $1.5 million from the account. (Complaint ¶ 60; Afghanistan International Bank's Verified Claim of Interest in Defendant Property ("Claim") [41] at 2-3). On May 24, 2013, the Department of Justice served two warrants on the interbank account for seizures in the amount of $3.6 million and $5 million. (Complaint ¶¶ 61, 76; Claim at 3).

AIB stipulated that it had $4,330,287.03 on deposit in accounts controlled by or for the benefit of Mr. Shadman at the time of the seizures. (Stipulation for Return of Seized Funds ("Stipulation") [25] at 5). On September 4, 2013, pursuant to the Stipulation, the United States released to AIB $5,769,712.97, the difference between the $10.1 million that was originally seized and the amount on deposit. (*Id.*) On October 16, 2013, AIB filed its verified claim of

---

[1] The statute defines "interbank account" as "an account held by one financial institution at another financial institution primarily for the purpose of facilitating customer transactions." 18 U.S.C. §§ 981(k)(4)(A), 984(c)(2)(B). That is, foreign banks use these correspondent accounts to offer services to customers in locations where the banks are not physically located.

interest to $4,330.287.03 plus interest seized from the AIB interbank account located at Standard Chartered Bank in New York.  On May 30, 2014, AIB served the United States with its First Set of Interrogatories and Request for Production.  (Motion at 2).  In its Opposition, the United States stated that it received the discovery request on or about June 10, 2014. (United States Opposition to Putative Claimant Afghanistan International Bank's Motion for an Order to Compel the Government to Respond to Pending Discovery and For an Enlargement of Time to Respond to the Government's Motion to Strike ("Opposition") [106] at 2, n.1).  On July 2, 2014, the United States moved to strike AIB's claim to the seized funds, arguing that AIB had no standing to challenge this forfeiture action. (United States' Motion to Strike Claim of Afghanistan International Bank ("Motion to Strike") [93]).

Chief Judge Roberts determined that the Motion to Strike would be resolved after the disposition of the Motion that is currently before this Court; Judge Moss, the current trial judge, has kept with that determination.  Therefore, the Motion to Strike has not been fully briefed, and will not be fully briefed, until the resolution of the Motion to Compel.  The Motion to Strike determination will resolve whether or not AIB has standing, and therefore the right to continue participating in this litigation.  The undersigned must balance AIB's right to discovery to establish that standing with the possibility of harm to the United States.

While the undersigned is not charged to determine whether or not AIB has standing to contest this forfeiture action of the defendant assets, the narrow scope of discovery to which AIB is entitled implicates the issues of standing.  Understanding the statutory standing provision is critical to this Motion's analysis, as AIB is entitled to any jurisdictional discovery that could help either establish itself as an "owner" or satisfy one of the two aforementioned exceptions to the

ownership provision. Therefore, some discussion of standing and its effect on the two motions currently pending before the undersigned is warranted.

A claimant must establish two types of standing in a civil forfeiture action: Article III standing and statutory standing.

> The term 'statutory standing' relates to a claimant's ability to show that he has satisfied whatever statutory requirements Congress has imposed for contesting a civil forfeiture action in federal court, while 'Article III standing' [or 'constitutional standing'] relates to the claimant's ability to show that he has a sufficient interest in the property to satisfy the case-or-controversy requirement of Article III of the Constitution.

Stefan D. Casella, *Asset Forfeiture in the United States: A Treatise on Forfeiture Law,* § 9–4 at 326 (2006).

The issue of Article III standing is uncontested; the United States has only argued, in both its briefings and at the October 28, 2014 hearing, that AIB lacks statutory standing. Therefore, the main issue with respect to standing is whether or not AIB can establish statutory standing under 981(k), as this was the authorizing statute that allowed the United States to execute arrest warrants *in rem* against the funds in the AIB interbank account.

18 U.S.C. § 981(k)(3) states that "[i]f a forfeiture action is instituted against funds restrained, seized, or arrested…the *owner* of the funds deposited into the account at the foreign financial institution…may contest the forfeiture by filing a claim under section 983" (emphasis added). The ability of AIB to establish statutory standing, therefore, turns on its ability to establish itself as an owner, the parameters of which are put forth in § 981(k)(4)(B). AIB disagrees, and argued at the October 28, 2014 hearing that the issue of "ownership" under the statute is part of the innocent owner affirmative defense, distinct from the issue of statutory standing. However, the undersigned reads the statute as requiring AIB to establish itself as an owner in order to have statutory standing, and this limits the jurisdictional discovery to which AIB is entitled at this point in the litigation.

