# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

UNITED STATES OF AMERICA,

            Plaintiff,

   v.

THE SUM OF $70,990,605, *et al*,

           Defendants *in rem*.

</td><td>

Civil Action No. 12-cv-1905 (RDM-AK)

</td></tr>
</table>

## MEMORANDUM OPINION

Pending before the undersigned is Claimants' Motion for Protective Order and Preservation Order ("Original Motion") [29], as well as several related filings, including Claimants' Motion for Leave to File Supplemental Evidence in Support of Motion for Protection and Preservation ("First Motion for Leave") [107]; Claimants' Motion for Leave to File Supplemental Evidence in Support of Motion for Protection and Preservation ("Second Motion for Leave") [117]; Claimants' Supplemental Memorandum to Motion for Leave to File[1] ("Supp. Mem.") [122]; Claimants' Motion for Extension of Time to File Response/Reply as to Motion for Leave to File ("Motion for Extension of Time") [127]; Plaintiff United States' Motion to Strike Notice of Supplemental Authority ("Motion to Strike") [146]; and Claimants' Motion for Order to Gather and Preserve Evidence and Protect Witnesses ("Motion for Order") [166]. The Original Motion was referred to the undersigned on July 7, 2014; on August 21, 2014 all

---

[1] This Memorandum was improperly docketed; in actuality, it is a Motion for an Order to subpoena four witnesses for a requested hearing on the Original Motion.

remaining and future discovery disputes were referred to the undersigned.  *See* [96] (order

referring resolution of [29] to the undersigned); August 21, 2014 scheduling order [119]

(referring all discovery disputes to the undersigned).  For the reasons set forth herein, Claimants'

Original Motion [29], First Motion for Leave [107], Second Motion for Leave [117], and

Supplemental Memorandum [122], and Motion for Order [166] are DENIED.  Claimants'

request for a hearing on the Original Motion [29] is also DENIED.  Claimants' Motion for

Extension of Time [127] is DENIED as MOOT.  Finally, the United States' Motion to Strike

[146] is GRANTED in part and DENIED in part.


# I. <u>Background</u>

The underlying case stems from a civil action *in rem* for the forfeiture of the defendant

assets pursuant to 18 U.S.C. §§ 981(a)(1)(C), 981(k), and 984.  The United States filed its

Second Amended Verified Complaint for Forfeiture *in rem* ("Complaint") [15] seeking the

forfeiture of the defendant assets.  The United States alleges that these assets are the proceeds of

a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343, through which Mr.

Hikmatullah Shadman and his associates allegedly obtained more than $77 million in payments

from the United States.  (Complaint at ¶10).  Hikmatullah Shadman, Everest Faizy Logistics

Services, Faizy Elham Brothers, Ltd., Hekmat Shadman, General Trading, LLC, Hikmat

Shadman Logistics Services Company, Yaser Elham ("Najibullah") and Rohullah (collectively,

"Claimants") filed their Verified Claim and Statement of Interest or Right in Property Subject to

Forfeiture in Rem [24] on August 27, 2013, in which they asserted their rights against the

forfeited funds.

Shortly thereafter on September 16, 2013, Claimants filed their Motion for Protective Order and Preservation Order [29] ("Original Motion").  The United States filed its Opposition [32] ("Opposition to Original Motion") on September 20, 2013 and Claimants filed their Reply [34] ("Reply to Original Motion") on October 4, 2013.  In their Original Motion, Claimants alleged that the U.S. Special Inspector General for Afghanistan Reconstruction ("SIGAR") was failing to preserve evidence pertinent to this case and that SIGAR had threatened potential witnesses on Claimants' behalf. (Original Motion at 5).  Claimants' Original Motion cited no legal authority.  Instead, the bulk of the Original Motion consisted of a several pages of questions aimed at SIGAR.  (*Id.* at 5-8).  Claimants requested that the Court hold a status conference, as they were in "immediate need of Court protection of witnesses, and to discuss" the list of questions that Claimants had for SIGAR set forth in the Original Motion.  (*Id.* at 5).  The Original Motion consisted of only two exhibits: email correspondence between Claimants' counsel, Mr. Bryant Banes, and counsel for the United States, Ms. Elizabeth Aloi, regarding the potential release of the forfeited funds [29-1], and a Proposed Order granting Claimants' Original Motion [29-2].  The proposed request for relief included:

1. An Order granting protection for U.S. Special Forces witnesses and requiring any interrogation relating to the facts alleged in this case by either party be conducted under Court supervision with counsel for both parties present.

2. A government-wide Order requiring the U.S. Government to gather and preserve any evidence in its possession relating to the facts alleged in this case, including any evidence in any form reference in pleadings by Claimants, at a central location in Washington, D.C., and that it grant undersigned counsel access for inspection and copying of the same.

3. A Protective Order regarding the taking and preservation of testimony and evidence that may impact National Security or contain classified information.[2]

---

[2] The undersigned notes that this is almost verbatim the same relief that Claimants requested in their Motion for a Preliminary Injunction [42], filed just one month later in October 17, 2013.  Chief Judge Roberts, for a myriad of reasons, denied that Motion on November 11, 2013 [61] ("Mem Op.").

(*Id.* at 9).

