**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
|     ) | |
|     **Plaintiff,**     ) | |
|     ) | |
|     v.     ) | Case No. 12-cv-01905 (RDM) |
|     ) | |
| SUM OF $70,990,605, *ET AL.,*     ) | |
|     ) | |
|     **Defendants** *in rem*.     ) | |
| _____ ) | |

**REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE**
**THIRD AMENDED VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

On May 6, 2015, the United States moved the Court for leave to file a Third Amended Verified Complaint for Forfeiture *In Rem* in the above-captioned matter pursuant to Federal Rule of Civil Procedure 15(a)(2), which authorizes a party to amend a pleading, with leave of the Court, if doing so is in the interest of justice. This is a civil action in which the United States seeks to recover the proceeds of wire fraud through which Hikmat Shadman Logistics Services Company (HSLSC) obtained more than $77 million in payments from the United States for contracts and services that were awarded through fraud and corruption.  The proposed amended complaint incorporates additional allegations in the award of contracts to HSLSC that were developed during a related criminal investigation, as well as two additional bases for forfeiture predicated on the same conduct.

The Court should freely grant leave to amend when justice so requires.  Fed R. Civ. P. 15(a)(2).  It is in the interest of justice to permit the United States to proceed on the merits of these allegations so that the United States may recover these funds obtained through fraud for the U.S. taxpayer, and because the facts and allegations in the proposed amendment better reflect the

development of the evidence as a result of the Government's further advanced criminal investigation.

As set forth herein, the Shadman Claimants and Afghanistan International Bank (collectively, the "Claimants") have failed to demonstrate undue delay, bad faith or dilatory motive attributable to the United States in connection with the proposed amendment.  The Claimants have also failed to demonstrate that they would be prejudiced by the proposed amendment. Thus, the Court should grant leave and accept the Third Amended Verified Complaint for Forfeiture *in Rem* as the operative complaint.

Further, the United States has moved to strike the claim of Afghanistan International Bank (AIB) because AIB lacks standing to challenge this forfeiture action.  AIB has not yet established itself as an owner of the defendant assets under 18 U.S.C. § 981(k)(4)(B), as is required to establish standing to participate in this litigation. (ECF No. 167, p. 8).  AIB, unable to establish standing, has repeatedly attempted to prematurely challenge the sufficiency and merits of the Government's allegations, including in its opposition to the instant motion in which AIB argues that the amendment is futile. This Court has already found that the Second Amended Verified Complaint "pleads ample facts to show that the seized assets are forfeitable." (ECF No. 86, p. 24).  AIB's premature argument has no merit.

I.    **ARGUMENT**

a.   **There Has Been No Undue Delay or Bad Faith in the Government's Motion to Amend**

Contrary to the Claimants' erroneous assertions, there has been no undue delay in this matter. The United States sought leave to amend the complaint as soon as it was practicable in light of the related criminal investigation.  Knowing that there was a risk of dissipation, the United States initiated this forfeiture action before the completion of the related criminal

investigation.  In fact, the Government's concerns were well placed; once an initial restraint was

lifted by the Afghan authorities, Mr. Shadman transferred the defendant funds out of the

defendant bank accounts. The United States has been very transparent with the Claimants and the

Court about the scope and timing of the related criminal investigation, which involves the

conduct of many bad actors across multiple jurisdictions.  This included sharing with the Court

in an *ex parte* affidavit the time frame for specific investigative steps undertaken since the civil

forfeiture case began. (ECF Nos. 151). Indeed, the Government advised the Claimants and the

Court of its belief that the amendment might be necessary as long ago as August 5, 2014. (ECF

No. 111). The United States sought leave to amend the complaint as soon as the scope of the

criminal investigation was better understood and it appeared that discovery and disclosure of the

new allegations would no longer have an adverse effect on the related criminal investigation.[1]

The Shadman Claimants cite to *Hoffman v. United States*, 266 F. Supp. 2d, 27, 33

(D.D.C. 2003) for the proposition that there is undue delay in the timing of the amendment

because the United States knew "all the necessary facts to raise their new claims years prior to

the actual filing of their motion." (ECF No. 205, p. 3).   This matter is easily distinguished from

*Hoffman*.  In *Hoffman*, the plaintiff sought leave to amend the Complaint fourteen years after the

litigation began, including after discovery and multiple appeals.  There was no concurrent

criminal case.  Unlike in *Hoffman*, in the instant case the United States did not know all the facts

necessary to bring the amendment before doing so, and only limited discovery has occurred.  As

---

[1] The Shadman Claimants argue that granting leave to amend the complaint before the criminal
investigation concludes is a waste of judicial resources.  (ECF No. 205, p. 8).  If the Court
agrees, then the proper remedy would be to stay the case during the pendency of the criminal
investigation as the law envisions. Title 18, United States Code, Section 981(g) specifically
authorizes a stay of civil forfeiture actions while the underlying criminal conduct is being
investigated.  As the United States indicated during the May 19, 2015, and May 20, 2015, status
conferences, however, the United States does not anticipate future amendments at this time.

a result of the criminal investigation, since this civil forfeiture action was filed, at least 5 people have or will plead guilty to bribery offenses related to the allegations in the complaint. When, as here, the amendment to the complaint does not fundamentally alter the scope of an action, leave to amend should be granted. *See, e.g., United States, Ex Rel. Westrick* v. *Second Chance Body Armor Inc.,* 301 F.R.D. 5 (D.D.C. 2013).

