**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-01905 (RDM) |
| | ) | |
| *THE SUM OF $70,990,605, ET AL.*, | ) | |
| | ) | |
| **Defendants *in rem*.** | ) | |
| _____ | ) | |

**UNITED STATES' OPPOSITION TO THE SHADMAN CLAIMANTS'**
**FIRST SUPPLEMENTAL MOTION TO COMPEL RESPONSES TO CLAIMANTS'**
**SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**
**AND CROSS-MOTION FOR A PROTECTIVE ORDER**
**AGAINST DISCOVERY PROPOUNDED BY THE SHADMAN CLAIMANTS**

The United States of America, by and through its undersigned counsel, respectfully urges

the Court to deny the Shadman Claimants' First Supplemental Motion to Compel Response to

Claimants' Second Request for Production of Documents, (ECF No. 210), and to enter a

protective order against 1) discovery responsive to Request Nos. 1 and 25 of the Shadman

Claimants' Second Request for Production of Documents, and 2) testimony on Specifications 8,

10 and 11 of the Shadman Claimants' Rule 30(b)(6) notice, all of which implicate classified

national security information. As set forth herein, the Government's responses based on its

review of the classified material are not due. Moreover, the Shadman Claimants have failed to

demonstrate that the classified national security information responsive to Request Nos. 1 and 25

and Specifications 8, 10 and 11 have any relevance to any parties' claim or defense in this civil

forfeiture action as required by Rule 26(b) of the Federal Rules of Civil Procedure.

In short, the Shadman Claimants have failed to meet their burden to demonstrate any

legal deficiencies in the United States' responses to their discovery requests. Thus, their motion

to compel must be denied and there is good cause for the Court to enter the proposed protective order.

Similarly, despite the Shadman Claimants swirling allegations against the government in these pleadings, the Claimants have also failed to establish a basis for sanctions to be imposed under Fed. R. Civ. P. 37(c)(1). Indeed, as explained herein, the Shadman Claimants -- and not the United States -- have abused the discovery process. In their various discovery motions, the Shadman Claimants irresponsibly misrepresent both the procedural posture and the underlying facts of this case, requiring both the Court and the United States to expend substantial resources on matters that distract from its merits.

## I.   **PROCEDURAL BACKGROUND**

This is a civil action *in rem* for the forfeiture of approximately $57 million in defendant assets pursuant to 18 U.S.C. §§ 981(a)(1)(C), 981(k) and 984. The defendant assets are the proceeds of a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343, through which Hikmat Shadman Logistics Services Company (also known as Hikmat Shadman Supply & Construction Company , or "HSLSC") obtained more than $77 million in payments from the United States for contracts and services that were awarded through fraud and corruption.

On November 8, 2013, the United States sought a full stay of this civil forfeiture action pursuant to 18 U.S.C. § 981(g)(1) because civil discovery would adversely affect the ability of the Government to conduct a related criminal investigation. On April 18, 2014, this Court found that there was a related criminal investigation, but denied the requested full stay, finding that the parties could engage in some discovery that would not have an adverse effect on the related criminal investigation, specifically as it relates to three specific areas 1) any innocent owner defense, 2) the act of state doctrine, and 3) international comity. The Court directed the parties

to enter into a protective order that protected the United States' interest in conducting the criminal investigation.

This Court entered the parties' stipulated protective order on July 7, 2014 (hereinafter the "Protective Order").  In accordance with the Protective Order, the Claimants agreed that civil discovery in the case was limited to those matters that would not "compromise the status of a confidential informant for the United States, or compromise or adversely affect the related criminal investigation." (ECF No. 94, p. 1).

On August 21, 2014, Chief Judge Richard Roberts indicated that he would set new discovery deadlines, and a deadline for the United States to move to amend its forfeiture complaint, at a forthcoming scheduling conference.  Initially scheduled for November 24, 2014, this conference was postponed by the Court.  On November 18, 2014, the United States renewed its motion to stay this case pursuant to 18 U.S.C. § 981(g)(1) because discovery would continue to have an adverse effect on the related criminal investigation. (ECF No. 150).  Although this motion was denied, the Court indicated in its order of February 20, 2015, that additional discovery would not be appropriate until further order of the Court. (ECF No. 171, p. 3).  The Order states, "The Court does not contemplate that any other activity will take place in this litigation prior to May 1, 2015" and provides that, pursuant to the Court's August 21, 2014 Scheduling Order (ECF No. 119), all discovery permitted by the Stipulated Protective Order (ECF No. 94) closed on November 17, 2014.  This Scheduling Order and the Stipulated Protective Order remain in effect.  With the exception of possible limited discovery to be conducted by AIB, as noted above, no party may seek additional discovery unless and until this Court issues an order modifying the August 21, 2014 Scheduling Order." (ECF No. 171, p. 3).

In contravention of the Court's July 7, 2014, Protective Order, the Claimants propounded broad discovery to the United States in their Second Request for Production of Documents (hereinafter the "Second RFP"), asking for materials well beyond the scope of the innocent owner defense, the act of state doctrine, and international comity, including on matters that they knew to be central to the related criminal investigation.  While ignoring the Court's order, the Shadman Claimants acknowledge the wide breadth of their discovery requests, characterizing them in their Motion to Compel as "for the purpose of: obtaining materials on which the Government intends to rely as support for its forfeiture allegations; obtaining materials that tend to disprove or discredit the Government's legal allegations, factual assertions, and/or witnesses; and supporting Shadman Claimants' contrary factual assertions and affirmative / legal defenses." (ECF No. 141, p 17).  It is this discovery —far outside the court's ordered permissible discovery and the limitations to which the Shadman Claimants stipulated — that was the primary subject of the Shadman Claimant's motion to compel filed on November 6, 2014 (ECF No. 141).  The Claimants now supplement their motion to compel to ask the Court to compel the United States to produce "all relevant, non-privileged materials responsive to Requests 5, 6, 7, 21, 22, 28 and 30" of their Second Request for Production of Documents. (ECF No. 210, page 4).

Before discovery closed on November 7, 2014, the United States fully and completely responded to the Claimants' multiple discovery requests consistent with this Court's Orders by producing thousands of pages of relevant documents, objecting to their requests only where producing documents would waive a privilege or have an adverse effect on the criminal investigation.[1]  The Protective Order set forth a procedure for this Court to review the material

---

[1] Subsequently, as the United States disclosed to the Claimants and the Court, counsel for the United States was given additional classified materials to review for relevance and responsiveness by the Department of Defense. (ECF No. 183).  The Claimants acknowledge that the United States has at least until August 17, 2015, to review these materials, thus any efforts to

withheld from the discovery because disclosure of such material would have an adverse effect on

the criminal investigation.  At the Claimants' insistence, the United States' filed its motion for

such a review of all withheld evidence on or about November 6, 2014.  This motion remains

pending but is now moot because on May 29, 2015, the United States produced the material

withheld from discovery as of November 7, 2014, after determining such discovery would no

longer negatively impact the criminal investigation.[2]

### a.   The Shadman Claimants' Rule 30(b)(6) Deposition Notices and Related Document Requests Were Properly Objected to Because of the Court's Orders Closing Discovery and the Negative Effect on the On Going Criminal Investigation

On July 16, 2014, the Shadman Claimants sent the United States two notices indicating

that they would seek to depose two individuals – Christopher Ciampa and Enmanuel Lugo – on

August 4, 2014.  The testimony sought concerned the "capacity" of Mr. Ciampa and Mr. Lugo

"as transportation and logistics requester[s] for the U.S. Special Operations Task Force 32 in

Afghanistan on Transportation Movement Requests (TMRs) to TOIFOR from July 2011 through

September 2011." (ECF No. 141-1).  On July 24, 2014, the United States sought and obtained a

protective order staying these depositions because the testimony would, at the time, have had an

adverse effect on the related criminal investigation.  Subsequently, Mr. Lugo and Mr. Ciampa,

entered guilty pleas to offenses involving the falsification of TMRs  awarded to HSLSC, and the

---

compel their production must fail. (ECF. No. 210, p.2).  The United States recently learned that
certain of these documents must be treated as classified because they were generated or found on
a classified system, but are not themselves classified.  This may speed the process of producing
any relevant, responsive documents to the Claimants, if any are found.

[2] The United States advised the Claimants repeatedly that it would produce this material; instead,
the Claimants insisted on wasting the resources of the United States and flooding the Court with
unnecessary briefing regarding these documents temporarily withheld under the stipulated
protective order.  *See e.g.,* ECF Nos. 140, 147, and 152.

United States has informed the Shadman Claimants that they are available to depose when discovery reopens.

