IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>SUM OF $70,990,605, *ET AL.*,<br><br>    Defendants *in rem*, | Case No. 12-cv-01905 (RDM) |

**AFGHANISTAN INTERNATIONAL BANK'S RESPONSE TO SHADMAN
CLAIMANTS' MOTION TO DISMISS COMPLAINT
<u>AND FOR IMMEDIATE RELEASE</u>**

Afghanistan International Bank ("AIB") herein responds to the Shadman Claimants' Motion to Dismiss Complaint and for Immediate Release (ECF No. 274) (the "MTD"). The Shadman Claimants invoke the January 1, 2015 Bilateral Security Agreement (the "BSA") between the United States and Afghanistan as a basis for termination of this lawsuit. The facts raised in the MTD strengthen the act of state and comity arguments previously raised by AIB in its Motion for Summary Judgment (defined below). Specifically, the April 17, 2016 Letter from the Afghan Minister of Foreign Affairs to the U.S. Secretary of State (the "April Letter") is yet another official act of a sovereign entity that this Court must respect under the comity and act of state doctrines. To the extent the Court grants the MTD, the rationale underlying that decision would require that the amount seized from AIB and remaining at issue in this litigation, $4,182,348.44 (the "Seized Funds"), be returned to AIB. Accordingly, AIB respectfully requests this matter be dismissed and the Seized Funds be returned to AIB.

I.  **INTRODUCTION**

AIB assumes the Court's familiarity with the procedural history of this matter and, as such, has limited its discussion of background to events which it believes are relevant to the evaluation and resolution of the MTD. On April 3, 2015, AIB filed its Memorandum in Opposition to the Government's Motion to Strike its Claim and in support of its Cross-Motion to Vacate the Arrest Warrant *In Rem* and for Summary Judgment ("Motion for Summary Judgment"). ECF No. 181. In that Motion, AIB argued, among other things, that judgment should be entered in its favor because this litigation violates comity and act of state principles.[1] ECF No. 181 at pp. 35-42.[2] Because the Government had advised that it intended to oppose the Motion for Summary Judgment because additional discovery was required, AIB withdrew the Motion for Summary Judgment to facilitate that discovery and promote judicial economy. ECF No. 263. Notwithstanding its position that the Court cannot adjudicate the Motion for Summary Judgment without discovery, the Government moved to stay discovery this litigation pending the criminal case filed against Mr. Shadman, *United States v. Shadman*, Case No. 5:15-mj-2316 (E.D.N.C.). That motion was granted by this Court February 12, 2016. ECF. 274-4. The stay remains in effect.

As AIB understands, the MTD largely focuses on the BSA's dispute clause. MTD at ¶2. That clause requires disputes regarding the interpretation or the application of the BSA, to be resolved by the two nations conferring and diplomatically resolving the dispute. MTD at ¶9.

---

[1] As noted in AIB's Motion for Summary Judgment, this Court had previously ruled on comity and act of state principles asserted by the Shadman Claimants in their Motion for Preliminary Injunction and Motion to Dismiss. *See United States v. $70,990,605*, 991 F. Supp. 2d 154 (D.D.C. 2013) and *United States v. $70,995,605*, 4 F. Supp. 3d 189 (D.D.C. 2014). However, as also noted in the Motion for Summary Judgment, these arguments are distinguishable from those asserted by AIB.

[2] For a more complete statement of the comity and act of principles, AIB refers the Court to AIB's Motion for Summary Judgment in Part III.B (pp. 35-42).

Here, the Shadman Claimants argue that the Government's conduct in this litigation not only has violated the BSA, but that it has also created a disagreement subject to the BSA's dispute clause. Specifically, on April 17, 2016, H.E. Salahuddin Rabbani, the Minister of Foreign Affairs of Afghanistan, sent a letter to John Kerry, the United States' Secretary of State. MTD at ¶7, Enclosure 4, Exhibit 1. In the April Letter, the Minister specifically informed the Secretary of State that: (1) a continuation of this litigation is against Afghanistan expectations and laws; and (2) the actions taken by the Government are in violation of the BSA, as well as other U.S. and Afghan treaties and agreements. MTD, Enclosure 4, Exhibit 1. Because there appears to be a dispute regarding the applicability of the BSA in this instance, this Court should refrain from exercising jurisdiction in order to permit the U.S. and Afghan authorities to resolve their dispute in the manner in which they had previously agreed.

## II. THE MOTION TO DISMISS SHOULD BE GRANTED ON ACT OF STATE AND COMITY GROUNDS.

As noted above, AIB raised the doctrines of international comity and act of state in its now-withdrawn Motion for Summary judgment.[3] Although AIB withdrew that motion, the issues it presented dovetail with those raised by the MTD.

### A.  International Comity

Comity is a doctrine grounded in cooperation and mutuality involving the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation . . . ." *$70,995,605*, 4 F. Supp. 3d at 204 (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)). International comity is a doctrine of prudential abstention the advices "voluntary forbearance when a sovereign, which has a legitimate claim to jurisdiction concludes that a

---

[3] AIB has addressed only certain of the arguments raised in its Motion for Summary Judgment; it does not intend to waive any of the previously raised arguments by not specifically addressing them herein.

second sovereign also has a legitimate claim to jurisdiction under principles of international law." *Mujica v. AirScan, Inc.* 771 F.3d 580, 598 (9th Cir. 2014). Courts have generally recognized two types of comity theories: adjudicatory comity regarding a court's discretion to decline to exercise jurisdiction over a case before it where a foreign authority has proper jurisdiction over the subject-matter and prescriptive comity regarding the extraterritorial reach of federal statutes.

