**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA, |
| *Plaintiff*, |
| v. |
| SUM OF $70,990,605, *et al.*, |
| *Defendants.* |

Civil Action No. 12-1905 (RDM)

**MEMORANDUM OPINION AND ORDER**

For approximately four years, the law firm of Neel, Hooper & Banes P.C. ("NHB") represented Hikmatullah Shadman, his two brothers, and four companies that they control (collectively, "Shadman claimants") in a long-running *in rem* action, seeking assets seized as proceeds of an alleged scheme to defraud the United States. *See United States v. Sum of $70,990,605*, 234 F. Supp. 3d 212, 216–17 (D.D.C. 2017) ("*Sum II*"). However, in 2016, the Shadman claimants retained additional counsel, Dkt. 282, and, in late August 2017, apparently requested that the attorneys from NHB withdraw their appearance, *see* Dkt. 296-3 at 7. On September 21, 2017, the NHB attorneys filed a motion seeking leave to withdraw, Dkt. 295, and the Court granted their motion that same day, *see* Minute Order (Sept. 21, 2017). Several days later, NHB moved to intervene in order to assert "an attorney's charging lien" against any future award in favor of the Shadman claimants. Dkt. 296. It attached to that motion, moreover, various materials relating to the fees it claims to be owed and a previously filed "Notice of Lien," announcing that NHB "presents a claim and lien against any held funds or recovery by way of judgment, settlement or otherwise, that Plaintiff has provided or may recover from you or in this

action, for reasonable attorneys' fees, costs incurred and advanced, and other expenses incurred on behalf of the Shadman [c]laimants." Dkt. 296-2 at 4.

The United States filed a timely opposition, arguing principally that NHB lacks standing to intervene in this *in rem* forfeiture proceeding and that, to the extent it has a fee dispute with the Shadman claimants, its remedy lies in a different forum. Dkt. 297. The Shadman claimants also opposed NHB's motion to intervene, although their opposition was filed about a week after the deadline and, in any event, in most respects it simply incorporated the arguments already made by the United States.[1] Dkt. 299. Having missed the deadline to file a brief in opposition, the Shadman claimants provided their substantive answer to NHB's asserted lien in the form of a motion for sanctions, arguing that NHB's filings purporting to establish an attorney's charging lien are "frivolous," include "egregious misrepresentations," and were filed to "harass" the Shadman claimants. Dkt. 305 at 1–2.

---

[1] NHB, in turn, moved to strike the Shadman claimants' opposition as untimely. Dkt. 301. After the Court denied NHB's motion to strike, NHB moved for reconsideration, Dkt. 320, and the Court now agrees that it erred in denying that motion. The Court will, accordingly, grant NHB's motion for reconsideration, Dkt. 320, but it will once again deny NHB's motion to strike. First, and foremost, the motion is moot in light of the Court's decision in this order. Second, moreover, given the fact that the Shadman claimants merely incorporate the arguments that the United States made in a timely manner, the absence of any conceivable prejudice to NHB, the lack of any evidence of bad faith, and the relatively short period of delay, the Court concludes that the Shadman claimants satisfy the excusable neglect standard of Fed. R. Civ. P. 6(b)(1)(B). *See Smith v. Ergo Sols., LLC*, 306 F.R.D. 57, 66 (D.D.C. 2015) (excusable neglect standard "is at bottom an equitable one" that must take into "account all relevant circumstances surrounding the party's omission"); *see also Matthews v. FBI*, No. CV 15-569, 2018 WL 647630, at *4 (D.D.C. Jan. 30, 2018) (Courts must consider "(1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." (quoting *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003))).

For present purposes, the Court concludes that NHB is entitled to intervene in this action for the limited purpose of protecting any claim it may have to share in a portion of any award or settlement that the Shadman claimants may obtain and that the Shadman claimants' motion for sanctions does not satisfy the high burden for imposition of that extraordinary form of relief. To the extent the parties differ over the relevant facts and whether NHB is entitled to share in any portion of whatever award or settlement the Shadman claimants may someday obtain, that issue is not yet before the Court. Nor is the Court convinced that NHB's resistance to the efforts of its client to replace the firm as counsel in this matter caused the Shadman claimants any prejudice. The Court will, accordingly, grant NHB's motion for leave to intervene for purposes of asserting its right to share in any award or settlement and will deny the Shadman claimants' motion for sanctions. At an appropriate time, the parties may brief the question whether NHB is, in fact, entitled to share in any award or settlement that the Shadman claimants may obtain.