Section 981(k)(4)(B)(i)(I) defines the term "owner" by reference to 18 U.S.C. § 983(d)(6). Section 981(k)(4)(B)(i)(II) makes clear that an owner "does not include either the foreign financial institution…or any financial institution acting as an intermediary in the transfer of the funds into the interbank account." This would, on its face, exclude AIB—a foreign financial institution—unless it can satisfy one of the two exceptions to this definition of "owner" that excludes foreign financial institutions.

First, a foreign financial institution may be considered the "owner" of the funds only if the basis of the forfeiture action is wrongdoing committed by the foreign financial institution. Section 981(k)(4)(B)(ii)(I). Second, if the foreign financial institution establishes, by a preponderance of the evidence, that prior to the restraint, seizure, or arrest of the funds, it discharged all or part of its obligation to the prior owner of the funds, it "shall be deemed the owner of the funds to the extent of such discharged obligation." Section 981(k)(4)(B)(ii)(II).

Absent an exception, however, § 981(k)(4)(B)(i)(I) makes clear that the owner of the deposited funds is the individual who owned the funds at the time that they were deposited into a foreign financial institution. *United States v. Union Bank for Savings & Investment (Jordan)* 487 F.3d 8, 17 (1st Cir. 2007). By virtue of the statute, AIB cannot be an owner unless it establishes that one of the two exceptions apply in this situation—a determination that is ultimately for Judge Moss.

## II. Standard of Review

### A. Discovery, Motion to Compel, and Interrogatories

Pursuant to Rule 37, a party propounding discovery or taking a deposition may seek an order compelling responses when an opposing party has failed to respond or has provided

incomplete responses. Fed. R.Civ.P. 37(a)(3)(B). "The proponent of the motion to compel bears the initial burden of proving that the information sought it relevant." *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154, 159 (D.D.C. 1999). A trial court has considerable discretion over discovery matters. *United States v. Krizek*, 192 F.3d 1024, 1029 (D.C. Cir. 1999). "[A] district court's decision to permit or deny discovery is reviewable only for an abuse of discretion." *Food Lion, Inc. v. United Food and Commercial Workers Int'l. Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (citation omitted).

Federal Rule of Civil Procedure 33(b) requires that parties answer interrogatories separately and fully in writing under oath or state the reasons for their objections and answer to the extent the question is not objectionable. Fed. R. Civ. P. 33(b). Fed. R. Civ. P. 26 authorizes discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *Denture Cream Products Liability Litigation*, 292 F.R.D. 120, 123 (D.D.C. 2013). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "A showing of relevance can be viewed as a showing of need; for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of a matter not 'relevant to the subject matter involved in the pending action.'" *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984) (citing Fed. R. Civ. P. 26(b)(1)).

Discovery of relevant materials includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted); *McPeek v. Ashcroft*, 212 F.R.D. 33, 34 (D.D.C. 2003) (whether information is relevant is "a function of the relationship of the data to the [ ] central accusations of [the] lawsuit.") "No one would suggest

that discovery should be allowed of information that has no conceivable bearing on the case." *Food Lion, Inc.* 103 F.3d at 1012 (quoting 8 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2008, 105-06 (1994)).  Once a relevancy objection has been made, the party seeking discovery has to demonstrate that the information sought to be compelled is discoverable.  *See Alexander v. Federal Bureau of Investigation*, 194 F.R.D. 316, 325 (D.D.C. 2000) (citation omitted).

Pursuant to Fed. R. Civ. P. 26(b)(2)(C), the court may limit discovery on motion or on its own initiative, if it determines that the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving those issues." *Tooley v. Napolitano,* 556 F.3d 836, 841 (D.C. Cir. 2009); *see Hammerman v. Peacock*, 108 F.R.D. 66, 67 (D.D.C. 1985) (Rule 26(b)(1) was amended to give the court the power, *sua sponte*, to limit discovery.)  *see also Smith v. Cafe Asia*, 246 F.R.D. 19, 21-22 (D.D.C. 2007) (the trial court balances competing concerns when determining discovery matters).