The undersigned found that this requested relief was both overly broad and vague, and that none of the supplemental filings clarified the relief that Claimants sought.  Therefore, a Minute Order was issued on January 29, 2015, following a telephone status conference on the same day, ordering Claimants to propose itemized, specific relief.  (*See* Minute Order, January 29, 2015).  Claimants filed their Motion for Order to Gather and Preserve Evidence and Protect Witnesses (Re: Doc 29) [166] and a proposed order ("Proposed Order") [166-1] on February 5, 2015.  The Government filed its Opposition in Response to Claimants' Motion for Entry of Protective and Preservation Order [170] ("Response to Motion for an Order") on February 19, 2015 [170].  Claimants filed a Reply on February 26, 2015 [172].[3]

## II. Legal Standards

## A. Preservation Order

There is a split of authority regarding the precise standard that a party seeking a preservation order must satisfy. Some courts treat a preservation order as an injunctive remedy, while others require a showing that it is "necessary and not unduly burdensome."  *Al-Anazi v. Bush,* Civil Action No. 05-0345 (D.D.C. Oct. 28, 2005) (order) at 1-2 "the Court is not predisposed to assume that the government would alter or destroy records in its possession absent a court order, and is therefore inclined to require that, at the very least, a party seeking

---

[3] Claimants did so despite the fact that the Court did not request a Reply.  The Court provided Claimants with an opportunity to clarify the relief requested in their Original Motion and allowed for the Government to file a response.  At no time did the Court indicate that this was to be considered a traditional Motion that should follow a traditional briefing schedule.

a preservation order against the government make a credible showing of a significant risk of

alteration or destruction." *Id.*

Once a party anticipates litigation, there is a clear duty to preserve potentially relevant

evidence. *Williams v. Court Services and Offender Supervision Agency for D.C.*, 937 F. Supp.

2d 41, 43 (D.D.C. 2013) (quoting *Zhi Chen v. District of Columbia*, 839 F. Supp. 2d 7, 12

(D.D.C. 2011)). Each party has an "obligation to preserve and also to not alter documents it

knew or reasonably should have known were relevant to the [litigation] if it knew the destruction

or alteration of those documents would prejudice the plaintiffs." *Shepherd v. Am. Broad Cos.*

*Inc.*, 62 F. 3d 1469, 1481 (D.C. Cir. 1995). Even a negligent failure to preserve evidence "can

support an adverse inference instruction." *Mazloum v. District of Columbia Metro. Police Dept.*,

530 F. Supp. 2d 282, 292. If a party has consciously disregarded its obligation to preserve

evidence, either punitive or penal sanctions can apply. *Clarke v. Wash. Metro Area Transit*

*Auth.*, 904 F. Supp. 2d 11, 20-21 (D.D.C. 2012) (citing *Shepherd*, 62 F. 3d at 1481). While the

Federal Rules of Civil Procedure do not contain a specific remedy for the failure to preserve

evidence, the trial court has broad discretion in crafting a remedy or sanction. Sanctions

available to a court, under its inherent power, include dispositive sanctions, awards of attorneys'

fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing

adverse evidentiary inferences or precluding the admission of evidence. *Shepherd*, 62 F. 3d at

1475.


## B. Protective Orders

Federal Rule of Civil Procedure 26 authorizes discovery "regarding any non-privileged

matter that is relevant to any party's claim or defense…" Fed. R. Civ. P. 26(b)(1); *In Re Denture*

*Cream Products Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013).  Rule 26(c), however, further provides that upon motion by a party and for good cause shown, "the court…may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  This rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct 2199 (1984).  The court may "limit the conditions, time, place, or topics of discovery."  *Burka v. United States Dep't of Health and Human Servs.*, 87 F.3d 508, 518 (D.C. Cir. 1996).  As noted, the district court has wide discretion in managing discovery, and with respect to a protective order issued pursuant to Rule 26(c), the Court is to "undertake an individualized balancing on the many interests that may be present in a particular case."  *Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 19, 22 (D.D.C. 2007) (quoting *Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 898 (D.C. Cir. 2006)).

The party seeking the protective order bears the burden of making the showing of good cause contemplates by the rule. *Alexander v. Fed. Bureau of Investigation*, 186 F.D.R. 71, 75 (D.D.C. 1998).  In order to do this, the party "must articulate specific facts to support its request and cannot rely on speculative or conclusory statements."  *Friends of the Earth v. United States Dep't of the Interiori*, 236 F.R.D. 39, 41 (D.D.C. 2006) (quoting *Low v. Whitman*, 207 F.R.D. 9, 10-11 (D.D.C. 2002)).

## C. Supplemental Filings

"A request for a court order must be made by motion." Fed. R. Civ. P. 7(b). The Local Rules of this Court contemplate that there ordinarily will be at most three memoranda associated with any given motion: (i) the movant's opening memorandum; (ii) the non-movant's opposition;

and (iii) the movant's reply. *See* LCvR 7.  *See also Crummey v. Social Sec. Admin.*, 794 F. Supp.

2d 46, 64 (D.D.C. June 30, 2011). "Courts also have the discretion to determine whether parties

are allowed to supplement the record of a case." *Jerez v. Republic of Cuba*, 777 F. Supp. 2d 6, 10

(D.D.C. 2011), *objections overrules*, 964 F. Supp. 2d 52 (D.D.C. 2013), *aff'd*, 775 F. 3d 419

(D.C. Cir. 2014).

## III. Analysis

Claimants filed three motions for leave to supplement their Original Motion, as well as

two notices of supplemental authority. [107, 117, 122, 134, 139].  Therefore, before addressing

the substance of the Motion for Preservation and Protective Orders, the undersigned will address

each of these requests to supplement the Original Motion, in order to establish what information

was considered in making a determination.[4]

### A. First Motion for Leave to File Supplemental Evidence

On July 31, 2014, Claimants filed the first of two *ex parte* Motions for Leave to File

Supplemental Evidence in Support of Motion for Protection and Preservation [107] ("First

Motion for Leave").  The United States filed its Opposition on August 8, 2014 [115], and

Claimants filed their Reply on August 18, 2014 [118].

In their First Motion for Leave, Claimants requested permission to file supplementary

evidence that purports to include evidence of SIGAR manufacturing charges against the

---

[4] The undersigned notes at the outset that all of these Motions are largely duplicative of one another and rehash several core arguments again and again.  Therefore, the analysis set forth herein is necessarily repetitive.