### b.   The Claimants Are Not Prejudiced by the Timing of the Amendment

Delay or length of litigation, in the absence of undue prejudice, is an insufficient reason to deny leave to amend. *Caribbean Broad Sys. v.Cable & Wireless PLC*, 148 F.3d 1080, 1084 (D.C.Cir.1998); *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 325 (D.D.C. 2011) ("the length of a litigation cannot on its own justify denying leave to amend.").  Undue prejudice is … "a denial of the opportunity to mount a fair defense." *City of Moundridge v. Exxon Mobil Corp*., 250 F.R.D. 1, 6 (D.D.C. 2008).  The Claimants have not offered any legal or factual basis to demonstrate that the timing of the Government's amendment has changed their ability to mount a fair defense.  Thus, they have suffered no prejudice and the Government's motion should be granted.

The Shadman Claimants argue that the proposed amended complaint prejudices the Claimants because of the "addition of new parties" to this matter. (ECF No. 205, page 8).  This demonstrates a fundamental misunderstanding of the nature of the government's claim.  This is a *in rem* action seeking to forfeit the proceed of crime, namely, payments made to HSLSC for contracts awarded through fraud and corruption. The proposed amended complaint changes neither the plaintiff, nor the defendant property, and thus adds no "new parties."

### c. The Court Should Adjudicate the Shadman Claimants' Motion for Summary Judgment

During the May 19, 2015, and May 20, 2015, status conferences, the United States informed the Claimants and the Court that it agrees with the Shadman Claimants that the adjudication of the Shadman Claimants' summary judgment motion should be a priority. Nevertheless, the Shadman Claimants now argue that the Government's motion for leave to file the amended complaint is an improper attempt to avoid the Shadman Claimants' summary judgment motion. (ECF No. 205, p. 5).  To the contrary, the United States has no objection to the Court's adjudication of the summary judgment motion either before or after the adjudication of the instant motion.

The Shadman Claimants have moved for summary judgment on the basis that international comity and the act of state doctrine bar this lawsuit. None of the new allegations implicate these arguments or the disputed facts germane to those arguments.  Further, as discussed in the United States' motion for leave to amend, the proposed amendment does not change the defendant assets, nor any party's interest in the defendant assets.  Thus, to the extent the new allegations change the scope of the litigation they do so without implicating international comity or the act of state doctrine.  Accordingly, the Court's adjudication of the Shadman Claimants' summary judgment motion can proceed equally whether the operative complaint is the Second Amended Complaint or the Third Amended Complaint.

### d. AIB Lacks Standing to Challenge the Sufficiency of the Allegations or the Merits of this Forfeiture Action

AIB incorrectly argues that the amendment is futile because the Government's tracing of the defendant proceeds is insufficient. (ECF No. 207, p. 3).  An amendment is futile ''if the

proposed claim would not survive a motion to dismiss.'' *In re Interbank Funding Corp., Sec. Litig.,* 629 F. d 213, 215 (D.C. Cir. 2010).  AIB's argument is both premature and without merit.

AIB's futility argument is premature because AIB does not have standing to challenge the sufficiency of the allegations.  AIB's argument that the allegations in the complaint are insufficient to establish forfeiture is a merits argument akin to a challenge that might be properly brought in a motion to dismiss. *See Fed.  R.Civ.P. 12(b)(6)*; *United States v. Sum of $70,990,605,*4 F. Supp. 3d 19 (D.D.C. 2014) ("A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff fails to state a claim for which relief can be granted").

The United States has moved the Court to strike AIB's claim to the defendant assets for lack of standing. United States Magistrate Judge Alan Kay has found that AIB must "establish itself as an owner under 18 U.S.C. § 981(k)(4)(B) in order to participate in this litigation," and AIB has not yet done so. (ECF No. 167, p. 8).  The Court must consider the United States' motion to strike before it considers AIB's challenge to the allegations in the proposed amended complaint, just as it would if the argument had been raised in a motion to dismiss. *C.f.,* Supplemental Rules for Maritime or Admiralty Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule") G(8)(c)(ii)(a); Rule G(8)(c)(ii)(A), Commentary ("Paragraph (c)(ii) directs that a motion to strike a claim or answer be decided before any motion by the claimant to dismiss the action. A claimant who lacks standing is not entitled to challenge the forfeiture on the merits.").  Because it is premature for AIB to bring a motion to dismiss, it is premature for AIB to argue that the complaint is futile because the allegations are insufficient.