On September 23, 2014, the Shadman Claimants issued a notice of deposition to the United States, pursuant to Federal Rule of Civil Procedure 30(b)(6), seeking testimony from the Department of Defense on October 9, 2014, related to 14 different topics or specifications.  Each specification pertains to documentation the Shadman Claimants had previously sought through their second RFP.  Deposition testimony on most of the topics, consistent with the broad nature of their second RFP, would, at the time, have had an adverse effect on the related criminal investigation.  The specifications included, for example, "Documentation, evidence, or factual circumstances that any TMR contained in document Bates Range HIK_0002697 thru HIK_0002730 [the TMRS awarded to HSLSC] was not delivered or completed" (Specification No. 2); and "[t]he factual circumstances, documentation and evidence related to the solicitation, bid, award, award approval, and performance of each Transportation Movement Request (TMR) contained in document Bates Range HIK_0002697 thru HIK_0002730" (Specification No. 3).

In response to the Rule 30(b)(6) deposition notice, the United States informed the Shadman Claimants that: (1) the individuals identified in the Claimants' July 16, 2014, notices of deposition would be available to sit for depositions on specifications 1 through 5 at a date after which such testimony would not  adversely affect the related criminal investigation; (2) it is premature to depose the Department of Defense (DOD) on specifications 6, 7, and 9 because doing so would  adversely effect on the criminal investigation; and (3) the United States is not aware of any deponent who can provide testimony within the scope of permissible discovery on

specifications 8, 10, 11, 12, and 13.[3] The United States also agreed to and did make a

representative from the DOD's General Counsel's office available to depose on specification 14.

The Shadman Claimants did not move to compel the Rule 30(b)(6) testimony on

specifications 1 through 13 over the United States' objections. Nevertheless, the United States

sought and obtained a protective order barring testimony on all but specification 14 until further

order of the Court.[4] (ECF No. 131). However, despite the Protective Order, in their

supplemental motion to compel, the Claimants now seek an order "allowing this Rule 30(b)(6)

deposition to proceed on all 14 areas of requested testimony, and compelling the government to

produce all items indicated on the subpoena *duces tecum.*" (ECF No. 210, page 4).

## II.     LEGAL STANDARDS

### a.   Legal Requirements for the Shadman Claimants' Motions to Compel

As set forth in Rule 26 of the Federal Rules of Civil Procedure, parties may obtain

discovery of any non-privileged matters related to a party's claim or defense. Fed. R. Civ. P.

26(b) (2011). Although Rule 26(b) is broad in allowing discovery of any claim or defense it is

not without its limits. *Pederson v. Preston*, 250 F.R.D. 61, 65 (D.D.C. 2008). "[D]iscovery, like

all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v.*

*Sanders*, 437 U.S. 340, 351-352 (1978). Specifically, all discovery must appear to be reasonably

calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1) (2011).

Courts must limit discovery that is unreasonably cumulative or duplicative, obtained from

another source that is more convenient, less burdensome, or less expensive, or discovery requests

---

[3] These specifications included requests for testimony and documents pertaining to sensitive
national security matters, such as Mr. Shadman's 2012 detention and the "vendor vetting"
investigation, both discussed herein.

[4] The testimony on specification 14 was completed on October 9, 2014.

which cause the imposition of a burden that outweighs the discovery's likely benefit.  *Id.*

"[C]ourts need not tolerate 'fishing expeditions, discovery abuse and inordinate expense

involved in overbroad and far-ranging discovery requests.'  Discovery should be tailored to the

issues involved in a particular case".  *Pederson*, 250 F.R.D. at 66 (citations omitted).

The party moving to compel discovery has the burden of proving that the opposing

party's response to a request was incomplete.  *U.S. v. Kellogg Brown & Root Services, Inc.*, 284

F.R.D. 22, 29 (2012); *Equal Rights Center v. Post Properties, Inc.*, 246 F.R.D.29, 32 (D.D.C.

2007) (citations omitted).  Further, mere suspicion is insufficient to support a motion to compel.

The party seeking discovery must also "demonstrate that the documents they seek to compel do,

in fact, exist and are being unlawfully withheld."  *Alexander v. FBI,* 194 F.R.D. 305, 311

(D.D.C. 2000).  The party moving to compel production of documents also bears the burden to

demonstrate its relevance to the lawsuit.  *Id.* at 309.

### b.  Legal Basis for the United States' Cross-Motion for Protective Order

Federal Rule of Civil Procedure 26 (c) provides that upon motion by a party and for good

cause shown, "the court…may issue an order to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  This rule

"confers broad discretion on the trial court to decide when a protective order is appropriate and

what degree of protection is required."  *Seattle Times Co v. Rhinehart*, 467 U.S. 20, 36 (1984).

The court may "limit the conditions, time, place, or topics of discovery."  *Burka v. United States

Dep't of Health and Human Servs.*, 87 F.3d 508, 518 (D.C. Cir. 1996).  As noted, the court has

wide discretion in managing discovery, and in entering protective orders pursuant to Rule 26(c),

the Court is to "undertake an individualized balancing on the many interests that may be present

in a particular case." *Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 19, 22 (D.D.C. 2007) (quoting

*Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 898 (D.C. Cir. 2006))." (ECF No. 174, p.6).

"The party seeking the protective order bears the burden of making the showing of good

cause contemplated by the rule. *Alexander v. Fed. Bureau of Investigation*, 186 F.D.R. 71, 75

(D.D.C. 1998).  In order to do this, the party "must articulate specific facts to support its request

and cannot rely on speculative or conclusory statements." *Friends of the Earth v. United States

Dep't of the Interior*, 236 F.R.D. 39, 41 (D.D.C. 2006) (quoting *Low v. Whitman*, 207 F.R.D. 9,

10-11 (D.D.C. 2002))." (ECF No. 174, p.6).

### c.   Legal Requirements for Depositions Under Fed. R. Civ. P. 30(b)(6)

Pursuant to Fed.R.Civ.P. 30(b)(6), "a party may name as the deponent a public or private

corporation, a partnership, an association, a governmental agency, or other entity and must

describe with reasonable particularity the matters for examination."  In response to the notice,

"[t]he named organization must then designate one or more officers, directors, or managing

agents, or designate other persons who consent to testify on its behalf; and it may set out the

matters on which each person designated will testify."  Fed.R.Civ.P. 30(b)(6).  The deponent has

the "duty of being knowledgeable on the subject matter identified as the area of inquiry."

*Alexander v. F.B.I.,* 186 F.R.D. 137, 140 (D.D.C. 1998).

### III.   <u>ARGUMENT</u>

Both the Shadman Claimants' motion and supplemental motion to compel documents

responsive to their second request for production of documents must be rejected.  First, the

United States has met its discovery obligations, including in response to Requests Nos. 5, 6, 7,

21, 22, 28 and 30.  Moreover, in the intervening time since it was filed, much of the Shadman

Claimants' original motion to compel has become moot.  The Shadman Claimants' efforts to

continue to compel discovery at this stage in this litigation is also particularly problematic because, as Claimants know, the United States sought leave to amend the forfeiture allegations on May 6, 2015, to include additional criminal conduct in the award of TMRs to HSLSC.  This motion attaching the proposed amended complaint is still pending. (ECF No. 193).[5]  If the motion to amend the complaint is granted, the scope of discovery permissible under Federal Rule of Civil Procedure 26(b) will change.  Further, because the criminal investigation is ongoing, it continues to generate potentially discoverable material which the United States is providing as it is received when a new scheduling order issues.[6]  Accordingly, after the Court rules on the motion to amend the complaint, and lifts the hold on discovery set by this Court's order of February 20, 2015, both the United States and the Claimants will have the opportunity to propound additional discovery and provide supplemental privilege logs, after which, either party may move to compel discovery, if either party's discovery response is deficient.  By continuing to move to compel discovery and seek sanctions before the Court clarifies which is the operative complaint, the Shadman Claimants are forcing the parties and the Court to engage in unnecessary litigation.

Second, the Shadman Claimants have failed to meet their burden to demonstrate that the material sought in Request Nos. 1 and 25 of the Second RFP, as well as the testimony sought in

---

[5] The United States advised the court and the Claimants it would seek to amend its complaint based on developments in the criminal investigation as early as August 2014, s*ee* Transcript of August 21, 2014, Status Conference, and provided the court *ex parte* with a detailed affidavit explaining the progress of the investigation. (ECF 151).

[6] Counsel for the United States has requested from the criminal investigative team all possible discovery material in its possession that may be relevant to any claim or defense to the proposed Third Amended Complaint, or any new material generated in connection with the Second Amended Complaint.  This material is being processed and the United States expects to produce non-privileged, unclassified material when a requested is propounded to the United States (with regard to the amended allegations) or once discovery reopens (with regard to any new material pertaining to the Second Amended Complaint).