Under the principle of prospective adjudicatory comity, a court has discretion to decline to exercise jurisdiction over a case before it where a foreign authority has proper jurisdiction over the subject-matter, even where a final judgment has not yet been entered in the foreign jurisdiction regarding the dispute. Under prospective adjudicatory comity, courts will evaluate factors, including the strength of the Government's interests, the strength of the foreign government's interests and the adequacy of the alternative forum. *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004) (dismissing claims on international comity reasons). Here, the United States has an interest in recovering criminal proceeds; however, the Afghanistan government equally has an interest in enforcing its own laws and ensuring that its citizens and corporations do not have funds wrongfully seized from their possession. Given these competing interests, the Court must then turn to an evaluation of the adequacy of the alternate forum. Here, the United States has consented to the proposed alternate forum, namely the diplomatic resolution of disputes regarding the applicability of the BSA. The Court should respect that choice and dismiss this litigation.

B. Act of State

The act of state doctrine requires American courts to deem valid the official acts of a foreign sovereign performed within its own territory. *W.S. Kirkpatrick & Co. v. Envtl. Tectonis*

*Corp., Int'l*, 493 U.S. 400, 409 (1990); *see also Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 436-37 (1964) ("However offensive to public policy of this country and its constituent States an expropriation of this kind may be, we conclude that both the national interest and progress towards the goal of establishing the rule of law among nations served by maintaining intact the act of state doctrine in this realm of its application."). This doctrine is binding on federal courts. *Id.* Courts, however, generally do not apply the act of state doctrine where the U.S. has brought the action itself because the state department has likely already determined the action does not violate act of state principles.

Since the inception of this litigation, several official acts of Afghanistan, including the Afghanistan Attorney General's and DAB's directive to AIB to release Shadman's accounts, have been and will continue to be questioned by the United States through its pursuit of the Seized Funds.[4] The April Letter reflects yet another act of a foreign sovereign, which should be recognized by the Court and which should trigger application of the act of state doctrine.

As noted above, courts generally do not apply the act of state doctrine where the U.S. has brought the action itself because the state department has likely already determined the action does not violate act of state principles. This exception to the act of state doctrine does not apply in this situation. Here, the Government has both entered into the BSA *and* brought this action and seized the Seized Funds. In order to ensure this litigation is proper under act of state principles, AIB respectfully requests that the Court require the Government to produce a *Bernstein* letter confirming the State Department's stance that the litigation may continue. *See First Nat. Corp. & Subsidiaries v. C.I.R.*, 406 U.S. 759, 768-70 (1972) ("[A]s a matter of principle where the Executive publicly advises the Court that the act of state doctrine need not be

---

[4] *See* Motion for Summary Judgment at p. 41.
Response to Shadman Claimants' Motion to Dismiss
Case No. 12-cv-01905 (RDM)
Page 5 of 6

applied" the Court can then "proceed to examine the legal issues raised by the act of a foreign sovereign within its own territory as it would any other legal question before it.").

### III. THE SEIZED FUNDS FROM AIB SHOULD BE RETURNED UPON ANY DISMISSAL OF THIS LITIGATION.

In the pending MTD, the Shadman Claimants requests that the Court dismiss the Government's Third Amended Complaint with prejudice, terminate all orders (including the warrants which permitted seizure of the Shadman Claimants' and AIB's seized funds) and return the parties to the pre-lawsuit status quo. To the extent the Court grants this Motion, AIB respectfully requests the Court return the Seized Funds to AIB.

### IV. CONCLUSION

As outlined more fully herein, the Court should grant the Motion to Dismiss and order the release of the Seized Funds. Alternatively, AIB respectfully requests that the Court require the Government to produce a *Bernstein* letter confirming the State Department's view that this litigation should proceed.

Dated: July 13, 2016

                                      Respectfully submitted,

                                      REED SMITH LLP
                                      By: /s/Kathleen A. Nandan

                                      Kathleen A. Nandan (Admitted *Pro Hac Vice*)
                                      Jessica Rose (on the brief)
                                      Reed Smith Centre
                                      225 Fifth Avenue
                                      Pittsburgh, PA 15222
                                      Tel: (412) 288-3076
                                      Fax: (412) 288-3063
                                      E-mail: knandan@reedsmith.com

                                      Andrew C. Bernasconi (D.C. Bar No. 484614)
                                      1301 K Street, N.W.
                                      Suite 1100 – East Tower

Washington, D.C. 20005
Tel: (202) 414-9280
Fax: (202) 414-9299
Email: abernasconi@reedsmith.com

*Attorneys for Claimant Afghanistan International Bank*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13th day of July, 2016, copies of the foregoing was served via CM/ECF upon counsel of record including the following:

Elizabeth A. Aloi
Ann Marie Blaylock
Andrea G. Duvall
Steven Parker
U.S. DEPARTMENT OF JUSTICE
Criminal Division
1400 New York Avenue, NW, 9th Floor
Washington, DC 20530

Bryant S. Banes
NEEL, HOOPER & BANES P.C.
1800 West Loop South
Suite 1750
Houston, TX 77027

James Wallace Porter, III
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street, NW
Suite 1350
Washington, DC 20036

/s/Kathleen A. Nandan
Kathleen A. Nandan