## I. BACKGROUND

The Court has summarized the factual background of this matter on multiple occasions, *see Sum II*, 234 F. Supp. 3d at 212; *United States v. Sum of $70,990,605*, 128 F. Supp. 3d 350 (D.D.C. 2015) ("*Sum I*"), and will, for present purposes, describe only the facts relevant to the pending motions. From July 2013 to September 2017, NHB represented the Shadman claimants in this *in rem* action. *Sum II*, F. Supp. 3d at 216. According to NHB, it agreed to represent the Shadman claimants in July 2013 at specified hourly rates. Dkt. 296-1 at 2 (Mashal Aff. ¶ 3). Because Shadman "claimed he was unable to pay at the agreed rates," "over time[,] NHB agreed to various monthly caps in exchange for deferring the remainder upon recovery." *Id.* (Mashal Aff. ¶ 3). The firm continued to work on the case for the next four years, according to NHB, but

endured multiple periods when it went unpaid, prompting renegotiations of NHB's fee agreement and plans for payment. *Id.* at 3 (Mashal Aff. ¶¶ 4–6).

Two agreements, both signed on March 8, 2016, are relevant here. The first required a quarterly payment of $45,000 plus expenses but deferred fees and expenses "in excess of $450,000," *id.* at 3 (Mashal Aff. ¶ 7), agreeing that those costs would be "due only if money is recovered for the clients on the civil forfeiture matter or if the Firm leaves the case for reasons other than its misconduct," *id.* at 37. The agreement further provided that Shadman "authorize[d] the Firm to collect agreed fees paid in full directly from [Shadman's] designated bank representative prior to final release of all funds to [Shadman]." *Id.* at 38. A second agreement, signed that same day, specified that NHB was entitled to receive a "contingent fee" "capped" at specified levels depending on when "recovery is awarded." *Id.* at 39. That agreement further provided that the "Law Firm is authorized to work with Client's designated bank representative to obtain any sums claimed directly from the government or other parties on behalf of Clients and [would] be entitled to receive and be paid a contingent fee" in a percentage provided by a fee schedule. *Id.* at 39. Both agreements provided that NHB could enforce the provisions even after withdrawing from the case. *See id.* at 38, 40; *see also id.* at 4 (Mashal Aff. ¶ 9).

After relations between NHB and the Shadman claimants deteriorated, NHB filed a notice of petition to establish a lien on August 31, 2017, seeking "attorney's fees and expenses." *See* Dkt. 293 at 3. In that petition, NHB alleges that it is the beneficiary of an "irrevocable lien" and a "bank assignment" through its agreements with the Shadman claimants and that, although NHB had not been paid, it also had "not been terminated for cause, and," at least at the time it filed the notice of petition, "remain[ed] as Lead Counsel before the Court." *Id.* On September

4

21, 2017, NHB formally withdrew as counsel for the Shadman claimants, Dkt. 295, and shortly thereafter, filed a motion to intervene to enforce its lien, Dkt. 296. The Shadman claimants, for their part, have moved for Rule 11 sanctions against NHB based on its "multiple and egregious misrepresentations to the Court" and "actions taken [] counter to the Shadman [c]laimants' interests," Dkt. 305 at 2.

To date, the Shadman claimants have not received any award or settlement in the underlying litigation. *See* Dkt. 297 at 5.

## II. ANALYSIS

### A. NHB's Motion to Intervene

Parties seeking to intervene as of right under Federal Rule of Civil Procedure 24(a) must satisfy four requirements. *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013). First, "the application to intervene must be timely." *Id.* (quoting *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008)). Second, "the applicant must demonstrate [that it has] a legally protected interest in the action." *Id.* (quoting *Karsner*, 532 F.3d at 885). Third, "the action must threaten to impair that interest." *Id.* (quoting *Karsner*, 532 F.3d at 885). Fourth, "no party to the action can be an adequate representative of the applicant's interests." *Id.* (quoting *Karsner*, 532 F.3d at 885). A movant seeking to intervene as of right pursuant to Rule 24(a) must also have Article III standing. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233–34 (D.C. Cir. 2003); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731–32 (D.C. Cir. 2003).