### B. Protective Orders

Fed. R. Civ. P. 26 authorizes discovery "regarding any non-privileged matter that is relevant to any party's claim or defense…" Fed. R. Civ. P. 26(b)(1); *Denture Cream Products Liability Litigation*, 292 F.R.D. at 123.  Rule 26(c), however, further provides that:

> Upon motion by a party…and for good cause shown, the court…may make any order which justice requires to prevent a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

This rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct 2199, 81 L.Ed 2d 17 (1984). The court may "limit the conditions, time, place, or topics of discovery." *Burka v. United States Dep't of Health and Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996). As noted, the district court has wide discretion in managing discovery, and with respect to a protective order issued pursuant to Rule 26(c), the Court is to "undertake an individualized balancing on the many interests that may be present in a particular case." *Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 19, 22 (D.D.C. 2007) (quoting *Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 898 (D.C. Cir. 2006)).

The party seeking the protective order "bears the burden of making the showing of good cause contemplates by the rule." *Alexander v. Fed. Bureau of Investigation*, 186 F.D.R. 71, 75 (D.D.C. 1998). In order to do this, the party "must articulate specific facts to support its request and cannot rely on speculative or conclusory statements." *Friends of the Earth v. United States Dep't of the Interiori*, 236 F.R.D. 39, 41 (D.D.C. 2006) (quoting *Low v. Whitman*, 207 F.R.D. 9, 10-11 (D.D.C. 2002)).

### III. <u>Analysis</u>

#### A. <u>AIB's Motion to Compel</u>

For the reasons stated above, the undersigned reiterates that the only discovery to which AIB is entitled at this juncture is jurisdictional discovery. Since AIB must establish itself as an "owner" under 18 U.S.C. § 981(k)(4)(B) in order to participate in this litigation, only information that speaks to this issue is relevant at this time.

**1. Interrogatories 1-11, 16, 17**

The Court finds that Interrogatories 1-11, 16, and 17 are premature; therefore, the United States does not have to answer.

During the October 28, 2014 hearing, AIB stated that interrogatories 1-4 and 16 and 17 were necessary to complete its Opposition to the Motion to Strike and to flesh out AIB's "ability to defend itself." (Oct. 28, 2014 Hearing). Specifically, AIB argued that these interrogatories address two issues: AIB's ability to offset the seizure and AIB's desire to prepare for a possible constitutional challenge to § 981(k) on the grounds that it violates Procedural Due Process. AIB argues that it requires interrogatories 1-4, 16, and 17 in order to develop this argument fully in its briefing.

AIB is allowed to raise a constitutional challenge to the statute in its Motion to Strike if it so chooses. AIB has not, however, put forth the issue in any of its briefing; so far, it only speculates that it might raise the issue in the future. Since it has not yet raised the issue, the undersigned finds that these interrogatories are premature. As to whether AIB may offset the seizures, this is a separate inquiry from statutory standing—AIB has indicated as much in its pleadings. (Motion at 5) ("Regardless of whether [the ability to offset the seizure] [is] necessary to evaluate the Government's motion [to strike], AIB respectfully submits that [it is] necessary to evaluate its Constitutional challenge to that motion.").

Therefore, for the above stated reasons, interrogatories 1-11, 16, and 17 are premature and the United States does not have to answer.

Interrogatory 5 involves the question of ownership, but not the type of ownership that would assist AIB in its quest to establish statutory standing. Specifically, interrogatory 5 asks for any communications between the United States and Standard Chartered Bank New York as to

the identity of the owner(s) of those accounts and the funds held therein. Presumably, AIB wants to show that the seized funds are the property of AIB and not the property of Mr. Shadman or any customer in Afghanistan, as AIB attested in its Verified Claim of Interest. (Claim at 4). However, the entire purpose of an interbank account, as explained previously, is for banks to facilitate services in locations where they are not physically present. Section 981(k)(1)(A) makes clear that if funds subject to civil forfeiture are deposited into a foreign financial institution, and that same foreign financial institution has an interbank account in the United States,

> [T]he funds shall be deemed to have been deposited into the interbank account in the United States, and any restraining order, seizure warrant, or arrest warrant in rem regarding the funds may be served on the covered financial institution, and funds in the interbank account, up to the value of the funds deposited into the account at the foreign financial institution.

In other words,

> [I]t is the *deposit* of forfeitable funds into an account at a foreign bank, rather than the continued existence of forfeitable funds in that account, that triggers the forfeitability of an equivalent amount in the foreign bank's interbank account. The funds in the interbank account are forfeitable even if those funds have no connection to the forfeitable funds deposited in the foreign account.

*Union Bank*, 487 F.3d at 15-16.

Therefore, it is immaterial who the actual owner(s) of the funds in the interbank account may be, so long as the amount forfeited reflects the actual amount on deposit from the Claimants in this case. Since interrogatory 5 does not further the ownership analysis under 981(k)(4)(B), it is irrelevant to the issue of standing, and the United States does not have to answer.