Claimants in the form of a Declaration from Major Jerry "Rusty" Bradley. [5]  (First Motion for

Leave at 1). The Court finds this evidence unnecessary for two reasons: (1) the witness who

purports to have this evidence admitted his lack of first-hand knowledge about the matter in an

earlier statement ([28-21], Exh. 59, at 51) and (2) it is untimely.  *See Jerez v. Republic of* Cuba,

777 F.Supp.2d 6, 10 (D.D.C. 2011) (denying motions to supplement the record where the

contents of the supplements did not contain new authority); *Williams v. Glickman*, Civil Action

No. 95-01149 (TAF), 1997 WL 31106 at *1 (D.D.C. Jan. 21, 1997) (denying a motion to

supplement a pending motion with "newly discovered evidence," since this evidence was

"similar to documents already before the Court").

 First, the declarant admits in an earlier statement that he was "not involved in the

contracting or logistics but was informed that he never overcharged us." ([28-21] at 51). In light

of this, it is unclear to the Court how this witness can purport to have first-hand knowledge of

manufactured charges.  Even so, this information speaks to the on-going criminal investigation—

a related but separate inquiry from the present civil forfeiture action.  This information does not

assist Claimants in satisfying the standard for either a Preservation or Protective Order. Upon

review of Major Bradley's declaration, he appears to be a character witness who lacks personal

knowledge as to the Claimants dealings with the government.

 Moreover, Major Bradley's declaration does not present any new evidence that addresses

the protection and preservation issues raised in the Original Motion.   Indeed, the Court finds no

further indication of the government's alleged failure to preserve evidence, nor is there any

revelatory information regarding Major Bradley's need for a protection order that was not

---

[5] This Motion was originally filed *ex parte* to protect Major Jerry "Rusty" Bradley, whose declaration was filed as an exhibit [107-1].  Major Bradley asked Claimants to refile his declaration on the public docket and remove the *ex parte* designation; Claimants obliged and refiled the document.  [139-1].

already set forth in his original declaration. (*Compare* [28-21] at 51 *with* [107-1] at 4). Therefore, any information in the proffered supplemental evidence is unnecessary and irrelevant to the resolution of the Original Motion.

Second, Claimants state that the supplemental evidence is "newly obtained." (First Motion for Leave at 2).  The Court is unconvinced that this information was not available to Claimants when they filed their Original Motion.  The same witness supplied a similar declaration when Claimants filed their Motion for a Preliminary Injunction [28-21], and it is unclear why this information could not have been submitted at the time that the Original Motion was filed.

For these reasons, the Motion for Leave to File Supplemental Evidence in Support of Motion for Protection and Preservation [107] is denied.


### B. Second Motion for Leave to File Supplemental Evidence

On August 18, 2014, Claimants filed their Second Motion for Leave to File Supplemental Evidence in Support of Motion for Protection and Preservation [117] ("Second Motion for Leave").  The United States filed its Opposition on September 2, 2014 ("Opposition to Second Motion") [126] and Claimants filed their Reply on September 9, 2014 ("Reply to Second Motion") [129].  This Second Motion was also filed *ex parte*.  Claimants requested "leave to submit the attached supplemental evidence…pursuant to the Classified Information Procedures Act, which allows *ex parte* filings in this context."  (Second Motion for Leave at 1).  The primary supplemental evidence was in the form of a CIPA declaration from Claimants' attorney,

Bryant Banes [117-1], although Claimants filed additional exhibits as well.  This information was intended to supplement their First Motion for Leave [107].[6]

The undersigned finds that none of the substantive information contained in this Second Motion for Leave bolsters the Claimants' request for either a Preservation or Protective Order. Without detailing the substance of these *ex parte* filings, the undersigned notes that a significant amount of the information contained therein is duplicative of previous filings.  Even if the information filed were pertinent to the Original Motion, the undersigned disagrees with Claimants that the invocation of CIPA[7] was appropriate in this case.  CIPA was presumably invoked due to several summaries of the information that Claimants' intended deponents allegedly possess, some of which is classified. (CIPA Declaration [117-1] at 12-14).[8]

What is most bewildering about their Second Motion for Leave is that Claimants readily admit that the classified information with which Claimants' seek to supplement the record relates to a substantive defense to the criminal investigation.  As justification for filing this irrelevant, *ex parte* material, Claimants cited to *United States v. Poindexter*, 727 F. Supp. 1470, 1479 n.16, arguing that a defendant is allowed "to file *ex parte* submission[s] so defendant would not have to 'reveal to the prosecution the theories of his defense.'" (Second Motion for Leave at 1).  In their Reply, Claimants admit that their aim with the Second Motion for Leave was to convince

---

[6] A supplement [117] to the supplement [107] to the Motion [29].

[7] P.L. 96-456, *codified at* 18 U.S.C. app. 3 § 1-16.

[8] Counsel for the United States expressed serious concerns that Claimants improperly divulged classified information before providing the United States with a summary of the classified information, as required under CIPA. CIPA § 5(a) ("No defendant shall disclose any information known or believed to be classified in connection with a trial or pretrial proceeding unless notice has been given under this subsection and until the United States has been afforded a reasonable opportunity to seek a determination pursuant to the procedure set forth in section 6 of this Act.").  Although counsel for the Claimants assured the United States that "their *ex parte* motions do not contain any classified information" these assurances did not satisfy the United States. (Opposition to Second Motion at 3); The undersigned has reviewed the information in the filing and notes that no classified information was divulged. Claimants included only summaries of the potential testimony of intended deponents, some of whom would like to disclose classified information, according to Claimants.