AIB's futility argument is also without merit. The proposed Third Amended Complaint incorporates additional allegations of fraud and corruption in the award of subcontracts to

HSLSC.  It doesn't alter the existing allegations regarding the tracing of the defendant assets.

The Second Amended Complaint has already survived a motion to dismiss, albeit one filed by

the Shadman Claimants.  (ECF No.86).  This Court found that the complaint "pleads ample facts

to show that the seized assets are forfeitable." [2] (ECF No. 86, p. 24).  Moreover, the Court has

found that there is probable cause that the defendant assets are subject to forfeiture numerous

times. *See, e.g.,* ECF Nos. 23 and 185.

### e.  International Comity and Act of State Do Not Bar this Action

AIB argues that the amendment to the Complaint is futile because the act of state doctrine

and international comity warrant dismissal of this action; the Shadman Claimants argue that this

case is on the verge of termination for the same reason. (ECF No. 207, page 6; ECF No. 2015, p.

5).  As a threshold matter, Chief Judge Richard Roberts of this Court in an earlier ruling in this

case already held that international comity and the act of state doctrine are issues to be treated as

affirmative defenses (ECF No. 86, p. 26).  Accordingly, it is inappropriate for AIB to raise such

defenses until AIB first establishes standing and these matters are properly briefed.   In any

event, the Claimants' arguments fail.

---

[2] The pre-discovery tracing of the defendant assets into the relevant accounts at AIB is set forth in page 20 of the Government's Second Amended Verified Complaint for Forfeiture *In Rem.* (ECF No. 15) and starts at page 16 of the proposed Third Amended Verified Complaint. (ECF No. 193-2).  AIB implies that 18 U.S.C. § 981(k)(4) permits the Government to seize funds as to which it has made no allegations. (ECF No. 207, p. 6). This is simply untrue.  A discussion of the funds subject to forfeiture under 18 U.S.C. § 981(k) is addressed in the United States' motion to strike AIB's claim and the related briefing. (ECF Nos. 93, 181 and 188).  In short, the United States has seized $4,330,287.03 of the defendant funds from AIB's interbank account, and this is the money to which AIB has filed a claim. The United States has traced more than $4,330,287.03 of the defendant funds into accounts at AIB, and is authorized to seize from AIB an amount equal to the obligation AIB owes to the depositor of the defendant funds, which AIB concedes is $4,330,287.03. (ECF No. 25, p. 5).

Chief Judge Roberts expressed doubt in a previous Memorandum and Opinion Order that the Shadman Claimants could ever meet the burden of establishing these defenses. (ECF No. 61 at 18–28).  Indeed, as the Court's previous Order makes clear, the circumstances of this case are very different from those in which comity and the act of state doctrine have been found to apply. These doctrines are almost never applied in cases in which the United States itself brings a lawsuit and they are narrowly construed to protect the Court's interest in retaining jurisdiction over disputes affecting the United States. Such interest is particularly compelling here, where the United States is seeking to recover proceeds of a fraud committed against it. The Shadman Claimants continue to cloud the genuine issues before the Court by insisting erroneously, for example, that an Afghan Court could somehow have exclusive jurisdiction over a wire fraud offense committed against the United States in violation of U.S. law.

## II.    CONCLUSION

The Claimants have the burden to show why leave to amend the complaint should not be granted, and they have failed to meet this burden.  *LaPrade v. Abramson,* Civil Action No. 97–10 (RWR), 2006 WL 3469532, at *3 (D.D.C. Nov. 29, 2006).  The proposed amendment is appropriate to conform the complaint to the facts as developed in the course of the related criminal investigation and will not prejudice any party. Indeed, such amendment was anticipated by the Court in its February 20, 2015, Order. (ECF No. 171) ("Finally, because the Government's anticipated disclosure of previously withheld documents and potential amendment of the complaint will likely moot some or all of the disputes raised in the Shadman Claimants' Motion to Compel (Dkt. 141), the Court has determined in the interest of efficiency that that motion will not be considered until after May 1, 2015.").  Accordingly, it is in the interest of

justice for this Court to issue an Order granting leave for the United States to file the Third

Amended Verified Complaint for Forfeiture *In Rem.*


Respectfully submitted,

M. KENDALL DAY, CHIEF
ASSET FORFEITURE AND
    MONEY LAUNDERING SECTION


/s/ Elizabeth A. Aloi
DANIEL H. CLAMAN
Assistant Deputy Chief
ELIZABETH A. ALOI
STEVEN C. PARKER
Trial Attorneys
Asset Forfeiture and Money
    Laundering Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W., Suite 10100
Washington, D.C. 20530
Telephone:  (202) 514-1263
Attorneys for Plaintiff
UNITED STATES OF AMERICA