Specifications 8, 10 and 11 of their Rule 30(b)(6) deposition notice, is within the scope of discovery permitted by Rule 26(b).  Because these materials implicate sensitive national security information as set forth below, the Court should deny the Shadman Claimants' efforts to compel this information and enter a protective order against its disclosure.  The burden of producing this irrelevant material clearly outweighs any purported benefit to this litigation.

Third, the Shadman Claimants should not be permitted to obtain through Rule 30(b)(6) that which should properly be sought through Rule 30(b)(1).  Their proposed Rule 30(b)(6) deposition is an attempt to thwart the proper limitations on discovery set by the Court and the Federal Rules.  Thus, the protective order against such testimony should remain in effect.

Finally, there is no legal or factual basis to support the Shadman Claimants' request for an "irrelevancy" log or sanctions.  Claimants have tried mightily to cloud the issues at almost every turn to try to make it appear that the government has acted in bad faith as a primary litigation strategy.[7]  This disingenuous pursuit must not be allowed to continue.  It is the Shadman Claimants who have repeatedly abused the reasonable limitations on discovery imposed by this Court and forced the United States to re-litigate matters already decided or moot.

**a. The Shadman Claimants' Continued  Efforts to Compel Responses to Its Second Request for Production of Documents Must Be Rejected**

In their supplemental motion, the Shadman Claimants seek to compel all relevant, non-privileged materials responsive to Requests 5, 6, 7, 21, 22, 28 and 30.  However, the Claimants have failed to meet their burden "to 'demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld.'" *Alexander v. FBI,* 194 F.R.D. 305, 311 (D.D.C. 2000) (internal citations omitted).

---

[7] Judge Kays' order denying the Claimants protection order and sanctions details this consistent but ineffective strategy because it is unsupported by competent evidence.

Instead of identifying for the Court where they think specific documents have been improperly withheld, as is their burden, the Shadman Claimants recklessly again accuse the government of wide ranging misconduct where there has been none.  For example, they accuse the Government of improper delay tactics even though the law specifically anticipates a stay of civil forfeiture actions during the pendency of related criminal investigations or the adjudication of dispositive motions.  *See* 18 U.S.C. 981(g)(1) (Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case); *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 276 F.R.D. 396 (D.D.C. 2011) (discovery stayed during pendency of dispositive motions); *Wada v. United States Secret Serv.*, 25 F. Supp. 2d 1, 11 (D.D.C. 2007) (finding discovery premature when "this Court has not held an initial scheduling conference because of the pending motions to dismiss."); *Chavous v. District of Columbia Financial Responsibility and Management Assistance Authority*, 201 F.R.D. 1 (D.D.C. 2001) ("[i]t is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending")(internal citations omitted).

The Claimants move to compel documents they have acknowledged they do not need and make repeated assertions that the government must be willfully withholding responsive documents apparently because they simply want to believe that such documents exist.  The United States addresses each of the requests addressed in the Shadman Claimants' supplemental motion as follows.

### i. Request Nos. 5 and 6

The United States has produced all non-privileged documents responsive to Request Nos.

5 and 6.  In Request No. 5, the Shadman Claimants seek:

> "Any and all records, documents, and communications (including electronically-stored data) upon which SIGAR Special Agent Doherty relied to prepare his affidavits that were presented by the U.S. Government to the U.S. District Court for the District of Columbia which formed the basis of probable cause for Magistrate Kay to issue seizure warrants for "defendant AIB bank accounts" on November 7, 2012, as referenced in Government's Second Amended Complaint (Doc 15, ¶¶ 11, 13), including all such records, documents, and communications expressly referenced and sworn as relied upon by Special Agent Doherty in his November 7, 2012 affidavit, ¶¶ 3, 8, 10, 20-23, 25-30, and 34-36. Since such documents were expressly referenced in Complaint and specifically relied upon to form basis of Doherty's sworn affidavit, these documents are in the possession of the U.S. Government."

(ECF No. 141-2).  Request No. 6 seeks:

> "Any and all records, documents, and communications (including electronically-stored data) upon which SIGAR Special Agent Doherty relied to prepare his affidavits that were presented by the U.S. Government to the U.S. District Court for the District of Columbia, which formed the basis of probable cause for the Court to issue arrest warrant *in rem* for "defendant AIB bank accounts," as referenced in Government's Second Amended Complaint (Doc 15, ¶¶18-19), including all such records, documents, and communications expressly referenced and sworn as relied upon by Special Agent Doherty in his May 24, 2013 affidavit, ¶¶ 3, 18, 21, 24, 26, 28, 38-48, 52, 56, 57, 59, 62-65, 67, 69-75. Since such documents were expressly referenced in Complaint and specifically relied upon to form basis of Doherty's sworn affidavit, these documents are in the possession of the U.S. Government."

(ECF No. 141-2). The United States objected to Request No. 6 on the grounds that it is vague,

ambiguous, and requests documents that do not exist because there was no affidavit presented to

the "United States District Court for the District of Columbia which formed the basis of probable

cause for the Court to issue arrest warrants *in rem* for the 'defendant AIB bank accounts.'"

Consistent with the rules governing asset forfeiture actions, the arrest warrants *in rem* for the

original defendant AIB bank accounts were issued upon the Court's review of the Complaint that

was filed on November 20, 2013.  *See* Rule G(3)(b)(ii) of the Supplemental Rules for Admiralty

or Maritime Claims and Asset Forfeiture Actions.  The November 20, 2013 Complaint is virtually identical in substance to the affidavit that was presented to Judge Kay to obtain the November 7, 2013, seizure warrants.  Thus, the United States also objected to this request on the grounds that it duplicated Request No. 5, incorporating its response to that Request by reference.

The documents that Special Agent Doherty relied on to prepare the affidavit which lead to Judge Kay's November 7, 2012 seizure warrants sought in Request No. 6 were already produced to the claimants on December 16, 2013,  March 5, 2014, and August 12, 2014.[8]

In their supplemental motion to compel, the Shadman Claimants discuss Request Nos. 5 and 6 but do not address any of the specific objections raised by the United States. (ECF No. 210, pages 23 and 24).  The United States asserted privileges over certain of the documents both included in, and withheld from this production as reflected in entry numbers 9, 10, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32 on the log provided to the Shadman Claimants on October 6, 2014. (ECF No. 141-5).

As explained to the Claimants, Entry No. 9 of the log consists of AIB bank records which were produced to the Claimants, but work product in the form of marginalia was redacted.  Entry No. 10 is material received by the United States from South Africa pursuant to an Egmont request that was provided with the expectation that it would not be disseminated and remain confidential.  Documents 22, 23, 24, 25, 26, 27, 28, 29, and 30 are law enforcement interview reports.  These documents were produced to the Shadman Claimants, but information subject to the law enforcement investigatory files privilege and the identity of certain witnesses was redacted consistent with the stipulated protective order.  *See* ECF No. 94 (limiting discovery that

---

[8] They are identified by Bates Nos. HIK_0000001 to HIK_0000038; HIK_0000054 to HIK_0000055; HIK_0000056 to HIK_0000057; HIK_0000058 to HIK_0000061; HIK_0005604 to HIK_0005740; HIK_0005747 to HIK_0005816; to HIK_0081577 to HIK_0081817.

would compromise the status of confidential informant for the United States). Document 31 was

not produced to the Claimants because it is also subject to the law enforcement investigatory

files privilege. It describes, among other things, the execution of the search warrant that led to

the United States' possession of the email responsive to Request No. 30, discussed herein. The

Declaration of SIGAR Assistant Inspector General Domin, attached as Exhibit A, establishes the

law enforcement need for redaction of the specific documents and withholding of one document

in its entirety, taking into account the low level of relevance to this action. *Friedman v. Bache

Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1341 (D.C. Cir. 1984) (To assert the law

enforcement/investigatory files privilege, a responsible government official must lodge a formal

claim of privilege, after actual personal consideration of the information sought. The formal

claim of privilege must specify with particularity the information for which the protection is

sought, and explain why the information falls within the scope of the privilege).

### ii. Request Nos. 7 and 21

Request Nos. 7 and 21 both seek documents reflecting communications between the

United States Department of Justice and government officials in Afghanistan, concerning,

respectively, the "defendant AIB bank accounts" and "relating to any of Claimants and their

work under the 'Jingle Truck' Contract, and any of the underlying facts contained in the

Government's Second Amended Complaint."[9] (ECF No. 141- 2). As a threshold matter, these

requests are clearly duplicative of one another, as any communication between the United States

and the Government of Afghanistan concerning the defendant bank accounts by necessity

implicates the "underlying facts contained in the complaint."

---

[9] Request No. 7 is limited to those communications "referenced in Government's Second
Amended Complaint (Doc 15, ¶¶ 14, 16) and in the SIGAR Special Agent Doherty affidavit
dated May 24, 2013, ¶¶ 18, 71." (ECF No. 141-2, p. 9). Request No. 21 does not have the same
limitation.