Here, the United States opposes NHB's motion for leave to intervene on grounds that relate both to timeliness and standing—the law firm failed to file a timely claim to the seized assets pursuant to Supplemental Rule G(5). Dkt. 297 at 3. It is far from clear, however, that NHB needs to have statutory standing under 18 U.S.C. § 981(k)(4)(B) and § 983(d)(6). NHB

does not contend that it has standing to pursue a claim against the *res* as an "owner" of the seized funds but, rather that it is entitled to intervene to protect its interest in any recovery or settlement that its former clients may obtain. *See* Dkt. 298 at 6. "This Circuit has long allowed attorneys to intervene in the underlying case to protect their interests, recognizing that charging liens 'arise[] out of the underlying action and relate[] back to the inception of the action.'" *Peterson v. Islamic Republic of Iran*, 220 F. Supp. 3d 98, 106 (D.D.C. 2016) (quoting *Martens v. Hadley Mem'l Hosp.*, 753 F. Supp. 371, 372 (D.D.C. 1990)). As the D.C. Circuit has explained, "an attorney of record under a contingent fee contract has an 'interest in the cause of action,'" and "may intervene to protect this interest." *Friedman v. Harris*, 158 F.2d 187, 187–88 (D.C. Cir. 1946). In none of these cases do the courts ask whether the attorney would have had statutory or constitutional standing to bring the action in the first instance, nor would it make sense to approach the question from that peculiar perspective. But, even if some version of that approach applied here, as NHB points out, the statutory definition of "owner" includes any one holding a "lien" or "valid assignment of an ownership interest." 18 U.S.C. § 983(d)(6)(A).

More generally, the Court is convinced that NHB satisfies the requirements for intervention. The law firm filed its motion to intervene shortly after the Court granted the NHB lawyers leave to withdraw, *see* Minute Order (Sept. 21, 2017); Dkt. 296, and thus the motion was timely. Moreover, NHB has established that it has a "legally protected interest" in the litigation. Because NHB provided legal services with respect to an action pending in this Court, D.C. law presumably governs whether it has a right to assert a lien against any recovery or settlement. *See Democratic Cent. Comm. of D.C. v. Wash. Metro. Area Transit Comm'n*, 941 F.2d 1217, 1219 (D.C. Cir. 1991) ("The existence and effect of an attorney's lien is governed by the law of the place in which the contract between the attorney and the client is to be performed."). The

District of Columbia does not have a statute that governs attorney's liens but, rather, "relies on the common law." *Peterson,* 220 F. Supp. 3d at 104. That common law rule "recognizes two distinct types of liens applicable to a claim against a client for attorneys' fees: the 'retaining lien' and the 'charging lien.'" *Wolf v. Sherman*, 682 A.2d 194, 197 (D.C. 1996). NHB seeks only the latter—a charging lien. "D.C. case law has long recognized the validity of an attorneys' charging lien in proceeds obtained through judgment and recovery where the client and the attorney understood that the attorney would be paid out of the case's proceeds." *Martens*, 753 F. Supp. at 372. Thus, if NHB can establish that it has an enforceable, contractual right "to be paid out of the judgment recovered," *Wolf*, 682 A.2d at 197–98 (quoting *Elam v. Monarch Life Ins. Co.*, 598 A.2d 1167, 1169 (D.C. 1991)); if the Shadman claimants, in fact, recover a judgment; and, if the Shadman claimants do not have a defense to NHB's contractual claim, NHB is entitled to assert and to enforce a common law charging lien.

Finally, the Court has little difficulty in concluding that NHB has satisfied the final two conditions for intervention as of right: Unless it is permitted to intervene, the law firm's interests may be impaired. Because the Shadman claimants do not reside in the United States, NHB may find it difficult to enforce its contractual rights. Moreover, to the extent NHB has a right to share directly in the proceeds of the litigation, that right will be lost if the proceeds are dispersed, and NHB is left to bring a collection action. And, likewise, no other party to the litigation will adequately represent NHB's interests, which are wholly unrelated to the interests of the United States and the Shadman claimants.

The Court, accordingly, concludes that NHB is entitled to intervene. The Court, however, offers two cautions. First, the Court has not concluded that NHB is entitled to recover or, indeed, that it has established a contractual interest in the proceeds of the action. Rather, the

7

Court has merely held that NHB has presented a plausible claim that it is entitled to a charging lien and that it should be allowed to intervene to litigate that claim. Whether it is entitled to prevail is for another day. Indeed, to date, the Shadman claimants have not obtained a judgment or settlement, so there is—currently—no proceeds in which NHB might, even if entitled, share. Second, NHB's right of intervention is very narrow. It is not entitled to litigate the underlying merits, to participate (without invitation) in any settlement discussions, or to take any action unrelated to its alleged right to share in any recovery. Particularly in light of the allegations of harassment raised by NHB's former client, it important that the law firm strictly limits its role to that authorized by this order.