Interrogatory 6, as AIB admitted, goes to the merits of the case and, as AIB characterized it, addresses the ability of the government to maintain this civil forfeiture action. This interrogatory has no bearing on standing and, therefore, is premature.

Interrogatories 7 and 8 are standard interrogatories as precursors for the forfeiture trial if and when that trial goes forward, but premature at this juncture.

Interrogatories 9, 10, 11 are interrelated and address the "innocent owner" affirmative defense. The district court has held that establishing oneself as an "innocent owner" is not necessary in order to have standing, and that any suggestion to the contrary improperly conflates the requirements of standing with the merits of an affirmative defense. *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 959 F.Supp. 2d 81, 117-18 (D.D.C. 2013). Any interrogatories that seek to establish AIB as an innocent owner, therefore, are premature.

If Judge Moss denies the United States' Motion to Strike, AIB will have the opportunity to renew its Motion to Compel on these interrogatories. In the view of the undersigned, however, AIB will be able to fully and fairly prepare its opposition to the United States' Motion to Strike without the answers to these interrogatories.

### 2. **Interrogatories 12-15**

Interrogatories 12-15 could relate to the issue of standing; therefore, the United States must answer.

Interrogatories 12 and 13 relate to the second possible exception under section 981(k)(4)(B)(ii)(I). At the October 28, 2014 hearing, AIB categorized these interrogatories as fundamental to standing, arguing at the hearing that if the United States answered "yes" to interrogatory 12, AIB would "by definition have standing." These two interrogatories have bearing on the first exception in section 981(k)(4)(B)(ii)(I), and, therefore, they could be pertinent.

Interrogatories 14 and 15 also relate to an exception to the definition of "owner" found in Section 981(k)(4)(B)(ii)(I). If the United States accuses AIB of wrongdoing, that might allow AIB to establish statutory standing. As these two interrogatories have bearing on the first exception found in the statute, the United States must answer.

Therefore, for the reasons set forth above, interrogatories 12-15 are appropriate for the United States to answer, so that AIB may prepare its opposition to the United States' Motion to Strike.

### 3. Requests for Production

Request for Production #1 is overly broad and redundant, and it is denied. Interrogatories 12 and 14 all have requests for supporting documentation, which are encompassed in interrogatories 13 and 15. Therefore, any documents identified in the United States' responses to interrogatories 12 and 14 will necessarily be produced, which renders this request for production redundant.

Request for Production #2 is premature and, therefore, denied.

### B. United States' Protective Order

In its memorandum in support of its Protective Order, the United States urges that "discovery is inappropriate while a dispositive motion—one that will thoroughly dispose of AIB's claim—is pending" and that "it would be an undue burden for the United States to respond to AIB's discovery request" prior to the resolution of the Motion to Strike. (Protective Order at 7). While it is true that civil discovery can be stayed as premature during the pendency of

dispositive motions, this Circuit has held that a district court must weigh several factors before deciding whether or not to issue a protective order under Rule 26.

> The decision to limit or deny discovery by means of a Rule 26 protective order rests on balancing of several factors: the requester's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material; and the harm which disclosure would cause to the party seeking to protect the information.

*Burka v. Dep't of Health and Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996) (internal citation omitted).

Consideration of these factors makes clear that interrogatories 12-15 are relevant to AIB's ability to brief the Motion to Strike and to establish statutory standing. Responding to interrogatories 12-15 does not appear to the undersigned to impose a burden to the United States. Since the United States' Motion to Strike—the dispositive motion related to both AIB's Motion to Compel and the United States' Motion for a Protective Order—is predicated upon the notion that AIB lacks the necessary statutory standing to become a claimant, and any interrogatories related to the issue of standing are relevant. *See Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979) ("Discovery should precede consideration of dispositive motions when the facts sought to be discovered are relevant to consideration of the particular motion at hand.") (citations omitted).

Granting the United States' Protective Order would be an overly broad measure that would deny AIB the opportunity to establish statutory standing. Therefore, the Motion for a Protective Order is denied.

## IV. Conclusion

Therefore, AIB's Motion to Compel [97] will be granted in part, denied in part, and Plaintiff United States' Motion for a Protective Order [105] will be denied. An Order consistent with this Memorandum Opinion will be issued separately.


DATE: February 13, 2015                         /s/

ALAN KAY

UNITED STATES MAGISTRATE JUDGE