the Court that if it found that "classified information is material to the resolution of this case…then this Court should establish procedures and protective orders for the presentation of such classified information."  (Reply to Second Motion at 3).  In order for the Court to make this determination, "Claimants have submitted a CIPA Declaration that indicates the relevance of classified information that is essential to Claimants' defense, without improperly revealing that information." (*Id.*)  Claimants reiterated that "asking for the triggering procedures under [CIPA]" was not about the Original Motion but centered on a strategy for seeking a dismissal of the case. (Proposed Order at 7) (citing *El-Masiri v. U.S.*, 479 F.3d 296 (4th Cir. 2007) (standing for the proposition that dismissal is required in certain cases where the Plaintiff's claims and Government's defenses cannot be fully and fairly litigated without the disclosure of state secrets).  The undersigned could not discern any direct relationship between the information in the Second Motion and the Original Motion.  Counsel's bald attempt to resolve other matters outside the scope of the Original Motion—by filing a *second* supplemental motion—was wholly inappropriate.  To put before the court numerous filings that have no direct relationship to the Original Motion is a waste of all the Parties' time and of judicial resources.

Therefore, by their own admission, Claimants' Second Motion and the information contained therein is not necessary for the resolution of the Original Motion.  In addition to the undersigned's own review of the information, it is clear that Claimants are flatly asking this Court to introduce evidence prematurely into the record—evidence that is unnecessary to the adjudication of the Original Motion.  Moreover, only limited discovery has been allowed thus far, as Chief Judge Roberts entered a Protective Order on July 7, 2014 limiting discovery to matters that would not adversely affect the related criminal investigation in this case.  (Stipulated Protective Order [94]).  All discovery permitted by the stipulated protective order closed on

November 17, 2014. (*See* August 21, 2014 Scheduling Order [119]).  The case was reassigned to

Judge Moss on November 18, 2014, the day after the expiration of the Protective Order.  The

reassignment did not allow Chief Judge Roberts to hold a scheduled status hearing to discuss

how the remainder of discovery would proceed.  As a result, discovery has been at a stand-still

since November 18, 2014.  If and when full discovery commences, which is predicated on the

resolution of the on-going related criminal investigation, Claimants can focus on developing

their theory of the case.  Until such time, the Court will not tolerate filings such as Claimants'

Second Motion for Leave, which was an inappropriate attempt to supplement the record via a

series of unnecessary *ex parte* filings.

The undersigned briefly notes that there were several additional problems with

Claimants' invocation of CIPA, as CIPA applies to: 1) criminal cases—the instant case is a civil

forfeiture action—and 2) cases in which classified information may be material to a defense—

the Motion to which this filing is ostensibly related is a Motion for a Preservation and Protective

Order.

Claimants' counsel knows full well that CIPA is reserved for criminal cases, considering

that he presumably read the text of the statute before invoking it and because all but one of the

cases to which he cited in support of his CIPA Declaration were criminal cases.  (Second Motion

for Leave at 1) (citing to *United States v. Libby*, 429 F. Supp. 2d 18 (D.D.C. 2006); *United States

v. Clegg*, 740 F.2d 16 (9th Cir. 1984); *United States v. Poindexter*, 727 F. Supp. 1470 (D.D.C.

1989); *United States v. North*, 698 F. Supp. 322 (D.D.C. 1988)).

Essentially, CIPA "provides criminal procedures that permit a trial judge to rule on the

relevance or admissibility of classified information in a secure setting." (Edward C. Liu and

Todd Garvey, Cong. Research Serv., R41742, Protecting Classified Information and the Rights

of Criminal Defendants: The Criminal Information Procedures Act 1 (2012)).  CIPA was enacted

to help trial judges determine the difference between cases where "a defendant may seek to

introduce tangentially related classified information…to dismiss the charges against him" and in

cases where "classified information may actually be material to the defense."  (*Id.*).[9]   In other

words, CIPA is a procedural tool for the district court to rule on the admissibility of classified

information and to govern the disclosure of classified information in a *criminal case*.

Claimants relied upon *In re Sealed Case*, 494 F.3d 139, 154 (D.C. Cir. 2007) as support

for the proposition that "[t]he D.C. Circuit has recognized that it has the discretion to use the

same protective measures contained in [CIPA] when conducting civil forfeiture proceedings."

(Supp. Mem. at 2).  This is a misrepresentation of both the holding in *In Re Sealed Case* and how

CIPA relates to civil litigation.[10]   *In re Sealed Case* was a Bivens action, not a civil forfeiture

case; the D.C. Circuit has not specifically held that CIPA is appropriate in all civil litigation, not

to mention all civil forfeiture proceedings.  What the D.C. Circuit did find was that "[n]othing in

this opinion forecloses a determination by the district court that some of the protective measures

in CIPA...which applies in criminal cases, would be appropriate." *In re Sealed Case*, 494 F. 3d at

154.  This does not, in the view of the undersigned, give the district court the sweeping power to

employ CIPA in all civil actions.  Moreover, CIPA was implicated in *In Re Sealed* Case when

the defendants filed "a motion to proceed with discovery under [CIPA]." *Id.* at 142.

As Claimants themselves have zealously argued, the Original Motion has nothing to do

with discovery.  (Reply to Original Motion at 14-18).  "Claimants motions…are not protective

motions seeking to limit the government's discovery requests.  The focus of Claimant's motion

---

[9] *See also* S. Rept. 96-823 at 1-4 (legislative history of CIPA).