Moreover, to the extent the Shadman Claimants seek documents responsive to these requests to support their erroneous act of state and international comity arguments, they are not entitled to such discovery at this juncture.  The Claimants describe Request No. 7 as "likely to yield evidence of the Afghanistan government's position and communication to the U.S. regarding exclusive Afghanistan jurisdiction and insufficient factual basis of the allegations…responsive documents will support Claimants' comity, act of state and failure to state factual insufficiency defenses" (ECF No. 210, p. 25).  Similarly, the Shadman Claimants describe Request No. 21 as seeking information "placed at issue in both AIB and the Shadman Claimants' motions for summary judgment." (ECF No. 210, p. 17).

Notwithstanding the Claimants demands for sanctions against the government for failing to produce these records, they have conceded they do not need them.  On October 31, 2014, the Shadman Claimants filed a motion for summary judgment that they assert would fully resolve all of their claims, arguing that the act of state doctrine and principles of international comity deprive this Court of jurisdiction to hear this civil forfeiture action. (ECF No. 138 at 1).  As discussed during the June 22, 2015, status conference, both the Shadman Claimants and the United States said they believe the Shadman Claimants' motion for summary judgment is ripe for adjudication once the Court hears oral arguments.  Because the Shadman Claimants have moved for summary judgment on the applicability of international comity and the act of state doctrine, and advised the Court they were ripe for ruling after oral arguments, the Shadman Claimants already conceded that no further discovery on these issues is necessary.  Thus, Claimants efforts to compel discovery purportedly related to these issues should seriously undermine the Court's confidence in their unsupported allegations of misconduct against the government and must be rejected.

Moreover, the Shadman Claimants have failed, egregiously, to demonstrate that the United States' response to these discovery requests are insufficient.  In support of their efforts to compel discovery responsive to Request No. 21, the Shadman Claimants cite to what they identify as their own third exhibit, described as a communication between U.S. government investigators and AIB. (ECF No. 210, p. 27).  However, there was no third exhibit attached to their motion.  In any event, the Shadman Claimants fail to explain how a communication between the United States and AIB supports their request for communications between the United States and the government of Afghanistan.

As previously explained to the Shadman Claimants, the United States has produced all non-privileged documents responsive to these discovery requests.  The documents it has withheld on the basis of privilege that are responsive to these requests are identified on the log provided to the Shadman Claimants on October 6, 2014. (ECF No. 141-5).  The entries are numbered 1, 3, 4, 11, 12, and 15.

Entry numbers 3 and 4 are the mutual legal assistance requests sent to Afghanistan as described in paragraphs 12 and 13 of the Second Amended Complaint.  The United States objected to the disclosure of the requests on the grounds that they reflect confidential communications between governments.  The requests were sent to Afghanistan pursuant to Article 46 of the United Nations Convention Against Corruption (UNCAC).  The United States requested, consistent with Art. 46, paragraph 20 that the request be kept confidential.

Entry numbers 1, 11, and 12 are protected by the attorney work product doctrine because they are notes written by the Justice Department Attaché or his assistant describing a meeting between Ambassador McFarland and the Acting Attorney General of Afghanistan that occurred

on April 13, 2013.[10]   The notes were written in contemplation of this instant litigation and are

relevant to the United States' decision to use 18 U.S.C. § 981(k) to seize the defendant funds.

Accordingly, they are work product and not subject to disclosure.   *See, Agility Public*

*Warehousing Company KS.C. v. Department of Defense*, 2015 WL 3867978 (D.D.C. June 23,

2015) (discussing what is covered by the work product doctrine).   During the meeting, the

Acting Attorney General informed the Justice Department Attaché that Afghanistan would not

enforce the United States' mutual legal assistance treaty request.

        Entry number 15 is protected by the law enforcement investigatory files privilege. It is a

law enforcement officer's notes from a meeting with advisors to the Afghan attorney general and

prosecutor with the Afghan National Directorate of Security.   The meeting was requested by the

Office of the Afghanistan Attorney General to answer questions they had about the arrest

warrants *in rem* transmitted to Afghanistan pursuant to the UNCAC. *See* Exhibit A.

        Treaties or treaty provisions that authorize mutual legal assistance in criminal matters are

self-executing and have the force of law, once ratified by the Senate, as the UNCAC was on

October 30, 2006.   The United States and its treaty partners enter into mutual legal assistance

treaties to assist the other by providing information and evidence for criminal investigations,

prosecutions, and directly related proceedings, including civil forfeiture actions.   Through these

treaty relationships, the country providing assistance employs the treaty and/or its own domestic

law in response to and on behalf of the requesting country, to obtain orders, issue compulsory

process or otherwise take action to provide the requested legal assistance.   When making

requests, the United States requests that the other country provide the assistance pursuant to the

relevant treaty or available domestic law.   When responding to a request from another country

---

[10] Entries 1 and 11 are identical in substance but included on the log twice because the Attaché's notes were found in multiple locations.

for assistance in a criminal investigation, prosecution or related matter, the United States

executes such requests pursuant to any relevant treaty and often in conjunction with 18 USC

§ 3512 (or previously pursuant to 28 U.S.C. § 1782), through which it applies to the Court for

any orders necessary to facilitate execution and to provide the requested assistance.

The mutual legal assistance treaties by their terms generally anticipate that the fact of the

request, the information contained therein, and any associated communications would not be

disclosed publicly in the course of responding to and executing a request.  The United States and

its law enforcement partners share a common interest in the non-disclosure of sensitive law

enforcement information contained in the requests and in the candor and manner of

communications between the parties.  Based upon the treaties, 18 U.S.C. § 3512 and other

relevant federal law, United States courts are empowered to enter, and the United States typically

seeks and obtains, orders sealing the filing and execution of any requests, and otherwise

protecting against public disclosure of the request to protect the interests of the country seeking

assistance or evidence.  Other countries interpret their law similarly on behalf of requests by the

United States, and many treaties explicitly provide that either treaty partner can withdraw its

request rather than have it made public in the course of execution.  In addressing the execution of

requests between countries, the relevant authorities maintain an ongoing arrangement or practice

to ensure non-disclosure of sensitive information and communications.  As such,

communications between governments regarding mutual legal assistance ordinarily are

conducted with the expectation of non-disclosure and should not ordinarily be disclosed.

### iii. Request No. 22

In Request No. 22, the Shadman Claimants seek the interview reports from the interviews

of confidential sources and other witnesses identified in the Complaint.  However, again, in their

supplemental motion, the Shadman Claimants do not identify any non-privileged documents responsive to this request that they believe are being improperly withheld.  This request is entirely duplicative of Request Nos. 5 and 6; the predicate conduct in the initial seizure warrants and the Second Amended Complaint is virtually identical.  The United States has produced to the Shadman Claimants all non-privileged material responsive to this request, including the reports from the  interviews of "CS-1," "CS-2," "CS-3," and "CS-4."  The United States has no recordings from witnesses identified in the Complaint.[11]

### iv. Request No. 28

In its response to the Shadman Claimants' Second RFP, the United States informed the Shadman Claimants that it is unaware of any material responsive to Request No. 28 in its possession.  The Plaintiff's position has not changed.  Request No. 28 seeks, "Any and all records, documents, communications, and contents (including electronically stored data) contained on the laptop computer belonging to Mr. Paul Hele that was confiscated from Mr. Hele by SIGAR and/or the U.S. Government in Afghanistan in late 2012." (ECF No. 141-2). Claimants keep insisting the government has a computer belonging to Hele and that data on it is relevant but the United States refuses to provide it because it fits their false narrative that the government has done something wrong here.  In connection with the criminal investigation, a search warrant was executed on TOIFOR's compound on May 29, 2012, and an inventory from the search itemizes the electronic items taken during that search.  *See* Exhibit B.  The computers

---

[11] As discussed herein, the criminal investigation continues to generate new discovery material, including additional interview reports.  The scope of permissible discovery may also change. Because the U.S. believes discovery will not now interfere with the investigation, it is not seeking to prevent discovery, but the U.S. can only provide additional materials as they become available.  The Shadman Claimants and the United States agree that fact discovery should not close for several more months, giving ample time to finish discovery in this matter. (ECF No. 199) (Joint Status Report).

were seized from TOIFOR (now Xleless) and belonged to TOIFOR, not Paul Hele.  Mr. Hele

consented to the search, and reaffirmed that the computers seized were essential to the operation

of the company.  The material seized from TOIFOR was returned to TOIFOR as of November

24, 2012, months before this action was filed and the United States did not retain images – hard

copy or electronic – of the seized files.  Accordingly, if anyone, Hele or TOIFOR have the

records Claimants seek, not the US.