This, then, leads to the Shadman claimants' motion for sanctions. Dkt. 305; *see also* Fed. R. Civ. P. 11(c)(2). According to the Shadman Claimants, the Court should sanction NHB for "multiple and egregious misrepresentations to the Court" and abuse of process. Dkt. 305 at 2. In particular, the Shadman claimants raise two allegations: (1) "NHB's Notice of Lien, Notice of Petition, and all other pleadings regarding its attempt to establish an attorney's lien" are frivolous and based on the "improper purpose" of attempting "to cause a distraction from the matters at hand and retaliation for the Shadman Claimants replacing them as lead counsel;" and (2) NHB "continued to hold itself out as representing the Shadman Claimants, despite clear instruction that its representation had ended." Dkt. 305 at 5–6.

The first contention merits little discussion; for the reasons explained above, the Court concludes that NHB has established a limited right to intervene in the litigation. According to the Shadman claimants, a number of claims in NHB's notice of petition to enforce a lien, Dkt. 293, including NHB's contention that its fee agreements with the Shadman claimants give the firm a right directly to share in the proceeds of the action, are false. Dkt. 305 at 5. As discussed

above, the Court cannot conclude on the present record whether NHB's claims about its fee agreements are correct. Nothing in the existing record, however, shows that the law firm's arguments are frivolous or asserted for an improper purpose. *See* Fed. R. Civ. P. 11(b).

The Shadman claimants' second ground for seeking sanctions, in contrast, requires further discussion. The Shadman claimants contend that "NHB refused to withdraw, demanding direct communications from the Shadman claimants;" threatened to prejudice the Shadman claimants' interests in the litigation by filing a notice of "delinquent . . . invoices," which "would be seen by U.S. government attorneys," and "falsely purported to represent the Shadman [c]laimants" during the course of the September 19, 2017 status conference. Dkt. 305 at 3. NHB, in turn, answers that Bryant Banes remained as "lead counsel" in the action "until his withdrawal was allowed on September 21, 2017;" that "the communications NHB received after it began having difficulties collecting payment from the Shadman [c]laimants . . . were not the kind that one would expect as co-lead [counsel] or in a language [its] prior Afghan client normally used;" and that NHB had every right forcefully to pursue collection of its unpaid fees. Dkt. 306 at 1–4.

In general, lawyers are not entitled to dictate how their clients communicate instructions, including instructions to withdraw. But, from the evidence presented, NHB's resistance to withdrawing—even if inappropriate—does not raise an issue under Rule 11. That Rule authorizes a Court to impose sanctions if any "pleading, written motion, or other paper" is filed for an improper purpose or without a sufficient factual or legal basis. *See* Fed. R. Civ. P. 11(b). But here, as the Court has already explained, NHB's motion for leave to intervene (and its notice of lien) was nonfrivolous, even if the law firm—at least arguably—failed to respond to its clients' directives with sufficient alacrity. Moreover, at least on the present record, it does not

appear that NHB's resistance caused the Shadman claimants any actual prejudice, and the representations that NHB made to the Court were not false; until NHB moved to withdraw and the Court granted that motion, NHB remained as counsel in the case. Finally, the Model Rules of Professional Conduct contemplate that a "lawyer entitled to a fee" may bring "an action to collect it." *See* ABA Model Rules of Prof'l Conduct R. 1.6 cmt. 11.

"Courts do not impose Rule 11 sanctions lightly; such sanctions are an extreme punishment for filing pleadings that frustrate the judicial proceedings," *Jordan v. Dep't of Labor*, 273 F. Supp. 3d 214, 241 (D.D.C. 2017), or that are filed to harass another party. Although the Court does not condone NHB's resistance to its client's instructions, it cannot conclude on the present record that this conduct warrants the imposition of sanctions under Rule 11.

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that NHB's motion to intervene, Dkt. 296, is **GRANTED**. It is further **ORDERED** that the Shadman claimants' motion for sanctions, Dkt. 305, is **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 25, 2018