[10] In the context of civil litigation, the state secrets privilege is the evidentiary privilege that allows the United States government to refuse to disclose information that it believes would harm national security.  The states secrets privilege framework that courts employ today was first established in *United States v. Reynolds*.  345 U.S. 1 (1953).

is protection and preservation, not discovery." (*Id.* at 16).  Instead, the protective order Claimants

sought was about "the protection of witnesses from further government harassment."  (*Id.*)

Despite the fact that Claimants' third point of request relief in the Original Motion was for "[a]

Protective Order regarding the taking and preservation of testimony and evidence that may

impact National Security or contain classified information," (Original Motion at 9) the

undersigned does not believe that this request is timely, considering that Claimants' Original

Motion does not concern discovery and, since there will be no hearing on the Original Motion,

there is no risk of witnesses divulging classified information at this time.  Therefore, while CIPA

governs information that a defendant may wish to discover or disclose during a criminal

proceeding, this Motion, in Claimants' own words, is not concerned with discovery.  An attempt

to invoke CIPA and piggyback off this Original Motion was, therefore, inappropriate at this

juncture.

     Therefore, the Second Motion for Leave is denied.


## C. Supplemental Memorandum to Second Motion for Leave to File Supplemental Evidence

     On August 29, 2014, Claimants filed their Supplemental Memorandum to [117] Motion

for Leave to File Ex Parte [122] ("Supp. Mem.").  As noted previously, Claimants improperly

docketed this filing as a Memorandum, when it was in fact a Motion to supplement their Second

Motion for Leave, this time requesting an order authorizing subpoenas to four witnesses whom

the Claimants would like to testify at a hearing on the Original Motion.[11]  These potential

witnesses are identified in Mr. Banes' CIPA Declaration [117-1] at ¶ 28(C), (E), (F), and (G).

Claimants argue that "because [29] relies upon testimony and evidence that is of a classified

---

[11] A supplement [122] to the supplement [117] to the supplement [107] to the Motion [29].

nature and involves witnesses who seek court protection when testifying…Claimants file this supplemental motion to Document 117 to request an order for the subpoenaing of four key witnesses for such a hearing, if granted."  (Supp. Mem. at 2).

Similar to the First Motion for Leave, Claimants have not shown why this request was made at such a late date, especially since three of these "four key witnesses" were identified in earlier filings with the Court [28] and [117].  Moreover, at least three of these four witnesses admittedly do not have personal knowledge relating to this case.  The only information that these witnesses *might* possess relates to the criminal investigation; it does not bear on the Original Motion.  Instead, the information allegedly rebuts allegations in the Complaint or speaks to larger issues surrounding the criminal investigation.  (Supp. Mem. at 1, 3).  This information is not relevant to the resolution of the Original Motion.

Additionally, as Claimants recognized, granting this Motion is predicated upon granting both the Original Motion and the Second Motion for Leave.  (*Id.* at 2-3).  As detailed in Section III.B and Section III.E of this Opinion, the undersigned declines to grant either the Original Motion or the Second Motion for Leave, obviating the need to subpoena any witnesses.

Therefore, the Supplemental Memorandum is denied.

### D. <u>Motion to Strike Supplemental Authority</u>

Claimants filed two Notices of Supplemental Authority on October 15, 2014 [134] ("First Notice of Supp. Authority") and November 5, 2014 [139] ("Second Notice of Supp. Authority").  The United States filed its Motion to Strike [146] this supplemental authority on November 10, 2014.  Claimants filed their Opposition on November 14, 2014 [148] and the United States filed its Reply on November 24, 2014 [153].

The Government contends that both of these filings should be stricken from the record "because they offer no supplemental authority and because the Claimants' Motion for Protective and Preservation Orders has been fully briefed and is ripe for decision." (Motion to Strike at 3). Moreover, the Government argued, "the Shadman Claimants are improperly and prematurely asking for this Court to consider disputed facts regarding the merits of issues not properly pending before the Court." (*Id.*)

The undersigned agrees that nearly all of the Claimants supplemental and additional filings to the Original Motion prematurely ask this Court to resolve issues not relevant to the Original Motion. The undersigned has reviewed all of the information contained in [132], [134], and [139]. These filings are, once again, almost entirely duplicative of previous filings, and almost all of the information is irrelevant to the resolution of the Original Motion.

The First Notice of Supplemental Authority [134] is a request that all documents filed as part of the Claimants' Opposition [132] to the United States' Motion for a Protective Order Limiting Deposition Testimony [130] "be accepted by this court as Supplemental Authority to the Shadman Claimants' pending motion for protective and preservation of evidence since this new, essential evidence goes to the very heart of that motion." (First Notice of Supp. Authority at 3). Upon review of the fifteen exhibits attached to the Claimants' Opposition [132], the undersigned finds that only one, the transcript of selected portions of the deposition a Department of Defense ("DoD") employee, Mr. Michael Fucci, [132-3] ("Deposition"), is relevant to the resolution of the Original Motion.

Claimants argued in their filings that the deposition transcript was vital to the resolution of the Original Motion, as "additional information in the form of witness declarations and deposition testimony of a Department of Defense (DoD) representative has come to light which

directly supports Claimants' position…that the Government has failed to properly preserve evidence in this case." (First Notice of Supp. Authority at 2). Claimants also chastised the Court for not holding a hearing on the Original Motion, and that "undersigned counsel advised the Court just how bad the Government's failure to protect and preserve had been." (Second Notice of Supp. Authority at 2). Claimants put forth the Deposition transcript as evidence of this alleged failure.

Specifically, Claimants seize on the fact that Mr. Fucci stated that he has not "gathered" evidence relevant to the instant litigation. Claimants concluded that this is concrete evidence that the Government has not preserved evidence. What Mr. Fucci actually said at his deposition, in response to Claimants' counsel asking if he had gathered relevant information, was "[w]ell, please understand that with litigation holds in general we ask that, first of all, the information be identified and retained. That's a lot different than gathering. You're asking about gathering. Clearly, I haven't gathered anything." (Deposition at 8). Mr. Fucci testified that he had issued retention letters to certain divisions of DoD, and he later clarified that "[w]e haven't told any entity to gather information. We've told them to preserve." (*Id.* at 11, 14). When pressed about whether or not anyone within DoD had sent a request to Special Operations Command to gather and preserve evidence, Mr. Fucci answered that "I can't say if they have or haven't, again, for the reason I gave earlier about the criminal investigation…[t]hey wouldn't have to come through my office." (*Id.* at 17).