### vii. Request No. 30 Has Been Satisfied

The United States has produced all non-privileged documents responsive to this Request.

In Request No. 30, the Shadman Claimants seek, "All communications and electronically-stored

data (including e-mails) exchanged by, between, and/or to TOIFOR personnel relating to the bid,

award, or performance of TMRs under the "Jingle Truck" contract that are in the possession of

the U.S. Government, including the October 18, 2011 email purportedly drafted by Mr. Newton

to TOIFOR's CEO, as expressly referenced and relied upon in the Government's Second

Amended Complaint (Doc 15 ¶ 39h).  Paragraph 39(h) of the Second Amended Complaint states:

> "This price-fixing scheme is corroborated by an email that Newton drafted on or about
> October 18, 2011, to TOIFOR's CEO complaining that Hele, 'reversed every price list
> that contractors submitted, and added his own cut on top of it and forced the contractors
> to accept the change and he was paid by the contactor every $ that was topped on their
> price...'"

(ECF No. 15).  The email referenced in paragraph 39(h) was produced to the Shadman Claimants

and is identified by the Bates No. HIK_0009438.  To the extent that the United States has

obtained additional communications exchanged by, between, and/or to TOIFOR personnel

(material not under the custody or control of the United States except to the extent it was

obtained as part of the investigative file), it has also been produced to the Claimants, including

but not limited to, for example, those documents identified by Bates Nos. HIK_008162 to

HIK_0008166 and YSW_0002587 to YSW_0002588.

**b.  Shadman Claimants' Original Motion to Compel is Moot**

The Shadman Claimants ignored and violated the July 7, 2014, Protective Order (ECF

No. 94) to which they stipulated, by repeatedly asking for discovery materials that would

adversely affect or compromise the criminal investigation.  Nevertheless, in their Motion to

Compel (ECF No. 141) they asked the Court to retroactively excuse these violations and instead

sanction the United States for insisting on compliance with this Court's Protective Order.[12]   As

the United States has now produced the discovery material responsive to the Shadman

Claimants' Second RFP, and the discovery material withheld under the protective order

(produced on May 29, 2015), the Shadman Claimants' motion to compel, riddled with

misrepresentations, should be denied and is moot.

Importantly, as the Shadman Claimants are well aware, the discovery permitted thus far

in this matter was limited in scope.  As discussed in Chief Judge Robert's Order denying the

United States' motion to stay, and during the August 21, 2014, hearing, the discovery permitted

under the scheduling order was to be on matters that would not have an adverse effect on the

related criminal investigation, and specifically the act of state doctrine and international comity.

The Claimants have now moved for summary judgment on these specific matters, so it can

properly be concluded that they obtained all the discovery they need as to the act of state

doctrine and international comity.  The procedural posture of this case remains that once the

Court adjudicates the United States' motion for leave to amend the Complaint, new discovery

deadlines should be set and a new scheduling Order would issue.

**c.  There is Good Cause to Enter a Protective Order Against Discovery Responsive**

---

[12] These violations are described at length in the United States' Motion for Stay (ECF No. 150).

**to Request Nos. 1 and 25 of the Shadman Claimants' Second Request for Production, and Specifications 8, 10 and 11 of their Rule 30(b)(6) Deposition Notice**

In Request Nos. 1 and 25 of their Second Request for Production, and through Specifications 8, 10 and 11 of their Rule 30(b)(6) deposition notice, the Shadman Claimants seek in civil discovery materials and testimony that, as discussed below, are not relevant to any claim or defense to this forfeiture action.  The materials and information sought are also classified, and relate to matters impacting national security.  By seeking such information, the Shadman Clamants are simply conducting a fishing expedition to learn what additional information about Mr. Shadman's misconduct is known to the United States.

It is the Shadman Claimants' burden to establish the relevance of these materials and they have failed to do so.  Thus, their efforts to compel this material should be denied.  Even if the materials were properly discoverable – and they are not – there is good cause for the Court to issue a protective order limiting discovery pertaining to classified national security matters because, as discussed herein, the burden of such discovery outweighs its benefit to this litigation. *See Harris v. Koenig,* 271 F.R.D. 356, 363 (D.D.C. 2010) (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)) (Under Rule 26(b)(2)(C)(iii), a court is required to limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.").[13]

> **i.** **Request Numbers 1 and 25 of the Shadman Claimants Rule 34 Discovery Request, and Specifications 8, 10, and 11 of their Rule 30(b)(6) Deposition Notice Are Outside the Scope of Discovery**

---

[13] If the Court grants this motion for a protective order as to Request Nos. 1 and 25, the United States will produce to the Shadman Claimants non-privileged unclassified material contained within the Department of Defense files responsive to their other discovery requests.

**Permitted by Fed. R. Civ. P. 26(b)**

The Shadman Claimants have failed to meet their burden to demonstrate that the sensitive national security information that might fall within Request Nos. 1 and 25 are "relevant to any party's claim or defense" as required by Rule 26(b) of the Federal Rules.  Fed. R. Civ. P. 26(b). Similarly, the testimony sought in Specifications 8, 10 and 11 of the Shadman Claimants' proposed Rule 30(b)(6) deposition, which is on the same subject matter as Request Nos. 1 and 25, is also outside the scope of permissible discovery. (ECF No. 130-3, page 4).

As discussed in connection with the Shadman Claimants' failed motion for preliminary injunctive relief, U.S. forces in Afghanistan – in this case a counterinsurgency task force – detained Mr. Shadman in late 2012 consistent with detainee review procedures at Bagram Theater Internment Facility.  Request No. 1 seeks records which pertain to Mr. Shadman's detention described as follows:

> Any and all records, documents, and communications (including electronically-stored data) by and/or between the U.S. Government and/or the U.S. military tribunal or Detainee Review Board (DRB) relating to the investigation, detainment, and hearing conducted by the U.S. military tribunal or DRB involving Claimant Hikmat Shadman as referenced by the Government in Doc 35-2 attached to United States' Surreply Memorandum in Opposition to the Claimants' Motion for Immediate Release of Seized Property Pursuant to 18 U.S.C. § 983(f). (ECF No. 141-2).

Similarly, Specifications 10 and 11 of their Rule 30(b)(6) deposition notice seeks testimony about "documentation, evidence and factual circumstances" pertaining to military detention proceedings.

The regulations governing such detainment states that persons who meet the following criteria may be detained:

> "Persons who planned, authorized, committed or aided the terrorist attacks that occurred on September 11, 2001, and persons who harbored those responsible for those attacks; Persons who were part of or substantially supported, Taliban or al-Qaida forces or associated forces that are engaged in hostilities against the United States or its coalition

partners, including any person who has committed a belligerent act, or has directly supported hostilities in aid of such enemy armed forces."

*See*, Exhibit C, Detainee Review Procedures.[14]  Counsel for the United States has discussed Mr.

Shadman's detention with individuals with contemporaneous knowledge of his detention, and is

reviewing the documents generated as a result of the detainment and understands that Mr.

Shadman was detained on allegations that he fit one of these criteria, not because of his

additional involvement in the corruption and fraud offenses described in the civil forfeiture

allegations.  The Shadman Claimants describe without any factual basis the detention as a ruse so

that SIGAR could obtain evidence from Mr. Shadman to suppose this forfeiture matter.  This is

not true; Mr. Shadman was detained on unrelated allegations.  However, while in detention, Mr.

Shadman was interviewed by a SIGAR law enforcement officer.  The report generated from this

interview is not classified and was produced to Shadman Claimants on May 29, 2015.

The Shadman Claimants' own evidence demonstrates that the record from the detention

proceedings are outside the scope of discovery permitted by Rule 26(b).  As Chief Judge Roberts

found when he denied the Shadman Claimants' request for preliminary injunctive relief:

> "The regulations governing military detentions cited by the United States during oral argument provide the military with authority to intern individuals who meet certain criteria -- primarily related to their involvement in terrorism or hostilities against the United States -- and are a threat to the United States. See U.S.'s Mot. for Leave to File Surreply Mem. in Opp'n to Claimants' Mot. for Immediate Release of Seized Property Pursuant to 18 U.S.C. § 983(f), attach. If a detained individual does not meet the criteria or is not a threat, then the United States must release that individual. Id. *Here, the claimants have offered no evidence that the military acted inconsistently with that regulation.  In fact, the evidence that the claimants provided about the military tribunal reflects that the military tribunal was concerned with whether Shadman met the conditions for internment, not whether he committed the acts alleged in the complaint here. Claimants' Mot. to Dismiss, Ex. 23 ("By a vote of 3 to 0, the board members found that the detainee did not meet the criteria for internment and should be released."*

---

[14] If the Court finds it necessary, the United States can provide the Court with additional information about the military's detention of Mr. Shadman, and subsequently release, subject to limitations on the disclosure of classified material.