Therefore, there is a clear difference between retaining and gathering information, although Claimants have conflated the two without attempting to distinguish the difference or acknowledge that DoD has, in fact, asserted numerous times that it has preserved evidence. Therefore, while the deposition is relevant to the resolution of the Original Motion, it weighs in

favor of the presumption that litigants will preserve evidence.  *Al-Anazi v. Bush,* Civil Action

No. 05-0345 (D.D.C. Oct. 28, 2005) (order) at 1-2.

The undersigned further notes that Claimants only provided the Court with a partial

transcript of Mr. Fucci's deposition.  The Government supplied several additional pages as an

exhibit [170-1] ("Deposition Supplement") to their Response [170].  These supplemental pages

further highlight that DoD has "based on our policies of retention, there is no reason to think that

any of this stuff would be destroyed, for a variety of reasons…there is no reason to think that this

stuff, if it exists, has been destroyed or isn't extant somewhere."  (Deposition Supplement at 6).

The Government also stressed that one potentially troubling phrase uttered during Mr.

Fucci's deposition—"[w]e can't know how much information is lost"—was spoken by

Claimants' counsel, not Mr. Fucci himself.  (Deposition at 48).  Repeatedly in their filings,

Claimants have attributed this statement to Mr. Fucci as *prima facie* evidence that the

Government has destroyed pertinent evidence in this particular case.  The undersigned finds that

the remark has been taken out of context and has been mischaracterized by Claimants.  Instead,

the remark was worked in during at the end of Mr. Fucci's deposition.


Mr. Fucci:  I would have no—being familiar with this to a large extent and generally
speaking I am very—I have in no reason to doubt that any of these retention schedules
would not be followed.  I know at OSD, it's going to be different than Navy and Army.
We all have different ways about implementing.  Some have more money to be able to
have the hard drives.  Some don't, meaning that it's not like every single entity within the
Department of Defense has the high speed computers that we have here, obviously, not
here, and I'm thinking obviously that's why we're using Hotmail accounts in some
places.  Having said that, I have been very impressed with DoD at large with respect to
the destruction of evidence, which just never happens.  We have—

Mr. Banes: It never happens?

Mr. Fucci: Well, yeah.  We have e-mails—I mean I can say generally.  Obviously—

18

Mr. Banes: I saw something in the news today about that.

Mr. Fucci: I mean things are destroyed, but, I mean, generally speaking, we don't have people saying destroy all this evidence, destroy these e-mails, destroy this swath.  It's all pursuant—

Mr. Banes:  I'm not asking you if you have a policy.  We're asking what—do you know what information went away before you got the retention letter?

Mr. Fucci:  Right

Mr. Banes:  And the case started?

Mr. Fucci:  No.  I can't say.  That's when you were asking how many hard drivers, how many—right?

Mr. Banes:  We can't know how much information is lost; isn't that true?

Mr. Fucci:  That's a pretty fair statement.

Mr. Banes:  Let me take a break.  I think we're just about done for today…

(Deposition at 48-49).


The possibility that information *might* not have been preserved prior to the issuance of a retention letter does not show that evidence has been despoiled.  Claimants perhaps are aware of this fact, as this would explain why they have repeatedly taken the remark out of context and attempted to present it as proof that evidence has definitively been destroyed.

Therefore, the Deposition excerpt [132-3] is clearly relevant to the Original Motion and its resolution, but it speaks in favor of the Government's assertions that it has followed retention policies that are in place.

The remaining fourteen exhibits to Claimants' Opposition [132] are at times duplicative of previous filings and, on the whole, consist of rehashed accusations against SIGAR, claims that the Shadman Claimants are good people in general, and information that allegedly illustrates that

the criminal investigation is a sham. None of this information is pertinent to the resolution of the Original Motion; the information, if relevant at all to this case, speaks to a substantive defense or involves the on-going, related criminal investigation.  Claimants themselves appear to acknowledge that the majority of their Opposition to the Government's Motion for a Protective Order is irrelevant to the Original Motion.[12]  It is baffling that Claimants have asked this Court to wade through hundreds of pages of documents, only to later admit that they are irrelevant to the Original Motion—an unnecessary waste of judicial resources.  Thus, other than Mr. Fucci's deposition located at [132-3], the remainder of Claimants' Opposition [132] and the attached exhibits will not be considered for the resolution of the Original Motion.

The filings in the Second Notice of Supplemental Authority [139] include the same declaration from Jerry "Rusty" Bradley that was originally filed *ex parte* as [107-1] as well as excerpts from his deposition.  There is no information that shows that the Government has failed to preserve evidence or that potential witnesses in this case need "protection" from this court.  In fact, the most specific allegation of harassment or intimidation perpetrated by the Government against potential witnesses is Major Bradley's claim that he "personally felt like, you know, my e-mails had been tapped into, which I knew that they had done a complete financial review and essentially exonerated me, but told me I was still being investigated."  ([139-2] at 9).  Even if Major Bradley is still under investigation, he was informed that he was exonerated after a financial review was conducted.  A mere investigation is not enough to warrant a Protective Order.  (Mem. Op [61] at 11).  Therefore, all the information in [139] is stricken.

---

[12] For example, in their Motion for Order [166] Claimants highlighted [132-7] and [132-10] as filings that speak to whether or not Mr. Shadman engaged in any illegal conduct, but that "the Court need not address the merits of these documents at present, only the need to protect witnesses and presser evidence."  (Proposed Order at 2).

### E. Motion for Preservation and Protective Orders

### 1. Preservation Order

The second request for relief in Claimants' Original Motion was for a Preservation Order.