> *(emphasis added)); see also Claimants' Mot. to Dismiss at 21-22 ("The primary purpose of such a tribunal is to determine if he was an 'enemy combatant' and had committed terrorist or illegal conduct that would justify continued detention.").*

*(ECF No. 61, p. 17).* (emphasis added)  Recently filed exhibits to the Shadman Claimants' reply also show that they have not met their burden to show Rule 26(b) relevancy.  Indeed, one of the exhibits cited by the Shadman Claimants indicates that the criminal investigators were aware that the classified investigation was a separate inquiry. (ECF No. 208-9).  Another is counsel for the Shadman Claimants' own statement (ECF No. 208-12).  Others point out that Mr. Shadman was also investigated once before in 2011 for supporting the Taliban (ECF No. 208-3).

Even the statements of Major Rusty Bradley, who the Shadman Claimants identify as one of their key witnesses, if true, contain no first-hand knowledge regarding the military detention proceedings, and only reveal that Major Bradley was present at a meeting in which allegations of misconduct were discussed. (ECF No. 208-4).  As Magistrate Kay correctly noted, Major Bradley "appears to be a character witness who lacks personal knowledge as to the Claimants dealings with the government."  (ECF No. 74, p. 8).  *See also*, ECF No. 28-21 ("I [Major Bradley] was not involved in contracting or logistics.").

The Shadman Claimants reach yet further to argue that a *Wall Street Journal* article in which the Special Inspector General for Afghanistan was quoted demonstrates the relevance of the military tribunal. (ECF 210-15).  The article, however, only states that Mr. Sopko's office was trying to determine who may have intervened in the military proceedings on Mr. Shadman's behalf while he was detained.  (ECF No. 28-20).  This does nothing to demonstrate that the purported intervention was related to the forfeiture allegations.

Request No. 25 seeks materials in support of a military investigation of HSLSC conducted by a "vendor vetting" cell; Specification 8 seeks testimony concerning this material as

well.[15] The United States understands that the vendor vetting investigation pertained to whether allowing HSLSC to be present at Kandahar Air Field would pose a risk to coalition forces. This is reinforced by the Shadman Claimants exhibits. (ECF No. 208-17) ("the primary concern of the VVC [vendor vetting cell] was force protection…the VVC was not clearing or vindicating the vendor of wrongdoing.").

In their supplemental motion, the Shadman Claimants identify other exhibits which purportedly establish the relevancy of the vendor vetting cell's investigation, but in fact do not. (ECF No. 210, page 19 and 20 referencing exhibits 1-6).[16] For example, Sergeant Myers's first two declarations refer to an investigation following accusations that Mr. Shadman was involved in fuel pilferage, an investigation following accusations by Mr. Shadman's competitors (ECF Nos 208-1 and 208-2). The Second Amended Complaint does not contains allegations that Mr. Shadman engaged in fuel pilferage, nor does Sergeant Myers offer any evidence to suggest that the investigation to which he refers is the same one conducted by the vendor vetting cell investigation. (ECF No. 208-1).[17]

Only one of the Shadman Claimants' exhibits arguably connects the vendor vetting cell to the investigation of fraudulent conduct in the award of TMRs. It is Mr. Myer's third declaration provided to Claimants, which states that the "Hix" memo describes one of several investigations of Mr. Shadman for supporting and funding the Taliban, and the corrupt conduct identified in the Complaint. (ECF No. 208-3). If the latter were true – and nothing the United

---

[15] Specifications 8 seeks testimony regarding "[d]ocumentation, evidence, and factual circumstances related to the investigation and resulting memorandum prepared by CAPT Hassler and signed by Major General Hix" (ECF No. 130-3, page 4).

[16] The supplemental motion actually contains no exhibits.

[17] The proposed Third Amended Complaint does contain allegations that Special Forces personnel stole fuel using TMRs awarded to HSLSC.

States has reviewed indicates it is – it's not clear why the Shadman Claimants would need the vendor vetting cell's investigative report to refute the forfeiture allegations.

This Court should test relevance by reference to the law and facts of the case, not simply the expressed desires of a party to see certain information. Nor should it be persuaded by the strategic desire to try to paint the government as having done something wrong without evidence of that. The United States disclosed to the Claimant that additional classified material is being reviewed to determine if there is any relevant material and take appropriate steps to make it available. Neither the Shadman Claimants nor the lawyers responsible for this case have reviewed this before. It is neither lawful nor productive to the resolution of this case to simply demand to see all of it and imagine what it contains. *Burlington Ins. Co. v. Okie Dokie, Inc.,* 368 F.Supp.2d 83, 87-89 (D.C. 2005). This is a civil forfeiture action involving fraud and corruption in the procurement of services by the U.S. military. The United States is reviewing the classified materials provided to it by DOD, but none of the documents or witnesses the United States intends to use in its case-in-chief are classified, and the Shadman Claimants are free to explore these allegations in discovery permitted by the Rules and Court orders (including by deposing Mr. Myers and Major General Hix about the conduct alleged in the Complaint). The Shadman Claimants have again failed to identify any specific classified information they wish to use to defend against the forfeiture allegations beyond generalized statements that such material must exist. Even if the vendor vetting cell investigators had reviewed some of the same evidence which supports the Complaint's allegations, the Shadman Claimants fail to establish how they are unable to refute the government's unclassified allegations without that information.

The Shadman Claimants' assertions that because the Hix Memo references "criminal activity" it must have to do with the allegations in the Complaint also fails to lend credence to

their position.  The force protection concerns of the vendor vetting cells also involved criminal

activity, albeit of a different kind.  For example, funding the Taliban may be a violation of 18

U.S.C. § 2339B (providing material support to terrorists).

When, as here, the discovery a party seeks is irrelevant, the Court may deny a motion to

compel. *See Burlington* 368 F.Supp.2d at 86  (D.C.2005);  *see also Cobell v. Norton,* 226 F.R.D.

67, 81 (D.D.C.2005) (Lamberth, J.) ("[T]he Court can only issue [orders to compel] where the

information ... is within the scope of discovery defined by Rule 26.").  Indeed, Courts in this

Circuit have denied discovery on issues that stray too far away from the core facts of the case

and appear to be mere fishing expeditions, such as the Claimants' requests. *See e.g., Harris v.*

*Koenig,* 271 F.R.D. 356 at 368-9 (D.D.C. 2010) (holding that defendant adequately responded to

narrower document requests, and therefore the wider requests sought "seek[] patently irrelevant

information"); *United States v. Kellogg Brown & Root Services, Inc.,* 284 F.R.D. 22 at 34-35

(D.D.C. 2012) (limiting defendant's request for production because the requests would require

the United States to produce vast amounts of potentially sensitive information with little chance

of obtaining relevant, admissible evidence); *Zelaya v. UNICCO Service Co.,* 682 F.Supp.2d 28,

32 (D.D.C. 2010) (denying requests for information concerning discrimination by other

supervisors in the company who played no direct role in plaintiff's case); *MINPECO, S.A. v.*

*Conticommodity Services, Inc.,* 844 F.2d 856, 863 (D.C.Cir.1988) (affirming orders quashing

subpoenas so as not to "authorize a fishing expedition into congressional files").  Because the

Shadman Claimants have failed to establish the relevancy of the material responsive to Request

Nos 1 and 25 of their Second RFP or the testimony sought in Specifications 8, 10, and 11 of their

proposed Rule 30(b)(6) deposition, their motion to compel this discovery should be denied.  If

the United States finds properly responsive evidence in its on-going review of the classified

material which it intends to complete in mid-August, it will take appropriate steps.

### ii.        There is Good Cause to Enter the Proposed Protective Order

Even if the material and testimony sought in Request Nos. 1 and 25 on the Second RFP,

and Specifications 8, 10 and 11 of the Rule 30(b)(6) deposition notice were relevant to this civil

forfeiture action – and they are not  – the burden of producing this material outweighs the

benefit. Courts must limit discovery requests which cause the imposition of a burden that

outweighs the discovery's likely benefit. Fed. R. Civ. P. 26(b).  "[C]ourts need not tolerate

'fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-

ranging discovery requests.'  Discovery should be tailored to the issues involved in a particular

case". *Pederson*, 250 F.R.D. at 66 (citations omitted).  It presents a significant unjustified burden

to the United States to produce sensitive national security information in discovery where such

information is not dispositive of the relevant legal issues.