Specifically, Claimants requested

> A government-wide Order requiring the U.S. Government to gather and preserve any evidence in its possession relating to the facts alleged in this case, including any evidence in any form reference in pleadings by Claimants, at a central location in Washington, D.C., and that it grant undersigned counsel access for inspection and copying of the same.

(Original Motion at 9).

The undersigned found the above requested relief to be both too broad and vague; the Court provided the Claimants with the opportunity to detail the precise nature of their proposed preservation order.  In response to this opportunity, Claimants filed their Motion for an Order [166], along with a twelve paged proposed order [166-1].  The text of the proposed order was primarily a summation of previous arguments, covering a wide range of topics, many of which were completely outside the scope of the Original Motion.

Claimants did not provide specifics in terms of what evidence they wish to have preserved beyond "any evidence related to any claim or defense of any party to his (sic) case from 2010 to present, including any affirmative defenses of any party and any evidence that may tend to prove or disprove any claim or defense."  (Motion for Order at 8).  Claimants detailed their definition of "party" to include a large number of people and governmental agencies.  (*Id.*)  Claimants also demanded that the Government preserve emails involving a long list of individuals.  (*Id.* at 9).  Finally, the Claimants asked this Court to order the government to

"produce all information gathered to the Shadman Claimants within 45 days; or, for any information withheld…produce a privilege log within 45 days." (*Id.* at 9-10).

While the detailed request relief did clarify the parameters of what Claimants would like preserved, Claimants ultimately did not satisfactorily demonstrate that any of this evidence has not been preserved—should it be relevant to the case—nor did they demonstrate why the Government's proposed procedures for preserving evidence did not cover this evidence. Claimants cited almost exclusively to the deposition of Mr. Fucci as evidence that the Government has violated the obligation that befalls every litigant, to preserve all relevant information. As discussed previously in Section III.D of this Opinion, that deposition does not lend credence to Claimants' theory that the Government has destroyed evidence.

As noted in the legal standard section (*infra*), our District Court has not determined whether or not a preservation order is an injunctive remedy[13] or requires a lesser showing. The undersigned is not required to apply one standard over the other in this case, however, as Claimants have not made the appropriate showing that a preservation order is warranted under even the more forgiving "credible showing" standard. *Al-Anazi v. Bush*, Civil Action No. 05-0345 (D.D.C. Oct. 28, 2005) (order) at 1-2. Chief Judge Roberts commented on the paucity of evidence that Claimants have presented to the Court. In his Memorandum Opinion denying Claimants' Motion for a Preliminary Injunction, the Chief Judge wrote "[C]laimants have not provided more than bare allegations that the government has destroyed evidence" and "have not identified with evidence the government has allegedly despoiled." (Mem. Op. at 12, 13) (citing to the Original Motion at 5, 10, in which Claimants claimed that the government has "tried to destroy" evidence and "possibly despoiled and [has] not preserved such vital evidence").

---

[13] The undersigned reiterates that Claimants have already failed to satisfy their burden under this standard, as they requested the same relief in their Motion for a Preliminary Injunction, which Chief Judge Roberts denied [61].

The supplemental filings do not contain specific allegations or evidence of the government destroying evidence.  In both the First and Second Motions for Leave, Claimants allege that the government has withheld exculpatory evidence, but have failed to supply factual support necessary to obtain a preservation order.  Moreover, these allegations focus on the related criminal investigation, which is outside the scope of this case.  Ultimately, Claimants rely on conjecture and conclusory statements, and not much else.

The government has assured both the Claimants and the Court that it has "voluntary issued retention letter to the government agencies affected by this matter directing them to preserve all relevant evidence." (Opposition to Second Motion for Leave at 7).  Mr. Fucci testified to the same.  In light of these assurances and the lack of evidence Claimants have supplied in support of their Original Motion, a preservation order is not appropriate at this time.  Sanctions for despoiling or failing to preserve evidence can be severe, and the Court has a number of remedies at its deposal, including dispositive sanctions, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence.  *Shepherd*, 62 F. 3d at 1475.

Briefly, the newly requested relief for the government to "gather and preserve all relevant documents…related to a claim or defense, including any affirmative defense of a party to this case, from 2010 to the present" (Proposed Order at 8-9) and that the government either produce "all information gathered to the Shadman Claimants" or provide a privilege log identifying the reasons for withholding such documents (*Id.* at 9-10) far exceeds the bounds of the initial request in the Original Motion.  Moreover, these requests would violate the limits on discovery that Chief Judge Roberts put in place.  Claimants contend that this would "not require the government to produce any information not required to be produced under the Stipulated

Protective Order, but it does require a privilege log for any information withheld." (*Id.* at 10). This is tantamount to a Motion to Compel, wholly outside the scope of the Original Motion and an improper request at this stage in the litigation.  Once again, Claimants have done their absolute best to obtain relief that is beyond the scope of the Original Motion.  The Court finds this inappropriate.

Claimants have not provided the Court with any concrete evidence that the Government has failed to preserve or despoiled evidence.  Therefore, the Original Motion as to the preservation order is denied.


### 2. <u>Protective Order</u>

The second part of Claimants' Original Motion is perhaps the most perplexing: the request for a "protective order."  The traditional standard for a protective order, as contemplated by Federal Rule 26(c), is to protect litigants from undue burden or embarrassment.  Yet Claimants do not seek a protective order under Rule 26, as they have made clear to the Court that their Original Motion does not address the merits of discovery. (Reply to Original Motion at 13). Instead, Claimants ask for protection for potential witnesses who may wish to testify on behalf of Mr. Shadman, should he be indicted on criminal charges, a request for which Claimants cited zero legal authority in their Original Motion.  The legal authority to which Claimants cited in their Reply to the Original Motion only supported their responses to the Government's Opposition.