This is particularly true with regard to classified material in civil matters.  In other civil

matters implicating classified material, before ordering the disclosure of classified materials, the

Courts first found such information to be relevant and material to the resolution of disputed legal

issues, and that alternatives to reliance upon classified information were inadequate to satisfy the

interest of justice.  Only then would it be incumbent upon the Court to establish procedures for

the presentation of classified information, including ensuring that counsel for  both parties are

themselves are authorized to hear it, if, and only if, the classifying authority agrees to the

disclosure*. See, e.g., De Sousa v. Department of State*, 840 F.Supp.2d 92 (D.D.C. 2012).

Even if the Shadman Claimants demonstrated that the materials they seek are relevant to

the civil forfeiture allegations – and they have not – the Shadman Claimants have failed to

demonstrate that the classified information is material to the resolution of disputed legal issues or that alternatives to reliance on classified information are inadequate to satisfy the interest of justice.  For example, the Claimants make the unsupported assertion that the tribunal record contains statements and/or witness statements favorable toward Mr. Shadman and/or adverse to Mr. Shadman and that the Shadman Claimants have a right to disprove or utilize such statements (ECF No. 210, p. 15).  Disproving or utilizing such statements would only be necessary, however, if the United States intended to use the statements to support the civil forfeiture allegations, which the United States does not plan to do.  The Shadman Claimants will have every reasonable opportunity to test the veracity of the statements submitted in support of the civil forfeiture allegations, as they have been produced to the Shadman Claimants and do not implicate classified information.  Thus, the Claimants have not identified a legal issue where the resolution depends on information contained in the detention file.[18]

### d.   The Shadman Claimants' Proposed Rule 30(b)(6) Deposition is an Attempt to Thwart the Court's Discovery Limitations

Rule 30(b)(6) of the Federal Rules of Civil Procedure permits a party to name a governmental agency as a deponent, and set forth with reasonable particularity the matters for examination. Fed. R. Civ. P. 30(b)(6).  Here, the Claimants have, among other things, sought to obtain through Rule 30(b)(6), testimony from the Department of Defense concerning, "[t]he

---

[18] If the Court grants the United States' cross-motion for a protective order (or denies the Shadman Claimants' motion to compel), the review of the classified material for information responsive to the Shadman Claimants' other discovery requests would continue.  As discussed during the May 19, 2015, and May 20, 2015 status conferences, if counsel for the United States identifies classified information that is responsive to the Shadman Claimants other discovery requests, the United States will endeavor to have that the non-privileged material declassified.  Should any issues remain relating to responsive, discoverable material at the conclusion of that process, the Government will inform the Court (and opposing counsel) and will propose a manner for resolving those issues.

factual circumstances, documentation and evidence related to the solicitation, bid, award, award approval, and performance of each Transportation Movement Request (TMR) contained in document Bates Range HIK_0002697 thru HIK_0002730 [the TMRs awarded to HSLSC]." (ECF No. 130-3, p. 4).

      This civil forfeiture action is predicated upon fraud and corruption in the award of TMRs to HSLSC involving the Department of Defense.  Thus, it appears that the Shadman Claimants are using their Rule 30(b)(6) deposition notice to ask the United States to designate witnesses to testify about the fraudulent and corrupt conduct that is at the core of the Complaints' allegations. This is not the purpose of Rule 30(b)(6), which is to obtain the position of an organization on subjects described with reasonable particularity. *See, e.g., NXP B.V. v. Blackberry Ltd*, 2013 WL 5913456 (M.D. Fla. October 31, 2013).

      To comply with the Shadman Claimants Rule 30(b)(6) deposition notice, the United States would have to designate deponents with, for example, first-hand knowledge of the criminal activity that lead to the award of TMRs to HSLSC. *See, Alexander v. F.B.I.,* 186 F.R.D. 137, 140 (D.D.C. 1998) ("the deponent has the duty of being knowledgeable on the subject matter identified as the area of inquiry).  When, as here, bad actors within the Department of Defense participated in fraud and corruption in the award of TMRs to HSLSC, leading in-part to the forfeitability of the defendant assets, these same deponents would not testify as to the official position of the Department of Defense on these matters.  Accordingly, the Shadman Claimants should obtain the testimony they seek not through Rule 30(b)(6), but through Rule 30(b)(1). Moreover, seeking through Rule 30(b)(6) that which is properly sought though Rule 30(b)(1) is an abuse of the reasonably limitations Chief Judge Roberts put on discovery when he limited each party to 7 depositions. (ECF No. 119, p. 1).

Further, the Shadman Claimants are asking the Court to enforce a "subpoena duces tecum" where none was properly served.  Rule 30(b)(6) permits the service of a subpoena on organizations as set forth in Rule 45.  However, as the Claimants are aware, document discovery from parties is properly sought through Rule 34.  Indeed, the Claimants have moved to compel the production of discovery materials sought through Rule 34 from the Department of Defense.  In any event, the Shadman Claimants' deposition notice did not actually contain a subpoena or meet any of the requirements set forth in Rule 45. (ECF No. 130-3).

### e.  There is No Legal or Factual Basis to Support the Shadman Claimants' Request for An "Irrelevancy Log"

There is no legal or factual basis to support the Shadman Claimants' request that the United States provide it with a log of materials that are not relevant to any claim or defense in this matter; the United States has already disclosed to them which discovery requests the United States asserts seek material outside the scope of Rule 26(b).  The Shadman Claimants have failed to meet the burden which shifted to them to demonstrate that such requests seek permissible discovery.

In its response to the Shadman Claimants' Second RFP, the United States identified for the Shadman Claimants which of the discovery requests it believes seek items outside the scope of discovery permitted by Rule 26(b).  They were Request Nos 1, 2, 25 and 26. (ECF No. 141-2).  The significance of the material responsive to Request Nos. 1 and 25 is discussed above.  The United States has no material responsive to Request No. 2.[19]

---

[19] Request No. 2 seeks "Any and all records, documents, and communications (including electronically-stored data) in the possession of the U.S. Government relating to the investigation and hearings conducted by the Afghanistan government and/or Afghan Tribunal proceedings involving Claimant Hikmat Shadman as expressly referenced by the Government in the its Second Amended Complaint (Doc 15, ¶¶ 14 and 16) and in Doc 47, p. 13."  The United States' interactions with the Afghanistan government in connection with this matter were limited to whether the government would enforce its mutual legal assistance requests to freeze the original

This leaves Request No. 26, in which the Shadman Claimants seek a litany of items, many of which are cumulative of other requests, or which appear to seeking premature discovery in connection with potential criminal charges. (ECF No. 141-3) (seeking exculpatory or impeachment information).  The United States objected to this request on multiple grounds including because it is duplicative, overbroad, vague and ambiguous; to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the law enforcement and investigatory files privilege, informant's privilege and/or the attorney work-product doctrine; and to the extent the information sought is protected under a bilateral or multilateral treaty to which the United States is a party or concerns confidential communications among governments.  The United States also objected to the request, and specifically subparts (b), (c), (d), and (i) to the extent that they call for or depend upon a legal conclusion.  The Shadman Claimants do not address any of the United States' objections in their supplemental motion, nor do they offer any explanation for why the material sought might be within the scope of Rule 26(b). (ECF No. 210, p. 21).  This alone warrants denial of their motion because to compel the production of documents, "[p]laintiffs must demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld."  *Alexander v. F.B.I.*, 194 F.R.D. 305 (D.D.C. 2000) (quoting *See Ayala v. Tapia,* 1991 WL 241873 at *2 (D.D.C. Nov.1, 1991) (denying motion to compel because that party seeking production could not identify any specific information that was being withheld).

In their original motion to compel, the only specific information the Shadman Claimants appear to offer in support of this discovery request relates to prong (f) in which they seek "[a]ny

---

defendant AIB accounts.  To the extent the Afghanistan government conducted its own investigation or hearings involving Mr. Shadman, it did so without the participation of the United States.  Moreover Request No. 2 is duplicative Request Nos. 7 and 21, also discussed herein.

reports, documents or statements from any source that describe or relate in any way to

Hikmatullah Shadman's charitable work in Afghanistan." (ECF No. 141, p. 53).  Specifically,

the Claimants, state that this material is relevant because "the legitimate reasons that payments

(alleged by the Government to be bribes or kickbacks) were made from Claimants to particular

workers in Afghanistan were actually charitable donations.  The sought materials show that

Claimant Shadman has a historical, routine practice of large charitable donations and work in

Afghanistan, which has been confirmed by several U.S. Special Forces persons." (ECF No. 141

p. 53).[20]  As explained in the United States' opposition to the their motion to compel, "[n]othing

the United States could produce in response to this request would have any relevance to a claim

or defense the Shadman Claimants might raise in this action, as charitable work is not a defense

to wire fraud." (ECF No. 154, p. 12).