In his Memorandum Opinion denying Claimants' request for a preliminary injunction, Chief Judge Roberts noted that while Claimants had alleged that the government has threatened witnesses with adverse action if they agreed to assist Mr. Shadman's defense, "Claimants have

not provided evidence of such threats." (Mem. Op. at 10). The Chief Judge singled out the declaration of Major Bradley, including his claims that he had been interrogated and was under investigation as insufficient evidence that witnesses were actually being threatened. (*Id.* at 10-11). The Chief Judge wrote that Claimants "have failed to show that there was retaliation and that the retaliation is having a chilling effect on witnesses coming forward, or that investigating a potential witness is itself sufficient to prove irreparable harm." (*Id.* at 11).

Presumably in response to the Chief Judge's admonishment, Claimants argued that "[w]hether or not retaliation has actually occurred, and whether or not exculpatory testimony has been chilled, these witnesses have requested both protection from the Court and invocation of procedures that would allow them to fully give their testimony." (Proposed Order at 6). Therefore, Claimants conclude, this Court should provide said "protection" and set forth procedures for testimony that might include classified information. (*Id.*)

As to the general request for court protection, it is overly broad and vague, and Claimants' latest filing did not point to more specific examples of retaliation or threats against witnesses. When the undersigned requested the supplemental briefing to the Original Motion, he made clear at the Status Hearing that Judge Moss held that he wanted specific examples that would illustrate the need for a Protective Order. Claimants cited six examples of this alleged retaliation in [132-7], [132-8], [132-10], [132-11], and [139 at 3-4]. (*Id.*). For reasons previously discussed in Section III.D, the undersigned granted the Government's Motion to Strike with respect to fourteen of the fifteen exhibits associated with [132], as well as all of [139], as the information in these filings did not offer anything beyond conclusory statements and conjecture.

It is telling, then, that Claimants cited to portions these now-stricken parts of the record as support for their request for a Protective Order.  (*Id.*) (citing to [132-7], [132-8], [132-9], [132-10], [132-11], and [139] at 3-4 as evidence of the need for a Protective Order).  Claimants contend that these filings, which consist of affidavits from various individuals, contain evidence that potential witnesses "have been threatened with criminal sanctions or had other adverse action taken against them."  (*Id.*)  This misconstrues the content of these filings.  Some of the potential witnesses simply ask for some kind of court protection "so that I can tell the truth and speak on behalf of Hikmat without fear of repercussions."  (*E.g.*, [132-8] ¶ 11; [132-9] ¶ 7]. Nowhere in the six filings that Claimants cite as support for a Protective Order do potential witnesses describe what these repercussions might be or any adverse action threatened or actually taken against them. Some do readily admit that they have no personal knowledge of several aspects of the investigation or conduct of the U.S. Military or Mr. Shadman.  ([132-7] ¶ 5).

The Government also correctly pointed out that none of the affidavits cite "to any attempt by the United States to block a witness's testimony, articulate a specific instance of alleged misconduct, or identify a single incident of reprisal against any witness" and that these affidavits "in which the witnesses discuss their opinions on the merits of the case, would indicate that witnesses are, in fact, speaking freely about the case." (Response to Motion for Order at 7). Ultimately, Claimants want this Court to label the interviewing and investigation of potential witnesses as "per se harassment that warrants the issuance of a protective order."  (*Id.*)  The undersigned declines to do so.

Claimants also requested that the undersigned put in place procedures governing testimony that might divulge classified information.  The only reasons such procedures would be

necessary at this juncture would be if Claimants were allowed to bring witnesses to a potential hearing on the Original Motion, which they have requested.  The undersigned declines to hold such a hearing, as any testimony from these potential witnesses would not be relevant to the resolution of the Original Motion.  Claimants have argued that "witnesses clearly have information that they believe exonerates the Shadman Claimants, and also feel that they cannot fully speak given the classified constraints" and that these potential witnesses require a protective order because "much of what they and others have to say may be classified and will require special procedures and handling."  (Proposed Order at 6).  Claimants conclude that their Original Motion "is focused squarely upon the premise…that much of the information exonerating the Shadman Claimants and disproving the existence of valid criminal investigation rests in classified channels."  (*Id.*)

The undersigned reminds Claimants that the instant case is a civil forfeiture action.  Although there is a related criminal investigation on-going, it is not the place of this Court to make determinations regarding that investigation.  Necessarily, then, the heart of the Original Motion cannot involve matters relating to the criminal investigation.  If these potential witnesses can only speak to the criminal investigation, there is no reason to utilize them for the forfeiture action, and attempting to use a hearing on the Original Motion as a vehicle to try the case prematurely is improper.

At best, these witnesses have made vague requests for protection so that they may "tell the truth."  That is not enough to merit a hearing on the Original Motion, and the undersigned has not found any evidence in any of Claimants' filings that these witnesses have been subjected to any retaliation or adverse action.  In light of this absence of evidence, the undersigned finds that a hearing on the Original Motion is unnecessary.

Claimants have failed to provide this Court with anything more than conclusory statements in support of their request for a protective order.  The undersigned declines to craft a remedy for prospective, hypothetical retaliation, and therefore, as to the protective order, the Original Motion is denied.

## **CONCLUSION**

For the foregoing reasons, Claimants' Original Motion and a hearing on that Motion [29], First Motion for Leave [107], Second Motion for Leave [117], Supplemental Memorandum [122], and Motion for Order [166] are **DENIED**.  Claimants' Motion for Extension of Time [127] is **DENIED as MOOT.**  Finally, the United States' Motion to Strike [146] is **GRANTED in part** and **DENIED** in part.  An Order consistent with this Memorandum Opinion will be issued separately.

Date: <u>March 6, 2015</u>                                      <u>            /s/            </u>

ALAN KAY

UNITED STATES MAGISTRATE JUDGE