### f.   The Shadman Claimants' Request for Sanctions Continues to Have No Merit

The Shadman Claimants' motion to compel, and supplemental motion should be denied

because the United States has fully complied with its discovery obligations in this case.  The

Shadman Claimants' request for sanctions also is without merit.  The Shadman Claimants

purportedly seek sanctions pursuant to Rule 37(a)(4) and Rule 37(c), even though Rule 37(a)(4)

does not authorize sanctions and Rule 37(c)(2) only authorizes sanctions when a party fails to

admit what is requested under Rule 36, and no admissions have been sought from the United

States. (ECF No. 141, p. 54).  Presumably then, in their original motion, the Shadman Claimants

attempted to find the legal authority for their sanctions request in Rule 37(c)(1).

---

[20] The Shadman Claimants' concession that the payments alleged by the Government occurred at
least narrows the universe of disputed facts.  However, the United States has advised it does not
have records of charitable contributions.  It seems only logical that Claimants should demand
such records from Mr. Shadman or TOIFOR or its employees.

Under Rule 37(c)(1), however, a court may impose sanctions on a party only if they fail to disclose information without substantial justification. Fed.R.Civ.P. 37(c)(1).  "According to the Supreme Court, a party meets the "substantially justified" standard when there is a "genuine dispute" or if "reasonable people could differ" as to the appropriateness of the motion." *Peterson v. Hantman*, 227 F.R.D. 13 (D.D.C. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). When, as here, the United States has complied with the rules of discovery, the United States has not failed to disclose information without substantial justification.

Moreover, to demonstrate that an adverse inference jury instruction is warranted as a sanction for spoliation of evidence, the Shadman Claimants must show that: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered, (2) the destruction or loss was accompanied by a culpable state of mind, and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it.  *Mahaffey v. Marriot Intern., Inc.* 898 F. Supp. 2d 54, 58 (D.D.C. 2012).  The Shadman Claimants' supplemental motion contains no factual basis to show these factors, and in particular that the purported spoliation was accompanied by a culpable state of mind.

In their supplemental motion, the Shadman Claimants appear to ground their request for sanctions on the Government's purported failure to preserve evidence. (ECF No. 210, p. 33). The Shadman Claimants fail, however, to identify a single piece of evidence that has not been preserved.  Indeed, that is what Judge Kay and Chief Judge Roberts both found when evaluating the Shadman Claimants' previous requests for a protective order directing the government to, among other things, preserve evidence. (ECF No. 174, pages, 17-19, 22) ("Claimants ultimately

did not satisfactorily demonstrate that any of this evidence has not been preserved—should it be relevant to the case—nor did they demonstrate why the Government's proposed procedures for preserving evidence did not cover this evidence.  Chief Judge Roberts commented on the paucity of evidence that Claimants have presented to the Court.); (ECF No. 61 at 12, 13) ("[C]laimants have not provided more than bare allegations that the government has destroyed evidence" and "have not identified with evidence the government has allegedly despoiled.").[21]  Thus, the Claimants' baseless request for sanctions because the Government failed to preserve evidence appears to be an attempt to have the Court to re-adjudicate a matter already decided because they do not like the decision, and not because their request is supported by the facts or law.

To support their unfounded spoliation claims, the Shadman Claimants reference a document that the United States produced to Afghanistan International Bank.  The document indicates that Mr. Shadman may have been under investigation in 2011.  It's not clear how that supports the Shadman Claimants' sanctions request.  The Claimants' own exhibits submitted to this Court appear to demonstrate they have records reflecting that Mr. Shadman was investigated in 2011 for supporting the Taliban. (ECF No. 208-3).  And they fail to identify a discovery request they believe to be deficient based on the failure by the United States to produce information related to the 2011 investigation.

The Shadman Claimants also continue to falsely accuse the United States of failing to preserve the contents of a hotmail email account hosted by a Microsoft, a commercial internet service provider. (ECF No. 210, p. 9).  To the contrary, as soon as counsel for the United States

---

[21] The Shadman Claimants also reiterate concerns with the Department of Defenses' handling of the Governments request for a litigation hold.  While there was a delay between when counsel for the United States asked the DoD to impose a litigation hold, and when the hold was actually implemented, there is no evidence that the DoD failed to preserve evidence in this matter.

learned that the Shadman Claimants believed discoverable information was contained on the account, the United States took steps to preserve it. *See* Exhibit D, May 12, 2014 Preservation Letter to Microsoft. The United States has been unable to obtain any records pertaining to the account from Microsoft. The United States has already produced other records pertaining to this account obtained in the course of its investigation.

The Shadman Claimants further identify a litany of documents which they believe to be missing, lost or destroyed, including, sole source memoranda, TMR approval documentation, and the records sought in Request No. 25, discussed herein. (ECF No. 210, p. 35). These accusations are also baseless. First, Claimants know the material that may be responsive to Request No. 25, to the extent it exists, has not been destroyed by the United States, and has been or will be reviewed by the Government in connection with this matter. (ECF No. 183).

Second, with regard to the purported "missing, lost or destroyed" sole source memorandum, or TMR approval documents, the United States cannot produce that which does not exist. The Shadman Claimants identify exhibits 8-10, and ECF No. 141-7 to support their claim that the sole source memorandum exists. There are no exhibits numbered 8-10 to the Shadman Claimants' supplemental memorandum. Exhibits 8 through 10 of their original motion to compel are statements from Major Rusty Bradley and Bryan Myers. (ECF Nos. 141-8 to 141-10). Major Rusty Bradley, "was not involved in contracting or logistics," and thus has no first-hand knowledge about the memoranda. (ECF No. 28-21; ECF No. 141-10). ECF No. 141-8 does not discuss sole source memoranda.

ECF No. 141-9 contains a supplemental statement by Mr. Myers stating that Mr. Myers believed that Special Forces personnel obtained a sole source approval for HSLSC in 2010 (and

bypassed TOIFOR, in contravention of the contracting rules).[22]  ECF No. 141-7 is an exhibit

from the Shadman Claimants' motion to compel that contains a statement by Edward "Mike"

Woodall in which he states he obtained a sole source justification for Mr. Shadman's company

just prior to 2010.  He does not identify where such a document might be located.  To date, the

United States has been unable to locate such a document.  If it is found, and unclassified, the

United States expects to produce it to the United States.  If it is found, and classified, the United

States will endeavor to have it declassified as discussed during the May and June status

conferences.  Similarly, the United States has already produced to the Claimants all of the TMR-

related documents it has been able to identify, and to the extent additional unclassified TMR-

related documents are discovered by the United States, the United States will produce them.

Finally, in connection with their sanctions request, the Shadman Claimants chastise the

Government for failing to update its privilege log.  These assertions are also without merit.

Consistent with this Court's Orders, the United States has been under no obligation to update its

privilege log.  The log provided to the Claimants on October 6, 2014, reflects the material the

United States withheld from discovery as of the date of conclusion of the limited discovery

permitted by the stipulated protective order per the Court's scheduling order (ECF No. 119).

When the United States thereafter sought to stay this case, the Court stated that it "does not

contemplate that any other activity will take place in this litigation prior to May 1, 2015.

Specifically, it noted that pursuant to the Court's August 21, 2014 Scheduling Order (ECF No.

119), all discovery permitted by the Stipulated Protective Order (ECF No. 94) closed on

November 17, 2014.  That Scheduling Order and the Stipulated Protective Order remain in

effect.  With the exception of possible limited discovery to be conducted by AIB, as noted above,

---

[22]  Helpful context for this statement may be found at ECF No. 151, the United States' *ex parte*
submission authorized by 18 U.S.C. 981(g)(5) in support of the motion to stay this case.

no party may seek additional discovery unless and until this Court issues an order modifying the August 21, 2014 Scheduling Order."  (ECF No. 171, p. 3).

With two exceptions, there has been no order modifying the August 21, 2014, scheduling order.  First the Court directed that the United States produce to the Claimants the documents withheld from discovery identified on the October 6, 2014 log to the extent they were withheld on the basis that their production would have, at the time, had an adverse effect on the related criminal investigation.  The United States produced these documents on May 29, 2015.  Second, the Court indicated that the United States should continue its review of the classified material given to counsel for the United States by the Department of Defense on December 18, 2014, and March 24, 2015.  This review is ongoing.  Accordingly, there is no legal or factual basis for the Court to impose sanctions.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that this Court enter the attached order denying the Claimants' Motion.

Respectfully submitted,

M. KENDALL DAY, CHIEF
ASSET FORFEITURE AND
    MONEY LAUNDERING SECTION

/s/ Elizabeth A. Aloi
DANIEL H. CLAMAN
Assistant Deputy Chief
ELIZABETH A. ALOI
STEVEN C. PARKER
Trial Attorneys
United States Department of Justice
1400 New York Avenue, N.W., Suite 10100
Washington, D.C. 20530; Tel:  (202) 514-1263

Attorneys for Plaintiff
UNITED STATES OF AMERICA